Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Andrew S. Jick (SBN: 278943)
ajick@winston.com
Kelly N. Oki (SBN: 304053)
koki@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
AXANAR PRODUCTIONS, INC.,
and ALEC PETERS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation<br><br>Plaintiffs,<br><br>vs.<br><br>AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual; and DOES 1-20,<br><br>Defendants. | Case No. 2:15-cv-09938-RGK-E<br><br>*Assigned to:  Hon. R. Gary Klausner*<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR STRIKE PLAINTIFFS' COMPLAINT IN PART; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**FED. R. CIV. P. 12(b)(6), 8(a), 12(f)**<br><br>Hearing Date:  March 21, 2016<br>Time:  9:00 a.m.<br><br>Complaint Filed:  December 29, 2015 |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2016, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable R. Gary Klausner of the United States District Court for the Central District of California, in Courtroom 850 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, Defendants Axanar Productions, Inc. and Alec Peters (hereinafter collectively referred to as "Defendants") will and hereby move, pursuant to Rules 12(b)(6),  8(a) and/or 12(f) of the Federal Rules of Civil Procedure,[1] for an order dismissing all claims against Defendants in this action and/or striking the claims in part (the "Motion").

In particular, Defendants seek an order striking the following allegations from Plaintiffs' Complaint:

- The allegation "and are in the process of producing a film called *Axanar* (the '*Axanar* Motion Picture')" from paragraph 2;
- The allegation "and continues to write the script for and produce the *Axanar* Motion Picture" from paragraph 9;
- The allegations contained in paragraphs 30 through 39;
- The allegations contained in paragraphs 66 through 70; and
- The allegations contained in paragraph 2 of the Prayer for Relief.

This Motion is brought pursuant to Rules 12(b)(6), 12(f) and 8(a) on the grounds that Plaintiffs' claims against Defendants fail to state a claim upon which relief can be granted and fail to put Defendants on notice of the claims alleged against them.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, all pleadings and papers filed in this action, and upon such other and further submission, evidence, and argument as may be presented to the Court prior to or at the time of hearing on this Motion.  This Motion is made following the

---

[1] All further statutory references are to the Federal Rules of Civil Procedure unless otherwise stated.

1   conference of counsel, pursuant to L.R. 7-3, which took place on February 12, 2016.

2

3   Dated:  February 22, 2016                WINSTON & STRAWN LLP

4

5                                           By:   */s/ Erin R. Ranahan*
                                                  Erin R. Ranahan
6                                                 Andrew S. Jick
                                                  Kelly N. Oki
7                                                 Attorneys for Defendants,
                                                  AXANAR PRODUCTIONS, INC.
8                                                 and ALEC PETERS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................. 1

        A.      The Parties ................................................................................. 1

        B.      The "Star Trek Copyrighted Works" ........................................ 2

        C.      The Short Mockumentary ........................................................ 4

        D.      The Potential Fan Film............................................................. 4

        E.      Plaintiffs' Specific Claims Against Defendants ...................... 6

III.    LEGAL STANDARD .............................................................................. 6

IV.     ARGUMENT............................................................................................ 7

        A.      Plaintiffs' Claims Are Not Sufficiently Detailed To Survive .................. 7

                1.      Plaintiffs' Complaint Fails to Meet Minimum Pleading
                        Standards Because Plaintiffs Do Not Specify Which
                        Amongst "Thousands" of Alleged Copyrights Have Been
                        Infringed........................................................................... 7

                2.      Plaintiffs' Ownership Claims Are Implausible ............. 11

                3.      Plaintiffs' Claims Are Improperly Based Upon Allegations
                        Made On "Information And Belief" ............................... 11

        B.      Plaintiffs' Claims Based on the Potential Fan Film Should Be
                Dismissed or Stricken Because They are Premature .............. 13

                1.      Plaintiffs' Claims Based on the Potential Fan Film are
                        Unripe ............................................................................. 14

                2.      Enjoining the Potential Fan Film Would be a Prior Restraint ....... 19

                3.      Plaintiffs Have Failed to Allege Any Violation of Plaintiffs'
                        Rights With Respect to the Potential Fan Film ............. 20

V.      CONCLUSION ....................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir.2001) ...................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................6, 12, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................6, 15

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*,
   329 F.3d 923 (7th Cir. 2003) ...................................................................16

*Chase-Riboud v. DreamWorks, Inc.*,
   987 F.Supp. 1222 (C.D. Cal. 1997) ....................................................17

*Chestang v. Yahoo, Inc.*,
   No. 2:11-cv-00989-MCE-KJN PS, 2012 WL 3915957
   (E.D. Cal. Sept. 7, 2012)......................................................................8, 9

*Christianson v. West Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945) ...................................................................10

*Clinton v. Acequia, Inc.*,
   94 F.3d 568 (9th Cir. 1996) ...................................................................14

*Cole v. John Wiley & Sons, Inc.*,
   2012 WL 3133520 (S.D.N.Y. Aug.1, 2012) ...................................7

*Cutler v. Enzymes, Inc.*,
   No. C 08-04650 JF (RS), 2009 WL 482291 (N.D. Cal. Feb. 25, 2009) ...........10

*Danjaq, LLC v. Universal City Studios, LLC*,
   No. CV 14-02527 SJO (Ex), 2014 WL 7882071
   (C.D. Cal. Oct. 2, 2014).........................................................................18

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ...................................................................13

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994) ...13

*Four Navy Seals v. Associated Press,*
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ...........................................................8, 9

*Funky Films, Inc. v. Time Warner Entm't Co.,*
    462 F.3d 1072 (9th Cir. 2006) ...................................................................15

*Gilbert v. New Line Prods., Inc.,*
    No. CV 09-02231 RGK, 2009 WL 7422458 (C.D. Cal. Nov. 16, 2009)...........15

*Globe Int'l, Inc. v. Nat'l Enquirer, Inc.,*
    No. 98-10613 CAS (MANX), 1999 WL 727232 (C.D. Cal. Jan. 25, 1999) 19, 20

*Hendrickson v. eBay, Inc.,*
    165 F. Supp. 2d 1082 (C.D. Cal. 2001) .............................................................3

*Hudson v. Universal Pictures Corp.,*
    No. 03-CV-1008(FB)(LB), 2004 WL 1205762 (E.D.N.Y. April 29, 2004)......17

*Int'l Harvester Co. v. Deere & Co.,*
    623 F.2d 1207 (7th Cir. 1980) ...................................................................14

*Litchfield v. Spielberg,*
    736 F.2d 1352 (9th Cir. 1984) ...................................................................16

*Marshall v. McConnell,*
    No. Civ.A. 3:05-CV-1062L, 2006 WL 740081 (N.D. Tex. Mar. 23, 2006)........7

*Marshall v. Yates,*
    No. CV-81-1850-MML, 1983 WL 1148 (C.D. Cal. Oct. 26, 1983) .................17

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.,*
    No. C 06-7541 PJH, 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ....................7

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976)....................................................................................19

*New Name, Inc. v. Walt Disney Co.,*
    No. CV 07-5034 PA, 2007 WL 5061697 (C.D. Cal. Dec. 3, 2007)...................12

*New York Times Co. v. United States,*
    403 U.S. 713 (1971)....................................................................................19

*Palmer Kane LLC v. Scholastic Corp.,*
    No. 12 Civ. 3890 (TPG), 2014 WL 1303135 (S.D.N.Y. Mar. 31, 2014) .......7, 8

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...........................................................20

*Plunket v. Doyle*,
  No. 99 Civ. 11006 (KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001)...........8

*Portland Police Ass'n. v. City of Portland*,
  658 F.2d 1272 (9th Cir. 1981) ...........................................................14

*Quirk v. Sony Pictures Entertainment, Inc.*,
  No. C 11-3773 RS, 2013 WL 1345075 (N.D. Cal. April 2, 2013) ...................17

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir.2003) ...........................................................12

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
  No C 09-05659 WHA, 2011 WL 166198 (N.D. Cal. Jan. 18, 2011)................12

*Rosenfeld v. Twentieth Century Fox Film*,
  No. CV 07-7040 AHM FFMX, 2008 WL 4381575 (C.D. Cal. Sept. 25, 2008) ................................................................................................7

*See v. Durang*,
  711 F.2d 141 (9th Cir. 1983) ......................................................16, 17

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
  363 F. 3d 1361 (Fed. Cir. 2004) ........................................................14

*Simonyan v. Ally Fin. Inc.*,
  No. CV 12-8495-JFW, 2013 WL 45453 (C.D. Cal. Jan. 3, 2013)....................12

*Solis v. City of Fresno*,
  No. 1:11-CV-00053 AWI GSA,
  2012 WL 868681 (E.D. Cal. Mar. 13, 2012)......................................12

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 12-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ..........10

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
  718 F.3d 1006 (9th Cir. 2013) .........................................................13

*Universal Surface Tech., Inc. v. Sea-A Trading Am. Corp.*,
  No. CV 10-6972 CAS, 2011 WL 281020 (C.D. Cal. Jan. 26, 2011).................8

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007) ...........................................................15

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ...........................................................................12

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985) ...................................................................17

*Walt Disney Productions v. Filmation Associates*,
    628 F.Supp. 871 (C.D. Cal. 1986) ..............................................................18, 19

*Warner Bros., Inc. v. Am. Broad. Cos.*,
    720 F.2d 231 (2d Cir. 1983) .............................................................................16

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................................10

**STATUTES**

17 U.S.C. § 101 .........................................................................................................20

17 U.S.C. § 103(b) .......................................................................................................9

17 U.S.C. § 106 .........................................................................................................20

17 U.S.C. § 504(c) .....................................................................................................10

**RULES**

Fed. R. Civ. P. 8 ......................................................................................................6, 8

Fed. R. Civ. P. 8(a) .................................................................................................1, 7

Fed. R. Civ. P. 8(a)(2) ................................................................................................6

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 6

Fed. R. Civ. P. 12(f) ...................................................................................................13

**OTHER AUTHORITIES**

W. Landes & R. Posner, *The Economic Structure of Intellectual Property Law* 109 (2003).............................................................................................16

1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* ..............................................16

4 Nimmer on Copyright § 13.03[D] ........................................................................17

6 William F. Patry, *Patry on Copyright* (2015)............................................7, 8, 11

5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (1990)....................................................................................................13

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE

## I.     INTRODUCTION

Plaintiffs' lawsuit alleges copyright infringement against Defendants over one short film, a mockumentary called *Prelude to Axanar*, and a longer film that has yet to be created.  Plaintiffs' Complaint fails to satisfy minimum pleading requirements for at least three reasons.  First, while Plaintiffs allege ownership of "thousands" of copyrights relating to Star Trek episodes and films, Plaintiffs fail to specify which of those copyrights Defendants have allegedly infringed.  Second, the Complaint is not plausible regarding which Plaintiff owns which relevant work; instead, the Complaint contradicts itself by alleging that both Plaintiffs own all the copyrights while also relying on an assignment between them. Third, Plaintiffs improperly base their claims largely on bare allegations of information and belief. Because Plaintiffs have failed to provide the specificity necessary to allow Defendants the opportunity to reasonably investigate or respond to Plaintiffs' claims, Plaintiffs' claims should be dismissed.

With respect to Plaintiffs' claims regarding the longer film that has not been made, there are additional defects.  The claims are premature.  Unlike *Prelude to Axanar*—which exists and thus allows Defendants the opportunity to demonstrate lack of substantial similarity, fair use, and *de minimis* use—the same cannot be said for the longer film. Moreover, seeking to stop the creation of a work at this stage would operate as an impermissible prior restraint.  And Plaintiffs have not plausibly alleged any violation of their rights where no work exists in a fixed, tangible form.

Because Plaintiffs' Complaint does not satisfy the standard necessary to survive this Motion under Rule 12(b)(6) or Rule 8(a), the Court should dismiss the claims.

## II.     FACTUAL BACKGROUND

### A.     <u>The Parties</u>

Plaintiff Paramount Pictures Corporation ("Paramount") is a major movie studio.  Plaintiff CBS Studios Inc. ("CBS") is a major television studio.  Defendant Axanar Productions, Inc. ("Axanar") is alleged "on information and belief" to be a motion picture, television, and/or video production company.  Compl. ¶ 8.  Defendant

1    Alec Peters is an individual alleged to be the controlling principal of Axanar.  *Id.* ¶ 9.

2    **B.    The "Star Trek Copyrighted Works"**

3    Plaintiffs allege that the Star Trek franchise was created by Gene Roddenberry.

4    Compl. ¶ 13.  Plaintiffs allege that they own six Star Trek television series "totaling

5    **thousands** of episodes" (collectively, the "Star Trek Television Series").  Compl. ¶ 15

6    (emphasis added).  Plaintiffs further allege that they own twelve Star Trek motion

7    pictures (the "Star Trek Motion Pictures").  Compl. ¶ 16.  Plaintiffs define the "Star

8    Trek Copyrighted Works" by lumping the "thousands" of episodes from the Star Trek

9    Television Series and the twelve Star Trek Motion Pictures together.  *Id.* at ¶ 18.

10   Plaintiffs do not explain in their Complaint when or how the chain of title

11   conferred which rights in the Star Trek Television Series and the Star Trek Motion

12   Pictures to which respective Plaintiff.  Plaintiffs do not identify which entity owns

13   which copyrighted works; rather, Plaintiffs' allegations lump both Plaintiffs together

14   and appear to allege collective ownership of all of the "Star Trek Copyrighted

15   Works."  *E.g.*, Compl. ¶ 1 ("**Plaintiffs** own the copyrights in this treasured

16   franchise"), ¶ 18 ("**Plaintiffs** own United States copyrights in the Star Trek Television

17   Series and the Star Trek Motion Pictures").  However, in the Appendix to the

18   Complaint, Plaintiffs cite to a "Copyright Assignment from Paramount Pictures

19   Corporation to CBS Studios Inc. (V3542 D684- V3542 D690)."  Compl., Appx. A.

20   Plaintiffs allege that the United States Copyright Office has issued Certificates of

21   Registration for the works identified in Appendix A.  Compl. ¶ 18.  In the Appendix,

22   Plaintiffs identify the registration numbers for each of the twelve Star Trek Motion

23   Pictures.  For the Star Trek Television Series, however, Plaintiffs merely list each of

24   the five series and identify one episode from each.  Compl., Appx. A.  In a footnote,

25   Plaintiffs explain that "Plaintiffs own the copyrights for **all episodes** of each Star Trek

26   television series, and have identified the copyright registrations for the first episode of

27   each television series."  *Id.*, n.1 (emphasis added).

28   The Star Trek Copyrighted Works do not all contain the same characters,

2

starships, plots, and other features.  As Plaintiffs allege, *The Original Series* "chronicled the adventures of the U.S.S. Enterprise and its crew as they traveled through space during the twenty-third century, and featured numerous original and copyrightable elements, including but not limited to elements such as the plots of the episodes, the Starship Enterprise, its bridge and other interior construction, other original spacecraft, numerous original and fictitious races and species, including the Vulcan race and the Klingon race, the United Federation of Planets (the 'Federation'), the history of the Federation, and original weapons and technology."  Compl. ¶ 13.

However, the other Star Trek Television Series contain very different plots, characters, and other elements.  In *The Next Generation*, "Star Trek returned to television...but it revealed a universe with ***previously unexplored dimensions***. Captain Jean-Luc Picard (Patrick Stewart) took the helm of a ***very different Enterprise*** with a[n entirely different] crew...."[2]  By contrast, *Voyager* "details the adventures of the Starfleet's most adventurous starship, ***the U.S.S. Voyager***, as it is led by Captain Kathryn Janeway (Mulgrew) on missions into deep space...Like Deep Space Nine, early seasons of Voyager feature greater conflict between its crew than is seen in earlier shows . . ."[3]  And *Enterprise* "was set in the 22nd century, ***a hundred years before Captain Kirk appeared***.  Captain Jonathan Archer and his crew travel on a ***revolutionary spacecraft, Enterprise NX-01***, to explore unknown civilizations."[4]

Similarly, the Star Trek Motion Pictures differ significantly from the various Television Series, and indeed, from each other.  Plaintiffs have announced plans to release a new Star Trek motion picture in 2016 and a new Star Trek television series in January 2017, but they have not included these prospective works within their definition of the allegedly infringed "Star Trek Copyrighted Works."

---

[2]  http://www.cbsstore.com/detail.php?p=447284. Courts may take judicial notice of facts published on Internet websites that are not reasonably subject to dispute. *See, e.g., Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1084 n.2 (C.D. Cal. 2001).
[3]  http://www.cbsstore.com/detail.php?p=53085.
[4]  http://www.cbsstore.com/detail.php?p=53084.

### C.   **The Short Mockumentary**

Plaintiffs allege that Defendant Peters wrote and Defendant Axanar produced a short film called *Prelude to Axanar*. Compl. ¶¶ 21-23. To fund production, Defendants used the crowdfunding website Kickstarter, promising fans "Star Trek like you have never seen it before."[5]  Compl. ¶ 28.  The short, twenty-minute film is a fictional documentary, also known as a "mockumentary"[6] (hereafter, the "Short Mockumentary").  *See* Compl. ¶ 28 (the Short Mockumentary will "show[] the central characters of Axanar giving both a historical and personal account of the war"). Plaintiffs allege that "[i]n *one of the episodes* of *The Original Series*, James T. Kirk, the Captain of the U.S.S. Enterprise, meets his hero, Garth of Izar, a former Starship captain.  Kirk and Garth discuss Garth's victory in a battle at Axanar."  Compl. ¶ 14 (emphasis added).  The Short Mockumentary allegedly "tells the story of…Garth of Izar, during the war between the Federation and the Klingon Empire."  Compl. ¶ 28.

Plaintiffs do not allege that Defendants included or referenced any of the main Star Trek characters (e.g., Captain Kirk, Spock) in the Short Mockumentary. Plaintiffs do not allege that any of the plot lines of any episodes or films are substantially similar to Defendants' works.  Plaintiffs do not allege that Defendants profited in any way from the Short Mockumentary.  As Plaintiffs admit, Defendants funded the Short Mockumentary by raising money through Kickstarter donations, and, once it was completed, they posted it online, making it available for free.[7]  Compl. ¶¶ 21, 26.  Plaintiffs do not allege how they were harmed by the Short Mockumentary. Defendants have never sold tickets, DVDs, charged to view or otherwise commercialized the Short Mockumentary, and there is no allegation to the contrary.

### D.   **The Potential Fan Film**

Plaintiffs allege that Defendants "are in the process of producing a film" called

---

[5]  Incidentally, this allegation contradicts the notion that the Short Mockumentary is substantially similar to any of Plaintiffs' alleged copyrighted works.
[6]  *See* http://dictionary.reference.com/browse/mockumentary (a "mockumentary" is "a movie or television show depicting fictional events but presented as a documentary").
[7]  Though the Short Mockumentary has been available online since 2014, Plaintiffs never complained to Axanar about it until filing this lawsuit on December 29, 2015.

*Axanar* (the "Potential Fan Film").   Compl. ¶ 2.   Although Plaintiffs allege that "Defendants have created a script" for the film, Plaintiffs also allege that Defendant Alec Peters "continues to write the script for and produce" the film (Compl. ¶¶ 31, 9) and that "certain Doe Defendants continue to write the screenplay." *Id.* ¶ 34.[8]

Plaintiffs further allege that Defendants have "announced that filming will begin in January 2016." Compl. ¶ 30.  The Complaint was filed December 29, 2015. On January 21, 2016, the Parties filed a stipulation extending Defendants' time to respond to the Complaint, which reflected the parties' agreement that "no shooting or filming of the motion picture entitled Axanar will commence or continue through the date of the extension." (Dkt. 19.)  Even though Plaintiffs have never actually seen the Potential Fan Film (no one has, as it simply does not exist), Plaintiffs presumptively allege that the Potential Fan Film is "substantially similar" and has the same "feel and mood" to some unspecified number of Plaintiffs' alleged works; and that it is neither "a parody" nor "fair use." (Compl. p. 8, ¶¶ 50, 52, 59.)

Plaintiffs allege that the Potential Fan Film takes place in the year 2245, "21 years before the events of 'Where No Man Has Gone Before'" – the only work that Plaintiffs allege Garth of Izar has appeared in.  Compl. ¶ 38; *see id.* ¶ 14 (alleging that Garth of Izar appears in "one of the episodes of *The Original Series*").   Plaintiffs allege that the film "tells the story of Garth and his crew during the Four Years War." *Id.*   Plaintiffs allege, on "information and belief," that "Defendants incorporated numerous elements of the Star Trek Copyrighted Works into the *Axanar* screenplay and the Vulcan Scene, and will incorporate those elements into the *Axanar* Motion Picture." *Id.* ¶ 39.  With respect to the Vulcan Scene, Plaintiffs allege that Defendants violated unspecified copyrights based on the "look and feel of the planet," "costumes," "pointy ears" and an unspecified "hairstyle." *Id.* at ¶ 48. Plaintiffs allege that the Potential Fan Film includes allegedly infringing "costumes" consisting of "bright solid-colored sweaters with black pants" that are "substantially similar" to

---

[8] Indeed, there are currently multiple versions of the script, and others in progress, which Defendants have adjusted since learning of Plaintiffs' concerns.

1   unspecified works allegedly owned by Plaintiffs.  Compl. ¶ 47.

2      Plaintiffs do not allege that Defendants plan to profit in any way from the

3   Potential Fan Film.  Plaintiffs do not allege that Defendants plan to sell tickets, DVDs,

4   or to charge anyone to view the work online.  Nor do Plaintiffs allege any specific

5   facts showing how they have been or will be harmed by the Potential Fan Film.

6      **E.    Plaintiffs' Specific Claims Against Defendants**

7      Plaintiffs allege four claims against Defendants: (1) direct copyright

8   infringement; (2) contributory copyright infringement; (3) vicarious copyright

9   infringement; and (4) declaratory relief.  With respect to their claims for direct and

10  secondary copyright infringement, Plaintiffs' allegations are almost exclusively made

11  in conclusory form "on information and belief."  Compl. ¶¶ 57, 59, 60, 63, 64.

12  **III.   LEGAL STANDARD**

13     In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must

14  "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

15  plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A plaintiff's

16  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

17  labels and conclusions, and a formulaic recitation of a cause of action's elements will

18  not do.   Factual allegations must be enough to raise a right to relief above the

19  speculative level..."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

20     Rule 8(a)(2) requires that a pleading set forth a "short and plain statement of the

21  claim showing that the pleader is entitled to relief" and giving "the defendant fair

22  notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550

23  U.S. at 554-56.  Where a complaint fails to satisfy the pleading standards set forth by

24  Rule 8, it must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon

25  which relief can be granted.  *Twombly*, 550 U.S. at 570.

26     As discussed herein, Plaintiffs' claims fall short of what is necessary to put

27  Defendants on fair notice of any plausible claims against them under *Twombly* and

28  *Iqbal*, and the claims against Defendants should be dismissed.

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Are Not Sufficiently Detailed To Survive

Courts have routinely found conclusory allegations of copyright infringement to be insufficient to survive a motion to dismiss.   *See, e.g., Rosenfeld v. Twentieth Century Fox Film*, No. CV 07-7040 AHM FFMX, 2008 WL 4381575, at *7 (C.D. Cal. Sept. 25, 2008) (dismissing copyright infringement claim where the plaintiff's allegations, which did not specify the copyrighted works at issue, failed to provide sufficient notice of the basis for the claim); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. C 06-7541 PJH, 2007 WL 2288329, at *2 (N.D. Cal. Aug. 9, 2007) (dismissing the plaintiff's conclusory allegations). For the reasons set forth below, Plaintiffs' Complaint fails to put Defendants on sufficient notice of their claims.

### 1.   Plaintiffs' Complaint Fails to Meet Minimum Pleading Standards Because Plaintiffs Do Not Specify Which Amongst "Thousands" of Alleged Copyrights Have Been Infringed

In a complaint alleging copyright infringement, "in order to give fair notice of the claim, [a] plaintiff must identify both the work alleged to have been infringed and the infringing work; merely asserting that 'certain works' have been copied is insufficient." 6 William F. Patry, *Patry on Copyright* § 19:6 (2015); *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890 (TPG), 2014 WL 1303135, at *3 (S.D.N.Y. Mar. 31, 2014) (finding the plaintiff's failure to "properly specify" the copyrights allegedly infringed upon was sufficient grounds for dismissal); *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug.1, 2012) (dismissing copyright infringement claims where the plaintiff failed to allege whether any or all of his copyrights were infringed); *Marshall v. McConnell*, No. Civ.A. 3:05-CV-1062L, 2006 WL 740081, at *4 (N.D. Tex. Mar. 23, 2006) (finding the plaintiff failed to satisfy Rule 8(a) where allegations could have related to any number of allegedly copyrighted works, thus leaving the defendants without sufficient notice as to how to defend against the claims).

Where, as here, multiple works are alleged to have been infringed, "care should be taken to identify each work at issue."  Patry, § 19:6; *Plunket v. Doyle*, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) (finding "'fair notice requir[es] that the plaintiff allege…which specific original works are the subject of the copyright claim," and dismissing the plaintiff's claims for failure to comply with Rule 8, where the plaintiff's multi-page schedule of allegedly infringed works stated that her claims were not limited to those listed works); *Palmer Kane LLC*, 2014 WL 1303135, at *3-4 (granting motion to dismiss where the plaintiff's list of allegedly infringed works was not exhaustive).

In *Four Navy Seals v. Associated Press*, the court granted the defendant's motion to dismiss where "the complaint [did] not identify exactly which works Defendants infringed…"  413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005).  Specifically, where the plaintiffs asserted that "at least one" of the "1800" works that the plaintiffs alleged they owned were "copied…and distributed," neither the defendants nor the court were put on sufficient notice of the copyright claims at issue.  *Id.*; *see also Universal Surface Tech., Inc. v. Sea-A Trading Am. Corp.*, No. CV 10-6972 CAS (PJWx), 2011 WL 281020, at *4-6 (C.D. Cal. Jan. 26, 2011) (finding complaint listing 82 copyrights allegedly infringed insufficient to put the defendant on notice as to which copyrights were infringed and how they were infringed).  Relying on the *Four Navy Seal* court's analysis, the court in *Chestang v. Yahoo, Inc.* similarly found that a "plaintiff must, at a minimum, identify the copyrighted material at issue with specificity sufficient to put defendant on notice of what he claims was infringed." No. 2:11-cv-00989-MCE-KJN PS, 2012 WL 3915957, at *3 (E.D. Cal. Sept. 7, 2012).  As such, the complaint, which included "vague allegations" of infringement, and which "failed to identify which works defendants allegedly infringed," was insufficient to survive a motion to dismiss.  *Id.* at *4.

Like the plaintiffs in *Four Navy Seals, Chestang*, and the many cases listed above, Plaintiffs have failed to satisfy their "minimum" pleading requirement to

"identify exactly which works Defendants infringed," and have thus failed to put Defendants "on notice" of their claims.  *Id.*; *Four Navy Seals,* 413 F. Supp. 2d at 1148.  As Plaintiffs' Complaint currently stands, Defendants have no way of determining which copyrights, or how many copyrights, Defendants allegedly infringed among the "thousands" of copyrights that Plaintiffs allege they own. Appendix A to the Complaint states that "Plaintiffs own the copyrights for all episodes of each Star Trek television series, and have identified the copyright registrations for the first episode of each television series."  Compl., Appx. A, n.1. Plaintiffs improperly attempt to leave Defendants guessing about the scope of their claims against Defendants by suggesting that Defendants could have infringed "thousands" of copyrights, which would require Defendants to sift through each movie and television episode to attempt to determine what Plaintiffs' claims are.  As shown above, courts have time and again expressly rejected this approach.

And yet Plaintiffs also include allegations that suggest the scope of this action is narrow.  Plaintiffs concede that "Garth of Izar"—the character allegedly featured in Defendants' works—is an obscure character that appeared in only one episode. Compl. ¶ 14.  But Plaintiffs do not identify that episode as an infringed work, and instead imply that copyrights in some unspecified number of episodes and movies have been infringed upon without specifying how.  Further, Plaintiffs fail to recognize the vast differences between the motion pictures, television series, and episodes.[9]

Plaintiffs do not allege that Defendants are engaged in wholesale copying of each Star Trek motion picture and television episode, or even that Defendants lift substantial material from each of Plaintiffs' alleged works.  Plaintiffs' conclusory allegations do little to put Defendants on adequate notice of the claims against them. Thus, Defendants are at a loss to determine which of Plaintiffs' works they have

---

[9] And of course to the extent that subsequent derivative works contain the same elements as the original work, only the new elements are protected by the subsequent copyright.  17 U.S.C. § 103(b) ("[c]opyright in a … derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work").

allegedly infringed upon. *See Synopsys, Inc. v. ATopTech, Inc.*, No. C 12-CV-02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (dismissing claim where the plaintiff failed to "make clear what Defendant copied, which ma[de] it impossible for the Court to find plaintiff's claim plausible").

Particularly where, as here, only two works are alleged to have infringed upon Plaintiffs' copyrighted works, Plaintiffs must state which acts constituted the infringement alleged. *See, e.g., Cutler v. Enzymes, Inc.*, No. C 08-04650 JF (RS), 2009 WL 482291, at *3 (N.D. Cal. Feb. 25, 2009) (distinguishing ability of a plaintiff to specify how the defendant infringed upon its copyright where few works are allegedly infringing, from cases in which thousands of works are allegedly infringing). Defendants are not asking that Plaintiffs be required to list the copyright registration number and date for every motion picture and television episode that it alleges it owns. Rather, Defendants simply seek to narrow the field of inquiry to those *specific* episodes, films and elements that were allegedly infringed upon, to provide notice of and allow investigation into the claims and potential exposure of this case.[10] As the Short Mockumentary is only twenty minutes long and freely available online, and the Vulcan Scene (the only completed scene in the Potential Fan Film) is even shorter, Plaintiffs should easily be able to properly specify their claims.

Plaintiffs' failure to specify the works at issue in this action has also prevented Defendants from showing at this early stage that the Short Mockumentary is not infringing. *See, e.g., Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (where "the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss"); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) ("The Court may assess copyright infringement as a matter of law on

---

[10] Plaintiffs' pleading approach is particularly troubling given that a claim for alleged willful copyright infringement carries a statutory damages penalty as high as $150,000 *per infringed work*. 17 U.S.C. § 504(c). Without knowing how many works are at issue, Defendants cannot evaluate the scope of this action and the prospects for potential resolution of Plaintiffs' claims prior to a costly discovery process.

1   the [ ] motion to dismiss.").  While courts have thus assessed whether a work is not

2   infringing on a motion to dismiss, that would necessarily require that Plaintiffs

3   identify the copyrights at issue (which they have not done).[11]

4       Because Plaintiffs have not properly specified which of their works have been

5   infringed in this action, the Court should dismiss Plaintiffs' claims.

6   ## 2.   Plaintiffs' Ownership Claims Are Implausible

7       Plaintiffs have also failed to specify which Plaintiff owns which allegedly

8   infringed copyrights. Based on the Complaint, it is unclear whether Plaintiffs are

9   claiming co-ownership of all the works at issue, or whether Plaintiffs claim to own

10  separate works at issue.   And in fact, Plaintiffs' Complaint is inconsistent in this

11  regard.  Plaintiffs first allege that they apparently both currently own all the Star Trek

12  Copyrighted Works.  Compl. ¶¶ 1, 18.  But elsewhere in the Complaint, Plaintiffs

13  refer to an assignment between Plaintiffs that would impact ownership. Compl., Appx.

14  A (citing to a "Copyright Assignment from Paramount Pictures Corporation to CBS

15  Studios Inc. (V3542 D684- V3542 D690).") Which Plaintiff owns which alleged

16  copyrights is critical to Defendants' investigation into Plaintiffs' claims, as it could be

17  that the only works that Plaintiffs are actually alleging Defendants infringed are

18  owned by one Plaintiff as opposed to the other.  Patry, § 19:7 ("where plaintiff is not

19  the author...ownership via transfer of exclusive rights comporting with section 204(a)

20  must be alleged...").  Plaintiffs' joint ownership allegation is not plausible in light of

21  the contradicting information in the Complaint regarding assignment, presenting

22  another ground upon which dismissal is proper.

23  ## 3.   Plaintiffs' Claims Are Improperly Based Upon Allegations
24      Made On "Information And Belief"

25      Many of Plaintiffs' allegations are devoid of any supporting facts and based

26  solely "on information and belief." Comp. ¶¶ 22, 23, 24, 26, 31, 32, 33, 34, 39, 57, 59,

27

28  [11] And with respect to the Potential Fan Film, Plaintiffs do not and cannot plausibly plead alleged infringement with any specificity, as they (like the Court) simply will not and cannot know what the finished product will look like until it is completed.

60, 63, 64.  But "[i]n the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Solis v. City of Fresno*, No. 1:11-CV-00053 AWI GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012); *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (finding allegations based on "information and belief" insufficient); *Simonyan v. Ally Fin. Inc.*, No. CV 12-8495-JFW (FMOx), 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (noting that "factual allegations…based on 'information and belief' and contain[ing] nothing more than a rote recitation of the required elements for each respective claim…fall well short of the requirements set forth in *Iqbal*"); *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No C 09-05659 WHA, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011) (rejecting argument that the defendants were put on notice by the formulaic recitation of the elements and conclusory allegations made on "information and belief" in the plaintiff's copyright infringement action).

Plaintiffs here have alleged direct, contributory, and vicarious copyright infringement largely "on information and belief."[12]  Compl., ¶¶ 57, 59-60, 63-64. Such "[b]ald recitations of legal conclusions…do not state a claim upon which relief can be granted.  *Richtek*, 2011 WL 166198, at *3; *see also New Name, Inc. v. Walt Disney Co.*, No. CV 07-5034 PA (RZx), 2007 WL 5061697, at *3 (C.D. Cal. Dec. 3, 2007) (granting motion to dismiss where allegations "on information and belief" were speculative and an improper "formulaic recitation of the elements of infringement").

To show direct copyright infringement, Plaintiffs must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Rice v. Fox Broad. Co*., 330 F.3d 1170, 1174 (9th Cir. 2003).  Plaintiffs' allegation of "copying" is on "information and belief," and nowhere does the Complaint identify the precise works that were allegedly copied.  (Compl. ¶ 57.)

---

[12] It is well-established that"[s]econdary liability for copyright infringement does not exist in the absence of direct infringement...." *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir.2001).  Thus, to the extent that the Court dismisses the direct copyright infringement claims for any reason addressed in this Motion, the secondary claims should likewise be dismissed.

1   To show contributory infringement, Plaintiffs must show that Defendants

2   materially contributed to the infringement with knowledge of the infringing activity.

3   *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1031 (9th Cir.

4   2013).   Plaintiffs again allege these elements only on "information and belief,"

5   including that Defendants had requisite "knowledge"[13] that they created infringing

6   works that were "substantially similar" to some unspecified copyrights.   (Compl.

7   ¶¶ 63-64.)  This is not enough.

8   To show vicarious infringement, Plaintiffs must show that Defendants:

9   (1) enjoy a direct financial benefit from the infringement, and (2) have declined to

10  exercise the right and ability to supervise or control that infringing activity. *Ellison v.*

11  *Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004).  Plaintiffs' Complaint does not state

12  facts supporting either of these elements.   Instead, the allegations are again made

13  solely on "information and belief," and merely restate the elements of the claim.

14  Nowhere do Plaintiffs allege facts as to how Defendants have enjoyed a "direct

15  financial benefit."  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of

16  a cause of action, supported by mere conclusory statements, do not suffice.").

17  Plaintiffs' allegations are too conclusory for their copyright claims to survive.

18  ### B.   <u>**Plaintiffs' Claims Based on the Potential Fan Film Should Be**</u>

19  <u>**Dismissed or Stricken Because They are Premature**</u>

20  Compounding Plaintiffs' failure to plead their copyright claims with specificity

21  is Plaintiffs' attempt to assert copyright claims based on a film which has not even

22  been made yet.   Plaintiffs' claims based on the Potential Fan Film are premature,

23  unripe, and would constitute an impermissible prior restraint on speech.   Thus,

24  Plaintiffs' claims should be dismissed or stricken.[14]  Plaintiffs concede that (with the

---

25  [13] And in fact, Defendants had no such knowledge.  CBS and Paramount have a long

26  history of tolerating Star Trek fan projects, which contribute to the "cultural phenomenon," and are celebrated by "millions" of Star Trek fans.  Compl. ¶ 1; *see,*

27  *e.g.*, https://en.wikipedia.org/wiki/ Star_Trek_fan_productions.
    [14] Under Rule 12(f), a court "may order stricken from any pleading ... any redundant,

28  immaterial, impertinent, or scandalous matter."  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §

13

exception of the "Vulcan Scene") the Potential Fan Film has not yet been made.  As Plaintiffs acknowledge, Defendants "are in the *process* of producing" the Potential Fan Film.  Compl. ¶ 2 (emphasis added).  Mr. Peters "***continues*** to write the script" for the Potential Fan Film.  *Id.* ¶ 9 (emphasis added).  Indeed, there are *multiple versions* of the script, and the script is still being revised and re-written.  Under these circumstances, the Court should not permit Plaintiffs to proceed with their copyright claims to the extent they are based on the Potential Fan Film itself.

### 1.  Plaintiffs' Claims Based on the Potential Fan Film are Unripe

A federal court will "not resolve issues involving contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996).  Accordingly, "[b]efore a case is justiciable in federal court, it must be alleged that the plaintiff is threatened by injury that is both real and immediate, [and] not conjectural or hypothetical."  *Portland Police Ass'n. v. City of Portland*, 658 F.2d 1272, 1273 (9th Cir. 1981).  "Without such immediacy and certainty of injury the dispute is not ripe; it has not matured sufficiently to warrant judicial intervention." *Id.*

In analogous cases seeking declaratory relief, courts have dismissed copyright claims as premature unless a party seeking relief can establish that the potentially infringing work "presented to the court is the same product which will be produced if a declaration of noninfringement is obtained."  *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F. 3d 1361, 1379 (Fed. Cir. 2004); *see Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980) ("Our concern is not that the [product at issue] will never be produced, but rather that because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed.").  To establish an actual controversy, "[t]he disagreement must not be nebulous or contingent, but must have

1382, at 706–07 (1990).  "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711; *see Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994) (affirming order striking allegations).

1  taken on a *fixed and final shape* so that a court can see what legal issues it is deciding
2  and what effects its decision will have on the adversaries."  *Veoh Networks, Inc. v.*
3  *UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1269 (S.D. Cal. 2007).

4       Here, Plaintiffs' claims against Defendants based on the Potential Fan Film are
5  unripe because the allegedly infringing work does not yet exist.  To determine whether
6  there is substantial similarity between the Star Trek works and the allegedly infringing
7  Potential Fan Film, this Court must be able to compare the relevant works.  *See, e.g.,*
8  *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006).
9  As this Court has stated, "for the extrinsic similarity analysis, the court may compare
10 the two works for similarities in 'the plot, themes, dialogue, mood, setting, pace,
11 characters, and sequence of events.'"  *Gilbert v. New Line Prods., Inc.*, No. CV 09-
12 02231 RGK, 2009 WL 7422458, at *2 (C.D. Cal. Nov. 16, 2009) (Klausner, J.).
13 Plaintiffs have alleged infringement of twelve movies and "thousands" of television
14 episodes spanning five series and fifty years.  Compl. ¶¶ 1, 15.

15      Until the film has been completed, the Court will not be able to compare
16 Defendants' film with the relevant Star Trek films and episodes at issue to determine
17 whether the themes, mood, setting, pace, plot and characters are substantially similar.
18 Moreover, to the extent any of the elements Plaintiffs are complaining about are
19 actually protectable, Defendants intend to vigorously defend their use (if any) as a fair
20 use.  Without a film, the Court cannot evaluate the purpose and character of
21 Defendants' film, whether it is transformative, or a parody, and the amount and
22 substantiality taken (if any).  Similarly, the Court will not be able to evaluate any *de*
23 *minimis* use defense.[15]

24      The mere allegation that the Potential Fan Film is intended to be an
25 unauthorized derivative work does not suffice to state a claim.  Even if the Potential
26 Fan Film were "derived" from or inspired by any of the Star Trek Copyrighted Works,

27     
28

---

[15] Plaintiffs' allegations that the Potential Fan Film is "substantially similar" and does "not…constitute fair use" are legal conclusions, not facts, and need not be accepted by this Court.  *See* Compl. ¶¶ 40-53.  Moreover, as discussed above, these allegations are not plausible.  *Twombly*, 550 U.S. at 554-56.

it will only be a "derivative work" if it appropriates protected expression from those works.  *See* W. Landes & R. Posner, *The Economic Structure of Intellectual Property Law* 109 (2003) ("If there is no copying of copyrighted material, the fact that a work derived from, in the sense of being inspired or suggested by, a previous work does not make the second work an infringement of the first."); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 930 (7th Cir. 2003) ("In some cases a work, though derivative in a literal sense, is so utterly transformed as to bear no traces of the original; and then there is no infringement"). Indeed, "[a] work is not derivative unless it has *substantially* copied from a prior work."  1 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 3.01 at 3-3.  The Ninth Circuit has held that "'[a] work will be considered a derivative work *only if it would be considered an infringing* work if the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such work.'"  *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (emphasis in original).  Until the film is completed, the Court will not be able to evaluate whether the Potential Fan Film "substantially" copied protected expression from the Star Trek works.

As courts have also recognized, "a defendant may legitimately avoid infringement by intentionally making changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's."  *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983); *See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983) ("Copying deleted or so disguised as to be unrecognizable is not copying").  Plaintiffs' premature claims seek to prevent Defendants from avoiding liability by making changes to the Potential Fan Film's script to address Plaintiffs' concerns.  This is contrary to the letter and spirit of copyright law, and should be rejected.

Plaintiffs' allegation, on information and belief, that Defendants have written a script does not resolve this issue.  Plaintiffs allege that ***the "Axanar Works"*** infringe Plaintiffs' copyrights in the Star Trek Copyrighted Works.  Compl. ¶¶ 2, 40, 57.  Plaintiffs do not allege that the script for the Potential Fan Film, or any of the various

past, present, or future drafts thereof, infringe their copyrights.  Plaintiffs are instead focused on visual depictions like clothing, hairstyles, weapons and a bridge.

Even if some version of the script (there are many) contained alleged infringements, and there were plot similarities or other elements to analyze between the script and Plaintiffs' alleged works (which Plaintiffs do not allege in their Complaint), courts "have routinely rejected requests to consider earlier drafts of the screenplay" on the basis that "[c]onsideration of earlier versions of the screenplay is too unreliable in determining substantial similarity."  *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985); *See*, 711 F.2d at 142 (plaintiff not allowed discovery of "early drafts"); *Quirk v. Sony Pictures Entertainment, Inc.*, No. C 11-3773 RS, 2013 WL 1345075, at *6 (N.D. Cal. April 2, 2013) ("even assuming the preliminary drafts…include indications of copying that was later deleted or revised, the only relevant question" is whether "the final movie as filmed, edited, and released contains matter substantially similar to protectable elements" of the copyrighted work); *Hudson v. Universal Pictures Corp.*, No. 03-CV-1008(FB)(LB), 2004 WL 1205762, at *3 (E.D.N.Y. April 29, 2004) ("The Court is under no obligation to consider the draft scripts[.]"); *Marshall v. Yates*, No. CV-81-1850-MML, 1983 WL 1148, at *2 n.2 (C.D. Cal. Oct. 26, 1983) (refusing to consider "draft screenplays or the shooting script" of movie because "[s]uch preliminary drafts are not relevant").

Rather, it is "the works as they were presented to the public" that are relevant, not preliminary internal drafts.  *Walker*, 615 F. Supp. at 434; *see Chase-Riboud v. DreamWorks, Inc.*, 987 F.Supp. 1222, 1227 n.5 (C.D. Cal. 1997) (to determine substantial similarity, "the court need only consider the final version of [defendant's] film as presented to the viewing public"); 4 Nimmer on Copyright § 13.03[D] ("[C]ourts have routinely rejected requests to consider earlier [screenplay] drafts."). Accordingly, the existence of draft scripts for the Potential Fan Film does not save Plaintiffs' deficient claims, which are based on the visual aspects of the film itself.

Plaintiffs can be expected to rely on the ruling denying the defendants' motion

to dismiss in *Danjaq, LLC v. Universal City Studios, LLC*, No. CV 14-02527 SJO (Ex), 2014 WL 7882071 (C.D. Cal. Oct. 2, 2014). There, however, the plaintiffs' complaint made clear that their claims were based on *the screenplay itself*, not just the movie in production. *See Danjaq* Complaint, 2014 WL 1335411, ¶¶ 56-64 (C.D. Cal.) (alleging that "the *Section 6* screenplay" is substantially similar to plaintiffs' copyrighted works), ¶ 69 (alleging that defendants infringed plaintiffs' copyrights by preparing unauthorized derivative works "in the form of the *Section 6* screenplay and revisions thereto"). Here, by contrast (and among many other differences), Plaintiffs' copyright claims are based only on the "*Axanar* Works," not the screenplay.[16]

Also distinguishable is a district court case from thirty years ago where Disney brought a copyright infringement claim against Filmation, a company that produced and distributed animated films, based on "certain animated character depictions" of Pinocchio and Gepetto. *Walt Disney Productions v. Filmation Associates*, 628 F. Supp. 871, 874 (C.D. Cal. 1986). In that case, the defendant had completed several components of the production which allowed assessment of the copyright claims; namely, the story board, story reel, promotional trailer, model, and other physical reproductions of the allegedly infringing character designs. The court found that collectively, those materials constituted a "substantial body of work preliminary to a finished film" that allowed the copyright claims to proceed because in that case, it was still possible to use those items to "compare" the "visual resemblances" and the

---

[16] In *Danjaq*, the plaintiffs allegedly owned the copyright to the James Bond character and motion pictures. *Id.* at *1. Defendant Berg was alleged to have written a screenplay titled *Section 6*, which he *offered for sale*. *Id.* Defendant Universal allegedly *purchased* the rights to the screenplay for "up to $ 2 million," and was developing *Section 6*. *Id.* The *Section 6* screenplay featured a British spy named Alec Duncan, who introduced himself as "Duncan. Alec Duncan." Other similarities existed between the main character and plots. *Id.* at *2. Here, by contrast, Plaintiffs have not alleged that a script was *sold* to anyone (it was not), that Defendants *purchased* a script (they did not), or even that one definitive script exists (it does not). Indeed, Plaintiffs admit that Mr. Peters "continues to write the script" for the Potential Fan Film. Compl. ¶ 9. Further, Plaintiffs do not (and cannot) accuse Defendants of copying any major Star Trek character, such as Captain Kirk or Spock, let alone their catch phrases. And unlike Defendants, Universal was competing against the plaintiffs; it was not seeking to produce a non-profit, fan-made work inspired by its love for James Bond. Defendants here are neither commercializing their work nor competing against Plaintiffs, and Plaintiffs do not allege that they are.

"totality of the characters' attributes and traits" between the characters. *Id.*

There are no allegations that the Potential Fan Film has progressed nearly as far as the movie in Filmation had, as there are no allegations of a story board, story reel, promotional trailer, or other model of the alleged infringements that could allow a meaningful comparison between the works.  Moreover, Plaintiffs are not alleging copyrights to any characters here, and there is no explanation as to how Plaintiffs intend to compare the traits and attributes of the works here (e.g., hairstyles, costumes, bridges and weapons) without the Potential Fan Film.  Further, *Filmation* involved copyrights to cartoon characters and an animated film, whereas the characters Defendants have used are not alleged to be alike visually, but instead are more conceptual, and will be portrayed by actors.  It would not be possible here to look at a picture and judge the similarity between Defendants' "Garth" and the "Garth" appearing in Star Trek like it was for the characters in *Filmation*.[17]

## 2.   Enjoining the Potential Fan Film Would be a Prior Restraint

According to the Supreme Court, a prior restraint is the "the most serious and the least tolerable infringement" of First Amendment rights, *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976), and is presumptively unconstitutional.  *See New York Times Co. v. United States,* 403 U.S. 713, 714 (1971) (request for prior restraint "comes to this Court bearing a heavy presumption against its constitutional validity").  In *Globe Int'l, Inc. v. Nat'l Enquirer, Inc.*, the Globe sought an order blocking publication by the Enquirer of "a hypothetical article the Enquirer has not published (and might not publish), based on an interview Ms. Johnson has not yet even given." No. 98-10613 CAS (MANX), 1999 WL 727232, at *5 (C.D. Cal. Jan. 25, 1999).  The court denied the plaintiffs' motion for a preliminary injunction, finding that such an order would be a prior restraint.  Recognizing that the fair use defense "requires a case-by-case determination," the Court held that it "may not rule that any future use of the Globe's materials by the Enquirer…would automatically fail the case-specific 'fair

---

[17] Further, the animated film in *Filmation* was also being distributed for commercial purposes; whereas here, Defendants' works are not.

use' test." *Id.* at *6 (quoting *Harper & Row*, 471 U.S. at 549).

As in *Globe Int'l*, fair use cannot be evaluated in a vacuum, and allowing Plaintiffs to seek an injunction against creating the Potential Fan Film would constitute an impermissible prior restraint.

### 3.   Plaintiffs Have Failed to Allege Any Violation of Plaintiffs' Rights With Respect to the Potential Fan Film

Plaintiffs fail to state a claim based on the Potential Fan Film because, with the exception of one scene, Plaintiffs have not plausibly alleged that Defendants violated any of Plaintiffs' rights under 17 U.S.C. § 106.  Plaintiffs have not alleged any facts showing that Defendants have "prepare[d]" a derivative work based on the Star Trek Copyrighted Works because the Potential Fan Film has not been made.  17 U.S.C. § 106(1).  And there are no allegations that Defendants have "reproduce[d]" Plaintiffs' copyrighted works in "copies."  17 U.S.C. § 106(2).  "Copies" are "material objects…in which a work is fixed."  17 U.S.C. § 101.  A work that has not been made is not "fixed" in any material object. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-63 (9th Cir. 2007).  For the same reasons, Plaintiffs' conclusory allegations that Defendants have distributed copies of or publicly performed the Potential Fan Film are implausible.  17 U.S.C. §§ 101(3), (4); Compl. ¶ 57.  Thus, Plaintiffs' claims based on the Potential Fan Film should be dismissed or stricken.

## V.   CONCLUSION

Plaintiffs have failed to put Defendants on fair notice of their claims, which are not plausible, and seek premature relief.  Defendants respectfully request that the Court grant their motion to dismiss or strike Plaintiffs' claims.

Dated:  February 22, 2016          WINSTON & STRAWN LLP


By:  */s/ Erin R. Ranahan*
     Erin R. Ranahan
     Andrew S. Jick
     Kelly N. Oki
     Attorneys for Defendants,
     AXANAR PRODUCTIONS, INC.
     and ALEC PETERS

20