Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Andrew S. Jick (SBN: 278943)
ajick@winston.com
Kelly N. Oki (SBN: 304053)
koki@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
AXANAR PRODUCTIONS, INC.,
and ALEC PETERS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual; and DOES 1-20,<br><br>Defendants. | Case No. 2:15-cv-09938-RGK-E<br><br>*Assigned to:  Hon. R. Gary Klausner*<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE IN PART PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**FED. R. CIV. P. 12(b)(6), 8(a), 12(f)**<br><br>Hearing Date:       May 9, 2016<br>Time:                    9:00 a.m.<br><br>Original Complaint Filed: 12/29/15<br>Amended Complaint Filed: 3/11/16 |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 9, 2016, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable R. Gary Klausner of the United States District Court for the Central District of California, in Courtroom 850 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, Defendants Axanar Productions, Inc. and Alec Peters (hereinafter collectively referred to as "Defendants") will and hereby move, pursuant to Rules 12(b)(6), 8(a), and/or 12(f) of the Federal Rules of Civil Procedure,[1] for an order dismissing all claims against Defendants in this action and/or striking the claims in part (the "Motion").

In addition and/or alternatively, Defendants seek an order striking the following allegations from Plaintiffs' First Amended Complaint:

- From paragraph 2, the allegation that Defendants "are in the process of producing a film called *Axanar* (the '*Axanar* Motion Picture') based on the *Axanar* Script, or a version thereof," and the inclusion of the *Axanar* Motion Picture within the definition of the "*Axanar* Works";

- From paragraph 9, the allegation that Defendant Alec Peters "continues to ...produce the *Axanar* Motion Picture";

- The allegations contained in paragraphs 31 through 42 to the extent they attempt to state a claim based on the *Axanar* Motion Picture (hereinafter referred to as the "Potential Fan Film");

- The allegations contained in paragraphs 46 and 47 to the extent they include elements not protected by copyright law, including, as addressed herein, clothing, colors, shapes, words, short phrases, works derived from nature, works in the public domain, works created by third parties, the Klingon language, ideas—including the "mood and theme" of the "Science fiction action adventure" genre—scènes à faire, and certain characters   Plaintiff's First

---

[1] All further statutory references are to the Federal Rules of Civil Procedure unless otherwise stated.

Amended Complaint ("FAC"), at ¶ 46, pp. 11-12 (claiming copyright in the names and characters of Garth of Izar, Soval, Richard Robau, Captain Robert April, Chang, Sarek, and John Gill); 13 (claiming copyright in the word "Vulcan"); 17-18 (claiming copyright in "cowl neck" clothing, "green drapes," and "robes"); 18-19 (claiming copyright in the "Starfleet Command Insignia" and "triangular medals on uniforms"); 19-21, 26, 30, 33, 35, 38 (claiming copyright in the words "Andoria," "Archanis IV," "Axanar," "beaming up," "Federation," "Klingons," "Nausicaa," "Rigel," "Romulans," "Starship Enterprise," "Starfleet," "Tellar Prime," "Tellarites," "Terra," and "Qo'noS," 27-29 (claiming copyright in the United Federation of Planets logo, the Memory Alpha logo, and the Klingon logo); 31 (claiming copyright in the Klingon language); 22-23, 25-26, 30, 32-33 (claiming copyright in unprotectable scènes à faire);

- The allegations contained in paragraph 48;
- The allegations contained in paragraphs 64 through 69 to the extent they attempt to state a claim based on the Potential Fan Film; and
- The request contained in paragraph 2 of the Prayer for Relief.

This Motion is brought pursuant to Rules 12(b)(6), 12(f), and 8(a) on the grounds that Plaintiffs' claims against Defendants fail to state a claim upon which relief can be granted and fail to put Defendants on notice of the claims alleged against them.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, Defendants' Request For Judicial Notice and the exhibits attached thereto, all pleadings and papers filed in this action, and upon such other and further submission, evidence, and argument as may be presented to the Court prior to or at the time of hearing on this Motion.  This Motion is made following the conference of counsel, pursuant to Local Rule 7-3, which took place on March 14, 2016.

1

2
Dated:  March 28, 2016          WINSTON & STRAWN LLP

3

4
                                By:  */s/ Erin R. Ranahan*
                                     Erin R. Ranahan
5                                    Andrew S. Jick
                                     Kelly N. Oki
6                                    Attorneys for Defendants,
                                     AXANAR PRODUCTIONS, INC.
7                                    and ALEC PETERS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

    A.    The Parties ...................................................................................... 2

    B.    The "Star Trek Copyrighted Works" ............................................ 2

    C.    The Short Mockumentary .............................................................. 3

    D.    The Potential Fan Film .................................................................. 4

    E.    Plaintiffs' Specific Claims Against Defendants ........................... 5

III.  LEGAL STANDARD ............................................................................... 5

IV.   ARGUMENT ............................................................................................. 6

    A.    Plaintiffs Fail to Plausibly Allege Infringement as to Unprotectable
        Elements ......................................................................................... 6

    B.    Plaintiffs' Claims Are Not Sufficiently Detailed To Survive ................. 11

        1.    Plaintiffs' FAC Does Not Specify Which Among Hundreds
            of Alleged Copyrights Have Been Infringed ................................ 11

        2.    Plaintiffs' Claims Are Improperly Based Upon Allegations
            Made On "Information And Belief" ............................................... 15

    C.    Plaintiffs' Claims Based on the Potential Fan Film Should Be
        Dismissed or Stricken Because They are Premature .............................. 16

        1.    Plaintiffs' Claims Based on the Potential Fan Film are
            Unripe ........................................................................................... 16

        2.    Enjoining the Potential Fan Film Would be a Prior Restraint ....... 19

V.    CONCLUSION ........................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*A & M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir.2001) ...................................................................15

*Althouse v. Warner Bros. Entm't*,
    No. CV 13-00696-RGK SSX, 2014 WL 2986939
    (C.D. Cal. Apr. 28, 2014) .................................................................10, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................5, 15

*Baker v. Selden*,
    101 U.S. 99 (1879).....................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................5, 6, 18

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ...................................................................10

*Chase-Riboud v. DreamWorks, Inc.*,
    987 F.Supp. 1222 (C.D. Cal. 1997) .........................................................19

*Christianson v. West Pub. Co.*,
    149 F.2d 202 (9th Cir. 1945) ...................................................................14

*Clinton v. Acequia, Inc.*,
    94 F.3d 568 (9th Cir. 1996) .....................................................................16

*Cole v. John Wiley & Sons, Inc.*,
    2012 WL 3133520 (S.D.N.Y. Aug.1, 2012) ...........................................11

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) .................................................................10

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) .................................................................15

*Ent. Research Group, Inc. v. Genesis Creative Group, Inc.*,
    122 F.3d 1211 (9th Cir. 1997) ...................................................................6

*Fantasy, Inc. v. Fogerty*,
　984 F.2d 1524 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994) ...16

*FASA Corp. v. Playmates Toys, Inc.*,
　869 F. Supp. 1334 (N.D. Ill. 1994).......................................................................9

*Feist Publ'ns, Inc. v. Rural Tel. Svc. Co., Inc.*,
　499 U.S. 340 (1991).....................................................................................7, 9

*Four Navy Seals v. Associated Press*,
　413 F. Supp. 2d 1136 (S.D. Cal. 2005) ............................................................12

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
　462 F.3d 1072 (9th Cir. 2006) .....................................................................6, 17

*Gilbert v. New Line Prods., Inc.*,
　No. CV 09-02231 RGK, 2009 WL 7422458 (C.D. Cal. Nov. 16, 2009)...........17

*Globe Int'l, Inc. v. Nat'l Enquirer, Inc.*,
　No. 98-10613 CAS (MANX), 1999 WL 727232 (C.D. Cal. Jan. 25, 1999)......20

*Harper & Row Publishers, Inc. v. Nation Ents.*,
　471 U.S. 539 (1985)...........................................................................................9

*Hudson v. Universal Pictures Corp.*,
　No. 03-CV-1008(FB)(LB), 2004 WL 1205762 (E.D.N.Y. April 29, 2004)......19

*Ideal Toy Corp. v. Kenner Products Div. of General Mills Fun Group, Inc.*,
　443 F. Supp. 291 (D.C.N.Y. 1977)......................................................................9

*Int'l Harvester Co. v. Deere & Co.*,
　623 F.2d 1207 (7th Cir. 1980) ..........................................................................17

*Kelley v. Chicago Park Dist.*,
　635 F.3d 290 (7th Cir. 2011) ...............................................................................6

*Marshall v. McConnell*,
　No. Civ.A. 3:05-CV-1062L, 2006 WL 740081 (N.D. Tex. Mar. 23, 2006)......11

*Marshall v. Yates*,
　No. CV-81-1850-MML, 1983 WL 1148 (C.D. Cal. Oct. 26, 1983) ..................19

*Nebraska Press Ass'n v. Stuart*,
　427 U.S. 539 (1976)..........................................................................................19

iii

*New Name, Inc. v. Walt Disney Co.*,
  No. CV 07-5034 PA, 2007 WL 5061697 (C.D. Cal. Dec. 3, 2007)...................15

*New York Times Co. v. United States*,
  403 U.S. 713 (1971)............................................................................20

*Palmer Kane LLC v. Scholastic Corp.*,
  No. 12 Civ. 3890 (TPG), 2014 WL 1303135 (S.D.N.Y. Mar. 31, 2014) ....11, 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ..........................................................20

*Plunket v. Doyle*,
  No. 99 Civ. 11006 (KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001).........12

*Portland Police Ass'n. v. City of Portland*,
  658 F.2d 1272 (9th Cir. 1981) ...........................................................16

*Psihoyos v. The National Geographic Society*,
  409 F. Supp. 2d 268 (S.D.N.Y. 2005) ..................................................7

*Quirk v. Sony Pictures Entertainment, Inc.*,
  No. C 11-3773 RS, 2013 WL 1345075 (N.D. Cal. April 2, 2013) ..................19

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
  No C 09-05659 WHA, 2011 WL 166198 (N.D. Cal. Jan. 18, 2011)................15

*Rosenfeld v. Twentieth Century Fox Film*,
  No. CV 07-7040 AHM FFMX, 2008 WL 4381575
  (C.D. Cal. Sept. 25, 2008) ................................................................11

*See v. Durang*,
  711 F.2d 141 (9th Cir. 1983) .......................................................18, 19

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
  363 F. 3d 1361 (Fed. Cir. 2004) ........................................................17

*Solis v. City of Fresno*,
  No. 1:11-CV-00053 AWI GSA,
  2012 WL 868681 (E.D. Cal. Mar. 13, 2012).........................................15

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 12-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ..........12

iv

*Team Angry Filmworks, Inc. v. Geer*,
   No. 15-1381, 2016 WL 1086370 (W.D. Pa. Mar. 21, 2016)............................17

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985).......................................................................................16

*Universal Surface Tech., Inc. v. Sea-A Trading Am. Corp.*,
   No. CV 10-6972 CAS, 2011 WL 281020 (C.D. Cal. Jan. 26, 2011) ................12

*Van Olson v. Nat'l Broad. Co.*,
   855 F.2d 1446 (9th Cir. 1988) .........................................................................11

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
   522 F. Supp. 2d 1265 (S.D. Cal. 2007) ............................................................17

*Vivendi SA v. T-Mobile USA Inc.*,
   586, F.3d 689 (9th Cir. 2009) ..........................................................................15

*Walker v. Time Life Films, Inc.*,
   615 F. Supp. 430 (S.D.N.Y. 1985) ..................................................................19

*Warner Bros., Inc. v. Am. Broad. Cos.*,
   720 F.2d 231 (2d Cir. 1983) ............................................................................18

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................................14

STATUTES

17 U.S.C. § 101......................................................................................................6, 20

17 U.S.C. § 101(3) ......................................................................................................20

17 U.S.C. § 101(4) ......................................................................................................20

17 U.S.C. § 102(b) ........................................................................................................9

17 U.S.C. § 103(b) ......................................................................................................14

17 U.S.C. § 106(1)-(2) ................................................................................................20

17 U.S.C. § 504(c) ......................................................................................................13

37 C.F.R. § 202.1(a) .................................................................................................7, 6

RULES

Fed. R. Civ. P. 8 .................................................................................5, 12

Fed. R. Civ. P. 8(a) ............................................................................1, 11

Fed. R. Civ. P. 8(a)(2) ..............................................................................5

Fed. R. Civ. P. 12(b)(6) ........................................................................1, 5

Fed. R. Civ. P. 12(f) ...........................................................................16, 1

OTHER AUTHORITIES

1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* ...............................18

4 Nimmer on Copyright § 13.03 ......................................................... 7, 19

5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382,
    711 (1990) ...........................................................................................16

6 William F. Patry, *Patry on Copyright* (2015) ................................11, 12

http://www.cbsstore.com/detail.php?p=53084 ........................................3

http://dictionary.reference.com/browse/mockumentary ...........................3

http://www.merriam-webster.com/dictionary/bridge .................................9

http://www.merriam-webster.com/dictionary/elf .......................................8

http://www.merriam-webster.com/dictionary/federation ...........................9

http://www.merriam-webster.com/dictionary/Rigel ..................................8

http://www.merriam-webster.com/dictionary/teleportation ......................8

http://www.merriam-webster.com/dictionary/terra ...................................8

http://www.merriam-webster.com/dictionary/Vulcan ................................8

U.S. Copyright Office, Compendium II: Copyright Office Practices §
    503.02(a)-(b) (1984) .........................................................................6, 7

W. Landes & R. Posner, *The Economic Structure of Intellectual Property Law*
    109 (2003).........................................................................................18

WILLIAM T. R. MARVIN, *THE MEDALS OF THE MASONIC FRATERNITY: DESCRIBED AND ILLUSTRATED* (1880) .......................................................................................8

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE

# I.  INTRODUCTION

Plaintiffs' first amended complaint ("FAC") alleges copyright infringement against Defendants over one short film, a mockumentary called *Prelude to Axanar*, and a longer film that has yet to be created.  Plaintiffs' FAC is deficient for multiple reasons.  First, Plaintiffs' amended allegations go beyond the plausible realm of copyright protection, alleging numerous "infringing elements" that are unprotectable as a matter of law, including clothing, colors, shapes, words, short phrases, works derived from nature, works in the public domain, works created by third parties, an entire language, scènes à faire, certain characters, and ideas—including the "mood and theme" of the "Science fiction action adventure" genre.

Even assuming that any of the allegedly infringing elements are actually protected by copyright, Plaintiffs' allegations are not specific enough.  While Plaintiffs allege that they own "more than 700" Star Trek television episodes, a dozen motion pictures, and four books, they still fail to specify *which* of those copyrights Defendants have allegedly infringed.  This defect not only prevents Defendants from investigating each Plaintiff's standing (given that they claim to own different works), it greatly exaggerates Defendants' potential statutory damages exposure.

With respect to Plaintiffs' claims regarding the yet-to-be-made Potential Fan Film, there are additional defects.  The claims are premature.  Unlike *Prelude to Axanar*—which exists and thus allows Defendants the opportunity to demonstrate fair use, lack of substantial similarity, and *de minimis* use—the same cannot be said for the Potential Fan Film.  Further, seeking to stop the creation of a work would operate as an impermissible prior restraint.  And despite Plaintiffs' allegation that *scripts* exist, Plaintiffs have not plausibly alleged that any version of the script violates their rights, let alone the *film itself*, which does not exist in a fixed, tangible form.

Because Plaintiffs' FAC does not satisfy the standard necessary to survive this Motion under Rule 12(b)(6) or Rule 8(a), the Court should dismiss the claims, or strike Plaintiffs' claims in relevant part under Rule 12(f).

## II.   FACTUAL BACKGROUND

### A.   The Parties

Plaintiff Paramount Pictures Corporation ("Paramount") is a major movie studio.  Plaintiff CBS Studios Inc. ("CBS") is a major television studio.  Defendant Axanar Productions, Inc. ("Axanar") is alleged to be a motion picture, television, and/or video production company.  FAC ¶ 8.  Defendant Alec Peters is an individual alleged to be the controlling principal of Axanar.  *Id.* ¶ 9.

### B.   The "Star Trek Copyrighted Works"

Star Trek was originally created by Gene Roddenberry.  FAC ¶ 13.  Plaintiffs allege that CBS owns the rights to six Star Trek television series "totaling more than 700 episodes" (collectively, the "Star Trek Television Series").  *Id.* at ¶¶ 15, 18.  Plaintiffs further allege that Paramount owns the rights to 12 Star Trek motion pictures (the "Star Trek Motion Pictures").  *Id.* ¶¶ 16, 18.  Plaintiffs also allege that they own copyrights in other Star Trek works, including four novels (the "Star Trek Books").  *Id.* ¶ 19.  Plaintiffs define the "Star Trek Copyrighted Works" by lumping together the "more than 700" episodes from the Star Trek Television Series, the 12 Star Trek Motion Pictures, and the Star Trek Books.  *Id.*

Plaintiffs do not explain in their FAC when or how the chain of title conferred which rights in the Star Trek Copyrighted Works to which respective Plaintiff.  In the Appendix, Plaintiffs identify the registration numbers for each of the 12 Star Trek Motion Pictures.  For the Star Trek Television Series, however, Plaintiffs merely list each of the five series and identify one episode from each.  FAC, App. A.  In a footnote, Plaintiffs explain that "Plaintiffs own the copyrights for **all episodes** of each Star Trek television series, and have identified the copyright registrations for the first episode of each television series."  *Id.*, n.1 (emphasis added).

The Star Trek Copyrighted Works do not all contain the same characters, starships, plots, and other features.  Plaintiffs allege that *The Original Series* "chronicled the adventures of the U.S.S. Enterprise and its crew as they traveled

through space during the twenty-third century" and "featured…the Starship Enterprise, its bridge…fictitious races and species, including the Vulcan race and the Klingon race, the United Federation of Planets… and… weapons and technology." FAC ¶ 13.  But by CBS's own explanation, the other Star Trek Television Series contain very different plots, characters, and other elements.[2]  Similarly, the Star Trek Motion Pictures differ significantly from the various Television Series, and indeed, from each other.  Plaintiffs have announced plans to release a new Star Trek motion picture in 2016 and a new Star Trek television series in January 2017, but they have not included these prospective works within their definition of the allegedly infringed "Star Trek Copyrighted Works."

## C. <u>The Short Mockumentary</u>

Plaintiffs allege that Defendant Peters wrote and Defendant Axanar produced a short film called *Prelude to Axanar*. FAC ¶¶ 22-24. To fund production, Defendants used the crowdfunding website Kickstarter, promising fans "Star Trek like you have never seen it before."[3] FAC ¶ 29.  The 20-minute film is a fictional documentary, also known as a "mockumentary"[4] (hereafter, the "Short Mockumentary").  *See id.* (the Short Mockumentary "show[s] the central characters of Axanar giving both a historical and personal account of the war").  Plaintiffs allege that "[i]n **one of the episodes** of *The Original Series*, James T. Kirk, the Captain of the U.S.S. Enterprise, meets his hero, Garth of Izar, a former Starship captain.  Kirk and Garth discuss Garth's victory in a battle at Axanar."  *Id.* ¶ 14 (emphasis added).  The Short

---

[2] *The Next Generation* "revealed a universe with ***previously unexplored dimensions***. Captain…Picard…took the helm of a ***very different Enterprise*** with a[n entirely different] crew...."  By contrast, *Voyager* "details the adventures of...***the U.S.S. Voyager***, as it is led by Captain Kathryn Janeway ..."  And *Enterprise* "was set in the 22nd century, ***a hundred years before Captain Kirk appeared.***  Captain....Archer and his crew travel on a ***revolutionary spacecraft, Enterprise NX-01***, to explore unknown civilizations. A court may consider judicially noticeable facts in connection with a motion to dismiss. *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000); *see* concurrently filed Request for Judicial Notice ("RJN") at ¶¶ 1-3.

[3] Incidentally, this allegation contradicts the notion that the Short Mockumentary is substantially similar to any of Plaintiffs' alleged copyrighted works.

[4] *See* http://dictionary.reference.com/browse/mockumentary (a "mockumentary" is "a movie or television show depicting fictional events but presented as a documentary").

Mockumentary allegedly "tells the story of…Garth of Izar, during the war between the Federation and the Klingon Empire." *Id.* ¶ 28.

Plaintiffs allege that the Short Mockumentary copies elements from the Star Trek Copyrighted Works, which "include, but are not limited to" characters, races, species, costumes, settings, logos, dialogue, mood and theme. FAC ¶ 46. Plaintiffs do not allege that Defendants used any of the main Star Trek characters (e.g., Captain Kirk, Spock) in the Short Mockumentary. Nor do Plaintiffs allege that Defendants profited in any way from the Short Mockumentary. As Plaintiffs admit, Defendants funded the Short Mockumentary by raising money through Kickstarter donations, and, once it was completed, they posted it online, making it available for free.[5] FAC ¶¶ 22, 27. Plaintiffs fail to allege how they were harmed by the Short Mockumentary. Defendants have never sold tickets, DVDs, charged to view, or otherwise commercialized the Short Mockumentary, and there is no allegation to the contrary.

## D.   The Potential Fan Film

Plaintiffs allege that Defendants have written a script for, and are "in the process of producing, a film called *Axanar*" based on that script "or a version thereof." FAC ¶¶ 2, 32, 33.[6] Even though Plaintiffs have never actually seen the Potential Fan Film (no one has, as it simply does not exist), Plaintiffs presumptively allege that the *Axanar* script "contains the copyrighted elements found in the *Axanar* Motion Picture, and many more copyrighted Star Trek elements." *Id.* ¶ 48.

Plaintiffs allege that the Potential Fan Film takes place in the year 2245, "21 years before the events of 'Where No Man Has Gone Before'"—one of only a few works that Plaintiffs allege Garth of Izar has appeared in. FAC ¶ 40; *see id.* ¶¶ 14, 19 (alleging that Garth of Izar appears in one television episode from *The Original Series* and three books). Plaintiffs allege that the film "tells the story of Garth and his crew during the Four Years War." *Id.* ¶ 40. Plaintiffs allege that "Defendants incorporated

---

[5] Though the Short Mockumentary has been available online since 2014, Plaintiffs never complained to Axanar about it until filing this lawsuit on December 29, 2015.
[6] As Plaintiffs acknowledge, there are multiple versions of the script, and others in progress, which Defendants have adjusted since learning of Plaintiffs' concerns.

numerous elements of the Star Trek Copyrighted Works into the *Axanar* Script and the Vulcan Scene, and will incorporate those elements into the *Axanar* Motion Picture." *Id.* ¶ 41. Plaintiffs provide a chart of what they allege to be "some of the infringing elements from the Vulcan Scene," including certain characters, races and species, costumes, settings, plot points, mood, and theme. FAC ¶ 47.

Plaintiffs do not allege that Defendants plan to profit in any way from the Potential Fan Film. Plaintiffs do not allege that Defendants plan to sell tickets, DVDs, or to charge anyone to view the work online. Nor do Plaintiffs allege any specific facts showing how they have been or will be harmed by the Potential Fan Film.

### E.   Plaintiffs' Specific Claims Against Defendants

Plaintiffs allege four claims against Defendants: (1) direct copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement; and (4) declaratory relief. With respect to their claims for direct and secondary copyright infringement, Plaintiffs' allegations are almost exclusively made in conclusory form "on information and belief." FAC ¶¶ 55, 57, 58, 61, 62.

## III.   LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Rule 8(a)(2) requires that a pleading set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" and giving "the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554-56. Where a complaint fails to satisfy the pleading standards set forth by Rule 8, it must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon

1  which relief can be granted.  *Twombly*, 550 U.S. at 570.

2  **IV.    ARGUMENT**

3     **A.    Plaintiffs Fail to Plausibly Allege Infringement as to Unprotectable**

4            **Elements**

5          Plaintiffs' lawsuit fails to plausibly state a claim as to numerous unprotectable

6  elements that have appeared in the Star Trek Copyrighted Works.  To prove copyright

7  infringement, Plaintiffs must show that the "*protectable elements*" of their works,

8  "*standing alone*, are substantially similar" to Defendants' works.  *Funky Films, Inc. v.*

9  *Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (emphasis in

10 original).  In making this determination, a court must "filter out and disregard the non-

11 protectable elements."  *Id.*   As set forth below, this Court should "filter out and

12 disregard the non-protectible elements" by dismissing or striking Plaintiffs' claims.

13             **i.    The Costumes Identified By Plaintiffs Are Not Protected**

14         Plaintiffs claim infringement as to certain clothing, alleging that they own the

15 rights to a "gold shirt," "cowl neck," "green drapes," and "robes."  (FAC ¶ 46, at 17-

16 19). These claims fail because under the "useful article" doctrine, clothing cannot be

17 copyrighted except to the extent there are original designs on the clothing that can be

18 separated from the function of the clothing, which is not alleged here.  *Id.*; 17 U.S.C. §

19 101; *Ent. Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1221

20 (9th Cir. 1997)  Further, a color cannot be copyrighted.  37 C.F.R. § 202.1(a).[7]

21             **ii.    Geometric Shapes Are Not Protected By Copyright**

22          "[C]ommon geometric shapes cannot be copyrighted." *Kelley v. Chicago Park*

23 *Dist.*, 635 F.3d 290, 303 (7th Cir. 2011) (citing U.S. Copyright Office, Compendium

24 II: Copyright Office Practices § 503.02(a)-(b) (1984) ("Copyright Compendium II").

25 The U.S. Copyright Office refuses to base copyright registration on simple and

26 "standard ornamentation," such as "chevron stripes," "a plain, ordinary cross,

27

28 ────────────────────
[7] Plaintiffs also include an image of Mr. Peters wearing the "original Garth" costume.
But this picture is *not* a shot from the Potential Fan Film; Mr. Peters, a lifelong Star
Trek fan, lawfully purchased the costume for his collection and is shown wearing it.

"common geometric figures or shapes, or "a standard symbol such as an arrow or a five-pointed star." Copyright Compendium II § 503.02(a)-(b).

Therefore, the Starfleet Command Insignia (FAC ¶ 46, at 18), "triangular medals on uniforms" (*id.* at 19-20), the United Federation of Planets logos (simply the letters "UFP" surrounded by stars) (*id.* at 27), Federation logo (*id.* at 28), Memory Alpha logo (simply the Greek letter "alpha" with the words "Memory Alpha") (*id.*), and Klingon logos (simply a three-pointed star) (*id.* at 29), are not protectable elements and cannot form the basis of a copyright claim.

### iii. Words and Short Phrases Are Not Protected

"Words and short phrases such as names, titles, and slogans" are not subject to copyright. 37 C.F.R. § 202.1(a). Thus, the names Garth of Izar, Soval, Richard Robau, and John Gill (FAC ¶ 46, at 11-12) are not protectable, and neither are the words Andorians, Tellarites, Romulans, Axanar, Archanis IV, Q'onoS, Nausicaa, Rigel, Andoria, Tellar Prime, Vulcans, Klingons, Terra (land), Starship Enterprise, Starfleet, Federation, Starships, Stardate, and Federation or the short phrase "beaming up." (*Id.* at 13, 16, 19-21, 26, 30, 33, 35, 38.)

### iv. Elements of Works Derived From Nature, the Public Domain, or Third-Party Works Are Not Protected

A plaintiff cannot claim copyright protection for elements of its works that are not original in the public domain. *Feist*, 499 U.S. at 350 ("[c]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original, [including] materials in the public domain"). Further, "to the extent a [work] captures the characteristics of an object as it occurs in nature, these characteristics are not protectible." *Psihoyos v. The National Geographic Society,* 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005). "Even if a work does not occur in nature—[like] a dragon—there is no liability if the only similarity between the two works is that they each portray the same item, but in a different form." 4 Nimmer on Copyright § 13.03[B][2].

Here, Plaintiffs improperly assert claims based on numerous unprotectable elements derived from nature, the public domain, or third-party works, including:

- **Vulcans' appearance** (FAC at 15): a species with "pointy ears" is not original to Star Trek, and has appeared in many fictional fantasy works depicting imaginary humanoid species predating Star Trek, including, but not limited to, vampires, elves, fairies, and werewolves,[8] as well as in many animals in nature.

- **Vulcan** (FAC at 14): in Roman mythology, Vulcan is the god of fire and metalworking.  The first known use of "Vulcan" was in 1513.[9]

- **Triangular medals on uniforms** (FAC at 19):  have been used by military, religious, and other organizations throughout history.[10]

- **Nausicaa** (FAC at 20): is a character in Homer's *Odyssey*.[11]

- **Rigel** (*id.*): is the name of a first-magnitude star in the constellation Orion.[12]

- **Terra** (*id.*): is the Latin word for "Land."[13]

- **Federation logo** (FAC at 27-28): is adapted from the United Nations flag.[14]

- **Transporters** (FAC at 32): have existed in science fiction since 1877.[15]

- **Warp drive** (FAC at 32): has existed in science fiction as early as 1945.[16]

- **Federation** (FAC at 33): is the general word to describe "a country formed by separate states that have given certain powers to a central government while

---

[8] RJN, at ¶ 4 and Ex. D-E.  *See, e.g.*, NOSFERATU (Jofa-Atelier Berlin- Johannisthal, Prana-Film GmbH (1922); Elf, Merriam Webster, http://www.merriam-webster.com/dictionary/elf (last visited Mar. 27, 2016) (defining elves as "a small creature in stories usually with pointed ears and magical powers").

[9] RJN, at ¶ 5 and Ex. F Vulcan, Merriam Webster, http://www.merriam-webster.com/dictionary/Vulcan (last visited Mar. 27, 2016).

[10] RJN, at ¶ 6 and Ex. G.  *See* WILLIAM T. R. MARVIN, *THE MEDALS OF THE MASONIC FRATERNITY: DESCRIBED AND ILLUSTRATED* (1880).

[11] RJN, at ¶ 7 and Ex. H.  Translated by WILLIAM CULLEN BRYANT, THE ODYSSEY OF HOMER, James R. Osgood and Co. (1871).

[12] RJN, at ¶ 8 and Ex. I. Rigel, Merriam Webster, http://www.merriam-webster.com/dictionary/Rigel (last visited Mar. 27, 2016).

[13] RJN, at ¶ 9 and Ex. J. Terra, Merriam Webster, http://www.merriam-webster.com/dictionary/terra (last visited Mar. 27, 2016).

[14] RJN, at ¶ 10 and Ex. K.

[15] RJN, at ¶ 11 and Ex. L.  Teleportation, Merriam Webster, http://www.merriam-webster.com/dictionary/teleportation; *see also*, NEWSPAPER ARTICLE 1878 (last visited Mar. 27, 2016).

[16] RJN, at ¶ 12 and Ex. M.  Sten Odenwald, *Who Invented Faster Than Light Travel?*, http://www.astronomycafe.net/anthol/scifi1.html (last visited Mar. 28, 2016).

keeping control over local matters" commonly used in science fiction and is inspired by the United Nations.[17]

- **Phasers** (FAC at 33): are also known as Heat-Ray weapons, which have existed in science fiction since H.G. Wells' "War of the Worlds" in 1898.[18]

- **Bridge** (FAC ¶ 66(b)): is a naval term for a ship's command center whose first usage predates the 12th century.[19]

### v.   Copyright Does Not Protect the Klingon Language

The Klingon language (FAC ¶ 46, at 31) itself is an idea or a system, and is not copyrightable. As the Supreme Court held in the context of a system of bookkeeping, although copyright protects the author's *expression* of the system, it does not prevent others from *using* the system. *Baker v. Selden*, 101 U.S. 99, 101 (1879). The mere allegation that Defendants used the Klingon language, without any allegation that Defendants copied Plaintiffs' particular expression of that language, is therefore insufficient to state a claim for copyright infringement as to any protected element.

### vi.   Ideas Are Not Protected By Copyright

"In no case does copyright protection for an original work of authorship extend to any idea...regardless of the form in which it is...illustrated[] or embodied in such work." 17 U.S.C. § 102(b). Rather, "copyright...encourages others to build freely upon the ideas...conveyed by a work." *Feist*, 499 U.S. at 350-41 (citing *Harper & Row*, 471 U.S. at 556-57); *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1351 (N.D. Ill. 1994) (plaintiffs could not claim protection for "general ideas and concepts [such as]...a futuristic, interstellar, battle dominated universe").

Consequently, the "mood and theme" of **"science fiction action adventure"** (FAC ¶¶ 46, 47, at 34, 39) is not protectable. *Ideal Toy Corp. v. Kenner Prods. Div. of Gen. Mills Fun Group, Inc.*, 443 F. Supp. 291 (D.C.N.Y. 1977) (although toy

---

[17] RJN, at ¶ 13 and Ex. N, Federation, Merriam Webster, http://www.merriam-webster.com/dictionary/federation (last visited Mar. 27, 2015).
[18] RJN, at ¶ 14 and Ex. O, H.G. Wells, *War of the Worlds*, Leipzig (1898).
[19] RJN, at ¶ 15 and Ex. P, Bridge, Merriam Webster, http://www.merriam-webster.com/dictionary/bridge (last visited Mar. 27, 2016).

company "sought to make use of the themes embodied in" *Star Wars* and its licensed products, "[a] theme is not protectable…[because] it is only the idea which stands behind a protectible expression"). Plaintiffs cannot seek to prevent Defendants or anyone else from creating new works in the science fiction action adventure genre.

### vii.    Copyright Does Not Protect Scènes à Faire

"Scenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002). The following elements are unprotectable scènes à faire because they are staples of science fiction: starships and spacedocks, beaming up/transporters, warp drive, phasers, command insignia and medals on uniforms, stardates, Starfleet, and a federation of planets. (FAC at 22, 23, 25, 26, 29, 30, 32, 33). Indeed, *Star Wars* makes use of nearly all of these elements. *See Althouse*, 2014 WL 2986939, at *4 ("these features can be traced back to films like *Star Wars* and *Terminator*, and are neither original nor protectable").

### viii.    Characters Plaintiffs Have Identified Are Not Protected

The Ninth Circuit has explained that copyright protection is not available for "every comic book, television, or motion picture character"—only for those that are "especially distinctive." *DC Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015). To meet this standard, a character must be "sufficiently delineated" and display "consistent, widely identifiable traits." *Id.* Further, "characters that have been 'lightly sketched' and lack descriptions may not merit copyright protection." *Id.* For example, courts have held that James Bond, Batman, and Godzilla are characters protected by copyright. *Id.* at 1020. Here, Plaintiffs have not plausibly alleged that any of the characters they claim have been infringed—Garth of Izar, Soval, Richard Robau, John Gill, Captain Robert April, Chang, or Sarek (FAC at 11-12, ¶ 66)—meet the requirements for copyright protection because they have not set forth "especially distinctive" and "widely identifiable traits" of these characters that Defendants have copied. None of these relatively minor characters are as distinctive as James Bond,

Batman, or Godzilla, because the characters named by Plaintiffs cannot be associated with specific, consistently identifiable traits. *Van Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (holding minor characters not protected by copyright).

In sum, Plaintiffs fail to state a plausible claim of infringement as to the foregoing elements because they are unprotectable as a matter of law. *See, e.g.*, *Althouse v. Warner Bros. Entm't*, No. CV 13-00696-RGK SSX, 2014 WL 2986939, at *3 (C.D. Cal. Apr. 28, 2014) ("Plaintiff lists a total of 118 alleged similarities between [the works]. However, all of Plaintiff's examples are either too general for copyright protection, are *scenes a faire,* or are commonly used, unoriginal ideas. Thus, none of Plaintiff's 118 alleged similarities creates a triable issue of fact.") (Klausner, J.).

### B.   Plaintiffs' Claims Are Not Sufficiently Detailed To Survive

#### 1.   Plaintiffs' FAC Does Not Specify Which Among Hundreds of Alleged Copyrights Have Been Infringed

When alleging copyright infringement, "in order to give fair notice of the claim, [a] plaintiff must identify both the work alleged to have been infringed and the infringing work; merely asserting that 'certain works' have been copied is insufficient." 6 William F. Patry, *Patry on Copyright* § 19:6 (2015); *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890 (TPG), 2014 WL 1303135, at *3 (S.D.N.Y. Mar. 31, 2014) (finding plaintiff's failure to "properly specify" the copyrights allegedly infringed upon warranted dismissal); *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (dismissing copyright infringement claims where plaintiff failed to allege whether any or all of his copyrights were infringed); *Marshall v. McConnell*, No. Civ.A. 3:05-CV-1062L, 2006 WL 740081, at *4 (N.D. Tex. Mar. 23, 2006) (finding plaintiff failed to satisfy Rule 8(a) where allegations could have related to any number of allegedly copyrighted works, leaving defendants without sufficient notice as to how to defend against the claims); *Rosenfeld v. Twentieth Century Fox Film*, No. CV 07-7040 AHM FFMX, 2008 WL 4381575, at *7 (C.D. Cal. Sept. 25, 2008) (dismissing copyright infringement claim where

11

plaintiff's allegations, which did not specify the copyrighted works at issue, failed to provide sufficient notice to defendant).

In *Four Navy Seals v. Associated Press*, the court granted the defendant's motion to dismiss where "the complaint [did] not identify exactly which works Defendants infringed…."  413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005).  Where the plaintiffs asserted that "at least one" of the "1800" works that the plaintiffs alleged they owned were "copied…and distributed," neither the defendants nor the court were put on sufficient notice of the copyright claims at issue. *see also Universal Surface Tech., Inc. v. Sea-A Trading Am. Corp.*, No. CV 10-6972 CAS (PJWx), 2011 WL 281020, at *4-6 (C.D. Cal. Jan. 26, 2011) (finding complaint listing 82 copyrights insufficient to notify defendants about which copyrights were allegedly infringed).

Where, as here, multiple works are alleged to have been infringed, "care should be taken to identify each work at issue."  Patry, § 19:6; *Plunket v. Doyle*, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) (finding "'fair notice requir[es] that the plaintiff allege…which specific original works are the subject of the copyright claim," and dismissing plaintiff's claims for failure to comply with Rule 8, where plaintiff's multi-page schedule of allegedly infringed works stated that her claims **were not limited to those listed works**); *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890 (TPG), 2014 WL 1303135, at *3-4 (S.D.N.Y. Mar. 31, 2014) (granting motion to dismiss where plaintiff's list of allegedly infringed works **was not exhaustive**); *See Synopsys, Inc. v. ATopTech, Inc.*, No. C 12-CV-02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (dismissing claim where plaintiff failed to "make clear what Defendant copied, which ma[de] it impossible for the Court to find plaintiff's claim plausible").

As in the cases cited above, Plaintiffs have failed to satisfy their "minimum" pleading requirement to "identify exactly which works Defendants infringed," and have thus failed to put Defendants "on notice" of their claims.  Plaintiffs apparently believe that their amended allegations—in particular, those in paragraphs 46 and 47 of

the FAC—satisfy their obligation to specify the copyrights that Defendants have allegedly infringed.  They do not.  Simply providing a non-exhaustive list of examples of allegedly infringing elements from the Star Trek Copyrighted Works, and referencing where they appeared, does not satisfy Plaintiffs' obligation to identify the specific works that Plaintiffs claim have been infringed in this case.  Indeed, Plaintiffs do not limit their claims to the allegedly protected "infringing elements" specified in the FAC, but allege these merely as "examples."  *See* FAC ¶ 46 ("The copied copyrighted Star Trek elements include, ***but are not limited to***, those listed below"); *id.* ¶ 47 ("The following chart includes ***some*** of the infringing elements from the Vulcan Scene from the Axanar Motion Picture as well as ***examples*** of many of the corresponding Star Trek Copyrighted Works") (emphasis added).

Given that Plaintiffs' list of allegedly infringing elements is non-exhaustive, Defendants have no way of determining which copyrights, or how many copyrights, Defendants allegedly infringed among the "more than 700" copyrights that Plaintiffs allege they own.  FAC ¶ 15.  Given the vast differences among the motion pictures, television series, and episodes, more specificity is needed.  Plaintiffs improperly attempt to leave Defendants guessing about the scope of their claims by suggesting that Defendants could have infringed hundreds of copyrights, which would require Defendants to sift through each movie and television episode to attempt to determine what Plaintiffs' claims are.  As shown above, courts have time and again expressly rejected this approach.  Defendants are not asking that Plaintiffs be required to list the copyright registration number and date for every motion picture and television episode that they allege they own.  Rather, Defendants simply seek to narrow the field of inquiry to those *specific* episodes, films, and elements that were allegedly infringed, to provide notice of and allow investigation into the claims and potential exposure of this case.[20]  As the Short Mockumentary is only 20 minutes long and freely available

---

[20] Plaintiffs' pleading approach is particularly troubling given that a claim for alleged willful copyright infringement carries a statutory damages penalty as high as $150,000 *per infringed work*. 17 U.S.C. § 504(c).  Without knowing how many works are at issue, Defendants cannot evaluate the scope of this action and the prospects for

1    online, and the Vulcan Scene (the only completed scene in the Potential Fan Film) is

2    even shorter, Plaintiffs should easily be able to properly specify their claims.

3        Plaintiffs' failure to specify the works at issue also prevents Defendants from

4    assessing Paramount's standing to assert a claim of copyright infringement in this

5    action.   Under 17 U.S.C. section 103(b), any "[c]opyright in a…derivative work

6    extends only to the material contributed by the author of such work, as distinguished

7    from the preexisting material employed in the work."   In other words, to the extent

8    that subsequent derivative works contain the same elements as the original work, ***only***

9    ***the new elements are protected by the subsequent copyright.***   Thus, in order to have

10   standing to assert copyright infringement, Paramount must show that Defendants have

11   copied a protected element in an *original* work *owned by Paramount*, not simply a

12   *derivative* work that copies the protected element from, for example, *The Original*

13   *Series*, which are allegedly owned by CBS.[21]   Paramount may not belong in this case

14   at all if the allegedly "infringing elements" first appeared in CBS's alleged works.

15       Plaintiffs' failure to specify the works at issue in this action has also prevented

16   Defendants from showing at this early stage that the Short Mockumentary is not

17   infringing.  *See, e.g.*, *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)

18   (where "the copyrighted work and the alleged infringement are both before the court,

19   capable of examination and comparison, non-infringement can be determined on a

20   motion to dismiss"); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130

21   (C.D. Cal. 2007) ("The Court may assess copyright infringement as a matter of law on

22   the [ ] motion to dismiss.").   While courts have thus assessed whether a work is not

23   infringing on a motion to dismiss, that would necessarily require that Plaintiffs

24   identify the copyrights at issue (which they have not done).[22]

---

potential resolution of Plaintiffs' claims prior to a costly discovery process.

[21]   Indeed, without knowing which works Plaintiffs allege have been infringed, Defendants will be unable to narrow the scope of their discovery requests with respect to, among other things, chain of title discovery relating to Plaintiffs' alleged ownership of the relevant Star Trek Copyrighted Works.

[22]   And with respect to the Potential Fan Film, Plaintiffs do not and cannot plausibly plead alleged infringement with any specificity, as they (like the Court) simply will not and cannot know what the finished product will look like until it is completed.

Because Plaintiffs have not properly specified which of their works have been infringed in this action, the Court should dismiss Plaintiffs' claims.

**2.      Plaintiffs' Claims Are Improperly Based Upon Allegations Made On "Information And Belief"**

Many of Plaintiffs' allegations are devoid of any supporting facts and based solely "on information and belief." FAC ¶¶ 48, 55, 57, 58, 61, 62.  But "[i]n the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."  *Solis v. City of Fresno*, No. 1:11-CV-00053 AWI GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012); *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (finding allegations based on "information and belief" insufficient); *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No C 09-05659 WHA, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011) (finding defendants were *not* on notice of copyright claim through formulaic recitation of elements and conclusory allegations made on "information and belief").

Plaintiffs here have alleged direct, contributory, and vicarious[23] copyright infringement largely "on information and belief."[24]  FAC, ¶¶ 55, 57, 58, 61, 62.  Such "[b]ald recitations of legal conclusions…do not state a claim upon which relief can be granted.  *Richtek*, 2011 WL 166198, at *3; *see also New Name, Inc. v. Walt Disney Co.*, No. CV 07-5034 PA (RZx), 2007 WL 5061697, at *3 (C.D. Cal. Dec. 3, 2007) (granting motion to dismiss where allegations "on information and belief" were speculative and an improper "formulaic recitation of the elements of infringement"); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

---

[23] To show vicarious infringement, Plaintiffs must show that Defendants: (1) enjoy a direct financial benefit from the infringement, and (2) have declined to exercise the right and ability to supervise or control that infringing activity. *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004).  Plaintiffs' FAC does not state facts supporting either of these elements.  Instead, the allegations are again made solely on "information and belief," and merely restate the elements of the claim. Nowhere do Plaintiffs allege facts as to how Defendants have enjoyed a "direct financial benefit."

[24] It is well-established that"[s]econdary liability for copyright infringement does not exist in the absence of direct infringement...." *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir.2001).  Thus, to the extent that the Court dismisses the direct copyright infringement claims for any reason addressed in this Motion, the secondary claims should likewise be dismissed.

supported by mere conclusory statements, do not suffice."). Plaintiffs' allegations are too conclusory for their copyright claims to survive.

**C.** **Plaintiffs' Claims Based on the Potential Fan Film Should Be Dismissed or Stricken Because They are Premature**

Further compounding Plaintiffs' failure to plead their copyright claims with specificity is Plaintiffs' attempt to assert copyright claims based on a film which has not even been made yet. Plaintiffs' claims based on the Potential Fan Film are premature, unripe, and would constitute an impermissible prior restraint on speech. Thus, Plaintiffs' claims should be dismissed or stricken.[25] Plaintiffs concede that (with the exception of the "Vulcan Scene") the Potential Fan Film has not yet been made. FAC ¶¶ 2, 9. Indeed, there are *multiple versions* of the script, and the script is still being revised and re-written. Under these circumstances, the Court should not permit Plaintiffs to proceed with their copyright claims to the extent they are based on the Potential Fan Film itself.

**1.** **Plaintiffs' Claims Based on the Potential Fan Film are Unripe**

A federal court will "not resolve issues involving contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985). Accordingly, "[b]efore a case is justiciable in federal court" the plaintiff must allege that it "is threatened by injury that is both real and immediate;" not "conjectural or hypothetical." *Portland Police Ass'n. v. City of Portland*, 658 F.2d 1272, 1273 (9th Cir. 1981). Without "immediacy and certainty of injury the dispute is not ripe; it has not matured…to warrant judicial intervention." *Id*.

In analogous cases seeking declaratory relief, courts have dismissed copyright claims as premature unless a party seeking relief can establish that the potentially

---

[25]Under Rule 12(f), a court may strike any "immaterial [or] impertinent" allegation that has no "essential or important relationship," or is unnecessary, to the claims. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382, at 706–07, 711 (1990).; *see Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994) (affirming order striking allegations).

infringing work "presented to the court is the same product which will be produced if a declaration of noninfringement is obtained." *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F. 3d 1361, 1379 (Fed. Cir. 2004); *see Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980) ("Our concern is not that the [product] will never be produced, but rather that because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed."); *Team Angry Filmworks, Inc. v. Geer*, No. 15-1381, 2016 WL 1086370, *10 (W.D. Pa. Mar. 21, 2016) (dismissing complaint where plaintiff failed to allege facts sufficient to show justiciable controversy ***where potentially infringing film was not yet completed***).  To show an actual controversy, "[t]he disagreement must not be nebulous or contingent, but must have taken on a ***fixed and final shape*** so that a court can see what legal issues it is deciding and what effects its decision will have on the adversaries." *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1269 (S.D. Cal. 2007) (emphasis added).

Here, Plaintiffs' claims against Defendants based on the Potential Fan Film are unripe because the allegedly infringing work does not yet exist.  To determine whether there is substantial similarity between the Star Trek works and the allegedly infringing Potential Fan Film, this Court must be able to compare the relevant works.  *See, e.g.*, *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006).  As this Court has stated, "for the extrinsic similarity analysis, the court may compare the two works for similarities in 'the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.'"  *Gilbert v. New Line Prods., Inc.*, No. CV 09-02231 RGK, 2009 WL 7422458, at *2 (C.D. Cal. Nov. 16, 2009) (Klausner, J.).  Plaintiffs have alleged infringement of 12 movies and "more than 700" television episodes spanning five series and 50 years.  FAC ¶¶ 1, 15.  Until the film has been completed, the Court will not be able to compare Defendants' film with the relevant Star Trek films and episodes at issue to determine whether the themes, mood, setting, pace, plot, and characters are substantially similar.  Moreover, to the extent any of the

elements Plaintiffs are complaining about are actually protectable, Defendants intend to vigorously defend their use (if any) as a fair use.  Without a film, the Court cannot evaluate the purpose and character of Defendants' film, whether it is transformative or a parody, and the amount and substantiality taken (if any).  Similarly, the Court will not be able to evaluate any *de minimis* use defense.[26]

The mere allegation that the Potential Fan Film is intended to be an unauthorized derivative work does not suffice to state a claim.  Even if the Potential Fan Film were "derived" from or inspired by any of the Star Trek Copyrighted Works, it will only be a "derivative work" if it appropriates protected expression from those works.  *See* W. Landes & R. Posner, *The Economic Structure of Intellectual Property Law* 109 (2003) ("If there is no copying of copyrighted material, the fact that a work derived from, in the sense of being inspired or suggested by, a previous work does not make the second work an infringement of the first.").  Indeed, "[a] work is not derivative unless it has *substantially* copied from a prior work."  1 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 3.01 at 3-3.  Until the film is completed, the Court will not be able to evaluate whether the Potential Fan Film "substantially" copied protected expression from the Star Trek works.

As courts have also recognized, "a defendant may legitimately avoid infringement by intentionally making changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's."  *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983); *See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983) ("Copying deleted or so disguised as to be unrecognizable is not copying").  Plaintiffs' premature claims seek to prevent Defendants from avoiding liability by making changes to the Potential Fan Film's script to address Plaintiffs' concerns.  This is contrary to the letter and spirit of copyright law, and should be rejected.

Plaintiffs' allegation that the *Axanar* Script infringes Plaintiffs' copyrights in

---

[26] Plaintiffs' allegation that the Potential Fan Film does "not…constitute fair use" is a legal conclusion and need not be accepted by the Court.  *See* Compl. ¶ 53.  Moreover, as discussed above, this allegation is not plausible.  *Twombly*, 550 U.S. at 554-56.

the Star Trek Copyrighted Works does not resolve this issue.  *See* FAC ¶¶ 2, 32, 41. Even if some versions of the script (there are many) contained alleged infringements, and there were plot similarities to analyze between the script and Plaintiffs' alleged works (no protected similarities are alleged), courts "have routinely rejected requests to consider earlier drafts of the screenplay" on the basis that "[c]onsideration of earlier versions of the screenplay is too unreliable in determining substantial similarity." *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985); *See,* 711 F.2d at 142 (plaintiff not allowed discovery of "early drafts"); *Quirk v. Sony Pictures Entertainment, Inc.*, No. C 11-3773 RS, 2013 WL 1345075, at *6 (N.D. Cal. April 2, 2013) ("even assuming the preliminary drafts…include indications of copying that was later deleted or revised, the only relevant question" is whether "the final movie as filmed, edited, and released contains matter substantially similar to protectable elements" of the copyrighted work); *Hudson v. Universal Pictures Corp.*, No. 03-CV-1008(FB)(LB), 2004 WL 1205762, at *3 (E.D.N.Y. April 29, 2004) ("The Court is under no obligation to consider the draft scripts[.]"); *Marshall v. Yates*, No. CV-81-1850-MML, 1983 WL 1148, at *2 n.2 (C.D. Cal. Oct. 26, 1983) (refusing to consider "draft screenplays or the shooting script" of movie because they were "not relevant").

Rather, it is "the works as they were presented to the public" that are relevant, not preliminary internal drafts.  *Walker*, 615 F. Supp. at 434; *see Chase-Riboud v. DreamWorks, Inc.*, 987 F. Supp. 1222, 1227 n.5 (C.D. Cal. 1997) (to determine substantial similarity, "the court need only consider the final version of [defendant's] film as presented to the viewing public"); 4 Nimmer on Copyright § 13.03[D] ("[C]ourts have routinely rejected requests to consider earlier [screenplay] drafts."). Accordingly, the existence of draft scripts for the Potential Fan Film does not save Plaintiffs' deficient claims, which are based on the visual aspects of the film itself.

### 2. Enjoining the Potential Fan Film Would be a Prior Restraint

According to the Supreme Court, a prior restraint is the "the most serious and the least tolerable infringement" of First Amendment rights, *Nebraska Press Ass'n v.*

19

*Stuart,* 427 U.S. 539, 559 (1976), and is presumptively unconstitutional. *See New York Times Co. v. United States,* 403 U.S. 713, 714 (1971) (request for prior restraint "comes to this Court bearing a heavy presumption against its constitutional validity"). In *Globe Int'l, Inc. v. Nat'l Enquirer, Inc.*, the Globe sought an order blocking publication by the Enquirer of "a hypothetical article the Enquirer has not published (and might not publish), based on an interview Ms. Johnson has not yet even given." No. 98-10613 CAS (MANX), 1999 WL 727232, at *5 (C.D. Cal. Jan. 25, 1999). The court denied the plaintiffs' motion for a preliminary injunction, finding that such an order would be a prior restraint. Recognizing that the fair use defense "requires a case-by-case determination," the Court held that it "may not rule that any future use of the Globe's materials by the Enquirer…would automatically fail the case-specific 'fair use' test." *Id.* at *6 (quoting *Harper & Row*, 471 U.S. at 549).

As in *Globe Int'l*, fair use cannot be evaluated in a vacuum, and allowing Plaintiffs to seek an injunction against creating the Potential Fan Film would constitute an impermissible prior restraint.[27]

## V.      CONCLUSION

Plaintiffs implausibly claim infringement as to elements not protected by copyright, have failed to put Defendants on fair notice of their claims, and seek premature relief. Defendants respectfully request that the Court grant their motion to dismiss or strike Plaintiffs' claims.

Dated:  March 28, 2016             WINSTON & STRAWN LLP

                                         By:  */s/ Erin R. Ranahan*
                                              Erin R. Ranahan
                                              Attorneys for Defendants,
                                              AXANAR PRODUCTIONS, INC.
                                              and ALEC PETERS

---

[27] Further, Plaintiffs fail to state a claim based on the Potential Fan Film because a work that has not been made is not "fixed" in any material object. 17 U.S.C. §§ 101, 106(1)-(2); *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-63 (9th Cir. 2007). Plaintiffs' conclusory allegations that Defendants have distributed copies of or publicly performed the Potential Fan Film are implausible, and should be dismissed or stricken. 17 U.S.C. §§ 101(3), (4); FAC ¶ 55.