1   LOEB & LOEB LLP
    DAVID GROSSMAN (SBN 211326)
2   dgrossman@loeb.com
    JENNIFER JASON (SBN 274142)
3   jjason@loeb.com
    10100 Santa Monica Blvd., Suite 2200
4   Los Angeles, CA 90067
    Telephone: 310.282.2000
5   Facsimile: 310.282.2200

6   LOEB & LOEB LLP
    JONATHAN ZAVIN (Admitted *pro hac vice*)
7   jzavin@loeb.com
    345 Park Avenue
8   New York, NY 10154
    Telephone: 212.407.4000
9   Facsimile: 212.407.4990

10  Attorneys for Plaintiffs
    PARAMOUNT PICTURES
11  CORPORATION and CBS STUDIOS
    INC.

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16  PARAMOUNT PICTURES              Case No.: 2:15-cv-09938-RGK-E
    CORPORATION, a Delaware
17  corporation; and CBS STUDIOS INC.,
    a Delaware corporation,          **PLAINTIFFS' OPPOSITION TO**
18                                    **DEFENDANTS' MOTION TO**
                Plaintiffs,           **DISMISS OR STRIKE IN PART**
19                                    **PLAINTIFFS' FIRST AMENDED**
          v.                          **COMPLAINT**
20
    AXANAR PRODUCTIONS, INC., a       Complaint Filed:  12/29/2015
21  California corporation; ALEC PETERS,
    an individual, and DOES 1-20,
22
                Defendants.
23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   THE FIRST AMENDED COMPLAINT ...................................... 2

III.  ARGUMENT ................................................................................. 4

    A.    The Complaint Plausibly Alleges Copyright Infringement. ............... 4

    B.    The Star Trek Works are Copyrightable. ........................................ 6

        1.    Costumes. .................................................................................. 7

        2.    Dialogue. ................................................................................... 8

        3.    Elements from the Public Domain and Nature. ......................... 9

        4.    Language. ................................................................................ 10

        5.    Mood and Theme. ................................................................... 10

        6.    Scènes A Faire. ....................................................................... 11

        7.    Characters. .............................................................................. 13

    C.    Plaintiffs Have Properly Pled Copyright Infringement. .................... 14

        1.    Plaintiffs' Claims Are Sufficiently Detailed As to Which Works Are Infringed. ...................................... 14

        2.    Allegations on Information and Belief Are Proper, Especially When the Facts are In the Defendants' Control. .................................................................................. 16

    D.    Plaintiffs' Claims Are Not Premature. ........................................... 17

        1.    This Controversy is Ripe. ....................................................... 17

        2.    Injunctions in the Copyright Context Are Not A Violation of the First Amendment. .......................................... 19

IV.   CONCLUSION ........................................................................... 20

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Althouse v. Warner Bros. Entm't*,
    2014 U.S. Dist. LEXIS 92071, Copy. L. Rep. (CCH) P30602 (C.D.
    Cal. Apr. 28, 2014) ................................................................................... 11

*Anderson v. Stallone*,
    1989 U.S. Dist. LEXIS 11109, Copy. L. Rep. (CCH) P22665 (C.D.
    Cal. Apr. 25, 1989) ..................................................................................... 5

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
    150 F.3d 132 (2d Cir. 1998) ............................................................... 14, 15

*Clayton v. Automated Gaming Techs., Inc.*,
    2014 U.S. Dist. LEXIS 47003 (E.D. Cal. Apr. 2, 2014) ........................... 14

*Clinton v. Acequia, Inc.*,
    94 F.3d 568 (9th Cir. 1996) ...................................................................... 18

*Cole v. John Wiley & Sons*,
    2012 U.S. Dist. LEXIS 108612 (S.D.N.Y. Aug. 1, 2012) ........................ 16

*Danjaq, LLC v. Universal City Studios, LLC*,
    2014 U.S. Dist. LEXIS 180264, Copy. L. Rep. (CCH) P30673 (C.D.
    Cal. Oct. 2, 2014) ...................................................................................... 18

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) .................................................................. 12

*Elvis Presley Enterprises, Inc. v. Passport Video*,
    349 F.3d 622 (9th Cir. 2003) .................................................................... 20

*Engineering Dynamics, Inc. v. Structural Software, Inc.*,
    46 F.3d 408 (5th Cir. 1995) ........................................................................ 5

*Enter. Mgmt. Ltd. v. Warrick*,
    717 F.3d 1112 (10th Cir. 2013) ............................................................. 7, 9

*FASA Corp. v. Playmates Toys, Inc.*,
    869 F. Supp. 1334 (N.D. Ill. 1994) ........................................................... 11

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) ...................................................................................... 4

*Four Navy Seals & Jane Doe v. AP*,
 413 F. Supp. 2d 1136 (S.D. Cal. 2005) ...................................................... 15

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
 462 F.3d 1072 (9th Cir. 2006) ........................................................... 4, 8, 10

*Ideal Toy Corp. v. Kenner Products Div. of General Mills Fun Group,*
 *Inc.*,
 443 F. Supp. 291 (S.D.N.Y. 1977) ............................................................. 11

*Int'l Harvester Co. v. Deere & Co.*,
 623 F.2d 1207 (7th Cir. 1980) ..................................................................... 19

*Keegan v. Am. Honda Motor Co*,
 838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................................ 16

*Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*,
 2016 U.S. Dist. LEXIS 28930 (S.D. Cal. Mar. 4, 2016) ............................. 14

*Lone Wolf McQuade Assocs. v. CBS*,
 961 F. Supp. 587 (S.D.N.Y. 1997) ............................................................... 7

*Marshall v. McConnell*,
 2006 U.S. Dist. LEXIS 12319, Copy. L. Rep. (CCH) P29161 (N.D.
 Tex. Mar. 23, 2006) ...................................................................................... 16

*Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co.*,
 900 F. Supp. 1287 (C.D. Cal. 1995) ........................................................ 7, 13

*N. Coast Indus. v. Jason Maxwell, Inc.*,
 972 F.2d 1031 (9th Cir. 1992) ....................................................................... 6

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data*,
 166 F.3d 65 (2d Cir. 1999) .......................................................................... 20

*Olson v. NBC*,
 855 F.2d 1446 (9th Cir. 1988) ..................................................................... 13

*Palmer Kane LLC v. Scholastic Corp.*,
 2014 U.S. Dist. LEXIS 44881 (S.D.N.Y. Mar. 31, 2014) ........................... 16

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  167 F. Supp. 2d 1114 (C.D. Cal. 2001) ..................................................... 14, 15, 16

*Portland Police Asso. v. Portland*,
  658 F.2d 1272 (9th Cir. 1981) .......................................................................... 18

*Pye v. Mitchell*,
  574 F.2d 476 (9th Cir. 1978) ............................................................................ 19

*Quirk v. Sony Pictures Entm't Inc.*,
  2013 U.S. Dist. LEXIS 47954, 106 U.S.P.Q.2d (BNA) 2004 (N.D.
  Cal. Apr. 2, 2013) ............................................................................................. 19

*Rosenfeld v. Twentieth Century Fox Film*,
  2008 U.S. Dist. LEXIS 92099 (C.D. Cal. Sept. 25, 2008) .................................. 16

*See v. Durang*,
  711 F.2d 141, (9th Cir. 1983) ........................................................................... 19

*Sierra Applied Scis., Inc. v. Advanced Energy Indus.*,
  363 F.3d 1361 (Fed. Cir. 2004) ......................................................................... 18

*Star Fabrics, Inc. v. DKJY, Inc.*,
  2014 U.S. Dist. LEXIS 2775 (C.D. Cal. Jan. 9, 2014) ......................................... 8

*State ex rel. State Water Resources Control Bd. v. FERC*,
  966 F.2d 1541 (9th Cir. 1992) .......................................................................... 17

*Synopsys, Inc. v. ATopTech, Inc.*,
  2013 U.S. Dist. LEXIS 153089; 2013 Copy. L. Rep. (CCH) P30,
  507 (N.D. Cal. October 24, 2013) ..................................................................... 15

*Team Angry Filmworks, Inc. v. Geer*,
  2016 U.S. Dist. LEXIS 36286 (W.D. Pa. Mar. 21, 2016) ................................... 19

*Toho Co., Ltd. v. William Morrow and Co., Inc.*,
  33 F. Supp. 2d 1206 (C.D. Cal. 1998) ............................................................... 13

*Universal City Studios, Inc. v. Kamar Industries, Inc.*,
  1982 U.S. Dist. LEXIS 15942, 217 U.S.P.Q. (BNA) 1162, 1982 WL
  1278 (S.D. Tex. 1982) ........................................................................................ 8

*Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*,
  2011 U.S. Dist. LEXIS 10127 (C.D. Cal. Jan. 26, 2011) .................................... 15

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

iv

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007) ................................................................ 19

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985) ....................................................................... 19

*Walt Disney Prods. v. Filmation Assocs.*,
    628 F. Supp. 871 (C.D. Cal. 1986) ........................................................ 17, 18, 20

*Yurman Design, Inc. v. PAJ, Inc.*,
    93 F. Supp. 2d 449 (S.D.N.Y. 2000) ..................................................................... 6

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

v

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

# I.     INTRODUCTION

CBS and Paramount are the copyright owners of the Star Trek Copyrighted Works, which consist of six Star Trek television series, with more than 700 different episodes, 12 motion pictures, various books, and other related products. Star Trek is one of the most widely known science fiction entertainment franchises in the world. The first television series was created and first broadcast in 1966, another Star Trek motion picture will premiere this year, and a new Star Trek television series will debut early next year. Star Trek consists of many interlocking fictional characters, stories and worlds. Defendants, an individual and a production company, who own absolutely no rights in Star Trek, created a twenty-minute Star Trek film and are in the process of producing a full-length Star Trek motion picture, for which they raised over $1 million. Defendants have attempted to recreate the entire look and feel of Plaintiffs' works and have stated that they are producing an authentic "Star Trek film." In order to create these infringing derivative works, Defendants have used numerous Star Trek elements, including copyrighted characters, stories, sets, costumes, etc., all without Plaintiffs' consent.

Defendants' primary attack on Plaintiffs' Amended Complaint (the "Complaint") is that it does not "plausibly" state a claim for copyright infringement. However, the Complaint is more than sufficient to survive a motion to dismiss under the plausibility standard. It extensively details the ways in which Defendants' works, *Prelude to Axanar* and the *Axanar* Motion Picture, infringe the Star Trek Copyrighted Works, including by copying the characters, races and species, costumes, dialogue, settings, and themes that are part of those works. Defendants also argue that there are individual elements of Plaintiffs' copyrighted works that should not be deemed to be independently copyrightable. These arguments are not appropriate at the motion to dismiss stage, nor are they applicable to this lawsuit. For example, Defendants argue, incorrectly, that certain costumes copied in their works are "useful articles," but that doctrine has no application here, as Defendants

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

1

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

are not selling clothing, but rather, are creating audio-visual works that misappropriate Plaintiffs' copyrighted characters, settings and plots.  The Court will later have an opportunity in this matter to address the similarities between the works at issue and to determine whether Defendants have infringed Plaintiffs' copyrights, but Defendants' motion to dismiss does not seek a ruling on the issue of substantial similarity, and Defendants' arguments regarding whether the Court should eventually take specific elements alleged to have been infringed into account when it conducts a substantial similarity analysis are, therefore, premature.

Defendants also argue that the allegations of the Complaint are not sufficiently "definite."  It is unclear what Defendants are referring to as the Complaint contains specific detail regarding which works have been infringed, and which characters, settings, and other elements from Plaintiffs' works have been copied by Defendants.  Further, Defendants' argument in this regard is disingenuous as they are admittedly and intentionally copying Plaintiffs' films and television shows and, prior to the filing of this lawsuit, Defendants promoted their works as "Star Trek" films, and even took pride in the level of copying that they engaged in – down to exact costumes taken from Plaintiffs' television shows.  Defendants' conduct constitutes an unequivocal and wholesale misappropriation of Plaintiffs' copyrights and the Complaint sufficiently specifies the infringing acts.

Finally, Defendants argue that the Complaint should be dismissed as "premature," but Defendants cannot deny that they have already created and distributed numerous "Star Trek" works without Plaintiffs' authorization.  While Defendants may intend to create and distribute additional infringing scenes or works, that fact does not render the Complaint premature, nor a prior restraint, and Plaintiffs respectfully request that the Court deny Defendants' motion.

## II.    THE FIRST AMENDED COMPLAINT

The original Star Trek television series ("The Original Series") debuted in 1966 and ran for three seasons, until 1969.  FAC ¶13.  The Original Series

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

2

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

chronicled the adventures of the U.S.S. Enterprise and its crew as they traveled through space, and featured numerous original elements including the characters, settings, planets, races and spacecraft that create the fabric of the Star Trek universe. *Id.* In one of the episodes of The Original Series, James T. Kirk, the captain of the U.S.S. Enterprise, meets his hero, Garth of Izar, a former Starship captain. FAC ¶14. In that episode, Kirk and Garth discuss Garth's victory in the Battle of Axanar. FAC ¶14.

Plaintiffs have registered copyrights in The Original Series, as well as five further Star Trek television series, totaling more than 700 episodes. FAC ¶ 15. Plaintiffs also have copyrights in twelve Star Trek motion pictures (FAC ¶ 16), as well as various books (FAC ¶ 19)(collectively the "Star Trek Copyrighted Works"). Plaintiffs own the exclusive right to develop, create, and/or produce motion pictures, televisions shows, and books based on the Star Trek Copyrighted Works. FAC ¶21.

Defendants have created works that are intended to be a "prequel" to The Original Series, chronicling the Battle of Axanar and the conflicts between Klingons and the Federation leading up to that point. The Complaint sufficiently alleges that Defendants have created a work that infringes on the Star Trek Copyrighted Works called *Prelude to Axanar*. FAC ¶22. According to Defendants' Kickstarter campaign, "Prelude to Axanar **will be Star Trek** like you have never seen it before, showing the central characters of Axanar giving both a historical and personal account of the war." FAC ¶29 (emphasis added).

Plaintiffs also allege that Defendants are responsible for other works that infringe the Star Trek Copyrighted Works, specifically, the *Axanar* Motion Picture (collectively with *Prelude to Axanar*, the "*Axanar* Works"), and the underlying script(s) for that Motion Picture. FAC ¶31. Defendants have already released a scene from the *Axanar* Motion Picture that they call "the Vulcan Scene," and Plaintiffs have alleged on information and belief that Defendants have filmed at least one other scene from the *Axanar* Motion Picture. FAC ¶32. According to

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

3

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Axanar Productions' Facebook page, as of August 15, 2015, there was a "fully revised and locked script" referred to as "the best Star Trek movie script ever!" FAC ¶36.  The Complaint asserts claims for copyright infringement, contributory copyright infringement, vicarious copyright infringement, and declaratory judgment.

## III.   ARGUMENT

### A.   The Complaint Plausibly Alleges Copyright Infringement.

Defendants argue that the Court should dismiss the Complaint on the ground that it does not "plausibly" allege infringement of Plaintiffs' works.  The Complaint, however, states a clear and detailed claim for infringement of Plaintiffs' copyrights, identifying the numerous ways in which Defendants' works have misappropriated Plaintiffs' copyrighted works.

A plaintiff bringing a claim for copyright infringement must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Typically, courts conduct a substantial-similarity test to determine whether works are substantially similar, which "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (internal citations and quotations omitted).  While Defendants have argued that certain elements of Plaintiffs' works are not subject to copyright, they have not asked the Court to conduct a "substantial similarity" analysis between Plaintiffs' and Defendants' works, or to dismiss Plaintiffs' claims for lack of substantial similarity.  Rather, Defendants are asking the Court to "filter out" certain elements from the substantial similarity analysis, an analysis that the Defendants have not even requested.  Further, whether an element is copyrightable depends on the actual element as used in the copyrighted work, not on an abstract description of

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

4

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

1    an element, and can only be done in an analysis of the work as a whole.[1]

2    Defendants' entire argument regarding the various elements they do not believe

3    should be considered by the Court in later analyzing similarity is irrelevant and

4    premature.

5          Moreover, even if substantial similarity were at issue, Defendants have

6    deliberately recreated the Star Trek universe in order to create a derivative work (a

7    "prequel"), which they claim is a "Star Trek" film.  In a situation like this, when

8    there is literal copying pervading a work, courts have found it to be unnecessary to

9    conduct a substantial similarity analysis.  As explained by the Central District:

> Usually a court would be required to undertake the extensive
> comparisons under the Kroft substantial similarity test to determine
> whether Anderson's work is a derivative work.  *See* 1 M. Nimmer, §
> 3.01 at 3-3; pgs. 25-28 *supra*.  However, in this case, Anderson has
> bodily appropriated the Rocky characters in his treatment.  This Court
> need not determine whether the characters in Anderson's treatment are
> substantially similar to Stallone's characters, as it is uncontroverted that
> the characters were lifted lock, stock, and barrel from the prior Rocky
> movies.  Anderson retained the names, relationships and built on the
> experiences of these characters from the three prior Rocky movies.  1
> M. Nimmer, § 2.12 at 2-177 (copying names of characters is highly
> probative evidence of infringement).  His characters are not merely
> substantially similar to Stallone's, they are Stallone's characters.  As
> Professor Nimmer stated, "Where there is literal similarity . . . . [i]t is
> not necessary to determine the level of abstraction at which similarity
> ceases to consist of an 'expression of ideas' since literal similarity by
> definition is always a similarity as to the expression of ideas."  3 M.
> Nimmer, § 13.03[3], pg. 13-35.  Anderson's bodily appropriation of
> these characters infringes upon the protected expression in the Rocky
> characters and renders his work an unauthorized derivative work.  1
> Nimmer, § 2.12 at 2-171.  By bodily appropriating the significant
> elements of protected expression in the Rocky characters, Anderson has
> copied protected expression and his treatment infringes on Stallone's
> copyrighted work.

23   *Anderson v. Stallone*, 1989 U.S. Dist. LEXIS 11109, Copy. L. Rep. (CCH) P22665

24   (C.D. Cal. Apr. 25, 1989); *see also Engineering Dynamics, Inc. v. Structural*

---

[1] So, for example, the question is not whether "pointy ears" are copyrightable in the abstract, but whether the specific pointy ears that are part of the fictitious and original Vulcan race and characters are a protected element as part of the larger copyrightable elements in Star Trek.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

5

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

*Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995)("[T]he more exact a duplication of constituent pieces of a work the less overall similarity that may be required.").

Here, as alleged in the Complaint, Defendants have lifted numerous specific characters (such as Garth of Izar and Soval), settings (including several fictional planets), races (such as Klingons and Vulcans), copyrighted vessels (such as the U.S.S. Enterprise and other Federation and Klingon spaceships), dialogue and much more. FAC ¶¶ 46-47. Defendants have bodily appropriated the Star Trek universe – admittedly so in order to create an authentic prequel to The Original Series. The Complaint adequately and "plausibly" alleges copyright infringement and Defendants' motion should be denied.

## B.    The Star Trek Works are Copyrightable.

A work must be original to be protected by copyright, which means that it "need not be new, but only original." *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992). Courts view the work as a whole and do not dissect copyrighted designs into separate components, because to do so would be "akin to accepting the position that every song is merely a collection of basic notes, every painting a derivative work of color and stroke, and every novel merely an unprotected jumble of words." *Yurman Design, Inc. v. PAJ, Inc.*, 93 F. Supp. 2d 449, 457 (S.D.N.Y. 2000) ("[a]s the district court noted, if we took this argument [that court was required to dissect copyrighted designs into separate components] to its logical conclusion, we might have to decide that there can be no originality in a painting because all colors or paint have been used somewhere in the past.").

As the Tenth Circuit explained in the context of an analysis of a diagram,

> Predictably, Warrick says the elements of Lippitt's diagram—short labels, shapes, symbols, and selection of typeface—are not eligible for copyright protection....
>
> Warrick's view misses the forest for the trees. Any copyrightable work can be sliced into elements unworthy of copyright protection. *See CMM Cable Rep*, 97 F.3d at 1514. Books could be reduced to a collection of non-copyrightable words. Music could be distilled into a series of non-copyrightable rhythmic tones. A painting could be

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

6

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

viewed as a composition of unprotectable colors.  Warrick's impulse to unpack Lippitt's diagram into ever-smaller and less-protectable elements is understandable, as copyright jurisprudence tends toward dissection.

Nevertheless, a limiting principle constrains this reductionism.  We must focus on whether Lippitt has "selected, coordinated, and arranged" the elements of her diagram in an original way.  *Feist Publ'ns*, 499 U.S. at 358; *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995); *see also Feist Publ'ns*, 499 U.S. at 349 ("[I]f the selection and arrangement are original, these elements of the work are eligible for copyright protection.").

*Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1118-19 (10th Cir. 2013).

Here, Defendants attempt to dissect eight individual elements of the Star Trek Copyrighted Works – costumes, shapes, dialogue, elements from public domain, language, mood, scènes à faire, and characters—and Defendants argue that these elements are not copyrightable and, therefore, they ask the Court to strike them, or to dismiss Plaintiffs' claims entirely.  This is precisely the tactic that courts have admonished, because it "misses the forest for the trees."  *Enter. Mgmt. Ltd.*, 717 F.3d at 1119.  Moreover, as explained below, Defendants' arguments are misleading and disingenuous, as the doctrines they cite have no application to the infringement at issue in this case, and the individual elements are, in fact, copyrightable.

### 1. Costumes.

Costumes are considered by the court in their analysis of a character's appearance.  *See, e.g., Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co.*, 900 F. Supp. 1287, 1298 (C.D. Cal. 1995)("tuxedo-clad British-looking men"); *Lone Wolf McQuade Assocs. v. CBS*, 961 F. Supp. 587, 593 (S.D.N.Y. 1997)("jeans and casual shirt, with or without a vest, with an attached shield").  Plaintiffs have properly alleged that Defendants have infringed various costumes of Plaintiffs, which are part of the analysis of whether Defendants have infringed Plaintiffs' characters.  For example, the character Soval wears a gold robe with green drape containing stylized ancient script in both the Star Trek Copyrighted Works and in the *Axanar* Works.  FAC ¶¶ 46-47.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

7

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendants argue that claims for infringement of costumes fail because clothing cannot be copyrighted under the useful articles doctrine. Motion at 6. However, the costumes at issue are not "useful articles" – they are not being sold as clothing. The costumes, hair and makeup that Defendants have depicted in order to recreate the Star Trek Copyrighted Works are all part of the look and feel of the characters that Defendants have misappropriated. The visual representations of these fictional characters are by no means "useful articles" and Defendants' specious argument should be rejected.

Defendants have also argued that the medals and designs they have replicated on the costumes of Star Trek characters are merely "shapes," but this case is not about infringing "shapes;" it is about Defendants' copying of Plaintiffs' works and characters, down to intricate details, such as the original designs of Starfleet medals. *See* FAC ¶46. Further, shapes on articles of clothing *are* copyrightable. *See Star Fabrics, Inc. v. DKJY, Inc.*, 2014 U.S. Dist. LEXIS 2775 (C.D. Cal. Jan. 9, 2014). Thus, even under Defendants' misguided analysis, Plaintiffs' allegations as to medals and insignia on costumes are proper.

## 2. Dialogue.

Key lines of dialogue, even short phrases, are copyrightable. *Universal City Studios, Inc. v. Kamar Industries, Inc.*, 1982 U.S. Dist. LEXIS 15942, 217 U.S.P.Q. (BNA) 1162, 1982 WL 1278 (S.D. Tex. 1982) ("I love you, E.T." and "E.T. phone home!"). Courts consider dialogue as part of the substantial similarity analysis. *Funky Films, Inc.*, 462 F.3d at 1077. Defendants' motion argues that words and short phrases are not protected. Motion at 7. However, Defendants are parsing the issue too thinly – the issue is not whether various individual words are copyrightable. Rather, Plaintiffs' allegations show that: (1) Defendants have copied and adopted dialogue from Plaintiffs' Star Trek Copyrighted Works (such as "beaming up") and; (2) these words relate to and in some cases represent various elements (such as characters). For example, Plaintiffs are not claiming that, by

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

8

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

1    itself, the *name* "Garth of Izar" is copyrightable. They instead have alleged that this

2    character is a copyrighted element in the Star Trek universe. *See* Motion at 7.

3    Likewise, Vulcans are copyrighted characters, and Plaintiffs have unabashedly

4    copied those characters, down to the dialogue that relates to them (such as

5    discussions regarding "logic" and references to Vulcan lore and philosophy –

6    including the "Teachings of Surak"). *See* FAC ¶47.

### 3.    Elements from the Public Domain and Nature.

8         Defendants assert that parties cannot claim copyright protection for elements

9    that are not original in and of themselves, such as works from a prior author or

10   works that are derived from nature. Motion at 7. This is a misrepresentation of the

11   law. In determining whether a work is eligible for copyright protection, courts focus

12   on whether the plaintiff has "selected, coordinated, and arranged" elements, which

13   are sometimes not in and of themselves copyrightable, in an original way. *Enter.*

14   *Mgmt. Ltd.*, 717 F.3d at 1119 (*citing Feist Publ'ns*, 499 U.S. at 358). When a court

15   considers whether a party's work is original and therefore copyrightable, it considers

16   the work in its entirety. *Id.*

17        Defendants argue that the word "Vulcan" can be traced to Roman mythology,

18   that the word "Federation" refers to a country "formed by separate states," and that

19   the concept of a "phaser" is similar to weaponry mentioned in H.G. Wells' *War of*

20   *the Worlds*. Motion at 7. Defendants' arguments are frivolous. Plaintiffs do not

21   claim to own the copyright in these individual words. Moreover, this case does not,

22   and will not, involve issues relating to the "public domain." Defendants have

23   infringed the Vulcan characters that were developed, and that are owned, by

24   Plaintiffs – not the Roman god of metalworking. Plaintiffs have also infringed the

25   specific expression of Plaintiffs' United Federation of Planets (including the races in

26   that alliance) as well as Plaintiffs' copyrighted ships and weaponry – such as

27   phasers, warp drives and dilithium crystals. Defendants, by their own admissions,

28   are seeking to replicate the entire fictional Star Trek universe, and they are

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

9

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

incorporating Star Trek planets, characters, ships and settings in order to produce a "prequel" to The Original Series.  Defendants have intentionally copied Plaintiffs' fictional characters, settings and plots, as well as the dynamics and conflicts between various Star Trek races and characters.  None of these elements are in the "public domain," and no discussion of public domain elements is necessary to address whether Plaintiffs have sufficiently alleged copyright infringement.

### 4.      Language.

Language is part of dialogue, which represents one aspect of the Star Trek Copyrighted Works and may be considered (at a later point) in a substantial similarity analysis.  *Funky Films, Inc.*, 462 F.3d at 1077.  Defendants argue that the Klingon language is not copyrightable because it is a useful system.  Motion at 9.  Again, this issue is not yet before the Court – and certainly is not an issue to be addressed on a motion to dismiss.

Moreover, this argument is absurd, since a language is only useful if it can be used to communicate with people, and there are no Klingons with whom to communicate.  The Klingon language is wholly fictitious, original, and copyrightable, and Defendants' incorporation of that language in their works will be part of the Court's eventual substantial similarity analysis.  Defendants' use of the Klingon language in their works is simply further evidence of their infringement of Plaintiffs' characters, since speaking this fictitious language is an aspect of their characters.

### 5.      Mood and Theme.

In considering whether works are substantiality similar, courts compare the mood and theme of the two works.  *Funky Films, Inc.*, 462 F.3d at 1077.  Plaintiffs allege that their works and Defendants' works are "science fiction action adventures."  FAC ¶¶ 46-47.  Defendants' Motion argues that, by alleging this mood and theme, Plaintiffs are seeking copyright protection of unprotectable ideas.  *See* Motion at 9-10.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

10

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

First, this argument is irrelevant at this stage as Defendants have not asked the Court to conduct a similarity analysis.  Second, the cases on which Defendants rely are clearly distinguishable.  In *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1351 (N.D. Ill. 1994), the court noted the issue with the plaintiff's "inability or unwillingness to identify concrete details pertaining to the BATTLETECH universe," whereas here, the Complaint contains extensive detail as to the Star Trek Copyrighted Works, identifying specific characters, settings, dialogue, and themes. Likewise, in *Ideal Toy Corp. v. Kenner Products Div. of General Mills Fun Group, Inc.*, 443 F. Supp. 291, 304 (S.D.N.Y. 1977), the court explained that a plaintiff cannot seek protection for themes, but only for expressions of themes.  Here, Plaintiffs are not seeking copyright protection of the theme of "science fiction action adventure."  They have instead alleged the existence of similar themes between the works at issue in order to show that, in addition to the characters, settings and other elements copied by Defendants, Defendants have also copied the theme and tone from Plaintiffs' works.

### 6.    Scènes A Faire.

The scènes à faire doctrine provides that "[f]amiliar stock scenes and themes that are staples of literature are not protected."  *Althouse v. Warner Bros. Entm't*, 2014 U.S. Dist. LEXIS 92071, Copy. L. Rep. (CCH) P30602 (C.D. Cal. Apr. 28, 2014).  Defendants contend that various elements of Plaintiffs' Star Trek Copyrighted Works, such as starships and spacedocks are unprotectable because they are "staples of science fiction."  Motion at 10.  In *Althouse*, the court held that "flying transports" were scènes à faire, and dismissed a claim when every single allegation by the plaintiff was non-specific.  Here, the Complaint is by no means general and, instead, alleges numerous elements of creative expression that have been misappropriated by Defendants.  Plaintiffs have not alleged that Defendants have taken vague elements that, in some way, resemble the Star Trek Copyrighted Works – instead, Defendants have deliberately and painstakingly copied

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

11

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

innumerable elements from across the entire Star Trek universe.  Indeed, far from a generalized assertion that Defendant have copied "flying transports," Plaintiffs have alleged that Defendants have created a virtually-identical visual representation of <u>the U.S.S. Enterprise</u>.  As shown below, Defendants have copied this ship in its entirety.  Defendants' infringing work even copies the "NCC-1701" Starfleet registry number on the underside of the vessel.




Defendants have also copied, to a great level of detail, several other ships used in the Star Trek Copyrighted Works, such as Klingon warships.  FAC, ¶47.  Thus, Plaintiffs have not merely alleged that the general concepts of a "spaceship" or a "spacedock" have been appropriated – the Complaint's allegations show that Defendants have misappropriated the *expression* of these concepts.  Even assuming that Defendants are properly dissecting the elements of the Star Trek Copyrighted Works (and they are not), courts have held that vehicles like the Batmobile are copyrightable as characters, and therefore, specific Star Trek starships are also copyrightable.  *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015).  Finally, whether certain elements of Star Trek are scènes à faire is only relevant to a substantial similarity analysis, which the Defendants have not asked the Court to do.  Thus, any determination of what, if anything, constitutes scènes à faire is premature.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

12

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### 7.     Characters.

Copyright protection is available for characters that are distinctive.  *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998); *Metro-Goldwyn-Mayer, Inc.*, 900 F. Supp. at 1296.  Defendants argue that Plaintiffs have not plausibly alleged that the characters in Plaintiffs' Complaint are "especially distinctive" with "widely identifiable traits."  Motion at 10.

Defendants rely on *Olson v. NBC*, 855 F.2d 1446, 1452 (9th Cir. 1988), but *Olson* is plainly different from this case.  First, *Olson* did not involve a ruling on a motion to dismiss, but instead affirmed the granting of a judgment notwithstanding the verdict.  Further, in *Olson*, the plaintiff sued for copyright infringement, alleging that the television show, "The A-Team," infringed characters he created in a treatment.  The court rejected that claim, holding that the plaintiff's characters were not copyrightable because they were "depicted only by three- or four-line summaries in the 'Cargo' treatment and screenplay, plus whatever insight into their characters may be derived from their dialogue and action."  Here, on the other hand, the Star Trek characters copied by Defendants appear in several movies and television shows, as explained in the Complaint.  FAC ¶¶ 46-47 (Soval has appeared in several Enterprise episodes; Garth of Izar appeared in an episode of The Original Series as well as in certain books).  Thus, Plaintiffs' characters are fully-formed, and their audio-visual representations include their makeup, hair, costumes, mannerisms, dialogue, language and actions – all of which Defendants have infringed.  Plaintiffs have sufficiently alleged infringement of these characters and the Court should reject Defendants' improper attempt to excise the infringed characters from this lawsuit.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

13

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

C. **Plaintiffs Have Properly Pled Copyright Infringement.**

1. **Plaintiffs' Claims Are Sufficiently Detailed As to Which Works Are Infringed.**

"Copyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001); *Clayton v. Automated Gaming Techs., Inc.*, 2014 U.S. Dist. LEXIS 47003 (E.D. Cal. Apr. 2, 2014). Rather, it is sufficient to "simply alleg[e] present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant." *Perfect 10, Inc.*, 167 F. Supp. 2d at 1120 (citation omitted).

In *Perfect 10*, the defendant moved to dismiss the plaintiff's copyright claim because the complaint did not state "every copyright relied on, every individual image in the magazines that is being infringed, every image on specific web pages that does infringe, or the dates of any infringement." *Id.* at 1120. The court rejected this argument, noting that "complaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules." *Id.* at 1120-21. *See also* 1 Nimmer on Copyright § 12.09 ("To avoid unwieldiness, courts have approved a complaint that simply alleges representative acts of infringement, rather than a comprehensive listing."); *Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*, 2016 U.S. Dist. LEXIS 28930 (S.D. Cal. Mar. 4, 2016)(plaintiffs not required to plead with specificity every design, figure, and diagram at issue). This pleading standard is consistent with the courts' practice of analyzing infringement in the aggregate when it comes to the analysis of several works in a group, such as to analyze a television series with dozens of episodes as a single work. *See, e.g., Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 138 (2d Cir. 1998)(analyzing in the aggregate the amount of expression copied from 84 *Seinfeld* episodes).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

14

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Here, the Complaint does more than enough to put Defendants on notice of the claims against them, and which works are claimed to be infringed.  It alleges ownership of various Star Trek television series, motion pictures, and books.  FAC ¶¶ 13-19.  The Complaint alleges in copious detail the extensive infringement by Defendants of these Star Trek Copyrighted Works.  It identifies specific Star Trek television episodes, motion pictures, and books and specifies various elements from the *Axanar* Works that copy the Star Trek Copyrighted Works.  *Id.*  It even provides visual depictions of many of these elements.  *Id.*

Defendants insist that Plaintiffs should be required to list each motion picture and television series that is infringed upon by each element in the *Axanar* Works.  *See* Motion at 13.  This is not what is required under Rule 8's notice pleading standard.  *See Perfect 10, Inc.*, 167 F. Supp. 2d at 1120.  Defendants are on notice, for example, that each time the U.S.S. Enterprise appears in their *Axanar* Works, they are infringing upon each and every Star Trek Copyrighted Work in which the U.S.S. Enterprise appears.  Plaintiffs should not be required to identify at the pleading stage each and every television episode in which this copyrighted element appears.  The information that Defendants seek can be elicited during the discovery stage, and a motion to dismiss should not be used as a substitute for discovery requests.  Moreover, courts consider the aggregate of large groups of works when performing the substantial similarity analysis rather than considering each work at a time.  *See, e.g., Castle Rock Entm't, Inc.*, 150 F.3d at 138.[2]

_____

[2] Defendants' argument relies on cases where the plaintiff's complaint was vague and failed to identify any specific copyrighted work that was allegedly infringed upon.  *See Four Navy Seals & Jane Doe v. AP*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) (plaintiff attached a list of 1800 photographs and asserted that at least one "unidentified" photograph was distributed by the defendants, but never identified which photograph); *Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*, 2011 U.S. Dist. LEXIS 10127 (C.D. Cal. Jan. 26, 2011)(plaintiff alleged "no facts" as to what acts constitute infringement and no facts as to which copyrights were infringed); *Synopsys, Inc. v. ATopTech, Inc.*, 2013 U.S. Dist. LEXIS 153089; 2013 Copy. L. Rep. (CCH) P30, 507 (N.D. Cal. October 24, 2013) (plaintiff alleged that the defendant infringed its copyrighted software, yet elsewhere in the complaint the plaintiff contradicted itself by alleging that some parts of it software were "open-

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

15

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendants also assert that it is problematic for the Complaint to state that it is identifying specific examples of infringing elements of the *Axanar* Works, rather than limiting the infringement to the examples identified in the case. However, as the Central District of California has held, "[r]equiring a statement of each and every example would defeat the regime established by Rule 8." *Perfect 10, Inc.*, 167 F. Supp. 2d at 1120. Defendants also improperly rely on cases in which courts found that the defendants did not have "notice" of the claims because the complaints were either vague or alleged that other, non-disclosed copyrights, were potentially infringed. *See Palmer Kane LLC v. Scholastic Corp.*, 2014 U.S. Dist. LEXIS 44881 (S.D.N.Y. Mar. 31, 2014)(complaint stated that list of copyrighted works was not exhaustive); *Cole v. John Wiley & Sons*, 2012 U.S. Dist. LEXIS 108612 (S.D.N.Y. Aug. 1, 2012)(complaint stated that the infringement was not limited to the list of works in the complaint); *Marshall v. McConnell*, 2006 U.S. Dist. LEXIS 12319, Copy. L. Rep. (CCH) P29161 (N.D. Tex. Mar. 23, 2006)(complaint never identified any specific copyrights that were allegedly infringed upon); *Rosenfeld v. Twentieth Century Fox Film*, 2008 U.S. Dist. LEXIS 92099 (C.D. Cal. Sept. 25, 2008)(the complaint did not identify which works constituted the copyrights at issue). Here, on the contrary, Plaintiffs have limited the universe of copyrighted works as those included in the defined term "Star Trek Copyrighted Works." All of these works have been identified in the Complaint.

### 2.  Allegations on Information and Belief Are Proper, Especially When the Facts are In the Defendants' Control.

Contrary to Defendants' assertion, *Twombly* does not prevent a plaintiff from pleading facts alleged "upon information and belief," particularly when those facts are within the possession and control of the defendant. *Keegan v. Am. Honda Motor*

---

source," and therefore not copyrightable). Here, no such issue exists as Plaintiffs have identified numerous specific Star Trek Copyrighted Works that have been infringed, including specific television episodes and motion pictures. *See* FAC ¶¶ 46-47.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

16

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Co*, 838 F. Supp. 2d 929, 961 n.85 (C.D. Cal. 2012).  Plaintiffs have based certain allegations on information from Defendants' website and social media postings.  For example, Plaintiffs allege, on information and belief, that defendant Alec Peters wrote the *Axanar* Works and continues to write the *Axanar* Script and produce the *Axanar* Motion Picture.  FAC ¶ 9.  This information is based on Defendants' own announcement on Facebook on August 15, 2015 that there was a "fully revised and locked script," with an image showing that *Axanar* was "written by Alec Peters." FAC ¶ 36.  Unlike the cases on which Defendants rely, Plaintiffs' allegations are bolstered by specific facts, and many of these allegations are based on information gleaned from Defendants' public postings on social media.

### D.    Plaintiffs' Claims Are Not Premature.

The Complaint alleges that Defendants have created and released a film entitled *Prelude to Axanar*, have prepared a script for the *Axanar* Motion Picture, have released a scene from the *Axanar* Motion Picture, and have completed one third of the visual effects from the *Axanar* Motion Picture.  FAC ¶¶ 32, 36, 39, 42. Defendants argue that Plaintiffs should have to wait until Defendants are finished making all of their infringing materials prior to filing suit and that, otherwise, the controversy is not ripe.  They also claim that, by alleging a claim for injunctive relief, Plaintiffs are impermissibly seeking a prior restraint.  Motion at 16-20.  As explained below, courts have held, in nearly identical circumstances, that the completed and transitory film elements already fixed in a tangible medium of expression by Defendants constitute actionable material ripe for review, and that requests for injunctions in the copyright context do not violate the First Amendment.

#### 1.    This Controversy is Ripe.

Ripeness prevents "theoretical" or "abstract" disputes.  *State ex rel. State Water Resources Control Bd. v. FERC*, 966 F.2d 1541, 1562 (9th Cir. 1992).  Courts have held that "transitory" film-making products render the copyright issues ripe for the Court's review.  *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

17

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS

875-76 (C.D. Cal. 1986)(script, models, designs, and promotional trailer were actionable).  In fact, in a case very similar to the case at bar, *Danjaq, LLC v. Universal City Studios, LLC*, 2014 U.S. Dist. LEXIS 180264, Copy. L. Rep. (CCH) P30673 (C.D. Cal. Oct. 2, 2014), the defendant moved to dismiss a copyright infringement claim on the grounds that it had not finished a film, but had only allegedly purchased the rights to a screenplay and hired writers, actors, and producers for the project.  The court denied the motion, holding that the claims were ripe because the right to use the screenplay and the hiring of several people for the development of the motion picture project were "transitory" film-making products.

Defendants argue that this lawsuit is premature with respect to the *Axanar* Motion Picture because the entire movie has not yet been completed.  Motion at 16-19.  The Motion fails to acknowledge that the Complaint alleges that Defendants have <u>already engaged in infringing conduct</u> by producing and releasing *Prelude to Axanar*, have completed an infringing "fully revised and locked script" for the *Axanar* Motion Picture, and have already completed and disseminated a scene from the *Axanar* Motion Picture.  FAC ¶¶ 32-42.  Defendants' completed acts of infringement, as well as their transitory products, such as scripts, are actionable, making this case ripe for review.  *See Walt Disney Prods.*, 628 F. Supp. at 875-76; *Danjaq, LLC*, 2014 U.S. Dist. LEXIS 180264, Copy. L. Rep. (CCH) P30673.

Defendants' cases are also inapplicable to this dispute.  *See Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996)(breach of contract claim was not ripe because the defendant's performance of the contract was not yet due); *Portland Police Asso. v. Portland*, 658 F.2d 1272 (9th Cir. 1981)(claim was not ripe when several contingencies needed to occur in order to violate the plaintiffs' rights).  Likewise, Defendants misrepresent two other cases as being "analogous cases seeking declaratory relief [where] courts have dismissed copyright claims as premature."  Motion at 16, citing *Sierra Applied Scis., Inc. v. Advanced Energy*

NY1402147.2
202828-10048

18

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

*Indus.*, 363 F.3d 1361 (Fed. Cir. 2004) and *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir. 1980).  These cases are patent cases, not copyright cases.[3]

Defendants misleadingly argue that courts have held that intermediary works are not relevant to the substantial similarity analysis.  However, these cases stand for the proposition that courts generally will not consider intermediary works as evidence that <u>a later version</u> of a work is infringing.  *See* Motion at 19, citing to *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430 (S.D.N.Y. 1985); *See v. Durang*, 711 F.2d 141 (9th Cir. 1983); *Quirk v. Sony Pictures Entm't Inc.*, 2013 U.S. Dist. LEXIS 47954, 106 U.S.P.Q.2d (BNA) 2004 (N.D. Cal. Apr. 2, 2013).  Those authorities have no application here, where Plaintiffs have alleged that Defendants have created and distributed infringing audio-visual works.

Defendants' statement that they do not intend to (further) infringe Plaintiffs' copyrights in the future is irrelevant, given that good faith is not an excuse to infringe a copyright.  *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978).  Moreover, such statements are contrary to the allegations of the Complaint – which alleges that Defendants have already engaged in numerous acts of infringement.

## 2. Injunctions in the Copyright Context Are Not A Violation of the First Amendment.

Plaintiffs have not filed a motion for injunctive relief and, therefore, Defendants' arguments regarding "prior restraint" are irrelevant and, at best, premature.  Defendants are no more "restrained" by the filing of the Complaint than

---

[3] The copyright cases on which Defendants rely are also not on point.  In *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265 (S.D. Cal. 2007), the plaintiff did not "reference any specific copyright" and therefore any relief "would necessarily take the form of an advisory opinion."  In *Team Angry Filmworks, Inc. v. Geer*, 2016 U.S. Dist. LEXIS 36286 (W.D. Pa. Mar. 21, 2016), the plaintiff failed to show any concrete steps towards producing its films, given that it did not allege that a screenplay had been written, nor did it contain specific or even approximate allegations about when it could begin film production.  Therefore, plaintiff was improperly seeking an opinion from the court advising what the law would be on a hypothetical set of facts.  Here, on the other hand, Defendants have already created infringing audio-visual works, have completed an infringing script and additional production is already underway.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

19

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

they would be by the sending of a cease and desist letter.  Without the filing of a motion for an injunction, Defendants may proceed, but they do so at their own peril.

Further, courts have held that enjoining a defendant from continuing to complete an infringing film is not an impermissible prior restraint.  *Walt Disney Prods.*, 628 F. Supp. at 878 n.6 ("By distinguishing between copyrightable expression and uncopyrightable facts and ideas, the Copyright Act itself embodies a permissible balance between First Amendment protections and the protection of a copyright holder's rights.").  As noted by the Second Circuit: "We have repeatedly rejected First Amendment challenges to injunctions from copyright infringement on the ground that First Amendment concerns are protected by and coextensive with the fair use doctrine."  *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data*, 166 F.3d 65, 74-75 (2d Cir. 1999).  Similarly, the Ninth Circuit has held that: "First Amendment concerns in copyright cases are subsumed within the fair use inquiry.  In other words, if the use of the alleged infringer is not fair use, there are no First Amendment prohibitions against granting a preliminary injunction."  *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003).  Here, enough of the Plaintiffs' works have already been fixed in the *Axanar* Works for the Court to determine, at the appropriate time, that there is no fair use.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss or Strike.

Dated:  April 11, 2016

LOEB & LOEB LLP
JONATHAN ZAVIN
DAVID GROSSMAN
JENNIFER JASON

By:*/s/ David Grossman*
    David Grossman
    Attorneys for Plaintiffs
    PARAMOUNT PICTURES
    CORPORATION and CBS STUDIOS
    INC.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

NY1402147.2
202828-10048

20

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS