Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Andrew S. Jick (SBN: 278943)
ajick@winston.com
Kelly N. Oki (SBN: 304053)
koki@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
AXANAR PRODUCTIONS, INC.,
and ALEC PETERS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual; and DOES 1-20, <br><br> Defendants. | Case No. 2:15-cv-09938-RGK-E <br><br> *Assigned to:  Hon. R. Gary Klausner* <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR STRIKE IN PART PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Hearing Date:        May 9, 2016 <br> Time:                     9:00 a.m. <br><br> Original Complaint Filed: 12/29/15 <br> Amended Complaint Filed: 3/11/16 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT.........................................................................................1

    A.    The Court Must Filter Out the Unprotectable Elements...........................1

        1.    Costumes and Shapes.........................................................3

        2.    Dialogue.........................................................................3

        3.    Elements In Public Domain And Nature. ................................4

        4.    Language........................................................................5

        5.    Mood and Theme ..............................................................5

        6.    Scènes à Faire .................................................................6

        7.    Characters. .....................................................................6

    B.    Plaintiffs' Claims Are Not Sufficiently Specific To Survive ...................6

    C.    Plaintiffs' Claims Based on the Potential Fan Film are Premature ..........9

III.  CONCLUSION ...................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Althouse v. Warner Bros. Entm't*,
  2014 WL 2986939 (C.D. Cal. Apr. 28, 2014) ........................................... 6

*Anderson v. Stallone*,
  1989 WL 206431 (C.D. Cal. Apr. 25, 1989). ....................................... 2, 3

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ...................................................................... 1

*Avatar. Dean v. Cameron*,
  2013 WL 6417688 (S.D.N.Y. Nov. 14, 2013) ......................................... 2

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .................................................................................. 10

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ...................................................................... 8

*Christianson v. West Pub. Co.*,
  149 F.2d 202 (9th Cir. 1945) ...................................................................... 7

*Danjaq, LLC v. Universal City Studios, LLC*,
  2014 WL 7882071 (C.D. Cal. Oct. 2, 2014) ........................................... 9

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015) .................................................................... 6

*Dean v. Cameron*,
  53 F. Supp. 3d 641 (S.D.N.Y. 2014) ......................................................... 2

*Enter. Mgmt. Ltd., Inc. v. Warrick*,
  717 F.3d 1112 (10th Cir. 2013) .................................................................. 2

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) .................................................................... 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) .................................................................................... 5

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) .................................................................... 1

ii

*Gilbert v. New Line Prods., Inc*
  2009 WL 7422458 (C.D. Cal. Nov. 16, 2009) .......................................................... 9

*Globe Int'l, Inc. v. Nat'l Enquirer, Inc.*,
  1999 WL 727232 (C.D. Cal. Jan. 25, 1999).......................................................... 10

*Ideal Toy Corp. v. Kenner Prods. Div. of Gen. Mills Fun Group, Inc.*,
  443 F. Supp. 291 (D.C.N.Y. 1977)........................................................................ 5

*Lone Wolf McQuade Assoc. v. CBS Inc.*,
  961 F. Supp. 587 (S.D.N.Y. 1997) ........................................................................ 3

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*,
  900 F. Supp. 1287 (C.D. Cal. 1995) ...................................................................... 3

*Muromura v. Rubin Postaer & Associates*,
  2015 WL 1728324 (C.D. Cal. Apr. 15, 2015)...................................................... 1, 2

*N. Am. Thought Combine, Inc. v. Kelly*,
  2003 WL 355237 (S.D.N.Y. Feb. 18, 2003) .......................................................... 6

*Newton v. Diamond*,
  204 F. Supp. 2d 1244 (C.D. Cal. 2002)................................................................ 1

*Oracle Am., Inc. v. Google Inc.*,
  750 F.3d 1339 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2887 (2015) .................... 5

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  167 F. Supp. 2d 1114 (C.D. Cal. 2001) ................................................................ 8

*Quirk v. Sony Pictures Entm't, Inc.*,
  2013 WL 1345075 (N.D. Cal. April 2, 2013) ...................................................... 10

*Shame on You v. Banks*,
  120 F. Supp. 3d 1123 (C.D. Cal. 2015) ................................................................ 4

*Walker v. Time Life Films, Inc.*,
  615 F. Supp. 430 (S.D.N.Y. 1985) ...................................................................... 10

*Walt Disney Productions v. Filmation Associates*,
  628 F. Supp. 871 (C.D. Cal. 1986) ...................................................................... 9

*Yurman Design, Inc. v. PAJ, Inc.*,
  93 F. Supp. 2d 449 (S.D.N.Y. 2000) .................................................................... 2

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................................................7

**Statutes**

17 U.S.C. § 101 ...........................................................................................................3

17 U.S.C. § 103(b) ......................................................................................................7

**Other Authorities**

Michael Adelman, *Constructed Languages and Copyright: A Brief
    History and Proposal for Divorce*, 27 Harv. J.L. & Tech. 543 (2014) ...................5

4 Nimmer on Copyright § 13.03[F] ...........................................................................1

https://www.youtube.com/watch?v=CiRMGYQfXrs ..................................................5

http://www.kli.org/ .....................................................................................................5

https://www.youtube.com/watch?v=55G_TDLcURw .................................................5

## I.    INTRODUCTION

In a misguided effort to squash Defendants' creativity in telling an original story about an obscure character that appeared in only one 1969 Star Trek episode, Plaintiffs' Opposition shows that their strategy is to avoid properly framing this copyright action by alleging numerous unprotected elements and irrelevant works, refusing to identify the specific infringed works at issue, and prematurely claiming infringement against a work that is not complete. But Plaintiffs cannot simply rely on their boundless claims to an amorphous, extended Star Trek universe when pursuing claims against Defendants in a narrow dispute. For all the reasons set forth here and in Defendants' Motion, the Court should dismiss or strike Plaintiffs' claims.

## II.    ARGUMENT

### A.    <u>The Court Must Filter Out the Unprotectable Elements</u>

Courts in this circuit reject Plaintiffs' argument that allegedly infringed works at issue in a copyright case should be considered "as a whole," and have held that works must be "dissected" into their protectable and unprotectable elements. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (to determine whether the "protectable elements" of the plaintiff's works, "standing alone," are substantially similar to the defendant's works, courts must "filter out and disregard the nonprotectable elements"); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Because only those elements of a work that are protectable…can be compared when it comes to…illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered 'as a whole.'")[1]. "The protectability of elements of a copyrighted work is a question of law for the court." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002).

In *Muromura v. Rubin Postaer & Associates*, the court dismissed the plaintiffs' copyright claims because the plaintiffs failed to clearly identify the *protectable*

---

[1] In *Apple*, the Ninth Circuit held that the district court properly filtered out unprotectable elements.  *Id.* at 1445; *see* 4 Nimmer on Copyright § 13.03[F] ("Infringement is shown by a substantial similarity of *protectable expression,* not just an overall similarity between the works.")

1

elements of their works that the defendants had allegedly infringed. No. CV 12-09263 DDP AGRX, 2015 WL 1728324, at *3-4 (C.D. Cal. Apr. 15, 2015). There, as here, the plaintiffs provided "extensive lists of descriptors and elements characterizing their works," but claimed that the elements identified were "provided, without limitation, as examples" of the similarities between the works. *Id.* at *3. The court held that such allegations "put the cart before the horse" because the "threshold question is whether any elements, or combinations of elements, are protectable in the first instance." *Id.*

In arguing that the Court should not filter out unprotectable elements, Plaintiffs rely on out-of-circuit, inapposite cases involving the copyrightability of a jewelry design[2] and a diagram.[3] When defending the makers of the movie *Avatar* against claims of infringement, however, the same counsel representing Plaintiffs here took the contrary position—and obtained dismissal of the plaintiff's claims because, like Plaintiffs here, the plaintiff had failed to identify any *protectable* elements of his works that were allegedly infringed by *Avatar. Dean v. Cameron*, 2013 WL 6417688, at 10 (S.D.N.Y. Nov. 14, 2013) (arguing that the plaintiff failed to state a claim because "any alleged similarities between *Avatar* and Plaintiff's works relate solely to unprotectable (and public domain) ideas and concepts, such as the use of 'floating' land masses, stone arches or willow-like trees in landscapes"); *Dean v. Cameron*, 53 F. Supp. 3d 641 (S.D.N.Y. 2014) (granting motion to dismiss). Just as the *Dean* court filtered out unprotectable ideas, concepts, and items in the public domain, the Court should filter out the unprotectable elements of Plaintiffs' works when determining whether Plaintiffs have stated a claim for infringement.

Recognizing that they cannot identify a work they claim to own that is substantially similar to Defendants' works here, Plaintiffs argue that a substantial similarity analysis is "unnecessary" where the alleged infringement is "literal," relying solely on a massive, single-spaced block quote from a district court from over three decades ago, *Anderson v. Stallone,* No. 87-0592 WDKGX, 1989 WL 206431, at *8

---

[2] *Yurman Design, Inc. v. PAJ, Inc.*, 93 F. Supp. 2d 449, 457 (S.D.N.Y. 2000).
[3] *Enter. Mgmt. Ltd., Inc. v. Warrick*, 717 F.3d 1112, 1113 (10th Cir. 2013).

(C.D. Cal. Apr. 25, 1989). Opp. at 11. In *Stallone*, the plaintiff pitched Stallone a treatment for *Rocky IV*, and later sued Stallone for using it, even though Stallone "developed the majority of the characters in the treatment," including Rocky. *Id.* at 13.[4] The court did not engage in the usual "extensive comparisons" because the *Rocky* movies are character-driven works, and the main character, Rocky Balboa,[5] was "developed with enough specificity" to be "protectable expression."[6] *Id.* at 6. Unlike in *Stallone,* Defendants' works here are not alleged to, and do not, center around any main characters from Star Trek. Instead, they provide new insight about Garth of Izar[7]—an obscure character that appeared in just *one* Star Trek episode from nearly 50 years ago, and never in a movie. FAC ¶ 46 at 11; Mot. at 14. As discussed below, Plaintiffs have failed to allege appropriation of any *protected* expression.

    **1.**    <u>**Costumes and Shapes**</u>**:** Plaintiffs do not dispute that clothing may be protectable only if and to the extent it incorporates design elements separate from the function. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1221 (9th Cir. 1997) (quoting 17 U.S.C. § 101). Plaintiffs apparently recognize that the simple costumes they have identified in their FAC (e.g., "gold shirt" and "cowl neck" (FAC ¶ 46, at 17-19)) are not independently protectable, as the cases they rely on analyze the distinctiveness of a "character's appearance"—not the costumes alone.[8] Plaintiffs have not alleged that the clothing they claim to own is associated with a particular character, or incorporates any features separate from the utilitarian aspects.

    **2.**    <u>**Dialogue:**</u> Plaintiffs *admit* that they may not claim copyright protection over names or words.[9] Opp. at 14-15. Thus, the Court should grant Defendants'

---

[4] This would be as if Defendants used the main Star Trek characters (like Spock) in a story and then sued the creator of Spock for copyright infringement.
[5] The court did not reach the issue for other *Rocky* characters, or whether any characters are "protected from less than bodily appropriation." *Id.* at 8.
[6] In so holding, the court noted that Rocky's name "is the title" of all *Rocky* films, and he is known for his "speaking mannerisms" and "physical characteristics." *Id.* at 7.
[7] Plaintiffs do not allege a registered copyright for Garth of Izar or any other character.
[8] *See Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*, 900 F. Supp. 1287, 1293 (C.D. Cal. 1995) (James Bond character); *Lone Wolf McQuade Assoc. v. CBS Inc.*, 961 F. Supp. 587, 592 (S.D.N.Y. 1997) (Lone Wolf McQuade character).
[9] Indeed, while Plaintiffs repeatedly complain about Defendants' works being explicitly inspired by "Star Trek," the use of the name Star Trek would not be covered

1   Motion with respect to the use of the names Garth of Izar, Soval, Richard Robau, and

2   John Gill (FAC ¶ 46 at 11-12), and the words Andorians, Tellarites, Romulans,

3   Axanar, Archanis IV, Q'onoS, Nausicaa, Rigel, Andoria, Tellar Prime, Vulcans,

4   Klingons, Terra (land), Starship Enterprise, Starfleet, Federation, Starships, and

5   Stardate. *Id.* at 14, 16, 20-21, 23, 25, 26, 29, 30, 32, 33, 35, 38; *see also* Mot. at 18.

6   Plaintiffs' assertion that "Defendants have copied and adopted dialogue" from the Star

7   Trek Works should be rejected because Plaintiffs have failed to identify any specific

8   dialogue that Defendants allegedly copied. *Shame on You v. Banks*, 120 F. Supp. 3d

9   1123, 1156-57 (C.D. Cal. 2015) ("To show substantial similarity based on dialogue,"

10  a plaintiff must establish "extended similarity of dialogue.") Plaintiffs concede that

11  they are only seeking protection of dialogue like "beaming up" based on its

12  connection to other protectable elements like characters (Opp. at 14), but they fail to

13  identify that or any other phrase used in conjunction with any protectable element.

14      ***3.    Elements In Public Domain And Nature:*** Recognizing that the elements

15  from the public domain and nature are not copyrightable, Plaintiffs contend that "no

16  discussion of public domain elements is necessary" because they have selected,

17  coordinated, and arranged these elements in an original way. Opp. at 15-16. But it is

18  not apparent from Plaintiffs' FAC or Opposition how or in which works Plaintiffs

19  claim to have arranged any of the numerous unprotectable elements in an original

20  way. *See* Mot. at 18-20. Plaintiffs cannot explain how transporters and warp drive,

21  which existed in science fiction long before the creation of Star Trek, are uniquely

22  implemented in the Star Trek Works. Nor have Plaintiffs alleged in their FAC or

23  addressed in their Opposition how a Federation logo can be protected when it

24  indisputably was copied from the United Nations flag, or how the triangular medals

25  on Star Trek uniforms are distinct from those used by military, religious, and other

26  groups. Plaintiffs do dispute the fact that "pointy ears" are not original to Vulcans,

27  though it is the only feature Plaintiffs list in their FAC in claiming protection of the

28  

by copyright law, and there are no trademark claims in this case.

1 entire Vulcan species. FAC ¶ 47 at 35. Only distinctive characters are protectable, not

2 an entire race or species that has an unoriginal trait. Plaintiffs' claim to an expansive

3 "Star Trek" universe does not allow Plaintiffs to assert copyright protection over

4 unoriginal elements. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340,

5 350 (1991) ("Copyright does not prevent subsequent users from copying from a prior

6 author's work…elements that are not original" or in the "public domain.").

7     **4.**    ***Language:***   The Klingon language, like all languages, is a "system" used

8 to generate expressions of various creative ideas. Although a particular *expression* of

9 language may be copyrightable, the language itself is not.[10] Here, Plaintiffs have not

10 alleged that Defendants have employed Klingon in any way that might violate

11 Plaintiffs' protected expression in any of the Star Trek Works. Plaintiffs also assert

12 that "language is only useful if it can be used to communicate with people, and there

13 are no Klingons with whom to communicate." Opp. at 16:14-16. All languages,

14 including Klingon, have an "infinitely generative capacity"—i.e., they provide "the

15 ability to communicate new thoughts and ideas." Michael Adelman, *Constructed*

16 *Languages and Copyright: A Brief History and Proposal for Divorce*, 27 Harv. J.L. &

17 Tech. 543, 559 (2014) (arguing that while "snippets of Klingon dialogue" may be

18 copyrightable, the language itself is not). But fans regularly use Klingon to express

19 their own creative ideas.[11] Plaintiffs' claims based on the Klingon language fail.

20     **5.**    ***Mood and Theme:*** A mood or theme is unprotectable because it "is only

21 an idea which stands behind a protectable expression." *Ideal Toy Corp. v. Kenner*

22 *Prods. Div. of Gen. Mills Fun Group, Inc.*, 443 F. Supp. 291 (D.C.N.Y. 1977).

23 Plaintiffs concede that they do not own a monopoly on the "science fiction action

---

[10] Notably, Plaintiffs do not claim to own a copyright in the Klingon language. Nor could they. As Oracle conceded in its suit against Google, "Google and others could employ the Java [computer programming] language – much like anyone could employ the English language to write a paragraph without violating the copyrights of other English language writers." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1368 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2887 (2015).

[11] Fans have used Klingon to perform a soliloquy from Hamlet (https://www.youtube.com/watch?v=CiRMGYQfXrs), give a tour of their home (https://www.youtube.com/watch?v=55G_TDLcURw), and The Klingon Language Institute promotes the Klingon language and culture (http://www.kli.org/).

adventure" genre, but they nonetheless assert that the "mood and theme" of Defendants' works—namely, "science fiction action adventure"—infringes Plaintiffs' works.  FAC ¶ 46 at 34, ¶ 47 at 39. Plaintiffs have failed to explain how the "mood and theme" of Defendants' works infringes upon their alleged protectable expression.

   ***6.***   **<u>Scènes à Faire:</u>**   The parties agree that *scènes à faire* are not protected, and Plaintiffs do not dispute that stock science fiction concepts such as starships, spacedocks, and space settings cannot form the basis of a copyright claim. In their FAC, however, Plaintiffs claim that Defendants have infringed Plaintiffs' works by using starships, spacedocks, beaming up, transporters, warp drive, phasers, stardates, Starfleet, triangular medals on uniforms, and a federation of planets. FAC ¶ 46 at 19, 22, 25-26, 32. Although Plaintiffs argue that Defendants have "painstakingly copied" numerous elements from the "Star Trek universe," Plaintiffs cannot plausibly state that each of these elements—all of which are staples of the science fiction genre—are *original to Star Trek*, and therefore protectable. *See Althouse v. Warner Bros. Entm't*, No. CV 13-00696-RGK SSX, 2014 WL 2986939, at *4 (C.D. Cal. Apr. 28, 2014).

   ***7.***   **<u>Characters:</u>** The parties agree that copyright protection is available only for characters that are "especially distinctive." Opp. at 19; *see also DC Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015). Here, Plaintiffs have failed to adequately allege that the characters Garth of Izar, Soval, Richard Robau, or John Gill are sufficiently distinctive to merit copyright protection. Instead of citing to specific, distinctive character traits, they cite to *categories* of traits that could be used to identify a character (e.g., "makeup and jewelry," FAC ¶ 46, at 11). And the only traits Plaintiffs have identified are not distinctive – e.g., John Gill is "narrator"; Richard Robau is "Starfleet captain"; Soval is "Vulcan ambassador;" and Garth of Izar is "Captain Kirk's hero who prevailed in the Battle of Axanar." FAC ¶ 47. Plaintiffs' claims as to characters without distinct traits should be dismissed or stricken.

   **B.**   **<u>Plaintiffs' Claims Are Not Sufficiently Specific To Survive</u>**

   Plaintiffs do not dispute the basic principle that, to state a claim, they must

1   identify "which specific original works are the subject of the copyright claim." *N. Am.*

2   *Thought Combine, Inc. v. Kelly*, No. 01 Civ. 8112(LMM), 2003 WL 355237, at *2

3   (S.D.N.Y. Feb. 18, 2003). Plaintiffs argue they have sufficiently identified the works

4   at issue because they have (1) provided a ***non-exhaustive list*** of the specific elements

5   of their works they claim Defendants have appropriated, and (2) alleged that

6   Defendants have infringed ***every single Star Trek television episode and motion***

7   ***picture ever created*** – totaling well over 700 works. FAC ¶¶ 15, 46-47.

8       Plaintiffs have not plausibly alleged that all 700+ Star Trek Works have been

9   infringed by the Axanar Works.  Plaintiffs improperly suggest they can claim a

10  separate infringed work every time an element reappears in a subsequent derivative

11  work. FAC ¶¶ 46-47; Opp. at 21:12-15 (stating that "[E]ach time the U.S.S. Enterprise

12  appears in their *Axanar* Works, [Defendants] are infringing upon each and every Star

13  Trek Copyrighted Work in which the U.S.S. Enterprise appears"). This demonstrates a

14  fundamental misunderstanding about copyright protection for derivative works.

15  Specifically, a copyright to a derivative work *does not* extend to preexisting material.

16  17 U.S.C. § 103(b).[12]  So there is not another copyright just because the same element

17  appears in a later derivative work.  Further, Star Trek characters and settings vary

18  widely across seasons. Defendants' RJN, Dkt. No. 30 at ¶¶ 1-3.

19      Plaintiffs' argument that infringements of multiple episodes within a series can

20  be analyzed on an aggregate basis conflates substantial similarity analysis (which

21  elsewhere they claims is "unnecessary") with pleading requirements. In any event, in

22  the lone case Plaintiffs rely on for this point, the court noted that the challenged book

---

23  [12] Plaintiffs ignore Defendants' point that the FAC does not provide notice about

24  whether the films, as opposed to the television episodes, contain any original
    expression that Defendants have allegedly infringed. If the only protected, original

25  elements were from the television episodes allegedly owned by CBS as opposed to the
    films allegedly owned by Paramount, then Paramount (which claims to own only

26  films) has no standing in this action.  Further, without the infringing works identified,
    Defendants are prevented from establishing that the Short Mockumentary is not

27  infringing through a comparison.  Plaintiffs fail entirely to respond to the cases cited
    in Defendants' Motion demonstrating that this analysis would otherwise be proper at

28  this stage, including *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)
    and *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007); Mot. at
    25:15-22.

"draws from 84 of the 86 *Seinfeld* episodes." *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 135 (2d Cir. 1998). Thus, the plaintiff did not simply claim infringement of every single *Seinfeld* episode, but, rather, identified which specific episodes were allegedly infringed, and excluded two that were not. *Id*. As in *Castle Rock*, Plaintiffs should be required to identify the specific works they claim Defendants have infringed amongst all the Star Trek works they claim to own.

To avoid this requirement, Plaintiffs rely heavily on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, which is neither contrary to Defendants' position nor binding. 167 F. Supp. 2d 1114 (C.D. Cal. 2001). The defendant in *Perfect 10* was an Internet operator that was sued for massive infringements involving wholesale copying by the defendant's users of "thousands" of the plaintiffs' separately copyrighted photographs. The "user-dependent nature of this copyright infringement" meant that the number of infringed works "could vacillate hour-to-hour, day-to-day," rendering it impractical for the plaintiffs to list each copyrighted work that was allegedly infringed. *Id*. at 1120. Here, Plaintiffs' claims extend to a narrow body of two of Defendants' creative, unique works. They do not involve fluid, "user-dependent" infringement, or wholesale copying of any of Plaintiffs' works, let alone thousands of works. While it is impossible for the not-yet-completed film, Plaintiffs should be able to specify exactly which works have been infringed by the Short Mockumentary.

Lastly, Plaintiffs argue that their allegations on "information and belief" are proper because they are based on facts within Defendants' possession and control. However, to the extent Plaintiffs' allegations are based on Defendants' *public* statements made online or through social media, unlike the testing data and consumer complaints in the *Keegan* case cited by Plaintiffs, such facts obviously are not exclusively within Defendants' control.   At a minimum,   Plaintiffs' claims for contributory and vicarious infringement should be dismissed because Plaintiffs have failed to allege any *facts* supporting them.  *See* FAC ¶¶ 57-58, 61-62.

### C.   Plaintiffs' Claims Based on the Potential Fan Film are Premature

Plaintiffs do not dispute that the Potential Fan Film is an unfinished work still in production, acknowledging that Peters "continues to" write the *Axanar* Script, which contradicts the allegation that the script is "fully locked." FAC ¶¶ 9, 36. And while Plaintiffs allege that "one third" of the "visual effects" are complete, Plaintiffs do not specify *what* visual effects those are, and do not even allege that these visual effects are infringing. Thus, Plaintiffs have not explained how the Court could possibly compare Plaintiffs' works with the unfinished film in order to determine whether there is substantial similarity as to the plot, themes, dialogue, mood, setting, pace, characters, or sequence of events. *See Gilbert v. New Line Prods., Inc.*, No. CV 09-02231 RGK, 2009 WL 7422458, at *2 (C.D. Cal. Nov. 16, 2009) (Klausner, J.).

In arguing that their claims are ripe, Plaintiffs rely on two distinguishable cases. First, unlike in *Danjaq, LLC v. Universal City Studios, LLC*, Plaintiffs here have not alleged that a script was *sold* to anyone (it was not), that Defendants *purchased* a script (they did not), or even that one definitive script exists (it does not).  No. CV 14-02527 SJO (Ex), 2014 WL 7882071 (C.D. Cal. Oct. 2, 2014).  Indeed, Plaintiffs admit that Mr. Peters "continues to write the script" for the Potential Fan Film.  FAC ¶ 9.[13] Second, unlike here, in *Walt Disney Productions v. Filmation Associates*, the defendant had completed the story board, reel, trailer, and other physical reproductions of the infringing character designs, which enabled the court to compare the "visual resemblances" and the "totality of the characters' attributes and traits" between the parties' works.  628 F. Supp. 871, 874 (C.D. Cal. 1986). Plaintiffs have made no such allegations here.

Plaintiffs improperly conflate the Short Mockumentary, the "Vulcan Scene," and the *Axanar* Script with the unfinished film. Opp. at 23:16-18, 24:12-16, 25:9-11. Unlike the film, the Short Mockumentary and the Vulcan Scene are complete and fixed, and can be compared against Plaintiffs' works. With respect to the unfinished

---

[13] Further, unlike in *Danjaq*, Plaintiffs do not (and cannot) accuse Defendants of copying any major Star Trek character, such as Captain Kirk or Spock.

1  script, courts have held that preliminary works such as draft screenplays are "too
2  unreliable in determining substantial similarity" as to the final work. *Walker v. Time*
3  *Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985); *Quirk v. Sony Pictures*
4  *Entm't, Inc.*, No. C 11-3773 RS, 2013 WL 1345075, at *6 (N.D. Cal. April 2, 2013).

5       Plaintiffs' lawsuit seeks to enjoin Defendants from "continuing to…produce"
6  any of the *Axanar* Works, including the Potential Fan Film. FAC, Prayer   ¶¶ 4-5.
7  Plaintiffs argue that an injunction against an infringing work does not violate the First
8  Amendment *if the work is not fair use*.  Fair use "calls for a case-by-case analysis,"
9  and prevents copyright from "stifl[ing] the very creativity which the law is designed to
10 foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994).  Fair use is
11 impossible to evaluate without a complete film, as it requires consideration of the
12 amount taken, whether the use is transformative, and other factors. That Plaintiffs
13 have not yet filed a motion for preliminary injunction is of no moment. Plaintiffs'
14 claims based on the Potential Fan Film improperly seek premature injunctive relief,
15 would constitute a prior restraint, and should be dismissed or stricken.[14]

16 **III.   CONCLUSION**

17      For all the reasons set forth in the Motion and herein, Defendants respectfully
18 request that the Court dismiss or strike Plaintiffs' claims to the extent they (1) are
19 based on elements not protected by copyright law; (2) fail to sufficiently identify the
20 works and copyrights that have allegedly been infringed; and/or (3) are based on the
21 unfinished Potential Fan Film and are therefore premature.

22 Dated:  April 25, 2016                    WINSTON & STRAWN LLP

23

24                                By:  */s/ Erin R. Ranahan*
                                       Erin R. Ranahan
25                                     Attorneys for Defendants,
                                       AXANAR PRODUCTIONS, INC.
26                                     and ALEC PETERS

27  _____
    [14] Plaintiffs do not attempt to distinguish or otherwise respond to *Globe Int'l, Inc. v.*
28  *Nat'l Enquirer, Inc.*, No. 98-10613 CAS (MANX), 1999 WL 727232, at *5 (C.D. Cal.
    Jan. 25, 1999) (injunction of article not yet published constitutes prior restraint
    because the court could not yet evaluate fair use).