RANDAZZA LEGAL GROUP, PLLC
Marc J. Randazza (SBN 269535)
mjr@randazza.com
Alex J. Shepard (SBN 295058)
ajs@randazza.com
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Amicus,*
*Language Creation Society*

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation, | Case No. 2:15-cv-09938-RGK-E |
| Plaintiffs, | **BRIEF OF *AMICUS CURIAE*** |
| v. | **Date:** May 9, 2016<br>**Time:** 9:00 AM |
| AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual, and DOES 1-20, | **Judge:** Hon. R. Gary Klausner<br>**Courtroom:** 850, 8th Floor |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................III

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

1.0   INTRODUCTION ........................................................................ 1

2.0   CREATION AND DEVELOPMENT OF THE KLINGON LANGUAGE .................... 3

3.0   COPYRIGHT LAW DOES NOT PROTECT SPOKEN LANGUAGES .................... 7

4.0   THE INTELLECTUAL PROPERTY CLAUSE WOULD NOT PROTECT A LANGUAGE 14

5.0   CONCLUSION .............................................................................. 19

# TABLE OF AUTHORITIES

**CASES**

*Adobe Sys. v. Southern Software, Inc.,*
  1998 U.S. Dist. LEXIS 1941 (N.D. Cal. Jan. 30, 1998) .......................... 12

*Arica Inst., Inc. v. Palmer,*
  970 F.2d 1067 (2d Cir. 1992) ..................................................... 1

*Baker v. Selden*,
  101 U.S. 99 (1879).......................................................... 10

*CDN Inc. v. Kapes,*
  197 F.3d 1256 (9th Cir. 1999) ................................................. 9

*Computer Assocs. Int'l v. Altai,*
  982 F.2d 693 (2d Cir. 1992) ................................................. 11

*Dalton v. Robert Jahn Corp.,*
  209 Ore. App. 120, 146 P.3d 399 (Or. Ct. App. 2006) ........................ 7

*ELTRA Corp. v. Ringer,*
  579 F.2d 294 (4th Cir. 1978) ................................................ 12

*Ets-Hokin v. Skyy Spirits, Inc.,*
  225 F.3d 1068 (9th Cir. 2000) ............................................... 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991)......................................................... 15

*Golan v. Holder,*
  132 S. Ct. 873 (2012)........................................................ 9

*Grosso v. Miramax Film Corp.,*
  383 F.3d 965 (9th Cir. 2004) ................................................ 10

*Keane v. Fox TV Stations, Inc.,*
297 F.Supp.2d 921 (S.D. Tex. 2004) ...................................................... 10

*Loglan Inst., Inc. v. Logical Language Group, Inc.,*
962 F.2d 1038 (Fed. Cir. 1992) ............................................................. 13

*Norwood v. Vance,*
591 F.3d 1062 (9th Cir. 2010) ................................................................ 8

*Oracle Am., Inc. v. Google Inc.,*
750 F.3d 1339 (Fed. Cir. 2014) ............................................................ 12

*Reiss v. National Quotation Bureau, Inc.,*
276 F. 717 (S.D.N.Y. 1921) ................................................................... 10

*State v. Hosier,*
157 Wn.2d 1, 133 P.3d 936 (Wash. 2006) .............................................. 7

*Zalewski v. Cicero Builder Dev., Inc.,*
754 F.3d 95 (2d Cir. 2014) .................................................................... 9

## STATUTES

17 U.S.C. § 102 ........................................................................................... 9

17 U.S.C. § 101 ........................................................................................... 4

## OTHER AUTHORITIES

Clare Hutchison and Shadia Nasralla, "Star Trek fans tie the knot at
'Klingon wedding,'" REUTERS (Oct. 19, 2012) ................................... 7, 17

David Deans, "Welsh ministers were asked for information about UFO
sightings . . . and they replied in KLINGON," WALESONLINE
(July 9, 2015) ........................................................................................ 7

Eddie Dean, *Klingon as a Second Language*,
WASHINGTON CITY PAPER (Aug. 9, 1996) ........................................ 2

Frasier, "Star Mitzvah" (orig. air Nov. 5, 2002) ........................................ 6

Gavin Edwards, *Dejpu'bogh Hov rur Qablli!\**,
WIRED (Aug. 1996) ........................................ 4, 16, 17

Lebowski, Jeffrey., THE BIG LEBOWSKI, 1998 ........................................ 16

Marc Okrand *et al.*, "Wild and Whirling Words: the Invention and Use
of Klingon," in FROM ELVISH TO KLINGON: EXPLORING INVENTED LANGUAGES
(Michael Adams ed., 2011) ........................................ 4

Marc Okrand, "Klingon for the Galactic Traveler" (1997) .................... 4

Marc Okrand, "The Klingon Way: A Warrior's Guide" (1996) ............... 4

National Commission on New Technological Uses of Copyrighted
Works, Final Report 20 (1979) ........................................ 11

Okrand, Marc, The Klingon Dictionary (1985) ........................................ 1, 4

Roger Cheesbro, "Gilgamesh: a Klingon Translation" (2003) .............. 6

Star Trek: Deep Space Nine, *Tacking Into the Wind*
(orig. air May 12, 1999) (stardate unknown) ........................................ 13

Star Trek: The Next Generation, "The Emissary"
(orig. air June 29, 1989) (stardate 42901.3) ........................................ 2

Tara Bannow, "Local company creates Klingon dictionary,"
MINNESOTA DAILY (Nov. 17, 2009) ........................................ 17

William Shakespeare, "Much Ado About Nothing: The Restored
Klingon Text" (Nick Nicholas trans., 2003) ........................................ 6

William Shakespeare, "The Klingon Hamlet" (Nick Nicholas *et al.*
    trans., 2000) ............................................................................. 6

## REGULATIONS

37 C.F.R. § 202.1 ........................................................................ 9, 12

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I, § 8, cl. 8. ........................................................ 15

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Amicus The Language Creation Society hereby submits its brief as *amicus curiae* relative to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint or Strike Plaintiffs' Complaint in Part.  Hearing on Defendant's Motion is scheduled for May 9, 2016 at 9:00 a.m.

## 1.0   Introduction – 𐎣 𐎖𐎗 𐎅𐎗𐎒𐎂 𐎔𐎂𐎍𐎂𐎋𐎄𐎂 𐎔𐎂𐎒𐎂[1]

In 1984, Marc Okrand invented the Klingon language.[2]  Before that, when actors played Klingons in Star Trek television programs or movies, they simply uttered guttural sounds or spoke in English (Federation Standard).[3]  Given that Paramount Pictures commissioned the creation of some of the language, it is understandable that Paramount might feel some sense of ownership over the creation.  But, feeling ownership and having ownership are not the same thing.  The language has taken on a life of its own.

---

[1]  Latin transliteration: "wa' Dol nIvDaq matay'DI' maQap."
[2] Mr. Okrand himself has asserted that the Klingon language, tlhIngan Hol, was received by him from a captured Klingon named Maltz. *See* Okrand, Marc, The Klingon Dictionary (1985).   Thus, Plaintiffs may be estopped from asserting otherwise for the purposes of this litigation.  *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1075 (2d Cir. 1992) (author who disavowed inventing enneagrams publicly cannot claim invention inconsistently to improve a litigation position).
[3] Klingons also appeared more human, notably missing forehead ridges, which was retconned into a storyline about genetic engineering and viral spread of the change.

1  Thousands of people began studying it, building upon it, and using it

2  to communicate among themselves.  As the Klingon proverb says,

3  ⌐⌐ ⌐⌐⌐ ⌐⌐⌐⌐⌐ ⌐⌐⌐⌐⌐⌐⌐⌐ ⌐⌐⌐⌐.[4]

4       The greater whole is a living community of Klingon speakers.  In

5  fact, there are groups of people for whom Klingon is their only

6  common language.  There are friends who only speak Klingon to

7  each other.  In fact, at least one child was initially raised as a native

8  speaker of Klingon.  (*See* Eddie Dean, *Klingon as a Second*

9  *Language*, WASHINGTON CITY PAPER (Aug. 9, 1996), attached as

10  **Exhibit 1**.)[5]  Now that Klingon has become an actual living language,

11  Paramount seeks to reach out and stake its ownership by using

12  copyright law.  But, as "Klingons do not surrender", neither do those

13  who speak Klingon.  Star Trek: The Next Generation, "The Emissary"

14  (orig. air June 29, 1989) (stardate 42901.3).

15       Plaintiffs claim copyright over the entire Klingon language,

16  not any particular words or portions of dialogue from any episodes of

17  Star Trek, but in the entire vocabulary, graphemes, and grammar

18  rules of Klingon.  ⌐⌐⌐ ⌐⌐⌐ ⌐⌐⌐⌐⌐⌐ ⌐⌐ ⌐⌐⌐⌐⌐⌐⌐⌐⌐.[6]

19  _____

20  [4] English translation: "we succeed together in a greater whole."
    Latin transliteration: "wa' Dol nIvDaq matay'DI' maQap."

21  [5] Available   at:   <http://www.washingtoncitypaper.com/articles/
    10873/klingon-as-a-second-language> (last accessed April 27, 2016).

22  [6] English translation: "a fool and his head are soon parted."  Latin

23  transliteration: "tugh qoH nachDaj je chevlu'ta'."

RANDAZZA | LEGAL GROUP

1    Plaintiff Paramount Pictures Corporation ("Paramount") has
2  claimed this copyright interest for many years, but has not actually
3  asserted it in court before now – most likely because the notion of it is
4  ⲟⲅⲓ ⲉ∠ⲕ.[7]

5    Various organizations such as the Klingon Language Institute, as
6  well as individual linguistic scholars, have studied and used the
7  Klingon language for years.   Although various licensing
8  arrangements were made at times, they could not have truly
9  imagined that the day would come that Paramount would seek to
10  claim ownership over their work, and to potentially threaten their
11  intra-personal communication.  It is not that they were ⲇⲕⲓ or
12  ⲕ∠ⲓ[8] when it comes to intellectual property rights.  It would not
13  take a Vulcan to explain their logic – even the Pakleds would know
14  that nobody can "own" a language.

**2.0   Creation and Development of the Klingon Language**

16    Linguistics professor Marc Okrand initially created the Klingon
17  language.  Paramount hired him to create dialogue for Klingon
18  characters in the film Star Trek III: The Search for Spock (1984).  *See*
19  Marc Okrand *et al.*, "Wild and Whirling Words: the Invention and Use

---

[7] English translation: "it lacks reasons."  Latin transliteration: "meq Hutlh."
[8] English translation: "pathetic" or "arrogant," respectively.  Latin transliteration: "Dogh" or "nguq."

of Klingon," in FROM ELVISH TO KLINGON: EXPLORING INVENTED LANGUAGES 111, 113 (Michael Adams ed., 2011).  The version of Klingon he created for the film was not a functioning language, however, and Okrand had to add more grammatical features and vocabulary before publishing the first Klingon dictionary in 1985.[9]  *See* Okrand *et al.* at 120.  Okrand intended this to be a novelty or joke item, but it quickly escaped its inventor's grasp, and it took on a life, independent from the linguistic lab.  More than 250,000 copies of the dictionary sold. (*See* Gavin Edwards, *Dejpu'bogh Hov rur Qablli!*, WIRED (Aug. 1996), attached as **Exhibit 2**, at 5.)[10]  Once in the hands of so many, it was inevitable that the language would free the bounds of its textual chains.  Okrand has since published two additional books on the Klingon language.  *See* Marc Okrand, "The Klingon Way: A Warrior's Guide" (1996); *see also* Marc Okrand, "Klingon for the Galactic Traveler" (1997).

---

[9] Despite Paramount owning copyright in the dictionary, the Court should note that absent an explicit copyright assignment, any hypothetical copyright in the Klingon language would likely belong to Okrand.  17 U.S.C. § 101's list of "work[s] made for hire" does not include languages, and a language that functions beyond the scope of a film cannot be considered "as a part of a motion picture."

[10] Available at: <http://www.wired.com/1996/08/es-languages/> (last accessed Apr. 27, 2016).

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

1    Klingon as a functioning language quickly became a matter of
2   interest not only to Star Trek fans, but to linguists as well.    The
3   nonprofit Klingon Language Institute ("KLI") was formed in 1992 for
4   the purpose of studying, promoting, and spreading the Klingon
5   language.  (*See* KLI home page, attached as **Exhibit 3**.)[11]   The KLI
6   publishes a quarterly academic journal called the HolQeD that
7   discusses "Klingon linguistics, language, and culture."  (*See* KLI
8   "HolQeD" page, attached as **Exhibit 4**.)[12]   It provides instructional
9   classes in Klingon and even offers a "Klingon Language Certification
10   Program."   (*See* KLI Certification Program page, attached as
11   **Exhibit 5**.)[13]   The certification test is typically administered at the
12   annual qep'a', the official conference of the KLI, during which
13   members of the institute socialize and present in Klingon.  (*See* KLI
14   "qepmey" page, attached as **Exhibit 6**.)[14]   The KLI has overseen
15   Klingon wordplay contests as well, including a category for best
16   insult.  (*See* KLI "Klingon Wordplay Contests" page, attached as

17

18

---

19   [11]  Available at: <http://www.kli.org/> (last accessed Apr. 27, 2016).
20   [12]  Available   at:   <http://www.kli.org/resources/holqed/>   (last
     accessed Apr. 27, 2016).
21   [13]  Available at: <http://www.kli.org/activities/klcp/> (last accessed
     Apr. 27, 2016).
22   [14]  Available   at:   <http://www.kli.org/activities/qepmey/>   (last
23   accessed Apr. 27, 2016).

**Exhibit 7**.)[15]   The language is even robust enough to allow for translations of famous literary works such as the *Epic of Gilgamesh*,[16] and Shakespeare's *Hamlet*[17] and *Much Ado About Nothing*.[18]

Klingon is no longer just a few lines of dialogue in a movie. Microsoft's search engine, Bing, allows users to translate text to and from Klingon.  (*See* Bing translator page, attached as **Exhibit 8**.)[19] The popular television show The Big Bang Theory featured Klingon dialogue at several points, with one episode even featuring a game of Klingon Boggle.  (*See* "Klingon," the Big Bang Theory Wiki, attached as **Exhibit 9**).[20]  Similarly, Klingon was substituted for Hebrew as a gag in the hit television show "Frasier".  See Frasier, "Star Mitzvah" (orig. air Nov. 5, 2002).  A Swedish couple spoke their marriage vows in Klingon during a traditional Klingon wedding ceremony.[21]  (*See* Clare Hutchison and Shadia Nasralla, "Star Trek

---

[15] Available at: <http://www.kli.org/wiki/Klingon_Wordplay_Contests> (last accessed Apr. 27, 2016).

[16] Roger Cheesbro, "Gilgamesh: a Klingon Translation" (2003).

[17] William Shakespeare, "The Klingon Hamlet" (Nick Nicholas *et al*. trans., 2000).

[18] William Shakespeare, "Much Ado About Nothing: The Restored Klingon Text" (Nick Nicholas trans., 2003).

[19] Available at: <http://www.bing.com/Translator> (last accessed Apr. 27, 2016).

[20] Available at: <http://bigbangtheory.wikia.com/wiki/Klingon> (last accessed Apr. 27, 2016).

[21] Contracts written in Klingon would be valid. *Dalton v. Robert Jahn Corp.*, 209 Ore. App. 120, 133 n.10, 146 P.3d 399, 406 n. 10 (Or. Ct.

1  fans tie the knot at 'Klingon wedding,'" REUTERS (Oct. 19, 2012),

2  attached as **Exhibit 10**.)[22]  Even foreign governments have seen fit to

3  provide official statements in Klingon.  (*See* David Deans, "Welsh

4  ministers were asked for information about UFO sightings . . . and

5  they replied in KLINGON," WALESONLINE (July 9, 2015), attached as

6  **Exhibit 11**.)[23]  Klingon has spread throughout the world,[24] and its

7  students have surpassed its creator in linguistic fluency.  (*See* **Exhibit 2**

8  at 6) (stating that "[t]he few people who can jabber in Klingon

9  effortlessly have all surpassed Marc Okrand, who isn't fluent in his

10  own invention").

11  **3.0   Copyright Law Does Not Protect Spoken Languages**

12        Nobody can use 𝕼𝕰𝕳 𝕳𝕰𝕿 𝕳𝕾𝕸[25] to limit others' rights to

13  freely use a language.  Plaintiffs allege in their list of "Infringing

14

15  App. 2006) (finding that even if contractual provision were
   "practically 'written in Klingon,'" it would be enforceable when

16  interpreters were available to explain its terms to parties).

17  [22] Available at: <http://www.reuters.com/article/us-startrek-britain-
   klingonwedding-idUSBRE89I19C20121019> (last accessed Apr. 27,

18  2016).

19  [23] Available at: <http://www.walesonline.co.uk/news/wales-news/
   welsh-ministers-were-asked-information-9624682> (last accessed Apr.

20  27, 2016).

21  [24] Transmission of a message in Klingon could even support a
   criminal conviction.  *See State v. Hosier*, 157 Wn.2d 1, 12, 133 P.3d

22  936, 941 (Wash. 2006).

   [25] Literally "mind property law," as Klingon lacks a word for

23  "intellectual."  Latin transliteration: "yab bang chut."

1  Element[s] from *Prelude to Axanar*" that Defendants' use of

2  "Klingonese or Klingon, the native language of Qo'noS," is infringing.

3  (ECF 26 at 31.)  Given that this portion of the FAC does not specify

4  any particular words or dialogue that are allegedly infringing, one

5  must interpret this as an assertion that the Klingon language in its

6  entirety is copyrighted by Plaintiffs.   And by opening this door,

7  Plaintiffs will learn ⟨Klingon script⟩ ⟨Klingon script⟩ ⟨Klingon script⟩ ⟨Klingon script⟩ ⟨Klingon script⟩ ⟨Klingon script⟩

8  ⟨Klingon script⟩.[26]

9       Plaintiffs argue that "[l]anguage is part of dialogue," which

10 may properly be considered in a substantial similarity analysis.

11 (ECF 31 at 10.)  This is not a case about Defendants using specific,

12 previously used Star Trek dialogue, such as "Tea, Earl Grey, Hot", but

13 rather about precluding Defendants from creating original dialogue

14 that happens to be in the Klingon language.   Plaintiffs provide no

15 authority supporting their assertion that Klingon (or any language)

16 can be copyrighted.   "[T]here is no Klingon word for 'deference'",

17 and Plaintiffs are entitled to none.  *Norwood v. Vance*, 591 F.3d 1062,

18 1074 n. 4 (9th Cir. 2010) (Thomas, J. dissenting).

19       The Copyright Act does not extend protection in a work to "any

20 idea, procedure, process, system, method of operation, concept,

21 

---

22 [26] This Klingon proverb translates to "Sometimes the only thing more
   dangerous than a question is an answer."   Latin transliteration: "rut

23 neH 'oH vIta'Qo' Qob law' yu' jang."

principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such a work."   17 U.S.C. § 102(b).  This is a statutory recognition of the long-existing "idea-expression dichotomy."  *Golan v. Holder*, 132 S. Ct. 873, 890 (2012). Furthermore, the doctrine of merger provides that if an idea "can only be expressed in a limited number of ways," those means of expression "cannot be protected, lest one author own the idea itself."  *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102-03 (2d Cir. 2014); *see CDN Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir. 1999) (stating that "[i]n order to protect the free exchange of ideas, courts have long held that when expression is essential to conveying the idea, expression will also be unprotected").  Copyright law protects the means of expressing ideas or concepts, but it does not give the copyright holder the right to exclude others from making use of the ideas or concepts themselves.  Neither is one permitted to register copyright in a word.  *See* 37 C.F.R. § 202.1(a).

Despite these fundamental principles of copyright law, Plaintiffs assert copyright in the entirety of the Klingon language.  What is a language other than a procedure, process, or system for communication?  What is a language's vocabulary but a collection of words?   The vocabulary and grammar rules of a language

provide instructions for a speaker to articulate thoughts and ideas.[27] One cannot disregard grammatical rules and still be intelligible, and creating one's own vocabulary only worked well for the Bard. Vocabulary and grammar are no more protectable than the bookkeeping system in *Baker v. Selden*, 101 U.S. 99, 101 (1879). Plaintiffs are free to register copyright any particular expression that they create using the language, such as the Klingon Dictionary or the dialogue of a particular Star Trek episode, but they cannot claim ownership of the building blocks of the language. *Compare Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004) ("the only similarities in dialogue between the two works come from the use of common, unprotectable poker jargon"); *Keane v. Fox TV Stations, Inc.*, 297 F.Supp.2d 921, 935 (S.D. Tex. 2004) ("Words and short phrases, names, titles, slogans, facts, information in the public domain, and field-specific jargon are also not amenable to copyright.")  Just as poker jargon is unprotectable, so is Klingon.  To grant such protection would be to attempt to leash that which

---

[27] A constructed language is not merely a compilation of otherwise meaningless words.  *Contrast Reiss v. National Quotation Bureau, Inc.*, 276 F. 717 (S.D.N.Y. 1921) (L. Hand, J.) (applying the 1909 Act to a code book of 6,325 coined, but meaningless, five-letter words).

RANDAZZA | LEGAL GROUP

1  Plaintiffs have no right to control.   Plaintiffs will learn that

2  𐍈𐍈𐍈𐍈𐍈𐍈𐍈𐍈𐍈𐍈 𐍈𐍈𐍈𐍈𐍈 𐍈𐍈𐍈 𐍈𐍈𐍈.[28]

3      To the extent that Plaintiffs may assert a copyright interest in the

4  individual words or character symbols of the Klingon language, the

5  doctrine of merger also precludes such a right.[29]   Thoughts and

6  ideas can only be communicated in a given language by using the

7  vocabulary of that language.  As noted by the Second Circuit:

8      Copyrighted language may be copied without infringing
       when there is but a limited number of ways to express a
9      given idea. . . . In the computer context, this means that
       when specific instructions, even though previously
10     copyrighted, are the only and essential means of
       accomplishing a given task, their later use by another will
11     not amount to infringement.

12

13  *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 708 (2d Cir. 1992)

14  (*quoting* National Commission on New Technological Uses of

15  Copyrighted Works, Final Report 20 (1979).)  Phrases in a constructed

16  _____

17  [28]  English translation: "brute strength is not the most important asset
       in a fight."  Latin transliteration: "Suvlu'taHvIS yapbe' HoS neH."

18  [29]  The Ninth Circuit regards the doctrine of merger as an affirmative
       defense to copyright infringement claims.  *See Ets-Hokin v. Skyy*
19     *Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000).  In the context of an
       alleged copyright in an entire language, however, this doctrine
20     should apply to the question of copyrightability, as the same
       conclusion will apply in every case.  To hold otherwise would be to
21     give alleged copyright holders such as Plaintiffs the ability to make
       chilling legal threats without any likelihood of prevailing on an
22     infringement claim.

23

RANDAZZA | LEGAL GROUP

language, like Klingon, are the functional equivalent of computer language instructions.   While individual Klingon words may be expressive, one cannot speak Klingon without using these words.[30]  The idea of speaking Klingon thus merges with the expression of particular words, making Klingon as a language not entitled to copyright protection.   How can one communicate the idea of "honor" in Klingon without using the words "ᴛᴇᴘ", "ᴊᴄᴙ", or "ᴊᴛᴊ"?[31]

To the extent Plaintiffs are claiming copyright in the written Klingon language, such is also improper.   The specific characters used in a language are analogous to typeface designs.   Such designs are considered industrial designs and thus not entitled to copyright protection.  *See ELTRA Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978); *see also Adobe Sys. v. Southern Software, Inc.*, 1998 U.S. Dist. LEXIS 1941, *11 (N.D. Cal. Jan. 30, 1998) (stating that "[t]ypeface designs are not copyrightable").   *See also* 37 C.F.R. 202.1(d) (precluding copyright registration in typeface).

---

[30] Thus, this case should not be confused with the recent litigation over the Java computer language.   As observed by the Federal Circuit, that case "was not a situation where Oracle was selecting among preordained names and phrases to create its packages." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) cert den'd 135 S. Ct. 2887 (U.S. 2015).  Here, speakers of Klingon are limited to preordained words and syntax.

[31] Latin transliteration: "batlh", "quv", and "pop", respectively.

RANDAZZA | LEGAL GROUP

1    No court has squarely addressed the issue of whether a

2    constructed spoken language is entitled to copyright protection.

3    The only known prior litigation of constructed languages was in

4    *Loglan Inst., Inc. v. Logical Language Group, Inc.*, 962 F.2d 1038 (Fed.

5    Cir. 1992), which was an appeal of a trademark cancellation.  That

6    case centered on a constructed language called Loglan that its

7    creator, Dr. James Brown, intended to be "symbolic logic made

8    speakable."  *Id*. at 1039.  He created an institute to promote the

9    language, which registered the mark "Loglan" for "Dictionaries and

10   Grammars" in 1988.  *Id*. at 1040.  A splinter group later formed and

11   published a newsletter that made several references to Loglan, and

12   was threatened by the Loglan institute with a trademark

13   infringement suit.  *See id*.  The splinter group then successfully

14   petitioned the TTAB to cancel the registration for "Loglan" because

15   the term was generic for the Loglan language.  *Id*.  The Federal

16   Circuit affirmed the cancellation, finding the term to be generic

17   because it was commonly used to refer to a specific language.  *See*

18   *id*. at 1041-42.

19   Just as "great men do not seek power, it is thrust upon them",[32]

20   this Court now has the opportunity to weigh in on the copyrightability

21

22   [32] Star Trek: Deep Space Nine, *Tacking Into the Wind* (orig. air May

23   12, 1999) (stardate: unknown).

1   of language and declare that there is no basis in either law or policy

2   to allow copyright in a spoken language.

3   **4.0   The Intellectual Property Clause Would not Protect a Language**

4   ⟨klingon script⟩

5        To claim copyright in a language is to claim ownership over all

6   possible thoughts and artistic expression that might employ that

7   language.  If not ownership, such a claim at least provides some

8   support for the idea that the copyright owner could, at some point,

9   simply pull the plug on any future development in the language.  It is

10  a breathtakingly vast legal assertion that encompasses particular

11  expression that the claimed copyright owner, by definition, cannot

12  even conceive of.

13       The Framers of the Constitution would have been familiar with

14  the role of the Académie Française, which exercises oversight of the

15  entirety of the French language.  In effect, significant parts of French

16  are constructed.  The Framers would have been shocked to learn

17  that they might be prohibited from writing and speaking in French

18  were the Academy to register copyright in its constructions.

19  However, that would be the eventual result, if this court commits the

20  ⟨klingon script⟩[34] of blessing Paramount's claim to the intellectual

21  property inherent in a language.

22  [33]  Latin transliteration: "'oHbe' yab bang Qutlhwl' 'oH ghltlh Hol."

23  [34]  English translation: "bad idea."  Latin transliteration: "qab qech."

The purpose of the Copyright Act, and the Copyright and Patent Clause of the Constitution, are "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  U.S. Const. Art. I, § 8, cl. 8.  The Supreme Court has found that this is the very purpose of the Copyright Act, as opposed to "reward[ing] the labor of authors."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991).  "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work . . . It is the means by which copyright advances the progress of science and art."  *Id*. at 350.  But, if Paramount were able to claim the exclusive right to use or license the use of this language, an entire body of thought would be extinguished. ⟨ꝗⴽy ꝓⵎꝿⵉⴽⴼ²ⵣⴽꝓ ⟨ꝗⵔⵏ²ꝗꞮ ⴽⴻⵏ⟨ꞅ⁷ ꝗⵕⵍⴼⵎ⟩.[35]

Rather than promoting the development of science and the useful arts, permitting an entity to copyright an entire language serves only to stifle the creation of further expressive works.  As explained in Section 2.0, *supra*, there is a growing body of literary works in Klingon and a growing number of Klingon speakers.  Plaintiffs did not create any of this; they only provided the toolset that allows

---

[35] English translation: "pity the warrior that kills all his enemies."  Latin transliteration: "Hoch jaghpu'Daj HoHbogh SuvwI' yIvup."

1    for the creation of such works.  And yet, by Plaintiffs' account, all of

2    these people are serial copyright infringers.  Everyone who translates

3    something into Klingon or writes a poem in Klingon, everyone who

4    gives a speech or presentation at a KLI meeting or Star Trek

5    convention in Klingon, anyone who *gives lessons on how to speak*

6    *Klingon*, is a copyright infringer.  ꞋꞏꞋꞏꞋ ꞋꞏꞋ ꞋꞏꞋꞋꞋꞋ ꞋꞋꞋ![36]

7         The threat of a copyright infringement suit thus hangs over the

8    head of anyone who even thinks about using Klingon in any

9    capacity.  Paramount initially threatened the KLI, likely the greatest

10   source of Klingon linguistic development in the world, with a cease

11   and desist letter before granting it a "license" to use the language.

12   (*See* **Exhibit 2** at 6.)

13        Had Paramount followed through with its threat, it would have

14   deprived the world of Klingon translations of classic literary works

15   (despite being the copyright owner, Paramount did not actually

16   write or commission these works).  ꞋꞋꞋꞋꞋꞋꞋꞋꞋꞋꞋꞋꞋꞋ ꞋꞋꞋ

17   ꞋꞋꞋꞋꞋꞋꞋꞋ  ꞋꞋꞋ  ꞋꞋꞋ.[37]   It   would   have   meant   that

18   performances, meetings, and even friendships would never have

19

20   ───────────────────

21   [36] English translation: "This will not stand, man."  Latin transliteration:
     "not Qam ghu'vam, loD!"   *See also* Lebowski, Jeffrey., THE BIG
22   LEBOWSKI, 1998.
     [37] English translation: "a sharp knife is nothing without a sharp eye."
23   Latin transliteration: "leghlaHchu'be'chugh mln lo'laHbe' taj jej."

RANDAZZA | LEGAL GROUP

existed.  Paramount would have caused the Klingon language to stagnate, or at least would have severely hindered its development.

Plaintiffs attempt to downplay the significance of their claim of ownership over the Klingon language by arguing that "a language is only useful if it can be used to communication with people, and there are no Klingons with whom to communicate."  (ECF 31 at 16.) First, this is a non-sequitur; a process or system need not be "useful" in order to preclude copyright protection, and Plaintiffs provide no authority to the contrary.

But more importantly, this is an insulting assertion.  Many humans speak Klingon.  The annual qep'a' involves singing and storytelling in Klingon.  (*See* **Exhibit 6**.)  People get married in Klingon. (*See* **Exhibit 10**.)  Linguist d'Armond Speers even spent three years teaching his infant son to speak Klingon.  (*See* Tara Bannow, "Local company creates Klingon dictionary," Minnesota Daily (Nov. 17, 2009), attached as **Exhibit 12**.)[38]  Speaking and writing in Klingon is not simply a matter of transposing words from a different language, either; it has an unusual grammatical structure that provides a different connotation than other languages.  (*See* **Exhibit 2** at 5.)  For example, the Sesame street theme song lyrics "Sunny day, chasing the clouds away" translates into Klingon as 𝕏𝕏𝕏 𝕏𝕏𝕏 𝕏𝕏𝕏𝕏𝕏𝕏

---

[38] Available at: <http://www.mndaily.com/2009/11/17/local-company-creates-klingon-dictionary> (last accessed April 27, 2016).

1   ⟨Klingon text⟩,[39] or "day of the

2   daytime star, the clouds are filled with dread and forced to flee."

3   (**Exhibit 2** at 6.)  In other words, Klingon is not just a language, but it is

4   a state of mind – and that state cannot be constrained by Copyright

5   Law.

6        And insult aside, Plaintiff's contention is absurd.  A language is

7   not constrained to a given ethnic or racial group.  By their logic,

8   Ancient Greek is not "useful" because the Ancient Greeks are no

9   longer with us, and the language has no native speakers, despite it

10  being the original language of some of the seminal literary and

11  philosophical works of the western world.  Plaintiffs' logic would

12  seem to dictate that French is not "useful" if spoken by a native

13  German. ⟨Klingon text⟩![40].

14       There are significant works of literary value regularly created in

15  the Klingon language today, authored by people who have no

16  affiliation whatsoever with Plaintiffs.  These works exist only by

17  Plaintiffs' permission or neglect, and there can be no doubt that

18  others interested in creating works in Klingon have been deterred by

19  Plaintiffs' claim of ownership of the Klingon language.  Allowing this

20

21  _____
    [39] Latin transliteration: "jaj pem puQmo', chaw'nIS je Haj 'ej Haw' raD

22  chen."
    [40] English translation: "the wind does not respect a fool."  Latin

23  transliteration: "qoH vuvbe' SuS"

1   Sword of Kahless to hang over anyone who wishes to speak or write

2   in Klingon does not serve the purpose of the Copyright and Patent

3   Clause, and instead robs the world of valuable expressive works.

4   **5.0   CONCLUSION**

5       Klingon gave Star Trek characters convincing dialogue.  But, it

6   broke its chains and took on a life of its own – a life that the

7   Copyright Act has no power to control.   Klingon, like any other

8   spoken language, provides tools and a system for expressing ideas.

9   No one has a monopoly over these things, effectively prohibiting

10  anyone from communicating in a language without the creator's

11  permission.  This is not permitted by the law, and it is not why the

12  Constitution allows Congress to provide copyright protection.  Thus,

13  Defendant's motion to dismiss should be allowed with respect to

14  Plaintiffs' copyright claims over the Klingon language.  ⟨Klingon script⟩'![41]

15

16  Dated: April 27, 2016                    Respectfully Submitted,

17                                           /s/ Marc J. Randazza

18                                           Marc J. Randazza
                                             Alex Shepard

19                                           RANDAZZA LEGAL GROUP, PLLC

20                                           *Attorneys for Amicus,*
                                             *Language Creation Society*

21

22

    _____

23  [41]  English translation: "Success!" Latin transliteration: "Qapla'"

RANDAZZA | LEGAL GROUP

Case No. 2:15-cv-09938-RGK-E

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 27, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

_____

Employee,
Randazza Legal Group, PLLC