1  Erin R. Ranahan (SBN: 235286)
   eranahan@winston.com
2  Andrew S. Jick (SBN: 278943)
   ajick@winston.com
3  Kelly N. Oki (SBN: 304053)
   koki@winston.com
4  WINSTON & STRAWN LLP
   333 South Grand Avenue
5  Los Angeles, CA 90071
   Telephone:   (213) 615-1700
6  Facsimile:   (213) 615-1750

7  Attorneys for Defendants and
   Counterclaimants, AXANAR
8  PRODUCTIONS, INC., and
   ALEC PETERS

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

13  PARAMOUNT PICTURES                 Case No. 2:15-cv-09938-RGK-E
    CORPORATION, a Delaware
14  corporation; and CBS STUDIOS INC., a   *Assigned to:  Hon. R. Gary Klausner*
    Delaware corporation,

15                Plaintiffs,            **ANSWER OF DEFENDANTS
                                         AXANAR PRODUCTIONS, INC.,**
16         vs.                          **AND ALEC PETERS TO
                                         PLAINTIFFS' FIRST AMENDED**
17  AXANAR PRODUCTIONS, INC., a         **COMPLAINT; COUNTERCLAIM
    California corporation; ALEC PETERS, FOR DECLARATORY RELIEF;**
18  an individual; and DOES 1-20,       **DEMAND FOR JURY TRIAL**

19                Defendants.

20                                      Original Complaint Filed: 12/29/15
                                        Amended Complaint Filed: 3/11/16
21

22

23

24

25

26

27

28

1   Defendants Axanar Productions, Inc. ("Axanar Productions") and Alec Peters
2   ("Defendants") hereby respond to the First Amended Complaint (the "FAC"), filed by
3   Plaintiffs Paramount Pictures Corporation and CBS Studios, Inc. ("Plaintiffs"), as
4   follows:

### NATURE OF THE ACTION

6   1.     Defendants admit that Star Trek is a "cultural phenomenon" with
7   "millions of fans throughout the world."   With respect to Plaintiffs' claim of
8   ownership and any "historical texture" given by Plaintiffs, Defendants lack knowledge
9   or information sufficient to form a belief about the truth of the allegations, and on that
10  basis deny them.    The remaining allegations in paragraph 1 constitute legal
11  conclusions to which no response is required.   To the extent a response is required,
12  Defendants deny the allegations.

13  2.     Defendants admit that Defendants have made a short film entitled
14  *Prelude to Axanar*, that they intend to produce a fan film called *Axanar*, and that they
15  have created (and continue to create) multiple versions of a script for the contemplated
16  *Axanar* film.    Defendants refer to the alleged public statement for its contents.
17  Defendants admit that Axanar Productions raised over $1 million in fan donations to
18  produce *Prelude to Axanar* and *Axanar*.   Defendants deny that the "*Axanar* Works"
19  infringe, are substantially similar to, or are derivative of Plaintiffs' works as alleged in
20  paragraph 2.  The remaining allegations in paragraph 2 are legal conclusions to which
21  no response is required.   To the extent a response is required, Defendants deny the
22  allegations.

### JURISDICTION AND VENUE

24  3.     The allegations in paragraph 3 are legal conclusions to which no response
25  is required.   To the extent a response is required, Defendants lack knowledge or
26  information sufficient to form a belief about the truth of the allegations, and on that
27  basis deny them.

28

4.      The allegations in paragraph 4 are legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that they reside in this state, but deny the remaining allegations.

5.      The allegations in paragraph 5 are legal conclusions to which no response is required.   To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

## THE PARTIES

6.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6, and on that basis deny them.

7.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7, and on that basis deny them.

8.      Defendants admit that Axanar Productions is a California corporation that produces fan films.  Except as otherwise admitted, the allegations in paragraph 8 are denied.

9.      Defendants admit that Alec Peters is a citizen of California and resides in Los Angeles, California.  Mr. Peters is the president of Axanar Productions and executive producer of the *Axanar* Works.  Defendants admit that Mr. Peters is involved in writing multiple versions of the script for the *Axanar* Works and in producing the *Axanar* Works.

10.     The allegations in paragraph 10 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

11.     The allegations in paragraph 11 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations, including the allegation that Plaintiffs suffered any injury as a result of any of the actions described in the FAC.

12.    The allegations in paragraph 12 are legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

**ALLEGATIONS COMMON TO ALL CLAIMS**

**I.    Plaintiffs' Copyrighted Star Trek Works**

13.    The allegations in paragraph 13 concern facts that are publicly available and/or within Plaintiffs' knowledge, and therefore no response is required.  To the extent a response is required, Defendants refer to the Star Trek works for their contents.  Defendants admit that Gene Roddenberry created Star Trek and that *The Original Series* ran from 1966 until 1969.  Except as otherwise answered, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

14.    The allegations in paragraph 14 concern facts that are publicly available and/or within Plaintiffs' knowledge, and therefore no response is required.  To the extent a response is required, Defendants refer to the Star Trek episode described in paragraph 14 for its contents.  Defendants admit that Garth of Izar appears in only one episode of Star Trek.  Except as otherwise answered, the allegations are denied.

15.    The allegations in paragraph 15 concern facts that are publicly available and/or within Plaintiffs' knowledge, and therefore no response is required.  To the extent a response is required, Defendants refer to the Star Trek television series described in paragraph 15 for their contents.   Except as otherwise answered, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

16.    The allegations in paragraph 16 concern facts that are publicly available and/or within Plaintiffs' knowledge, and therefore no response is required.  To the extent a response is required, Defendants refer to the Star Trek motion pictures described in paragraph 16 for their contents.   Except as otherwise answered,

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

17.    The allegations in paragraph 17 concern facts that are publicly available and/or within Plaintiffs' knowledge, and therefore no response is required.  To the extent a response is required, Defendants refer to the *Star Trek* motion pictures described in paragraph 17 for their contents.   Except as otherwise answered, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

18.    The allegations in paragraph 18 concern facts that are publicly available and/or within Plaintiffs' knowledge, and therefore no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

19.    The allegations in paragraph 19 concern facts that are publicly available and/or within Plaintiffs' knowledge, and therefore no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

20.    The allegations in paragraph 20 are legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

21.    The allegations in paragraph 21 are legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and on that basis deny them.

## II.    Defendants' *Axanar* Works

### A.    Star Trek: Prelude to Axanar

22.    Defendants deny that *Prelude to Axanar* is "infringing."   Defendants admit that they received donations through Kickstarter to produce the short film

*Prelude to Axanar*.  Except as otherwise answered, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22, and on that basis deny them.

23.     Defendants admit that Mr. Peters was involved in writing the screenplay for *Prelude to Axanar*.  The allegation regarding possible involvement of Doe defendants constitutes a legal conclusion to which no response is required.

24.     Defendants admit that Axanar Productions produced *Prelude to Axanar*.

25.     The allegation regarding "Certain Doe Defendants" is a legal conclusion to which no response is required.

26.     The allegations in paragraph 26 are legal conclusions to which no response is required.

27.     To the extent the allegations in paragraph 27 constitute legal conclusions or concern facts that are publicly available, no response is required.  To the extent a response is required, Defendants admit that *Prelude to Axanar* was published on Youtube.com in 2014.  Except as otherwise answered, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27, and on that basis deny them.

28.     Defendants deny that *Prelude to Axanar* is or was intended to be a derivative work, or that it infringes Plaintiffs' works.  Defendants further deny that the full title of *Prelude to Axanar* is "Star Trek: Prelude to Axanar."  Defendants admit that *Prelude to Axanar* was inspired by Star Trek, and tells a story about Garth of Izar that has not been told before.  To the extent the allegations in paragraph 28 concern facts regarding *Prelude to Axanar* that are publicly available, no response is required and Defendants refer to the film for its contents.

29.     The allegations in paragraph 29 refer to information that is publicly available, and therefore no response is required.  To the extent a response is required, Defendants admit that this statement appeared in connection with the Kickstarter campaign, and refers to the alleged Kickstarter campaign for its contents.

30.     The allegations in paragraph 30 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants refer to *Prelude to Axanar* for its contents.  Defendants deny that *Prelude to Axanar* infringes any of Plaintiffs' works.

**B.    Star Trek: Axanar**

31.     Defendants admit that they received donations through Kickstarter and Indiegogo to fund the production of the *Axanar* movie.   Except as otherwise answered, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31, and on that basis deny them.

32.     The allegation that "the *Axanar Script*, and versions thereof, for the *Axanar* Motion Picture" are "fixed works" is a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the allegation. Defendants admit that they have created and continue to create multiple versions of the script for the *Axanar* motion picture.  To the extent the allegations in paragraph 32 concern facts that are publicly available, including any public announcement allegedly made by Defendants, Defendants refer to such publicly available sources for their contents.  Defendants admit that Axanar Productions released the "Vulcan Scene" in 2015. Defendants deny that they have filmed any other scene from the *Axanar* motion picture aside from the "Vulcan Scene."   Except as otherwise answered, Defendants deny the allegations in paragraph 32.

33.     Defendants admit that Mr. Peters was involved in writing the multiple versions of the script for the *Axanar* motion picture.  The allegation regarding possible involvement of "certain Doe Defendants" constitutes a legal conclusion to which no response is required.

34.     Defendants admit that they began production on the *Axanar* motion picture but halted production in response to Plaintiffs' lawsuit.  Except as otherwise answered, Defendants deny the allegations in paragraph 34.

35.     The allegations in paragraph 35 constitute legal conclusions as to "certain Doe Defendants" to which no response is required.

36.     The allegations in paragraph 36 concern facts that are publicly available, and therefore no response is required.   To the extent a response is required, Defendants refer to the alleged Facebook page for its contents.

37.     The allegations in paragraph 37 constitute legal conclusions to which no response is required.

38.     The allegations in paragraph 38 concern facts that are publicly available, and therefore no response is required.   To the extent a response is required, Defendants refer to the alleged webpage for its contents.

39.     Defendants admit that the "Vulcan Scene" was posted on the Axanar Productions website and on Youtube.com.

40.     The allegations in paragraph 40 concern facts that are publicly available, and therefore no response is required.   To the extent a response is required, Defendants refer to the alleged webpage for its contents.

41.     To the extent the allegations in paragraph 41 constitute legal conclusions, no response is required.   Defendants refer to *Prelude to Axanar*, the Vulcan Scene, and the various scripts for the *Axanar* motion picture for their contents.   Defendants deny that it has been determined what they "will" incorporate into the motion picture given that this lawsuit has stalled and impacted the planned production.

42.     To the extent the allegations in paragraph 42 concern the content of a public statement, Defendants refer to the alleged statement for its contents.   To the extent paragraph 42 implies that Defendants have completed one third of the visual effects of the *Axanar* motion picture, Defendants deny that allegation.

43.     The allegations in paragraph 43 concern facts that are publicly available, and therefore no response is required.   To the extent a response is required, Defendants refer to the alleged article for its contents.   Defendants deny that the

1   *Axanar* Works violate Plaintiffs' copyrights and further deny that Mr. Peters has

2   "admitted" that the *Axanar* works violate Plaintiffs' copyrights.

3   **III.    The *Axanar* Works Are Substantially Similar to the Star Trek Copyrighted**

4   **Works**

5          44.    The allegations in paragraph 44 state legal conclusions to which no

6   response is required.   To the extent a response is required, Defendants deny the

7   allegations.

8          45.    The allegations in paragraph 45 state legal conclusions to which no

9   response is required.   To the extent a response is required, Defendants deny the

10  allegations.

11         46.    Defendants deny that *Prelude to Axanar* copies any protected expression

12  from any of the Star Trek Works.   Defendants deny that *Prelude to Axanar* is

13  substantially similar to, is derivative of, or infringes any of the Star Trek Works.   The

14  allegations that *Prelude to Axanar* "copies many elements" from the Star Trek works,

15  that Defendants "intentionally sought to replicate" the Star Trek Works, and that

16  Defendants sought to create a "Star Trek film" are legal conclusions to which no

17  response is required.   Defendants further deny that it is relevant that Plaintiffs believe

18  *Prelude to Axanar* to be a "Star Trek" work given that this is not a trademark, Lanham

19  Act or unfair competition case, and is thus not in any way about the use of the "Star

20  Trek" name.    In response to the allegations in paragraph 46 regarding the various

21  allegedly "copyrighted Star Trek elements" that *Prelude to Axanar* allegedly copied,

22  Defendants refer to and incorporate by reference the arguments made in their Motion

23  to Dismiss or Strike the FAC (ECF No. 29) and Reply in support thereof (ECF No.

24  33).   Moreover, to the extent Plaintiffs' allegations in paragraph 46 concern facts that

25  are publicly available and/or within Plaintiffs' knowledge, no response is required.

26  Defendants refer to *Prelude to Axanar* and to the identified Star Trek Works for their

27  contents.   To the extent any further response is required, and except as otherwise

28  answered, Defendants deny the allegations in paragraph 46. In particular, Defendants

1   deny the allegation that Richard Robau appears in Prelude to Axanar (he does not) and

2   further deny that Soval's robe in Prelude to Axanar contains "ancient Vulcan script"

3   (the robe contains Chinese letters).

4        47.    Defendants deny that the Vulcan Scene copies any protected expression

5   from any of the Star Trek Works.  Defendants deny that the Vulcan Scene is

6   substantially similar to, is derivative of, or infringes any of the Star Trek Works.  The

7   allegations that Defendants "replicate" various alleged "elements" from the Star Trek

8   Works are legal conclusions to which no response is required.  In response to the

9   allegations in paragraph 47 regarding the various "infringing elements from the

10  Vulcan Scene," Defendants refer to and incorporate by reference the arguments made

11  in their Motion to Dismiss or Strike the FAC (ECF No. 29) and Reply in support

12  thereof (ECF No. 33). Moreover, to the extent Plaintiffs' allegations in paragraph 47

13  concern facts that are publicly available and/or within Plaintiffs' knowledge, no

14  response is required.  Defendants refer to the Vulcan Scene and to the identified Star

15  Trek Works for their contents.  To the extent any further response is required, and

16  except as otherwise answered, Defendants deny the allegations in paragraph 47.

17  Defendants further deny the allegation that Soval's robe in the "Vulcan Scene"

18  contains "ancient Vulcan script" (the robe contains Chinese letters) and further deny

19  that the Vulcan Scene depicts the "original Garth of Izar costume worn by the actor

20  from *The Original Series*" (Mr. Peters purchased the costume for his own collection

21  but it was never used in connection with the Vulcan Scene or the *Axanar* motion

22  picture).

23       48.    The allegations in paragraph 48 constitute legal conclusions to which no

24  response is required.  To the extent a response is required, Defendants deny the

25  allegations.

26       49.    The allegations in paragraph 49 constitute legal conclusions to which no

27  response is required.  To the extent a response is required, Defendants deny the

28  allegations.

9

50.     The allegations in paragraph 50 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

51.     Defendants admit that Plaintiffs did not enter a formal, express license with Defendants to create the *Axanar* Works.  To the extent paragraph 51 alleges that Defendants needed to enter an express license with Plaintiffs to create the *Axanar* Works, this is a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that allegation.

### FIRST CLAIM FOR RELIEF

### Copyright Infringement

### (Against All Defendants)

52.     No response is required to the statement in paragraph 52.

53.     The allegations in paragraph 53 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

54.     The allegations in paragraph 54 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

55.     The allegations in paragraph 55 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

### SECOND CAUSE OF ACTION

### Contributory Copyright Infringement

### (Against All Defendants)

56.     No response is required to the statement in paragraph 56.

57.     The allegations in paragraph 57 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

58.     The allegations in paragraph 58 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

59.     The allegations in paragraph 59 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

## THIRD CAUSE OF ACTION

### Vicarious Copyright Infringement

### (Against All Defendants)

60.     No response is required to the statement in paragraph 60.

61.     The allegations in paragraph 61 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

62.     The allegations in paragraph 62 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

63.     The allegations in paragraph 63 constitute legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations.

## FOURTH CLAIM FOR RELIEF

### Declaratory Judgment

### (Against All Defendants)

64.     No response is required to the statement in paragraph 64.

65.     Defendants admit that they did not obtain Plaintiffs' express authorization to produce the *Axanar* motion picture, but deny that any such authorization was required.  Defendants further deny that they are in the process of producing the *Axanar* motion picture because production has been halted as a result of this lawsuit.

66.    To the extent the allegations in paragraph 66 concern an alleged public announcement, Defendants refer to that announcement for its contents.  The remaining allegations in paragraph 66 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

67.    The allegations in paragraph 67 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

68.    The allegations in paragraph 68 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

69.    The allegations in paragraph 69 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

## PRAYER FOR RELIEF

The Prayer for Relief constitutes legal conclusions to which no response is required.  To the extent a response is required, Defendants deny that Plaintiffs are entitled to any relief on their claims in this action.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Fair Use)

1.    Plaintiffs' claims are barred because any use by Defendants of Plaintiffs' works constitutes fair use.

## SECOND AFFIRMATIVE DEFENSE

### (Waiver)

2.    Plaintiffs' claims are barred by the doctrine of waiver.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

12

3.    Plaintiffs' claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

### (First Amendment)

4.    Plaintiffs' claims are barred by the First Amendment.

### FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

5.    Plaintiffs' claims are barred by the doctrine of estoppel.

### SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

6.    Plaintiffs' claims are barred in whole or in part by their failure to mitigate their damages, if any.

### SEVENTH AFFIRMATIVE DEFENSE

### (Acknowledgment, Ratification, Consent and Acquiescence)

7.    Plaintiffs acknowledged, ratified, consented to, and acquiesced in Defendants' conduct.

### EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Register)

8.    Plaintiffs failed to obtain valid copyright registrations, failed to properly or timely register their works, failed to properly renew their registrations, and/or failed to comply with other statutory requirements or formalities.

### NINTH AFFIRMATIVE DEFENSE

### (Invalidity of Unenforceability of Copyright)

9.    Plaintiffs' claims are barred because their copyrights are invalid and/or unenforceable.

### TENTH AFFIRMATIVE DEFENSE

### (Authorized Use)

10.    Plaintiffs' claims are barred because they impliedly authorized Defendants' allegedly infringing use of their works.

13

## ELEVENTH AFFIRMATIVE DEFENSE

### (Forfeiture or Abandonment)

11.    Plaintiffs' claims are barred because they have forfeited or abandoned their copyrights.

## TWELFTH AFFIRMATIVE DEFENSE

### (Misuse of Copyright)

12.    Plaintiffs' claims are barred by the doctrine of misuse of copyright.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Constitutionally Excessive Damages)

13.    Plaintiffs' claims are barred because the statutory damages sought are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained in violation of the Due Process Clause.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

14.    Plaintiffs' claims fail because they lack standing.

## ADDITIONAL DEFENSES

Defendants reserve the right to assert additional affirmative defenses as discovery and investigation proceed.

WHEREFORE, having fully answered or otherwise responded to the allegations contained in the FAC, Defendants pray for judgment as follows:

1.    Plaintiffs' FAC be dismissed in its entirety and with prejudice;

2.    Plaintiffs take nothing by their FAC;

3.    Defendants be dismissed from this action;

4.    Defendants recover from Plaintiffs their costs of suit, including their expenses and attorneys' fees to the maximum extent permitted by law; and

5.    Defendants recover such other and additional relief as the Court deems just and proper.

14

## COUNTERCLAIM

Defendants and Counterclaimants Axanar Productions, Inc. and Alec Peters counterclaim against Plaintiffs and Counter-defendants Paramount Pictures Corporation and CBS Studios, Inc. as follows:

## JURISDICTION AND PARTIES

1.     The claim for relief set forth in this Counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Court has original jurisdiction over the Counterclaim under 28 U.S.C. § 1331.

2.     The Court has personal jurisdiction over the parties because some or all of them reside in this state and because all Counter-defendants conduct continuous, systematic, and routine business within this state and judicial district.

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because one or more Counter-defendants reside in this district and a substantial part of the events giving rise to the claim occurred or will occur in this district.

4.     Axanar Productions, Inc. is a California corporation based in Los Angeles County.  Alec Peters is an individual residing in Los Angeles County, California.

5.     Paramount Pictures Corporation is, on information and belief, a Delaware corporation based in Los Angeles, California.  CBS Studios Inc. is, on information and belief, a Delaware corporation based in New York, New York.

## NATURE OF THE ACTION

### Background

6.     From its debut almost fifty years ago, Star Trek has promoted the ideals of tolerance, unity, inclusion, peace, hope and bold adventure.

7.     With these ideals in mind, it is not surprising that Gene Roddenberry, the creator of Star Trek, celebrated and encouraged fan fiction in the Star Trek universe. In the 1976 book *Star Trek: The New Voyages*—which is a collection of short Star Trek stories written by fan fiction authors—Mr. Roddenberry provided this Foreword:

...Certainly the loveliest happening of all for us was the fact that so many others began to feel the same way [about Star Trek as we did]. Television viewers by the millions began to take Star Trek to heart as their own personal optimistic view of the Human condition and future. They fought for the show, honored it, cherished it, wrote about it—and have continued to do their level best to make certain that it will live again.

...We were particularly amazed when thousands, then tens of thousands of people began creating their own personal Star Trek adventures. Stories, and paintings, and sculptures, and cookbooks. And songs, and poems, and fashions. And more. The list is still growing. It took some time for us to fully understand and appreciate what these people were saying. Eventually we realized that there is no more profound way in which people could express what Star Trek has meant to them than by creating their own very personal Star Trek things.

Because I am a writer, it was their Star Trek stories that especially gratified me. I have seen these writings in dog-eared notebooks of fans who didn't look old enough to spell "cat." I have seen them in meticulously produced fanzines, complete with excellent artwork. Some of it has even been done by professional writers, and much of it has come from those clearly on their way to becoming professional writers. Best of all, all of it was plainly done with love.

It is now a source of great joy for me to see their view of Star Trek, their new Star Trek stories, reaching professional publication here. I want to thank these writers, congratulate them on their efforts, and wish them good fortune on these and further of their voyages into other times and

dimensions. Good writing is always a very personal thing and comes from the writer's deepest self. Star Trek was that kind of writing for me, and it moves me profoundly that it has also become so much a part of the inner self of so many other people.

Viewers like this have proved that there is a warm, loving, and intelligent lifeform out there—and that it may even be the dominant species on this planet.

That is the highest compliment and the greatest repayment that they could give us.

8.     The cultural phenomenon of Star Trek has attracted a loyal and diverse fan base from all over the world, often referred to as "Trekkies." This fandom has been celebrated though conventions, books, movies, videos, art, short stories, *Fanzines,* and thousands upon thousands of additional, original, creative contributions by fans celebrating the universe they have so deeply connected with.

9.     Historically, Plaintiffs tolerated Star Trek fan fiction in all its glory, likely recognizing that it was only fueling the dedicated Star Trek fans, and was not harming Plaintiffs, or otherwise impeding Star Trek fans' capacity to appreciate and pay to see official Star Trek works offered to them. Until this lawsuit, Plaintiffs, or any predecessor claiming to own copyrights in the Star Trek universe, had never filed a lawsuit against any Star Trek fan in connection with that fan's efforts to contribute to the wealth of Star Trek fan fiction that currently exists.

10.   Plaintiffs' lawsuit against Defendants here is at odds with the Star Trek ideals of inclusion, tolerance, unity, and peace. Instead, it sets out to destroy and exclude one of Star Trek's biggest fans, Defendant Alec Peters, for his creation of

1  original works that honor, celebrate and contribute to the deep tradition of fan fiction
2  in the Star Trek universe.

3      11.    Mr. Peters is a lifelong Star Trek fan.  Starting with the very first Star
4  Trek teaser appearing on NBC in the summer of 1966, Mr. Peters has seen every
5  episode of Star Trek many times over.  When Mr. Peters was just eight years old and
6  NBC moved Star Trek to 10:00 p.m., his mother would put him to bed at 8:00 p.m.,
7  but would wake him up at 10:00 p.m. only so that he could watch Star Trek, before
8  putting him back to bed again.

9      12.    Mr. Peters follows all the licensed Star Trek content.  He has read
10 hundreds of Star Trek comic books, and even made his own Star Trek comic book
11 when he was in elementary school.  Mr. Peters owns every single Star Trek technical
12 manual, first editions of every single original series Star Trek hardcover novel, and
13 has a 2½ foot long model of the Starship Enterprise in his living room.  In 1980, Mr.
14 Peters attended his first Star Trek convention.  In law school at the University of
15 North Carolina Chapel Hill, Mr. Peters joined his first Star Trek fan club.  Over the
16 years, Mr. Peters has seen every Star Trek movie at least a dozen times, including
17 seeing the 2009 Star Trek reboot four times in the theaters, more than any other movie
18 he has ever seen.

19     13.    In 2006, Mr. Peters attended the Paramount Star Trek 40th anniversary
20 auction at Christie's in New York and obtained his first two screen-used Star Trek
21 costumes.  Mr. Peters was so taken with this new hobby that he started a blog,
22 StarTrekProps.com, that is currently a leading source for information on Star Trek
23 Screen used props and costumes. Mr. Peters spent over $100,000 on these and the
24 other official Paramount auctions on props and costumes, making Mr. Peters one of
25 Paramount's biggest customers.

26     14.    Mr. Peters' expertise in this area was also recognized by CBS when they
27 hired him to sell the assets of the Star Trek Experience, the Las Vegas tourist
28 attraction and ride that was at the Las Vegas Hilton for ten years.  Mr. Peters cleared

out the 10,000 square foot warehouse filled with the remnants of the ride, salvaged the saleable pieces, and held both a warehouse sale and a CBS licensed auction. Afterwards,  Mr. Peters volunteered his time to help CBS with its Star Trek prop and costume archive.  Mr. Peters cataloged hundreds of props and costumes, donating his time and expertise to ensure that these relics of the TV shows and movies would be properly preserved for posterity. Mr. Peters even donated his warehouse space to house many of these objects, free of charge and photographed the items for CBS.

15.   In 2010, Mr. Peters obtained the original screen-used costume of the character Garth of Izar from the third season Star Trek episode "Whom Gods Destroy," a character that only ever appeared in one of the over 700 TV episodes that CBS claims to own (and not a single of the dozen movies that Paramount claims to own), and who appeared in that episode as a man that had gone mad after returning from war.  To Mr. Peters, this was his holy grail of collecting, because, despite being only a minor character from a 1969 episode, Garth of Izar was fascinating to Mr. Peters.  His connection to Garth of Izar was further solidified when Star Trek fan film pioneer, James Cawley, producer of *Star Trek: New Voyages*, the longest running Star Trek fan film, gave Mr. Peters the opportunity to play Garth of Izar in an episode.

16.   Like thousands of other Star Trek fans over the last several decades, Mr. Peters has celebrated his love for Star Trek through writing his own Star Trek stories, which most prominently have centered around Garth of Izar.  Mr. Peters began writing the script for *Axanar*, and over the course of four years, gathered a small group of Star Trek friends to help make something special.  In March of 2014, Mr. Peters launched a Kickstarter campaign, asking for $10,000 to make a modest Star Trek fan film, which he planned to further fund by selling some of his Star Trek prop and costume collection.  To everyone's surprise, "*Prelude to Axanar*" raised $101,000, and Mr. Peters and his team started working full time to get the short "Mockumentary" style film done.  The film shoot was the first week in May of 2014 and the short premiered at San Diego Comic-Con in July of 2014, and was distributed for free on YouTube,

1    where it still can be seen there today.  It has since then won 47 film festival awards all

2    over the world.

3        17.    With the enthusiasm and success of *Prelude to Axanar,* the Axanar team

4    hoped to continue that with a feature length film, and set up a Kickstarter to fund the

5    feature, and again raised far more than initially expected.  The script was revised, and

6    the team began to work on concept art for the uniforms, build ships, and create visual

7    effects.  Mr. Peters was eventually able to find a warehouse to rent and turn into a

8    soundstage, and he and his team shot the first scene—the "Vulcan Scene"—to show

9    what they could do, and raised more donations.  During this time, Mr. Peters kept

10   donors updated constantly with updates on Kickstarter and Indiegogo, a website with

11   news and even a daily blog on the production.  Fans flocked to Axanar to celebrate

12   their love for Star Trek.

13       18.    Mr. Peters believed he was operating within the tolerated realm of Star

14   Trek fan fiction, but nevertheless, reached out to CBS on multiple occasions in an

15   effort to seek guidelines about the production.  Given his extensive history with CBS,

16   including volunteering his time and expertise on the Star Trek archive, Mr. Peters

17   contacted CBS in July 2015 with the goal of participating in a dialogue regarding fan

18   films.  Since his initial work with *Star Trek: New Voyages* in 2010, Mr. Peters has

19   spoken with CBS Star Trek brand manager and licensing director John Van Citters,

20   whom Mr. Peters knew from working on the CBS Star Trek archive as a volunteer

21   expert.  In 2012, Mr. Peters met with CBS Consumer Products EVP Liz Kalodner on

22   the Paramount Studio lot.  In 2013, Mr. Peters met with Consumer Products VP Bill

23   Burke at the Las Vegas Star Trek Convention.  Mr. Peters also spoke with CBS Home

24   Video EVP Ken Ross, who attended the 2014 premier of *Prelude to Axanar* at the San

25   Diego Comic-Con.  Though CBS would not provide specific guidelines, Mr. Peters

26   understood from these discussions that as long as his works stayed non-commercial

27   they would be tolerated, and that CBS would let him know if he had "gone too far."

28

19.     Without any warning, and despite years of Mr. Peters' contributions in support of both CBS and Paramount, Mr. Peters first learned that Plaintiffs believed he had "gone too far" when he read in a news article that Plaintiffs had sued him. Neither CBS nor Paramount expressed any concerns to Mr. Peters, through a cease and desist letter or otherwise, before they filed this lawsuit.

20.     Mr. Peters later entered into an agreement with Plaintiffs, at their request, that Defendants defer shooting *Axanar* until after Defendants responded to the original complaint.  Since that time, Mr. Peters has continued his efforts to try and resolve the case and sought guidelines as to how Defendants can create the *Axanar* film and honor Axanar's donors in a manner that is acceptable to Plaintiffs and does not result in crippling liability against Mr. Peters and Axanar.

21.     Plaintiff Paramount's directors and producers have recently made public statements in support of Axanar and in favor of dropping this lawsuit.  On March 14, 2016, Justin Lin, the director of Paramount's upcoming Star Trek movie, tweeted the following about an article from the *Hollywood Reporter* that had attached and discussed Plaintiffs' FAC:

DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM

1    22.    This past Friday night, May 19, 2016, during a Star Trek fan event at

2    Paramount, J.J. Abrams—who produced and directed Paramount's Star Trek films in

3    2009 and 2013, and is producing the upcoming film—announced that:

4

5        A few months back there was a fan film, Axanar, that was getting made

6        and there was this lawsuit that happened between the studio and these

7        fans and Justin [Lin], I'll tell the story…was sort of outraged by this as a

8        longtime fan. We started talking about it and realized this was not an

9        appropriate way to deal with the fans.

10

11       The fans should be celebrating this thing. Fans of Star Trek are part of

12       this world. So he went to the studio and pushed them to stop this lawsuit

13       and now, within the next few weeks, it will be announced this is going

14       away, and that fans would be able to continue working on their project.

15

16    23.    Thus, even Plaintiffs' own producers and directors have recognized the

17   importance of fans to Star Trek, and have publicly renounced and called for the end of

18   the lawsuit against Defendants.

19    24.    Shortly thereafter, Adam Vary, a senior film reporter for BuzzFeed

20   News, tweeted the following announcement from CBS and Paramount that they were

21   in settlement discussions with Defendants, and would be providing guidelines for fan

22   films:

23

24

25

26

27

28

DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM



25.    Nevertheless, despite these public comments, the present action remains pending, and Defendants are currently left with uncertainty as to how Axanar may proceed with its film to fulfill the wishes of thousands of fans who have contributed.

### **Defendants Are Protected By Fair Use**

26.    Pursuant to Section 107 of the Copyright Act, 17 U.S.C. § 107, certain uses of copyrighted works are authorized by law as "fair uses." Fair use "calls for a case-by-case analysis," and prevents copyright from "stifl[ing] the very creativity which the law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994).

27.    In determining whether the use of a copyrighted work in any particular case is protected as fair use, the statutory factors to be considered include: (1) the purpose and character of the use, including whether such use is of a commercial nature; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

28.    Defendants' *Axanar* works qualify as fair use. Although this is not meant to be exhaustive, Defendants' use of ideas from Star Trek to create their own original works is protected by fair use for the following reasons, among others:

29.   *The Purpose And Character of the Use is Transformative:* Defendants' use is transformative, in that even though it is inspired by Star Trek, it provides new insights and meaning.  Defendants' works are designed to tell a story of a wholly different character from the stories contained in Plaintiffs' alleged works, about Garth of Izar, a character that has been ignored in Star Trek episodes and movies since his 1969 appearance.  Moreover, *Prelude to Axanar* portrays (and *Axanar* would seek to portray) Garth of Izar in a new and unique way—specifically, as a war veteran whose psychological troubles later in life resulted from his traumatic experiences during the Four Years War.  Star Trek aired during the Vietnam War, when it was politically unadvisable for the writer to examine issues such as PTSD, which led to his madness. *Axanar*, then, is both commentary and satire, in that it intends to expose the truth of the horrors of war in a way the original series could not do.  Mr. Peters specifically modeled his performance of the character of Garth of Izar after the veterans depicted in the documentary elements of "Band of Brothers," the HBO mini-series that chronicled the exploits of the 101st Airborne Division in World War II after Normandy.  Among other things, Mr. Peters was influenced by the soldiers' histories and experiences suffering from post-traumatic stress disorder, including the fact that they would not talk about the war with their families, and the distinct "far off look" that Mr. Peters observed in their eyes.  In this and other ways, Defendants have added new and original insight into the character of Garth of Izar and broader commentary on the treatment of war, PTSD, and related themes and issues in Star Trek. Defendants' use is not only transformative, but is also not commercial, in that it is fan fiction that has been and was always intended to be distributed for free online.

30.   *The Nature of the Copyrighted Work:* The style of *Prelude to Axanar* is a "Mockumentary" style which no official Star Trek work has ever done, and Axanar's planned film is about a character that has been largely ignored.  Plaintiffs cannot stop Defendants from building on the "idea" of Star Trek, or other facts or ideas contained

within its works, but can only seek to prohibit copying specific expression, which Defendants have not copied.

31. *The Amount and Substantiality of the Portion Used Related to the Copyrighted Work as a Whole Is Minimal:* Defendants have featured an obscure character, introduced new characters, and set their works in a timeline that has never been dealt with in authorized Star Trek works, predating the *Original Series* by 21 years. Defendants' works do not use any clips, dialogue, plotlines or primary characters from Plaintiffs' works, and do not resemble substantially any other Star Trek work. Instead, Defendants have created an original story inspired by Star Trek, as Gene Roddenberry hoped fans would continue to do.

32. *Defendants' Use Has Not Caused Market Harm to Plaintiffs:* Plaintiffs have not and will not suffer any market harm as a result of the creation and distribution of Defendants' works. Instead, these works offer free promotional value to Plaintiffs. The works are not intended to be commercialized, and will not be competing against Plaintiffs' works in movie theaters or otherwise sold for profit. Any individual who supports the *Axanar* film who would have otherwise seen Plaintiffs' works still will do so, and Mr. Peters and the vast majority of Axanar supporters will continue to pay for and fully support Plaintiffs' Star Trek works.

## COUNTERCLAIM

### (Declaratory Relief Re Non-Violation of Plaintiffs' Rights)

33. The allegations of paragraphs 1 to 32 are incorporated by reference.

34. A real and actual controversy has arisen and now exists between Plaintiffs and Defendants as to their rights and obligations regarding elements that have appeared from various Star Trek works that also appear in *Prelude to Axanar* and scripts that Defendants intended to incorporate into an additional *Axanar* work.

35. Considering the present lawsuit, which has served to bring a cloud over and halt Defendants' ongoing production, the controversy between Plaintiffs and

Defendants substantially impacts both parties' legal interests in a manner that is both real and immediate.

36.     Further, Defendants have a real and reasonable apprehension that if they proceed with their planned production, they will face additional litigation by Plaintiffs.

37.     Plaintiffs have sued Defendants for planning the feature film *Axanar*, and Defendants have put their project on hold until they can obtain the necessary guidance to proceed in a manner that will not increase potential liability.

38.     Defendants are entitled to a declaratory judgment that *Prelude to Axanar*, Defendants' scripts for the planned feature film *Axanar*, the Vulcan Scene, and any other fixed works that Plaintiffs claim are infringing, are not substantially similar to any of Plaintiffs' works; and/or are lawful under the fair use doctrine; and do not infringe Plaintiffs' copyrights.

## PRAYER FOR RELIEF

Defendants pray for the following relief on their Counterclaim:

1.     That the Court declare the rights and obligations of Plaintiffs and Defendants under the Copyright Act, and declare that *Prelude to Axanar* and the planned *Axanar* scripts and film are not infringing;

2.     That the Court award attorneys' fees and costs to Defendants as permitted by law; and

3.     That the Court award such other, further, or different relief that it may find just, proper, and equitable under the circumstances.

Dated:  May 23, 2016                    WINSTON & STRAWN LLP

By:  */s/ Erin R. Ranahan*
Erin R. Ranahan
Andrew S. Jick
Kelly N. Oki
Attorneys for Defendants and
Counterclaimants, AXANAR
PRODUCTIONS, INC. and
ALEC PETERS

26

1

## <u>DEMAND FOR JURY TRIAL</u>

2

3
     Pursuant to Federal Rule of Civil Procedure 38, Defendants/Counterclaimants

4
hereby demand a trial by jury on all claims which are triable to a jury in this action.

5

6
Dated:  May 23, 2016             WINSTON & STRAWN LLP

7
                   By: *<u>/s/ Erin R. Ranahan</u>*
                       Erin R. Ranahan

8
                       Andrew S. Jick

9
                       Kelly N. Oki
                       Attorneys for Defendants and

10
                       Counterclaimants, AXANAR
                       PRODUCTIONS, INC. and
                       ALEC PETERS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28