Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Kelly N. Oki (SBN: 304053)
koki@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
AXANAR PRODUCTIONS, INC.,
and ALEC PETERS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual; and DOES 1-20, <br><br> Defendants. | Case No. 2:15-cv-09938-RGK-E <br><br> *Assigned to:  Hon. R. Gary Klausner* <br><br> **DISCOVERY MOTION** <br><br> **JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS** <br><br> Date:  October 21, 2016 <br> Time:  9:30 a.m. <br> Place:  Courtroom 20 <br><br> Discovery Cutoff:  November 2, 2016 <br> Pre-Trial Conference:  January 9, 2017 <br> Trial:  January 31, 2017 |

## **Table of Contents**

**Page(s)**

I.  THE PARTIES' PRELIMINARY STATEMENTS ..........................................1

    A.  Defendants' Preliminary Statement ...........................................1

    B.  Plaintiffs' Preliminary Statement..............................................4

II.  THE DISCOVERY REQUESTS AT ISSUE..........................................6

    A.  Defendants' Statement Of The General Standard....................................6

    B.  Defendants' Description Of The Requests In Dispute And Arguments .........................................................7

    C.  Defendants' Issue 1 – Documents And Communications Relevant to Plaintiffs' Damages, Or Lack Thereof, And Defendants' Affirmative Defense Of Fair Use................................................8

        1.  The Requests..................................................8

        2.  Defendants' Argument................................................12

            i  The Documents, Information, and Deposition Testimony Requested in RFP Nos. 14, 23, 35, 36, 37, Interrogatory Nos. 8 and 9, And Deposition Testimony Subject No. 14 Are Directly Relevant To The Fair Use Analysis ............................................12

            ii  The Documents, Information, and Deposition Testimony Sought Through RFP Nos. 14, 23, 35, 36, 37, Interrogatory Nos. 8 and 9, And Deposition Testimony Subject No. 14 Are Directly Relevant To Demonstrating Plaintiffs' Alleged Damages, Or Lack Thereof..................................................15

        3.  Plaintiffs' Argument ................................................22

    D.  Defendants' Issue 2 -  Documents, Communications, and Testimony Relating To Plaintiffs' Allegations of Willful Infringement, From Both Before And Since The Filing Of This Lawsuit ..................................................30

        1.  The Requests..................................................30

        2.  Defendants' Argument................................................37

            i  The Documents, Information, and Deposition Testimony Sought By RFP Nos. 17, 18, 19, 20, 21, 24, And 25, And Deposition Testimony Subject Nos. 14, 19, 21, 22, And 28 Are Directly Relevant To

Plaintiffs' Claims Of Willful Infringement And Defendants' Affirmative Defenses ...................................... 37

3.   Plaintiffs' Argument ...................................................... 40

E.   Defendants' Issue 3 - Documents And Communications Relating To Chain of Title Documents Directly Relevant To Defendants' Investigation Into Plaintiffs' Alleged Copyright Ownership ................... 51

1.   The Requests ................................................................. 51

2.   Defendants' Argument ................................................... 52

3.   Plaintiffs' Argument ...................................................... 56

III.   DEFENDANTS' FINAL STATEMENT AND SUMMARY OF THE RELIEF REQUESTED ............................................................... 58

IV.   PLAINTIFFS' FINAL STATEMENT .............................................. 58

## I.     THE PARTIES' PRELIMINARY STATEMENTS

Pursuant to Federal Rule of Civil Procedure 37(a)(2), and Local Rule 37-2.1, this Joint Stipulation is submitted by the undersigned parties in connection with Defendant AXANAR PRODUCTIONS, INC.'s and Defendant ALEC PETERS' (collectively "Defendants") Motion to Compel Discovery from Plaintiffs PARAMOUNT PICTURES CORPORATION and CBS STUDIOS INC. (collectively "Plaintiffs").

### A.     Defendants' Preliminary Statement

Plaintiffs have sued Defendants for alleged copyright infringement of various *Star Trek* television episodes and movies, seeking potentially tens of millions of dollars in damages from Defendants for their creation of a twenty-minute Mockumentary[1] fan film that was distributed, free of charge, on the Internet, and for their plans to pursue another non-commercial film project.   With this Motion, Defendants request that the Court compel Plaintiffs to produce documents, information, and testimony that go to the heart of this case.  First, Defendants seek to compel production of documents and testimony regarding financial information that is key to both Defendants' fair use defense, and to Defendants' investigation into Plaintiffs' alleged damages.  Second, Defendants seek information necessary to allow Defendants to investigate Plaintiffs' allegation of willful infringement, the consequence of which carries a substantial enhancement of the maximum statutory damages available.   Third, Defendants seek chain of title information relating to Plaintiffs' allegations of ownership, which is basic discovery in copyright cases that is routinely compelled so that the rebuttable presumption of ownership afforded by a copyright certificate does not become irrebuttable.

Plaintiffs allege in their FAC that Defendants' creation of the Mockumentary entitled *Prelude to Axanar*, and their planning the production of a longer film that has

---

[1] *See* http://dictionary.reference.com/browse/mockumentary (a "mockumentary" is "a movie or television show depicting fictional events but presented as a documentary").

yet to be created (collectively the "*Axanar* Works"), have infringed upon virtually every copyright Plaintiffs allege to collectively own in the *Star Trek* franchise, as well as other elements that are not protectable by copyright as a matter of law.  Despite the fact that Plaintiffs have tolerated, and even encouraged, a community of fandom and fan fiction for over 50 years, Plaintiffs allege that the *Axanar* Works infringe over 70 allegedly copyrightable elements, which include such unprotectable items as clothing, colors, shapes, words, short phrases, works derived from nature, third parties, or the public domain, a language, scenes a faire, characters, and ideas – including the "mood and theme" of the "science fiction action adventure" genre.  Plaintiffs' First Amended Complaint ("FAC") ¶¶ 46, 47.

Even assuming that any of the allegedly infringing elements are actually protectable by copyright, the *Axanar* Works are merely the latest installations in the long-flourishing *Star Trek* fan fiction subculture.  Given the purpose and nature of the *Axanar* Works, their complete lack of any negative impact on the market for Plaintiffs' Works as defined in the FAC (the "*Star Trek* Copyrighted Works"), and the transformative nature of the Mockumentary style work, Defendants intend to assert the defense that the *Axanar* Works constitute fair use.  Though Defendants have served multiple sets of discovery aimed at obtaining information relevant to fair use, damages, and copyright ownership, Plaintiffs have refused to produce sufficient documents responsive to those RFPs and Interrogatories, and witnesses to testify as to those topics at Federal Rule of Civil Procedure 30(b)(6) depositions.

With respect to this requested discovery, in some cases Plaintiffs have objected by asserting unfounded and unavailing boilerplate objections, while in other cases, Plaintiffs agreed to produce responsive and relevant information, but then failed to do so.  Specifically, Plaintiffs represented that they would produce chain of title of the copyrights, which obviously should include any chain of title transferring the rights from *Star Trek* creator Gene Roddenberry and ultimately to Plaintiffs, but Plaintiffs have failed to do so, electing instead to make an extremely limited ownership

1    production that consists of predominantly just the copyright registrations.

2         To date, in response to Plaintiffs' requests, Defendants have produced in excess

3    of 31,000 pages of responsive documents in a single production, on the parties' agreed

4    upon exchange date.  Declaration of Erin Ranahan ("Ranahan Decl.") ¶¶ 16, 18.  In

5    contrast, Plaintiffs, despite being two large companies prosecuting this case against an

6    individual and a small organization, have trickled in documents in multiple

7    productions after the agreed upon exchange date had passed, and produced far less

8    than what Defendants have provided.  Ranahan Decl. ¶¶ 17, 19, 23.  Moreover, it is

9    apparent based on Defendants' ongoing review of Plaintiffs' production that

10   documents responsive to many of Defendants' requests remain outstanding.

11        Defendants have held multiple in-person meet and confers with Plaintiffs in an

12   effort to resolve these issues informally, to no avail.  As discussed herein, given the

13   high stakes at issue in this action, and the substantial amount of damages that

14   Plaintiffs seek in this case, Defendants' need to obtain the discovery at issue in

15   Defendants' motion outweighs any interest of Plaintiffs in withholding it.

16        Discovery is set to close on November 2, and thus Defendants respectfully

17   request that the Court assist Defendants with obtaining necessary discovery before it is

18   too late. For all the reasons discussed herein, Plaintiffs should be compelled to (1)

19   produce documents and information in response to Requests for Production 14, 23, 35,

20   36, 37, Interrogatory Numbers 8, and 9, and witnesses to testify as to Deposition

21   Testimony Subject Number 14, which are relevant to Defendants' fair use defense and

22   Plaintiffs' claims for damages; (2) produce documents and information in response to

23   Requests for Production 17, 18, 19, 20, 21, 24, 25, 29, and witnesses to testify as to

24   Deposition Testimony Subject Numbers 14, 19, 21, 22, and 28, which are directly

25   relevant to Plaintiffs' allegations of willful infringement; and (3) produce chain of

26   Title Documents responsive to Requests for Production 6 and 7, which are relevant to

27   Defendants' investigation into Plaintiffs' ownership of the copyrights at issue.

28

## B.     Plaintiffs' Preliminary Statement

Defendants' preliminary statement is argumentative, self-serving and deliberately misleading.    Defendant Alec Peters and his company, Axanar Productions, raised money from Star Trek fans to create infringing derivative works – including a motion picture "prequel" to Star Trek's original television series. Defendants acknowledged, while they were engaging in their pre-litigation activities, that they were knowingly infringing Plaintiffs' copyrights.    Defendants also repeatedly pronounced that they were creating a "professional" and "independent" Star Trek film, starring actors (that were paid for their services) that have portrayed roles on Star Trek television series, and produced with professional crew members. Indeed, in spite of defense counsel's recent statements to the contrary, prior to the filing of this suit, Defendant Peters and his colleagues expressly stated that they were not creating a "fan film."   This case is about a commercial enterprise designed to take money from Star Trek fans, which funds were used to pay Defendant Peters along with his friends and colleagues, to create, as Defendants' describe it, "an independent Star Trek film."

Defendants raised approximately $1.5 million from Star Trek fans, and created and released a short film entitled "Prelude to Axanar," and one scene from their "Star Trek: Axanar" Motion Picture called the "Vulcan Scene."   The works created by Defendants are infringing derivative works, and use the characters, plot, scenery, and dialogue, along with other elements from the Star Trek Copyrighted Works. Defendants also built a set, created multiple Star Trek: Axanar scripts, and used donations to build out a "studio" that is being rented out for other non-Star Trek projects.   Additionally, in return for donations, Defendants provided "perks" to the Star Trek fans, including infringing "Star Trek" branded merchandise.    Further evidencing the commercial nature of this endeavor, Defendant Peters paid himself and his girlfriend tens of thousands of dollars, and used the funds obtained from Star Trek fans' donations on travel expenses, tires, car insurance, and gas.

1       This discovery motion is unnecessary and is an unfortunate waste of the Court's

2   time.  First, Defendants are moving to compel production of documents that do not

3   exist, as they would have been informed if they had merely inquired.

4       Second, for many of the items, Plaintiffs have already agreed to provide the

5   requested information and documents.  There is no basis for Defendants to move to

6   compel on those items.

7       Third, for other items, Defendants failed to meet and confer.  Some of these

8   issues may have been resolved without the need for a motion, if Defendants had

9   reached out to Plaintiffs to discuss them.  For example, Defendants are moving to

10   compel with respect to certain requests for which Plaintiffs had provided responses

11   only two days prior to Defendants' service of this Joint Stipulation.  Defendants

12   undeniably did not meet and confer with respect to those requests, as well as several

13   others.

14       Fourth, many of the requests are extremely broad, unduly burdensome, and seek

15   documents and information that are neither relevant to any party's claims or defenses,

16   nor proportional to the case.  Specifically, Defendants are seeking all financial

17   documents relating to hundreds and hundreds of Star Trek Copyrighted Works,

18   spanning 50 years.  Unsurprisingly, Defendants provide no legal basis for their need

19   for these documents.  Defendants are also seeking documents showing how much

20   Plaintiffs paid every actor, director, and producer for every single Star Trek movie and

21   television show.  There is no rational basis in the law to support this demand, and

22   contrary to Defendants' claims, these documents have no bearing on the fair use

23   defense.

24       Fifth, many of the requests seek completely irrelevant information.  For

25   example, Defendants seek information relating to other Star Trek fan films, as well as

26   Plaintiffs' decision as to whether to pursue legal action against other infringers.  As

27   Defendants themselves have emphasized repeatedly, their work is not a fan film—it is

28   designed to be a professional production, with paid actors and a commercial studio.

5

Moreover, as a matter of copyright law, a copyright owner is not required to pursue each and every infringer in order to maintain its copyright. The copyright owner's decision as to whether to pursue action against other infringers is not relevant to the case. In fact, a court has considered this very same issue with respect to a lawsuit brought by Paramount against other infringers:

> Allowing such a defense would compel courts to examine all the other allegedly infringing works on which defendant's reliance was based in order to ascertain whether these works were in fact infringing, thereby creating a number of smaller infringement hearings within a single copyright action. Moreover, there is no legal duty to instigate legal proceedings. Perhaps it is the case, as Defendants intimated, that Paramount has chosen to eschew litigation with larger publishing houses, and instead bring suit against a relatively small firm. It matters not. Provided it does not violate any other provision of law, Paramount is free to instigate legal action against whomever it wishes.

*Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp.2d 329, 337 (S.D.N.Y. 1998).

Finally, Defendants have sought to harass Plaintiffs by seeking information relating to public statements made post-lawsuit by individuals (who are not employees or corporate representatives of Plaintiffs) that have worked on the Star Trek Copyrighted Works. It is self-evident that any statements made by creative individuals as to their opinions of the lawsuit have no bearing on whether or not Defendants engaged in copyright infringement.

## II. THE DISCOVERY REQUESTS AT ISSUE

### A. Defendants' Statement Of The General Standard

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the

6

1
2
3
4
5

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

6
7
8
9

"Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that may be in the case." *O'Shea v. Am. Solar Solution, Inc.*, No. 14-cv-894-L-(RBB), 2016 WL 701215, at *2 (S.D. Cal. Feb. 18, 2016).

10
11
12
13
14
15
16
17
18

Any party "resisting discovery has the burden to show discovery should not be permitted and has the burden of clarifying, explaining, and supporting its objections." *Sater v. Chrysler Group LLC*, No. EDCV 14-00700-VAP (DTBx), 2016 WL 3136196, at *1 (C.D. Cal. Mar. 4, 2016) (citing *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 419 (9th Cir. 1975)).  Where a party objecting to discovery "provides a boilerplate or generalized objection [to discovery], the 'objections are inadequate and tantamount to not making any objection at all.'"  *O'Shea*, at *2 (citing *Makaeff v. Drumpf U., LLC*, No. 10-cv-0940-GPC (WVG), 2013 WL 990918, at *6 (S.D. Cal. Mar. 12, 2013)).

19
20
21

### B.   Defendants' Description Of The Requests In Dispute And Arguments

For the Court's convenience, Defendants have grouped the issues in dispute into the following categories:

22
23
24

1.   Financial documents, communications, and deposition testimony relevant to Plaintiff's damages, or lack thereof, and Defendants' affirmative defense of fair use;

25
26
27
28

2.   Documents, communications, and deposition testimony relating to Plaintiffs' allegations of willful infringement, including documents demonstrating Plaintiffs' attitudes toward and policies regarding

7

works of *Star Trek*-inspired fan fiction, from before and since the filing of this lawsuit.

3.    Chain of Title Documents relevant to Plaintiffs' purported ownership of the relevant copyrights.

**C.    Defendants' Issue 1 – Documents And Communications Relevant to Plaintiffs' Damages, Or Lack Thereof, And Defendants' Affirmative Defense Of Fair Use**

**1.    The Requests**

**REQUEST NO. 14[2]**

All Documents that refer or relate to the commercial impact, if any, that the promotion, production, or release of fan films, including but not limited to fan films inspired by Star Trek, has had or might have on the value of the works from which the fan films are inspired, including but not limited to the Star Trek Copyrighted Works.

**RESPONSE TO REQUEST NO. 14:**

[Plaintiff] incorporates its General Response and Objections as set forth above. [Plaintiff] objects to this request on the ground that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any party's claim or defense, nor proportional to the needs of the case.  [Plaintiff] further objects to this Request on the grounds that the term "fan films" is vague and ambiguous.

Notwithstanding the foregoing objections, [Plaintiff] will produce all non-privileged, responsive documents that it is able to locate following a reasonable search.

**REQUEST NO. 23:**

---

[2] Defendants served substantially similar document requests and deposition notices on each individual Plaintiff.  In the interest of efficiency and avoiding duplicative briefing, Defendants have consolidated the identical requests at issue in this case for purposes of this Motion.  As applied to each Plaintiff individually, the issues discussed in this brief overwhelming overlap, with the exception of RFP Nos. 35, 36, 37, and Deposition Testimony Subject No. 28.  Where the responses differ, Defendants include both responses and separate sections for arguments by each respective Plaintiff.

8

1  All Documents that refer, relate to, or constitute Your expenditures relating to
2  the promotion or production of the Star Trek Copyrighted Works, including but not
3  limited to the salaries paid to the directors, producers, actors, and all other persons
4  involved in the promotion or production of such works.

5  **RESPONSE TO REQUEST NO. 23:**

6  [Plaintiff] incorporates its General Response and Objections as set forth above.
7  [Plaintiff] objects to this request on the grounds and to the extent that it calls for
8  information that is protected by the attorney-client privilege and work product
9  doctrine.  [Plaintiff] further objects to this request on the ground that it is overbroad,
10  unduly burdensome, and seeks documents that are not relevant to any party's claim or
11  defense, nor proportional to the needs of the case.  [Plaintiff] further objects to the
12  request to the extent that it purports to require the disclosure of documents containing
13  information that is protected from disclosure by rights of privacy, confidential data,
14  trade secrets, proprietary or sensitive business information, or nonpublic financial
15  information pertaining to [Plaintiff], its past or present personnel, or other persons or
16  entities.

17  **REQUEST NO. 35:**

18  All Documents and Communications demonstrating how the market for Your
19  business has been impacted by the Axanar Works.

20  **RESPONSE TO REQUEST NO. 35:**

21  CBS incorporates its General Response and Objections as set forth above.  CBS
22  objects to this request on the ground that it is overbroad, unduly burdensome, and
23  seeks documents that are not relevant to any party's claim or defense, nor proportional
24  to the needs of the case.

25  Notwithstanding the foregoing objections, CBS will produce all non-privileged,
26  responsive documents that it is able to locate following a reasonable search.

27  **REQUEST NO. 36:**

28  All Documents and Communications discussing the impact, or lack thereof, of

9

1  the Axanar Works on Your business.

2  **RESPONSE TO REQUEST NO. 36:**

3       CBS incorporates its General Response and Objections as set forth above.  CBS

4  objects to this request on the ground that it is overbroad, unduly burdensome, and

5  seeks documents that are not relevant to any party's claim or defense, nor proportional

6  to the needs of the case.

7       Notwithstanding the foregoing objections, CBS will produce all non-privileged,

8  responsive documents that it is able to locate following a reasonable search.

9  **REQUEST NO. 37:**

10      Documents and Communications sufficient to show your profitability, revenue,

11 ticket sales, and product sales related to Your Works from 2009 to present.

12 **RESPONSE TO REQUEST NO. 37:**

13      CBS incorporates its General Responses and Objections as set forth above.

14 CBS objects to this request on the grounds and to the extent that it calls for

15 information that is protected by the attorney-client privilege and work product

16 doctrine.  CBS further objects to this request on the ground that it is overbroad, unduly

17 burdensome, and seeks documents that are not relevant to any party's claim or

18 defense, nor proportional to the needs of the case.  CBS further objects to the request

19 to the extent that it purports to require the disclosure of documents containing

20 information that is protected from disclosure by rights of privacy, confidential data,

21 trade secrets, proprietary or sensitive business information, or nonpublic financial

22 information pertaining to CBS, its past or present personnel, or other persons or

23 entities.  CBS further objects to this request on the grounds that the term "Your

24 Works" is vague and ambiguous.

25 **INTERROGATORY NO. 8:**

26      Identify and describe the harm or injury You claim to have suffered as a result

27 of Defendants' actions as alleged in the FAC.

28 **RESPONSE TO INTERROGATORY NO. 8:**

1  [Plaintiff] incorporates the General Objections as though fully set forth herein.
2  [Plaintiff] further objects to this Interrogatory on the grounds that it is overly broad
3  and unduly burdensome.  [Plaintiff] further objects to this Interrogatory as premature
4  in light of the fact that discovery in this case is ongoing.  [Plaintiff] further objects to
5  this Interrogatory on the ground that it improperly calls for a legal conclusion.
6  [Plaintiff] further objects to this Interrogatory on the ground that it is subject to expert
7  testimony.

8  **INTERROGATORY NO. 9:**

9  Identify and describe the damages that You seek for each cause of action
10 asserted in the FAC, including by identifying and describing the method(s) used to
11 compute these damages.

12 **RESPONSE TO INTERROGATORY NO. 9:**

13 [Plaintiff] incorporates the General Objections as though fully set forth herein.
14 [Plaintiff] further objects to this Interrogatory on the grounds that it is overly broad
15 and unduly burdensome.  [Plaintiff] further objects to this Interrogatory in light of the
16 fact that discovery in this case is ongoing.   [Plaintiff] further objects to this
17 Interrogatory on the ground that it improperly calls for a legal conclusion.  [Plaintiff]
18 further objects to this Interrogatory on the ground that it is subject to expert testimony.

19 **SUBJECT MATTER OF TESTIMONY NO. 14:**

20 Revenues from the allegedly infringed works, including without limitation how
21 such revenues are tracked or accounted for.

22 **RESPONSE TO SUBJECT MATTER OF TESTIMONY NO. 14:**

23 [Plaintiff] incorporates its Preliminary Response and Objections to Subject
24 Matters of Testimony as though set forth fully herein.  [Plaintiff] further objects to this
25 Subject on the grounds and to the extent that it calls for information that is protected
26 by the attorney-client privilege and work product doctrine.  [Plaintiff] further objects
27 to this Subject on the grounds that it is overly broad and unduly burdensome.
28 [Plaintiff] further objects to the Subject to the extent that it purports to require the

disclosure of information that is protected from disclosure by rights of privacy, confidential data, trade secrets, proprietary or sensitive business information, or nonpublic financial information pertaining to [Plaintiff], its past or present personnel, or other persons or entities.  [Plaintiff] further objects to this Subject to the extent that it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

### 2.    Defendants' Argument

Chief among the relevant discovery Defendants seek is information and documents relevant to the commercial impact, if any, the *Axanar* Works have had on the *Star Trek* Copyrighted Works, as demonstrated by Plaintiffs' revenues generated before the *Axanar* Works were created, and since they were released.  By their requests regarding Plaintiffs' expenditures and revenues generated by the *Star Trek* Copyrighted Works, Defendants are merely seeking information regarding the harm Plaintiffs allegedly suffered as a result of Defendants' actions, which is relevant to both the fair use analysis as well as providing Defendants the opportunity to investigate Plaintiffs' damages, if any, and their potential exposure in this case.

Although Plaintiffs have agreed to produce documents responsive to some of the requests at issue, they have not done so, and have since made clear that they intend to stonewall Defendants from obtaining financial information necessary to allow Defendants' investigation into the "impact on the market" prong of fair use, and into Plaintiffs' alleged damages.

<blockquote>

i       <u>The Documents, Information, and Deposition Testimony Requested in RFP Nos. 14, 23, 35, 36, 37, Interrogatory Nos. 8 and 9, And Deposition Testimony Subject No. 14 Are Directly Relevant To The Fair Use Analysis</u>

</blockquote>

In order to avoid "stifl[ing] the very creativity which [the Copyright Act] is designed to foster," the Copyright Act authorizes certain uses of copyrighted works as fair use.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).  In

12

determining whether a secondary work constitutes fair use, the four statutory factors to be considered are:  (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107.  The effect of the allegedly infringing work on the market for, or value of, the underlying copyrighted work is "the single most important element of fair use," and thus highly relevant to Defendants' fair use defense.  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985).

The RFPs, Interrogatories, and Deposition Testimony Subject at issue are imperative to Defendants' ability to demonstrate the fourth factor, which the Supreme Court has stated "is undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc.*, 471 U.S. at 566.  The fourth factor considers the extent of the market harm to the original work, and "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by defendant . . . would result in a substantially adverse impact on the potential market' for the original."  *Campbell*, 510 U.S. at 590; *see Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) (finding the fourth factor weighed in favor of fair use because defendant's video "did not perform the same 'market function'" as the underlying work); *Suntrust Bank v. Houghton Mifflin Co.*, 268  F.3d 1257, 1275 (11th Cir. 2001) (finding the fourth factor weighed in favor of fair use because defendant's work was "unlikely to displace sales . . . [or] supplant demand for" the original work or its derivative works).

The documents, information, and deposition testimony sought are directly relevant to fair use, in that they demonstrate the impact, or lack thereof, of the *Axanar* Works on the market for the *Star Trek* Copyrighted Works.  Despite the obvious relevance of the documents at issue, Plaintiffs have taken the position that the above

discovery requests seek disclosure of confidential information protected by Plaintiffs' rights of privacy.  Of course, a protective order will suffice to protect Defendants from any harm. And in any event, Plaintiffs have placed their financial information at issue, and thus made documents demonstrating their revenues and expenditures related to the *Star Trek* Copyrighted Works directly relevant to this action, by alleging that the *Axanar* Works have negatively impacted the market for the *Star Trek* Copyrighted Works.  *See Sater*, 2016 WL 3136196, at *2 (finding that plaintiffs placed their financial information at issue where they alleged lost business profits) (citations omitted).  Moreover, the right to privacy "is not an 'absolute bar to discovery,' and 'may be subject to invasion'" where the needs of a party require it.  *Bakersfield Pipe & Supply, Inc. v. Cornerstone Valve, LLC*, No. 1:14-cv-01445-JLT, 2016 WL 3538251, at *4 (E.D. Cal. June 28, 2016) (citing *E.E.O.C. v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 295 (E.D. Cal. 2009)).  Significantly, "a party's interest in the confidentiality of financial information may be adequately addressed via a protected order."  *Bakersfield*, 2016 WL 3538251, at *4 (overruling defendant's objections to discovery on privacy grounds where concerns regarding privacy could be addressed by use of a protective order) (citing *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 38 (1994)).

Here, the importance of the documents, information, and deposition testimony sought to demonstrate that the *Axanar* Works constitute fair use far outweigh any privacy rights Plaintiffs have in the documents they seek to shield from discovery. The documents and information that are the subject of these RFPs and Interrogatories are imperative to Defendants' ability to show that the market for the *Star Trek* Copyrighted Works has not at all been negatively impacted by the *Axanar* Works, and that the small scale of Defendants' works have in no way supplanted demand for the *Star Trek* Copyrighted Works.  Though Plaintiffs initially represented in their discovery responses to some of the above requests that they would produce responsive

1    documents, to date they have either produced insufficient documents, or failed to

2    produce any at all.  Given the relevance of these documents to the fair use analysis,

3    and the importance of the fourth factor, Plaintiffs should be compelled to produce all

4    non-privileged documents responsive to these requests.

5         Moreover, to the extent the documents sought contain confidential or sensitive

6    financial information, there is no reason these concerns could not be adequately

7    addressed through the use of the Stipulated Protective Order entered in this case.  *See*

8    ECF No. 53 (allowing parties to designate documents as "Confidential" and

9    "Confidential - Attorney's Eyes Only").  Thus, considering Plaintiffs' choice to put

10   this information at issue by alleging financial harm, Plaintiffs should be compelled to

11   produce documents responsive to RFP Nos. 14, 23, 35, 36, 37, and Interrogatory Nos.

12   8 and 9, and witnesses to testify as to Deposition Testimony Subject No. 14.

13              ii    <u>The Documents, Information, and Deposition Testimony</u>

14                    <u>Sought Through RFP Nos. 14, 23, 35, 36, 37, Interrogatory</u>

15                    <u>Nos. 8 and 9, And Deposition Testimony Subject No. 14 Are</u>

16                    <u>Directly Relevant To Demonstrating Plaintiffs' Alleged</u>

17                    <u>Damages, Or Lack Thereof</u>

18        In addition to the fair use analysis, Defendants require the documents and

19   information summarized above to accurately assess the both the harm Plaintiffs are

20   alleged to have suffered as a result of the *Axanar* Works, as well as Defendants'

21   potential exposure in this case.  Plaintiffs allege they are entitled to either statutory

22   damages of up to $150,000 for each separate *Star Trek* Copyrighted Work willfully

23   infringed, or Plaintiffs' actual damages sustained as a result of Defendants' acts.  *See*

24   FAC, Prayer for Relief, ¶ (3)(a).  Plaintiffs have not yet elected their theory of

25   damages, *and even with statutory damages, actual damages are relevant*.  Indeed,

26   courts routinely find actual damages relevant to the question of statutory damages, and

27   allow the trier of fact to consider actual damages (or the lack thereof) when deciding

28   statutory damages.  *Muppets Studio, LLC v. Pacheco*, CV 12-7303 JGB FFMX, 2013

15

WL 2456617, at *1 (C.D. Cal. June 6, 2013); *Nexon Am. Inc. v. Kumar*, 2:11-CV-06991-ODW, 2012 WL 1116328, at *7 (C.D. Cal. Apr. 3, 2012); *Autodesk, Inc. v. Flores*, 10-CV-01917-LHK, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011); *Symantec Corp. v. Logical Plus, Inc.*, C 06-7963 SI, 2010 WL 2330388, at *2 (N.D. Cal. June 4, 2010); *Adobe Sys., Inc. v. Tilley*, C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010) ("courts . . . have considered whether the amount of damages requested bears a 'plausible relationship' to the plaintiff's actual damage"; *Microsoft Corp. v. Ricketts*, C 06-06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007); *Rovio Entm't Ltd v. Royal Plush Toys, Inc.*, No. C 12-5543 SBA, 2014 WL 1153780, at *2 (N.D. Cal. Mar. 20, 2014). The jury is afforded wide discretion in deciding the amount of statutory damages.  17 U.S.C. § 504(c) provides statutory damages for copyright infringement of up to $150,000.00 per work infringed.  In *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), the Supreme Court held that the Seventh Amendment of the  United  States  Constitution requires a jury trial to determine the amount of statutory  damages in a copyright case. *Id.* at 353.  As the Supreme Court explained in *Feltner*,   "[t]he right to a jury trial includes the right to have a jury determine the *amount* of  statutory  damages,  if any, awarded to the copyright owner." *Id*.  This is because it has "long been recognized" that "the jury are judges of the damages." *Id*.

The jury "has wide discretion in determining the amount of statutory damages to be awarded, *constrained only by the specified maxima and minima*."  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (emphasis added).  The trier of fact must be guided by "what is just in the particular case … considering the nature of the copyright, the circumstances of the infringement and the like." *F.W. Woolworth v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952). Courts have considered the following factors as relevant to informing a jury's determination of statutory damages: (1) the expenses saved and the profits reaped, (2) the revenues lost by the plaintiff, (3) the value of the copyright, (4) the deterrent effect on others

16

besides the defendant, (5) whether the defendant's conduct was willful. *Coach, Inc. v. Am. Fashion Gift*, CV 12-07647-MWF RZX, 2013 WL 950938, at *2 (C.D. Cal. Mar. 12, 2013); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10– 5151 SC, 2011 WL 1483436, at *6 (N.D. Cal. Apr. 19, 2011); *see also*, *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Particularly where the jury has sweeping discretion to determine damages that may include a punitive element, it is critical that its determination be based on "legal standards that provide reasonable constraints within which discretion is exercised, that assure meaningful and adequate review by the trial court whenever a jury has fixed the punitive damages, and permit appellate review [that] makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 578 (1996) ("*BMW*") (Breyer, J., concurring) (emphasizing "the constitutional importance" of such standards) (internal quotation marks and citations omitted). Courts have repeatedly expressed caution when deciding the constitutionality of statutory damages to avoid a windfall. "Statutory damages are intended to serve as a deterrent … but that does not justify … a windfall." *Microsoft Corp. v. Ricketts*, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007); *Adobe Sys., Inc. v. Tilley*, C 09-1085 PJH, 2010 WL 309249, at *5-6 (N.D. Cal. Jan. 19, 2010) (concluding that an award of $50,000 per infringement would be a "windfall" and recommending that the plaintiff instead be awarded less in statutory damages); *Cohorst v. BRE Properties, Inc.*, 2011 WL 7061923, at *14 (S.D. Cal. Nov. 14, 2011) ("Statutory damages . . . can be unconstitutional in application under . . . [the] U.S. Constitution if they constitute 'excessive fines' or are imposed without due process of law.") In *BMW*, the Supreme Court overturned a $2 million punitive damages award where the plaintiff obtained a jury award of only $4,000 in actual damages. 517 U.S. at 565. The Court held that the punitive damages violated the Due Process Clause of the Constitution because it was "grossly excessive" compared to the

1   plaintiff's actual damages.  *Id.* at 574.

2       Echoing the requirement of proportionality, courts within the Ninth Circuit have

3   repeatedly held that statutory damages must bear some relation to actual damages,

4   even in cases where the defendant's infringement was also found to be willful.

5   *Muppets Studio*, 2013 WL 2456617, at *2 (while the defendant knew she was copying

6   Muppets characters, and therefore "demonstrating willfulness" the plaintiff "has not

7   provided the Court with evidence that the requested amount is proper under the factors

8   listed above" because "[t]here is no evidence of actual profits, or how the introduction

9   of these items specifically affected Plaintiff's profit."); *Nexon Am. Inc. v. Kumar*,

10  2:11-CV-06991-ODW, 2012 WL 1116328, at *5-6 (C.D. Cal. Apr. 3, 2012);

11  *Autodesk, Inc. v. Flores*, 10-CV-01917-LHK, 2011 WL 337836, at *8 (N.D. Cal. Jan.

12  31, 2011) (noting that a willfulness finding "does not end the inquiry, however, for the

13  district court is given broad discretion to determine the amount of statutory

14  damages"); *Symantec Corp. v. Logical Plus, Inc.,* C 06-7963 SI, 2010 WL 2330388, at

15  *3 (N.D. Cal. June 4, 2010) (even where evidence of the defendant's willful

16  infringement is considerable, the amount of damages sought by Symantec is "too

17  high" given the plaintiff's "modest profits"); *Microsoft Corp. v. Ricketts*, C 06-06712

18  WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007) (even where willful, "the

19  Court thinks it just to award statutory damages in the amount of $1,500 per copyright

20  infringed and $1,000 per trademark infringed, for a total of $12,500" because it was

21  "twice the minimum under each statute to reflect the finding of willfulness" and the

22  "damages, coupled with the permanent injunction granted against defendant, will

23  adequately serve the purpose of deterrence").

24      Courts have repeatedly recognized the relevance of due process limitations on

25  punitive damages in the context of statutory damages for copyright infringement.

26  *See, e.g.*, *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 486-90 (6th

27  Cir. 2007) (striking high ratio punitive damage award in common law copyright case

28  as inconsistent with *BMW*); *Parker v. Time Warner*, 331 F.3d 13, 22 (2d Cir. 2003)

18

(recognizing that "statutory damages [can expand] so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages" and that, under *State Farm* and *BMW*, "it may be that in a sufficiently serious case the due process clause might be invoked"); *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1017 (7th Cir. 1991), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (noting that "concerns of due process" require district courts to explain their factual findings underlying their decision to award greater than minimum statutory damages in a copyright case); *Atl. Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 282 (D. Conn. 2008) (denying motion for default judgment in p2p case because defendant might have viable defense as to unconstitutionality of statutory damage award); *UMG Recordings, Inc. v. Lindor*, No. CV-05-1095 (DGT), 2006 WL 3335048, at *5 (E.D.N.Y. 2006) (granting motion for leave to amend answer to plead unconstitutionality of statutory damage award in peer-to-peer filesharing case, recognizing that "in a proper case, a court may extend its current due process jurisprudence prohibiting grossly excessive punitive jury awards to prohibit the award of statutory damages mandated under the Copyright Act if they are grossly in excess of the actual damages suffered"); *DirecTV v. Gonzalez,* No. Civ.A.SA–03–1170 SR, 2004 WL 1875046, at *4 (W.D.Tex. Aug. 23, 2004) ("[I]t may be that a statutory damages provision [under Texas' copyright statute] that grossly exceeds any actual damages would violate due process" under *State Farm*); *see also* 6 Patry on Copyright § 22:193.50.

In *In re Napster, Inc.*, No. C MDL-00-1369 MHP, 2005 WL 1287611, at *10 (N.D. Cal. June 1, 2005), a court in the Northern District of California recognized that,"[e]xtending the reasoning of *BMW* and its progeny, a number of courts have recognized that an award of statutory damages may violate due process if the amount of the award is 'out of all reasonable proportion' to the actual harm caused by a defendant's conduct." The court then stated that "these cases are doubtlessly correct to note that a punitive and grossly excessive statutory damages award violates the Due

1   Process Clause." *Id.* at *11.

2        Moreover, cases in other contexts have recognized that *BMW* and *State Farm*

3   are applicable in considering the constitutionality of a statutory damages award.  *See,*

4   *e.g.*, *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (suggesting

5   that statutory damages awarded under the Fair Credit Reporting Act would be subject

6   to review under *State Farm*); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d

7   Cir. 2003) (suggesting that the aggregation of statutory damages in a class action

8   under the Cable Communications Policy Act of 1984 might raise due process

9   concerns under *BMW* and *State Farm*); *Romano v. U-Haul Int'l*, 233 F.3d 655, 672-74

10  (1st Cir. 2000) (applying *BMW* to a punitive damages award in a Title VII

11  employment discrimination action even though the award was subject to a statutory

12  cap); *Cohorst*, 2011 WL 7061923, at *14 ("Statutory damages . . . can be

13  unconstitutional in application under . . . [the] U.S. Constitution if they constitute

14  'excessive fines' or are imposed without due process of law."); *Centerline Equip.*

15  *Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 778 n.6 (N.D. Ill. 2008)

16  (suggesting that *State Farm* might provide grounds for remittitur of statutory damages

17  awarded under the Telephone Consumer Protection Act).

18       Plaintiffs are also of course required by the Federal Rules of Civil Procedure to

19  provide a computation of each category of damages they seek, even absent discovery

20  requesting such information.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Plaintiffs must provide

21  their assessment of damages in light of the information currently available to them in

22  sufficient detail so as to enable the Defendants to understand the contours of their

23  potential exposure and make informed decisions as to settlement and discovery.  *City*

24  *& Cnty. Of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal.

25  2003).   Though Plaintiffs contend these discovery requests prematurely seek

26  information that will be the subject of expert witness opinions, this does not justify

27  Plaintiffs' failure to provide any information regarding their alleged damages that

28  could be provided to a damages expert for analysis.  *Switch Commc'ns Grp. v.*

1    *Ballard*, No. 2:11-cv-00285-KJD, 2011 WL 3957434, at *9 (D. Nev. Sept. 7, 2011).

2         The information sought in RFP Nos. 14, 23, 35, 36, 37,  Interrogatory Nos. 8

3    and 9, and Deposition Testimony Subject No. 14 is directly relevant to demonstrating

4    the vast difference in expenditures creating and promoting the *Axanar* Works as

5    compared to the *Star Trek* Copyrighted Works, and therefore the lack of financial

6    harm the *Axanar* Works have had on the *Star Trek* Copyrighted Works.  Though

7    plainly relevant and within the proper scope of discovery, Plaintiffs have refused to

8    provide information regarding the damages or harm they allege to have suffered.

9    Plaintiffs' use of boilerplate objections to obscure the fact that they have, in fact,

10   suffered no damages or harm as a result of the *Axanar* Works is a weak attempt to

11   withhold plainly relevant discovery.  If Plaintiffs are unable to identify any harm or

12   injury they have suffered without the aid of expert witnesses, they should so state.

13   Plaintiffs have so far refused to produce, or agree to produce, any profit statements

14   regarding the works allegedly infringed, rejecting Defendants' request that they

15   produce the profit and loss statements generated by their exploitation of the *Star Trek*

16   franchise within a certain reasonable timeframe.  Plaintiffs' enormous profits from

17   exploiting the *Star Trek* franchise since acquiring the rights from Gene Roddenberry

18   are relevant in light of the dates of the allegedly infringed works.  Indeed, in their

19   discovery responses Plaintiffs stated that Defendants have infringed television

20   episodes from as early in time as 1966.  Thus, the revenues previously earned, when

21   compared to those earned since the creation of the *Axanar* Works, are relevant to

22   show the lack of impact on Plaintiffs' market, an element of Defendants' fair use

23   defense.  Though Plaintiffs agreed to produce all documents they intend to provide to

24   their expert witnesses on damages, they have yet to do so.  Ranahan Decl. ¶ 10.  It is

25   clear that Plaintiffs are obligated to produce documents relating to their allegations of

26   damages, as there is no legitimate reason Defendants should be prejudiced by waiting

27   until trial begins to commence its analysis of Plaintiffs' purported actual damages.

28

### 3.     Plaintiffs' Argument

Defendants have improperly attempted to take the requests at issue out of context and by their own admission have sought to "lump together" multiple issues. Each request at issue must be addressed individually and, as the Court will see, there is no validity to Defendants' request for further discovery on any of these requests.

**Request No. 14**

Request No. 14 seeks documents that "relate to the commercial impact, if any, that the promotion, production, or release of fan films, including but not limited to fan films inspired by Star Trek, has had or might have on the value of the works from which the fan films are inspired, including but not limited to the Star Trek Copyrighted Works."

This Motion is moot because Plaintiffs agreed to produce the documents requested. Defendants are wasting the Court's time by filing this Motion with respect to this Request.

Moreover, even though Defendants agreed to produce such documents, and have produced responsive documents, documents relating to fan films are irrelevant to this case given that *Axanar* is, admittedly, not a fan film. For example, on the Kickstarter funding page for Axanar, Defendants referred to it as "<u>the independent Star Trek film which proves that a feature-quality Star Trek film can be made on a small budget</u>." In a post on Facebook.com, Mr. Peters stated that he is "<u>the producer of Star Trek: Axanar, an independent Star Trek feature that will be released on the web. We don't call it a 'fan film' because we have so many pros involved and plan to make a ground breaking film</u>." The website for Axanar stated, "<u>Please note that we are a professional production and thus RUN like a professional production. That means our full time employees get paid</u>." (emphasis added).

*Axanar* is a professional enterprise created by Mr. Peters in which he raised over $1.5 million from Star Trek fans, paid professionals to participate in his production and leased a commercial studio. Even if *Axanar* were a fan film, which it

22

1  is not, documents and information relating to other Star Trek fan films and Plaintiffs'

2  decision as to whether to pursue legal action against those fan films are irrelevant.

3       Regardless of Defendants' recent re-characterization of their works, and the

4  irrelevant nature of this particular request, Defendants' motion on this point is moot as

5  the response at issue expressly agrees that responsive documents, if any, will be

6  produced.

7       **Request No. 23**

8       Request No. 23 seeks all documents relating to Plaintiffs' "expenditures relating

9  to the promotion or production of the Star Trek Copyrighted Works, including but not

10  limited to the salaries paid to the directors, producers, actors, and all other persons

11  involved in the promotion or production of such works."

12       In response to Request No. 23, Plaintiffs objected on the grounds that it was

13  overbroad, unduly burdensome, and seeks documents that are not relevant to any

14  party's claim or defense, nor proportional to the needs of the case.  Plaintiffs further

15  objected to the extent that the Request required the disclosure of documents

16  containing information that is protected by the rights of privacy, confidential data,

17  trade secrets, proprietary or sensitive business information, or nonpublic financial

18  information pertaining to Plaintiffs, their past or present personnel, and other persons

19  or entities.

20       This Request is indisputably improper on its face.  Defendants are seeking

21  every letter, email, and contract relating to every actor, producer, director, or any other

22  individual who was involved in the promotion or production of the Star Trek

23  Copyrighted Works, which span a time period of 50 years.  During this period more

24  than several hundred television episodes and twelve feature films were produced,

25  along with countless other Star Trek materials, including books, games and other

26  derivative works.  This request is both wildly overbroad and entirely irrelevant to

27  whether or not Defendants engaged in copyright infringement.  Notably, in

28  defendants' argument, they fail to even address how these agreements and documents

1  could possibly be relevant to any issue in the case.

2       To the extent that Defendants are asserting that this information is relevant to
3  the market harm element of the fair use analysis, this is not an accurate statement of
4  law.  As the Supreme Court held in *Harper & Row, Publrs. v. Nation Enters.*, 471
5  U.S. 539, 568 (1985), for the plaintiff to negate the element of market harm, it "need[s
6  to] only show that if the challenged use should become widespread, it would adversely
7  affect the potential market for the copyrighted work…This inquiry must take account
8  not only of harm to the original but also of harm to the market for derivative works."
9  (internal citations and quotations omitted). Moreover, "[i]f the defendant's work
10  adversely affects the value of any of the rights in the copyrighted work (in this case
11  the adaptation [and serialization] right) the use is not fair." *Id.*   (citation omitted).
12  Here, by creating a derivative work, set in the Star Trek universe, using Plaintiffs'
13  copyrighted characters, settings, and plots, Defendants are, by definition, causing
14  market harm to Plaintiffs as they are damaging Plaintiffs' potential market for
15  derivative works.  *See Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp.
16  2d 329, 336 (S.D.N.Y. 1998)("While the book cannot serve as a market substitute for
17  the richly entertaining [Star Trek] television shows and movies, it can interfere with
18  Paramount's market for derivative works.").

19       In any case, this request is impermissibly overbroad and Defendants' motion
20  should be denied.

21       **Request No. 35 & 36**

22       Request No. 35 seeks documents demonstrating "how the market for
23  [Plaintiff's] business has been impacted by the Axanar Works.

24       Request No. 35 seeks documents "discussing the impact, or lack thereof, of the
25  Axanar Works on Your business."

26       In response to both of these requests, CBS agreed to produce all non-privileged
27  responsive documents.

28

1    Prior to serving its discovery motion, pursuant to Local Rule 37-1, Defendants

2    were required to "confer in a good faith effort to eliminate the necessity for hearing

3    the motion or to eliminate as many of the disputes as possible." L.R. 37-1.  And in its

4    contentions, Defendants were required to "state how it proposed to resolve [each]

5    issue at the conference of counsel." L.R.  37-2.1.  Defendants have utterly failed to

6    comply with their obligations.   Ms. Ranahan's and Ms. Hughes Leiden's declarations

7    and accompanying exhibits make no mention at all of meeting and conferring with

8    respect to Request Nos. 35-36, let alone any substantive discussion of the issues.

9    In fact, CBS served its Response to Request Nos. 35-36 by overnight mail on

10   September 19, and Defendants sent Plaintiffs this Joint Stipulation two days later on

11   September 21.  Defendants plainly made no effort to meet and confer and instead

12   decided to file this Motion prematurely.  Defendants' motion should be denied on

13   these grounds alone.  *See So v. Land Base, LLC*, No. CV 08-03336 DDP (AGRx),

14   2009 U.S. Dist. LEXIS 71507, at *8 (C.D. Cal. Aug. 4, 2009)(denying discovery

15   motion where there was "no indication in the papers that Defendant ha[d] attempted to

16   comply with [the meet and confer] requirement").

17   Moreover, this Motion is moot as CBS agreed to produce the documents

18   requested, if any exist.  Defendants are wasting the Court's time by filing this Motion

19   with respect to these Requests.

20   **Request No. 37**

21   Request No. 37 seeks documents "sufficient to show your profitability, revenue,

22   ticket sales, and product sales related to Your Works from 2009 to present."

23   In response to this Request, CBS objected on the grounds that it was overbroad,

24   unduly burdensome, and seeks documents that are not relevant to any party's claim or

25   defense, nor proportional to the needs of the case.  CBS further objected to the extent

26   that the Request required the disclosure of documents containing information that is

27   protected by the rights of privacy, confidential data, trade secrets, proprietary or

28   sensitive business information, or nonpublic financial information pertaining to CBS,

25

1   its past or present personnel, and other persons or entities.  CBS also objected on the

2   ground that the undefined term "Your Works" was vague and ambiguous.

3          Prior to serving its discovery motion, pursuant to Local Rule 37-1, Defendants

4   were required to "confer in a good faith effort to eliminate the necessity for hearing

5   the motion or to eliminate as many of the disputes as possible." L.R. 37-1.  And in its

6   contentions, Defendants were required to "state how it proposed to resolve [each]

7   issue at the conference of counsel." L.R.  37-2.1.  Defendants have utterly failed to

8   comply with their obligations.   Ms. Ranahan's and Ms. Hughes Leiden's declarations

9   and accompanying exhibits make no mention at all of meeting and conferring with

10  respect to Request No. 37, let alone of any substantive discussion of the issues.  In

11  fact, CBS served its Response to Request No. 37 by overnight mail on September 19,

12  and Defendants sent Plaintiffs this Joint Stipulation two days later on September 21.

13  Defendants plainly made no effort to meet and confer and instead decided to file this

14  Motion prematurely.  Defendants' motion should be denied on these grounds alone.

15  *See So v. Land Base, LLC*, No. CV 08-03336 DDP (AGRx), 2009 U.S. Dist. LEXIS

16  71507, at *8 (C.D. Cal. Aug. 4, 2009)(denying discovery motion where there was "no

17  indication in the papers that Defendant ha[d] attempted to comply with [the meet and

18  confer] requirement").

19         Moreover, this Request is improper on its face.  Defendants are essentially

20  seeking every piece of financial information relating to any of CBS' works for the past

21  seven years.  The majority of works owned by CBS have nothing to do with this case

22  – this case is only about the Star Trek Copyrighted Works.  Defendants do not explain

23  how the financial information of other works of CBS has any relevance here.

24         Furthermore, even to the extent that Defendants seek the financial documents of

25  the Star Trek Copyrighted Works, this too is improper.  To the extent that Defendants

26  are asserting that this information is relevant to the market harm element of the fair

27  use analysis, this is not an accurate statement of law.  As the Supreme Court held in

28  *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 568 (1985), for the plaintiff

26

to negate the element of market harm, it "need[s to] only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work…This inquiry must take account not only of harm to the original but also of harm to the market for derivative works." (internal citations and quotations omitted). Moreover, "[i]f the defendant's work adversely affects the value of any of the rights in the copyrighted work (in this case the adaptation [and serialization] right) the use is not fair." *Id.* (citation omitted). Here, by creating a derivative work, by definition Defendants are causing market harm to Plaintiffs' Star Trek Copyrighted Works as well as their potential market for derivative works. *See Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329, 336 (S.D.N.Y. 1998)("While the book cannot serve as a market substitute for the richly entertaining [Star Trek] television shows and movies, it can interfere with Paramount's market for derivative works.").

It is undisputed that Defendants raised money from Star Trek fans to make infringing films.  <u>It is Defendants' expenditures that are relevant here, not Plaintiffs'</u>. Defendants' documents show that they have spent tens of thousands of dollars, raised from Star Trek fans, on personal expenses and salaries, including car insurance and tires.  This is the financial information that is relevant to this case, as well as the profits of Defendants.

Finally, Defendants' over-reaching request for all profits relating to CBS's works is harassing, overbroad and irrelevant.  Defendants have not articulated a theory as to how the profits of a film from the 1980s, for example has any relevance here. Further, Defendants have not articulated how they intend to use evidence of financial performance of hundreds of works over the course of the last decade to demonstrate that they are not liable for copyright infringement.  This request is completely disproportionate to the issues in this case, and constitutes an improper expedition into Defendants' financial affairs.  The motion to compel on this request should be denied.

1       **Interrogatory Nos. 8-9**

2          Interrogatory No. 8 asks Plaintiffs to "identify and describe the harm or injury

3 You claim to have suffered as a result of Defendants' actions as alleged in the FAC."

4          Interrogatory No. 9 asks Plaintiffs to "identify and describe the damages You

5 seek for each cause of action, including by identifying and describing the method(s)

6 used to compute these damages."

7          In response, Plaintiffs objected to these interrogatories as overly broad and

8 unduly burdensome.  Plaintiffs further objected the Interrogatory in light of the fact

9 that discovery of the case is ongoing, and on the grounds that it improperly called for

10 a legal conclusion and was subject to expert testimony.

11          On June 21, 2016, the parties met and conferred about this Interrogatory and

12 reached an agreement that Plaintiffs would produce all documents that they intended

13 to provide to their experts.  On August 3, 2016, Plaintiffs' counsel sent a letter to

14 Defendants' counsel <u>confirming this agreement</u>.  *See* Declaration of Jennifer Jason

15 ("Jason Decl."), Ex. A.  Defendants' counsel did not object to this agreement, but then

16 filed this Motion without addressing the parties' prior discovery agreement on this

17 precise issue.

18          As Plaintiffs stated in their objections, this interrogatory is premature given that

19 the parties are still engaged in discovery and that it calls for expert testimony.

20 Nevertheless, and as the parties have already agreed, Plaintiffs are willing to provide

21 Defendants with the same documents that they will provide to their experts.

22          Further, Plaintiffs agree to supplement these interrogatory responses and will

23 further identify the claimed harm from Defendants' infringing conduct and will also

24 identify the damages relating to that infringement.

25       **Subject Matter of Testimony No. 14**

26          Subject Matter No. 14 seeks testimony regarding all "revenues from the

27 allegedly infringed works, including without limitation how such revenues are tracked

28 or accounted for."

1    In response to this Subject Matter, Plaintiffs objected on the grounds that it is

2    overly broad and unduly burdensome, and seeks information that is not relevant to any

3    party's claim or defense, nor proportional to the needs of the case.  Plaintiffs further

4    objected to the extent that the Subject Matter required the disclosure of documents

5    containing information that is protected by the rights of privacy, confidential data,

6    trade secrets, proprietary or sensitive business information, or nonpublic financial

7    information pertaining to Plaintiffs, their past or present personnel, and other persons

8    or entities.

9    This Subject Matter seeks overarching financial information for every Star Trek

10    Work, of which there are hundreds, for the last 50 years.  This information is not

11    relevant.  To the extent that Defendants are asserting that this information is relevant

12    to the market harm element of the fair use analysis, this is not an accurate statement of

13    law.  As the Supreme Court held in *Harper & Row, Publrs. v. Nation Enters.*, 471

14    U.S. 539, 568 (1985), for the plaintiff to negate the element of market harm, it "need[s

15    to] only show that if the challenged use should become widespread, it would adversely

16    affect the potential market for the copyrighted work…This inquiry must take account

17    not only of harm to the original but also of harm to the market for derivative works."

18    (internal citations and quotations omitted).  Moreover, "[i]f the defendant's work

19    adversely affects the value of any of the rights in the copyrighted work (in this case

20    the adaptation [and serialization] right) the use is not fair." *Id.*  (citation omitted).

21    Here, by creating a derivative work, by definition Defendants are causing market harm

22    to Plaintiffs' Star Trek Copyrighted Works as well as their potential market for

23    derivative works.  *See Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp.

24    2d 329, 336 (S.D.N.Y. 1998)("While the book cannot serve as a market substitute for

25    the richly entertaining [Star Trek] television shows and movies, it can interfere with

26    Paramount's market for derivative works.").

27    It is undisputed that Defendants raised money from Star Trek fans to create a

28    "professional" "independent Star Trek film."  In copyright infringement suits, the

29

1    profits of the infringer are relevant and discoverable. However, in this case,

2    Defendants are seeking revenues (from decades upon decades of creative works) and,

3    in addition to being overbroad and unduly burdensome, this request has no bearing on

4    the issues in this case.

5         **D.**      **Defendants' Issue 2 -  Documents, Communications, and Testimony**

6                **Relating To Plaintiffs' Allegations of Willful Infringement, From**

7                **Both Before And Since The Filing Of This Lawsuit**

8            **1.**      **The Requests**

9    **REQUEST NO. 17:**

10       All Documents that refer or relate to fan films inspired by Star Trek.

11    **RESPONSE TO REQUEST NO. 17:**

12       [Plaintiff] incorporates its General Response and Objections as set forth above.

13    [Plaintiff] objects to this request on the ground that it is overbroad, unduly

14    burdensome, and seeks documents that are not relevant to any party's claim or

15    defense, nor proportional to the needs of the case. [Plaintiff] further objects to this

16    Request on the grounds that the term "fan films" is vague and ambiguous.

17       Notwithstanding the foregoing objections, [Plaintiff] will produce all non-

18    privileged, responsive documents from 2011 until present that it is able to locate

19    following a reasonable search.

20    **REQUEST NO. 18:**

21       All Documents that refer or relate to Your decision whether to pursue legal

22    action, including but not limited to sending DMCA takedown notices, sending cease

23    and desist letters, and/or filing lawsuits, with respect to fan films inspired by Star

24    Trek, including but not limited to *Star Trek: Hidden Frontier*, *Starship Exeter*, *Bring*

25    *Back Kirk*, *Star Trek: New Voyages / Star Trek: Phase II*, *Star Wreck: In the*

26    *Pirkinning*, *Star Trek in Lego*, *Star Trek: Aurora*, *Star Trek: Of Gods and Men*,

27    *Starship Farragut*, *Star Trek: The Next Animation*, *Dan Hauser's Animated Star Trek*,

28    *Star Trek: Phoenix*, *Star Trek Continues*, *Star Trek: Specter*, *Star Trek II: Retribution*,

1   *Star Trek III: Redemption*,  *Star Trek: Reunion*, *Star Trek: Secret Voyage*, *Star Trek:*

2   *Dark Horizon*, *Star Trek: Absolution*, *Star Trek: Renegades*, and *Star Trek: Horizon*.

3   **RESPONSE TO REQUEST NO. 18:**

4       [Plaintiff] incorporates its General Response and Objections as set forth above.

5   [Plaintiff] objects to this request on the grounds and to the extent that it calls for

6   information that is protected by the attorney-client privilege and work product

7   doctrine.  [Plaintiff] further objects to this request on the ground that it is overbroad,

8   unduly burdensome, and seeks documents that are not relevant to any party's claim or

9   defense, nor proportional to the needs of the case.  [Plaintiff] further objects to this

10   Request on the grounds that the term "fan films" is vague and ambiguous.

11   **REQUEST NO. 19:**

12       All Documents regarding Your policies, practices, and procedures regarding

13   sending DMCA takedown notices with regard to works that You believe have

14   infringed Your copyrights, including Your purported copyrights in the Star Trek

15   Copyrighted Works.

16   **RESPONSE TO REQUEST NO. 19:**

17       [Plaintiff] incorporates its General Response and Objections as set forth above.

18   [Plaintiff] objects to this request on the grounds and to the extent that it calls for

19   information that is protected by the attorney-client privilege and work product

20   doctrine.  [Plaintiff] further objects to this request on the ground that it is overbroad,

21   unduly burdensome, and seeks documents that are not relevant to any party's claim or

22   defense, nor proportional to the needs of the case.

23   **REQUEST NO. 20:**

24       All Documents regarding Your policies, practices, and procedures regarding

25   sending DMCA takedown notices with regard to works that may constitute fair use.

26   **RESPONSE TO REQUEST NO. 20:**

27       [Plaintiff] incorporates its General Response and Objections as set forth above.

28   [Plaintiff] objects to this request on the grounds and to the extent that it calls for

1  information that is protected by the attorney-client privilege and work product
2  doctrine.  [Plaintiff] further objects to this request on the ground that it is overbroad,
3  unduly burdensome, and seeks documents that are not relevant to any party's claim or
4  defense, nor proportional to the needs of the case.

5  **REQUEST NO. 21:**

6       All Documents and Communications regarding Your decision whether to send a
7  DMCA takedown notice to YouTube or any other person or entity with regard to
8  *Prelude to Axanar* or the "Vulcan Scene."

9  **RESPONSE TO REQUEST NO. 21:**

10       [Plaintiff] incorporates its General Response and Objections as set forth above.
11  [Plaintiff] objects to this request on the grounds and to the extent that it calls for
12  information that is protected by the attorney-client privilege and work product
13  doctrine.  [Plaintiff] further objects to this request on the ground that it is overbroad,
14  unduly burdensome, and seeks documents that are not relevant to any party's claim or
15  defense, nor proportional to the needs of the case.

16  **REQUEST NO. 24:**

17       All Documents that refer or relate to *Star Wars* fan films, including but not
18  limited to (a) all Documents that refer, relate to, or constitute Lucasfilm's guidelines
19  and/or attitudes regarding fan films, and (b) all Documents relating to any meetings or
20  other Correspondence between You and any other person or entity, including at
21  Lucasfilm, regarding this subject.

22  **RESPONSE TO REQUEST NO. 24:**

23       [Plaintiff] incorporates its General Response and Objections as set forth above.
24  [Plaintiff] objects to this request on the grounds and to the extent that it calls for
25  information that is protected by the attorney-client privilege and work product
26  doctrine.  [Plaintiff] further objects to this request on the ground that it is overbroad,
27  unduly burdensome, and seeks documents that are not relevant to any party's claim or
28  defense, nor proportional to the needs of the case.  [Plaintiff] further objects to the

1   request to the extent that it purports to require the disclosure of documents containing

2   information that is protected from disclosure by rights of privacy, confidential data,

3   trade secrets, proprietary or sensitive business information, or nonpublic financial

4   information pertaining to [Plaintiff], its past or present personnel, or other persons or

5   entities.  [Plaintiff] further objects to this Request on the grounds that the term "fan

6   films" is vague and ambiguous.

7   **REQUEST NO. 25:**

8       All Documents that refer, relate to, or constitute any actual or potential

9   guidelines for fan films that You have Created, implemented, or considered creating

10  or implementing, including but not limited to any research, analysis, or

11  Communications regarding this subject.

12  **RESPONSE TO REQUEST NO. 25:**

13      [Plaintiff] incorporates its General Response and Objections as set forth above.

14  [Plaintiff] objects to this request on the grounds and to the extent that it calls for

15  information that is protected by the attorney-client privilege and work product

16  doctrine.  [Plaintiff] further objects to this request on the ground that it is overbroad,

17  unduly burdensome, and seeks documents that are not relevant to any party's claim or

18  defense, nor proportional to the needs of the case.  [Plaintiff] further objects to the

19  request to the extent that it purports to require the disclosure of documents containing

20  information that is protected from disclosure by rights of privacy, confidential data,

21  trade secrets, proprietary or sensitive business information, or nonpublic financial

22  information pertaining to [Plaintiff], its past or present personnel, or other persons or

23  entities.  [Plaintiff] further objects to this Request on the grounds that the term "fan

24  films" is vague and ambiguous.

25  **REQUEST NO. 29:**

26      All Documents and Communications relating to the statements made by J.J.

27  Abrams on or about May 19, 2016 that (a) Justin Lin was "outraged" by this lawsuit;

28  (b) this lawsuit "was not an appropriate way to deal with the fans"; (c) "fans should be

celebrating this thing"; (d) "[f]ans of Star Trek are part of this world"; (e) Justin Lin "went to the studio and pushed them to stop this lawsuit"; (f) "within the next few weeks, it will be announced this is going away"; and (g) "fans would be able to continue working on their project."

**RESPONSE TO REQUEST NO. 29:**

[Plaintiff] incorporates its General Response and Objections as set forth above. [Plaintiff] objects to this request on the grounds and to the extent that it calls for information that is protected by the attorney-client privilege and work product doctrine. [Plaintiff] further objects to this request on the grounds and to the extent it seeks communications with [the other Plaintiff], which are protected from disclosure by the common interest doctrine. [Plaintiff] further objects to this request on the ground that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any party's claim or defense, nor proportional to the needs of the case.

**SUBJECT MATTER OF TESTIMONY NO. 14:**

Revenues from the allegedly infringed works, including without limitation how such revenues are tracked or accounted for.

**RESPONSE TO SUBJECT MATTER OF TESTIMONY NO. 14:**

[Plaintiff] incorporates its Preliminary Response and Objections to Subject Matters of Testimony as though set forth fully herein. [Plaintiff] further objects to this Subject on the grounds and to the extent that it calls for information that is protected by the attorney-client privilege and work product doctrine. [Plaintiff] further objects to the Subject to the extent that it purports to require the disclosure of information that is protected from disclosure by rights of privacy, confidential data, trade secrets, proprietary or sensitive business information, or nonpublic financial information pertaining to [Plaintiff], its past or present personnel, or other persons or entities. [Plaintiff] further objects to this Subject to the extent that it seeks information that is not relevant to any part's claim or defense, nor proportional to the needs of the case.

**SUBJECT MATTER OF TESTIMONY NO. 19:**

1     Your enforcement history relating to Your copyrighted works.

2    **RESPONSE TO SUBJECT MATTER OF TESTIMONY NO. 19:**

3     [Plaintiff] incorporates its Preliminary Response and Objections to Subject

4    Matters of Testimony as though set forth fully herein.  [Plaintiff] further objects to this

5    Subject on the grounds and to the extent that it calls for information that is protected

6    by the attorney-client privilege and work product doctrine.  [Plaintiff] further objects

7    to this Subject on the grounds that it is overly broad and unduly burdensome.

8    [Plaintiff] further objects to this Subject to the extent that it seeks information that is

9    not relevant to any party's claim or defense, nor proportional to the needs of the case.

10   **SUBJECT MATTER OF TESTIMONY NO. 21:**

11     Your policies, efforts, procedures, and practices to protect and police Your

12   allegedly infringed works from copyright infringement.

13   **RESPONSE TO SUBJECT MATTER OF TESTIMONY NO. 21:**

14     [Plaintiff] incorporates its Preliminary Response and Objections to Subject

15   Matters of Testimony as though set forth fully herein.  [Plaintiff] further objects to this

16   Subject on the grounds and to the extent that it calls for information that is protected

17   by the attorney-client privilege and work product doctrine.  [Plaintiff] further objects

18   to this Subject on the grounds that it is overly broad and unduly burdensome.

19   [Plaintiff] further objects to this Subject to the extent that it seeks information that is

20   not relevant to any party's claim or defense, nor proportional to the needs of the case.

21   **SUBJECT MATTER OF TESTIMONY NO. 22:**

22     Any policy, practice, or procedure You have (or may have had in the past) that

23   relates in any way to the DMCA, including the submission of DMCA Notices, any

24   "take down" policies, and Your consideration of the fair use defense.

25   **RESPONSE TO SUBJECT MATTER OF TESTIMONY NO. 22:**

26     [Plaintiff] incorporates its Preliminary Response and Objections to Subject

27   Matters of Testimony as though set forth fully herein.  [Plaintiff] further objects to this

28   Subject on the grounds and to the extent that it calls for information that is protected

by the attorney-client privilege and work product doctrine.  [Plaintiff] further objects to this Subject on the grounds that it is overly broad and unduly burdensome. [Plaintiff] further objects to this Subject to the extent that it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

**SUBJECT MATTER OF TESTIMONY NO. 28:**

All communications between You and J.J. Abrams and/or Justin Lin regarding fan films, this lawsuit, and/or Axanar.

**PLAINTIFF CBS' RESPONSE TO SUBJECT MATTER OF TESTIMONY NO. 28:**

CBS incorporates its Preliminary Response and Objections to Subject Matters of Testimony as though set forth fully herein.  CBS further objects to this Subject on the grounds and to the extent that it calls for information that is protected by the attorney-client privilege and work product doctrine.  CBS further objects to this Subject on the grounds that it is overly broad and unduly burdensome.  CBS further objects to this Subject to the extent that it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

CBS is not aware of any such communications.

**PLAINTIFF PARAMOUNT'S RESPONSE TO SUBJECT MATTER OF TESTIMONY NO. 28:**

Paramount incorporates its Preliminary Response and Objections to Subject Matters of Testimony as though set forth fully herein.  Paramount further objects to this Subject on the grounds and to the extent that it calls for information that is protected by the attorney-client privilege and work product doctrine.  Paramount further objects to this Subject on the grounds that it is overly broad and unduly burdensome.  Paramount further objects to this Subject to the extent that it seeks information that is not relevant to any party's claim or defense, nor proportional to the needs of the case.

### 2. Defendants' Argument

Defendants also seek non-privileged documents, communications, and deposition testimony regarding Plaintiffs' attitudes toward, and policies regarding, *Star Trek*-inspired fan fiction generally. These requests seek documents and communications regarding Plaintiffs' fan fiction guidelines, any DMCA takedown notices and cease and desist letters Plaintiffs have issued to websites hosting such fan fiction, and deposition testimony regarding the public statements made by the director and producer of Plaintiff Paramount's recent *Star Trek* works that are at issue in this case, J.J. Abrams and Justin Lin, regarding this lawsuit, from both before and since the lawsuit commenced. *See* Defendants' Answer to Plaintiffs' First Amended Complaint and Counterclaim, ¶¶ 21-23. Statements that *Star Trek* belongs to all of us and that the lawsuit is ridiculous and was going to be "dropped" is relevant to the impact on the market prong of the fair use analysis, and Plaintiffs utter lack of damages. Though these documents and deposition testimony are directly relevant to demonstrating the impact of the *Axanar* Works on the market for the *Star Trek* Copyrighted Works, and Plaintiffs' allegations of willful infringement, Plaintiffs have either refused to produce, or produced insufficient documents, responsive to Defendants' RFPs. Moreover, Plaintiffs have stated their intention to limit their production of responsive documents to the period of time preceding the filing of their Complaint in December of 2015. It is indisputable that documents generated after the filing of the lawsuit are relevant to the issues raised by this action, and thus, Plaintiffs should be compelled to produce them.

i   The Documents, Information, and Deposition Testimony Sought By RFP Nos. 17, 18, 19, 20, 21, 24, And 25, And Deposition Testimony Subject Nos. 14, 19, 21, 22, And 28 Are Directly Relevant To Plaintiffs' Claims Of Willful Infringement And Defendants' Affirmative Defenses

Plaintiffs have alleged that the *Axanar* Works do not constitute fair use, and that

37

in creating the *Axanar* Works, Defendants willfully infringed upon their copyrights. This allegation is significant, as it is directly tied to the issue of damages. A finding of willful infringement would allow Plaintiffs, within the Court's discretion, to obtain up to $150,000 in statutory damages per infringing act. 17 U.S.C. § 504(c)(2). While the Copyright Act does not define the term "willful," the Ninth Circuit has held that the term means "with knowledge that the defendant's conduct constitutes copyright infringement." *United Fabrics Intern., Inc. c. G-III Apparel Group, Ltd.*, No. CV13-00803-ODW (AJWx), 2013 WL 7853485, at *5 (C.D. Cal. Dec. 27, 2013) (citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 n.3 (9th Cir. 1990); *Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284, 293 (9th Cir. 1997) *rev'd on other grounds sub nom.*; *Feltner v. Columbia Pictures Television*, 523 U.S. 340 (1998); *cv. Danjaq LLC v. Sony Corp.*, 263 F.2d 942, 957-58 (9th Cir. 2001)). In contrast to willful infringement, innocent infringement occurs where the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." *United Fabrics*, 2013 WL 7853485, at *5 (citing 17 U.S.C. § 504(c)(2)).

The documents, information, and deposition testimony sought by the above RFPs and Deposition Testimony Subjects are directly relevant to Plaintiffs' allegations of willful infringement, and Defendants' affirmative defenses, including fair use, waiver, and acknowledgement, ratification, consent, and acquiescence. Plaintiffs' documents and communications regarding fan films, guidelines, and particularly the statements made by Plaintiffs' own representatives, J.J. Abrams and Justin Lin, will demonstrate that Defendants reasonably believed – and actually were – operating within the enduring tradition of *Star Trek*-inspired works of fan fiction, which have been long tolerated and encouraged by Plaintiffs since the inception of the *Star Trek* franchise. Additionally, the requested documents are necessary to revealing Plaintiffs' tacit acknowledgement that works of fan fiction such as the *Axanar* Works have no negative impact on the market for the *Star Trek* Copyrighted Works. As set

1    forth above, this fact is highly relevant to Defendants' fair use defense.

2         The requested documents and deposition testimony will further support

3    Defendants' position that Plaintiffs' claims of damages are completely unfounded, and

4    to the extent Plaintiffs have suffered any damages, they failed to mitigate them by

5    allowing the *Axanar* Works to remain available on the Internet.   To date, Plaintiffs

6    have not issued any cease and desist letters or DMCA takedown notices to the video

7    sharing websites that host the *Axanar* Works.   Plaintiffs have failed to take these two

8    simple steps, which they undoubtedly would have had they genuinely felt the market

9    for the *Star Trek* Copyrighted Works was at all harmed by the *Axanar* Works (or if

10   they did not recognize that *Prelude to Axanar* was potentially fair use).   Thus,

11   deposition testimony as to the reasons Plaintiffs have failed to take such protective

12   measures is highly relevant to Plaintiffs' allegations of willful infringement, as well as

13   the fair use analysis.

14        Moreover, as to the documents Plaintiffs have agreed to produce, Plaintiffs have

15   unreasonably stated that they intend to arbitrarily stop production of responsive

16   documents that were created after this action was filed in December 2015.   Ranahan

17   Decl. ¶ 20.   Defendants have asked for authority to support this position, but Plaintiffs

18   have not responded.   Ranahan Decl. ¶ 20.   Defendants have, in full compliance with

19   their discovery obligations, produced documents from before and after this lawsuit

20   was filed, as such documents demonstrating post-filing developments are

21   unquestionably relevant to the parties' claims and defenses.   Ranahan Decl. ¶ 20.

22        Plaintiffs' boilerplate objections to these RFPs and deposition notices, which

23   seek highly relevant documents and testimony that Defendants are entitled to, are

24   unavailing.   Absent any compelling reason to withhold non-privileged documents and

25   testimony responsive to these requests, Plaintiffs should be compelled to produce the

26   requested documents and witnesses.

27

28

1

### 3.    Plaintiffs' Argument

2

**<u>Request No. 17</u>**

3

Request No. 17 seeks "all documents that refer or relate to Star Trek fan films."

4

In response to the Request, Plaintiffs agreed to produce all non-privileged

5

responsive documents from 2011 until present.

6

This Motion is moot because Plaintiffs agreed to produce the documents

7

requested, and limited it to a reasonable time period and Plaintiffs have already

8

produced the documents requested.

9

Defendants claim that Plaintiffs have not agreed to produce responsive

10

documents that were created after this action was filed in December 2015. This is

11

inaccurate. And Defendants do not acknowledge for the Court that, in fact, Plaintiffs'

12

document production includes numerous documents from 2016. Thus, Defendants

13

have filed this Motion before actually reviewing Plaintiffs' document production—

14

again wasting the Court's time.

15

Furthermore, while Plaintiffs have agreed to produce responsive documents

16

dating from 2011, documents relating to fan films are irrelevant to this case given that

17

*Axanar* is not a fan film. As discussed herein, Defendants' counsel's repeated

18

misrepresentation of *Axanar* as a fan film is contrary to their client's own statements.

19

Even if *Axanar* were a fan film, which it is not, documents and information

20

relating to other Star Trek fan films and Plaintiffs' decision as to whether to pursue

21

legal action against those fan films is irrelevant. First, Defendants claim that this

22

information is relevant for their defenses of fair use, waiver, acknowledgement,

23

ratification, consent, and acquiesce. However, the failure to pursue other infringers

24

has been consistently rejected as a defense to copyright infringement or as an

25

indication of abandonment. *Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F.

26

Supp. 2d 329, 337 (S.D.N.Y. 1998)(Court rejected defenses of abandonment and

27

estoppel asserted by a defendant who created a work that infringed on the Star Trek

28

copyrights, holding: "Defendants instead allege that Paramount's failure to commence

40

litigation against <u>other</u> potentially infringing books estops them from bringing this action. Extending the doctrine of estoppel so that a defendant may rely on a plaintiff's conduct toward another party is both unsupported by law and pernicious as a matter of policy.")(emphasis in original); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 484 (2d Cir. 2004)("failure to pursue third-party infringers has regularly been rejected as a defense to copyright infringement or as an indication of abandonment")(citing *Paramount Pictures Corp.*, 11 F. Supp. 2d at 329).

Second, Defendants claim that Plaintiffs' lack of pursuing legal action against other infringers would reveal "Plaintiffs' tacit acknowledgement that works of fan fiction such as the *Axanar* Works have no negative impact on the market for the *Star Trek* Copyrighted Works." This is incorrect. A party's lack of legal action against other alleged infringers has no bearing on whether the work at issue will damage a potential market. *Paramount Pictures Corp.*, 11 F. Supp. 2d at 336 ("It is possible that Paramount believed that the other books did not infringe on the Star Trek Properties. It is also possible that Paramount simply has had a change in corporate policy, determining that the market is now ripe for this type of derivative product. Regardless, the lack of earlier litigation against other similar works is simply irrelevant. A self-avowed substitute for other Paramount licensed products adversely impacts the market for derivative works.").

Defendants have failed to establish how Plaintiffs' pursuit or lack of pursuit of legal action against other potentially infringing works is relevant, and have not provided any authority that supports their position.

## **Request No. 18**

Request No. 18 seeks documents relating to Plaintiffs' decision to pursue legal action with respect to Star Trek fan films.

Plaintiffs objected to the Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any party's claim or defense, nor proportional to the needs of the case.

41

1   On June 21, 2016, the parties met and conferred about this Request and reached

2   an agreement that Plaintiffs would provide pre-litigation non-privileged documents

3   responsive to the request to the extent that they exist.  On August 3, 2016, Plaintiffs'

4   counsel sent a letter to Defendants' counsel <u>confirming this agreement</u>.  *See* Jason

5   Decl., Ex. A.  Defendants' counsel did not object to this agreement, but then filed this

6   Motion without addressing the parties' prior discovery agreement on this precise

7   issue.

8   Documents relating to fan films are irrelevant to this case given that *Axanar* is

9   not a fan film.  Further, even if *Axanar* were a fan film, which it is not, documents and

10   information relating to other Star Trek fan films and Plaintiffs' decision as to whether

11   to pursue legal action against those fan films is irrelevant, contrary to Defendants'

12   argument.  First, Defendants claim that this information is relevant for their defenses

13   of fair use, waiver, acknowledgement, ratification, consent, and acquiesce.  The

14   failure to pursue other infringers has been consistently rejected as a defense to

15   copyright infringement or as an indication of abandonment.  *Paramount Pictures*

16   *Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998)(Court rejected

17   defenses of abandonment and estoppel asserted by a defendant who created a work

18   that infringed on the Star Trek copyrights, holding: "Defendants instead allege that

19   Paramount's failure to commence litigation against <u>other</u> potentially infringing books

20   estops them from bringing this action. Extending the doctrine of estoppel so that a

21   defendant may rely on a plaintiff's conduct toward another party is both unsupported

22   by law and pernicious as a matter of policy.")(emphasis in original); *Capitol Records,*

23   *Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 484 (2d Cir. 2004)("failure to pursue third-

24   party infringers has regularly been rejected as a defense to copyright infringement or

25   as an indication of abandonment")(citing *Paramount Pictures Corp.*, 11 F. Supp. 2d at

26   329).

27   Second, Defendants claim that Plaintiffs' lack of pursuing legal action against

28   other infringers would reveal "Plaintiffs' tacit acknowledgement that works of fan

42

1  fiction such as the *Axanar* Works have no negative impact on the market for the *Star*
2  *Trek* Copyrighted Works."  This is incorrect.  A party's lack of legal action against
3  other alleged infringers has no bearing on whether the work at issue will damage a
4  potential market.  *Paramount Pictures Corp.*, 11 F. Supp. 2d at 336 ("It is possible
5  that Paramount believed that the other books did not infringe on the Star Trek
6  Properties. It is also possible that Paramount simply has had a change in corporate
7  policy, determining that the market is now ripe for this type of derivative product.
8  Regardless, the lack of earlier litigation against other similar works is simply
9  irrelevant.  A self-avowed substitute for other Paramount licensed products adversely
10 impacts the market for derivative works.").

11     Defendants have failed to establish how Plaintiffs' pursuit or lack of pursuit of
12 legal action against other potentially infringing works is relevant, and have not
13 provided any authority that supports their position.  While these documents are not
14 relevant, Plaintiffs' compromise proposal is reasonable, was not addressed by
15 Defendants in their motion, and therefore, this request should be denied.

16     **Request Nos. 19-20**

17     Request No. 19 seeks documents relating to Plaintiffs' policies, practices, and
18 procedures regarding sending DMCA takedown notices with regard to works that
19 Plaintiffs believe infringed their copyrights, including the Star Trek Copyrighted
20 Works.

21     Request No. 20 seeks all documents "regarding Your policies, practices, and
22 procedures regarding sending DMCA takedown notices with regard to works that may
23 constitute fair use."

24     Plaintiffs objected to these requests on the grounds that they are overly broad,
25 unduly burdensome, and seek documents that are not relevant to any party's claim or
26 defense, nor proportional to the needs of the case.  Thereafter, in an email dated
27 September 15, 2016, Plaintiffs agreed to produce non-privileged documents relating to
28 DMCA takedown policies for fan films, if any.  *See* Ranahan Decl., Ex. G.

1    Thus, Plaintiffs have already agreed to produce documents relating to DMCA

2  takedown policies for fan films, which should be sufficient for Defendants.

3    To the extent that Defendants are seeking additional documents other than those

4  that Plaintiffs already agreed to produce, Plaintiffs have not articulated a basis for that

5  demand.

6    Further, as discussed herein, Plaintiffs' decision as to whether to pursue legal

7  action against infringers of the Star Trek Copyrighted Works or their other copyrights

8  is irrelevant.  Defendants have failed to establish how Plaintiffs' pursuit or lack of

9  pursuit of legal action against other potentially infringing works is relevant, and have

10  not provided any authority that supports their position.

11  **<u>Request No. 21</u>**

12    Request No. 21 seeks all documents relating to Plaintiffs' decision whether to

13  send a DMCA takedown notice with regard to *Prelude to Axanar* or the "Vulcan

14  Scene." In response to the Request, Plaintiffs objected on the grounds that seeks

15  attorney client privileged information, is overly broad, unduly burdensome, and seeks

16  documents that are not relevant to any party's claim or defense, nor proportional to the

17  needs of the case.  Thereafter, in an email dated September 15, 2016, Plaintiffs agreed

18  to produce non-privileged documents relating to DMCA takedown policies for fan

19  films, if any.  *See* Ranahan Decl., Ex. G.

20    Plaintiffs have already agreed to produce documents relating to DMCA

21  takedown policies for fan films, which should be sufficient for Defendants.  Plaintiffs'

22  decision as to whether to issue a DMCA Notice for a particular film, however, is a

23  legal decision that is privileged.  Further, the question of whether or not a take-down

24  notice was served with respect to Defendants' infringing Axanar works is moot, as

25  Plaintiffs have already filed this lawsuit – establishing that they believe that

26  Defendants' works are infringing.  Plaintiffs' motion relating to this request should be

27  denied.

28

**Request No. 24**

Request No. 24 seeks all documents "that refer or relate to *Star Wars* fan films, including but not limited to (a) all Documents that refer, relate to, or constitute Lucasfilm's guidelines and/or attitudes regarding fan films, and (b) all Documents relating to any meetings or other Correspondence between You and any other person or entity, including at Lucasfilm, regarding this subject."

In response to the Request, Plaintiffs objected on the grounds that it is overly broad, unduly burdensome, and seeks documents that are not relevant to any party's claim or defense, nor proportional to the needs of the case. Plaintiffs further objected to the extent that the Request required the disclosure of documents containing information that is protected by the rights of privacy, confidential data, trade secrets, proprietary or sensitive business information, or nonpublic financial information pertaining to Plaintiffs, their past or present personnel, and other persons or entities.

Documents relating to fan films are irrelevant to this case given that *Axanar* is not a fan film.

Further, as discussed above, even if *Axanar* were a fan film, which it is not, documents and information relating to other Star Trek fan films and Plaintiffs' decision as to whether to pursue legal action against those fan films is irrelevant.

Finally, this request goes even further than Defendants' prior irrelevant requests, and seeks documents relating to "*Star Wars* fan films." Lucasfilm runs an annual fan film contest, which severely limits the length and content of fan submissions, but Defendants have provided no explanation as to how an annual five-minute "Star Wars" fan film contest, which is supervised by another company, has any relevance to this lawsuit. To the extent Defendants are arguing that Mr. Peters' "subjective" belief as to whether he was going to be sued for copyright infringement is relevant, they have not cited to any case law to support that proposition. Further, and as with most wrongs, the fact that other parties are engaging in improper acts does not insulate the Defendants from liability – and case law is clear that the Copyright Act

45

1  does not require that Plaintiffs chase down every potential infringer to preserve their

2  rights to protect their intellectual property.

3  **Request No. 25**

4  Request No. 25 seeks all documents "that refer, relate to, or constitute any

5  actual or potential guidelines for fan films that You have Created, implemented, or

6  considered creating or implementing, including but not limited to any research,

7  analysis, or Communications regarding this subject."

8  In response to the Request, Plaintiffs objected on the grounds that it is overly

9  broad, unduly burdensome, and seeks documents that are not relevant to any party's

10  claim or defense, nor proportional to the needs of the case.  Plaintiffs further objected

11  to the extent that the Request required the disclosure of documents containing

12  information that is protected by the rights of privacy, confidential data, trade secrets,

13  proprietary or sensitive business information, or nonpublic financial information

14  pertaining to Plaintiffs, their past or present personnel, and other persons or entities.

15  In mid-2016, well after the filing of this lawsuit, Plaintiffs issued guidelines for

16  fan films – films that do not employ professional actors, do not raise money from Star

17  Trek fans, and do not seek to compete as "professional" and "independent Star Trek

18  films."  These guidelines are public, and to the extent Defendants seek to review them,

19  they are free to do so as is the rest of the public.  However, documents relating to the

20  internal creation of these guidelines, or to "research" regarding the implementation of

21  these guidelines, is entirely irrelevant to the question of whether Defendants' pre-2016

22  conduct constitutes copyright infringement.

23  Of course, as with other requests described herein, documents relating to "fan

24  films" have no relevance here as, prior to the filing of this lawsuit, Defendants

25  expressly repudiated any notion that they were engaged in the creation of a "fan film"

26  and instead proclaimed that they were producing, with paid professional actors and

27  crew members, an "independent Star Trek film which proves that a feature-quality

28  Star Trek film can be made on a small budget."

1       Moreover, documents and information relating to other Star Trek fan films and

2   Plaintiffs' decision as to whether to pursue legal action against those fan films is

3   irrelevant.  *See Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 484 (2d Cir.

4   2004)("failure to pursue third-party infringers has regularly been rejected as a defense

5   to copyright infringement or as an indication of abandonment").

6       Additionally, a party's lack of legal action against other alleged infringers has

7   no bearing on whether the work at issue will damage a potential market.  *Paramount*

8   *Pictures Corp.*, 11 F. Supp. 2d at 336 ("It is possible that Paramount believed that the

9   other books did not infringe on the Star Trek Properties. It is also possible that

10   Paramount simply has had a change in corporate policy, determining that the market is

11   now ripe for this type of derivative product. Regardless, the lack of earlier litigation

12   against other similar works is simply irrelevant.  A self-avowed substitute for other

13   Paramount licensed products adversely impacts the market for derivative works.").

14       Defendants have not provided any authority to support their argument that

15   documents relating to <u>other</u> works, or to decisions regarding whether to take legal

16   action against <u>other</u> parties, is relevant to this suit for copyright infringement.

17       On June 21, 2016, the parties met and conferred about this Request and reached

18   an agreement that Plaintiffs would provide pre-litigation non-privileged documents

19   responsive to the request to the extent that they exist.  On August 3, 2016, Plaintiffs'

20   counsel sent a letter to Defendants' counsel <u>confirming this agreement</u>.  Defendants'

21   counsel did not object to this agreement, but then filed this Motion without addressing

22   the parties' prior discovery agreement on this precise issue.  Defendants have failed to

23   establish how Plaintiffs' pursuit or lack of pursuit of legal action against other

24   potentially infringing works is relevant, and have not provided any authority that

25   supports their position.  Nevertheless, while these documents are not relevant,

26   Plaintiffs' compromise proposal is reasonable, was not addressed by Defendants in

27   their motion, and therefore, this request should be denied.

28

JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS

**Request No. 29 and Subject Matter of Testimony No. 28**

Request No. 29 seeks all documents relating to "the statements made by J.J. Abrams on or about May 19, 2016 that (a) Justin Lin was "outraged" by this lawsuit; (b) this lawsuit "was not an appropriate way to deal with the fans"; (c) "fans should be celebrating this thing"; (d) "[f]ans of Star Trek are part of this world"; (e) Justin Lin "went to the studio and pushed them to stop this lawsuit"; (f) "within the next few weeks, it will be announced this is going away"; and (g) "fans would be able to continue working on their project."

J.J. Abrams is a producer/director of certain Star Trek Copyrighted Works and Justin Lin was the director of *Star Trek Beyond*. Neither Mr. Abrams nor Mr. Lin is an authorized representative of either of the Plaintiffs.

In response to the Request, Plaintiffs objected to the Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any party's claim or defense, nor proportional to the needs of the case. Plaintiffs further objected to the extent that the Request required the disclosure of documents containing information that is protected by the rights of privacy, confidential data, trade secrets, proprietary or sensitive business information, or nonpublic financial information pertaining to Plaintiffs, their past or present personnel, and other persons or entities.

Defendants claim that these purported statements are relevant because "they will demonstrate that Defendants reasonably believed—and actually were operating— within the enduring tradition of *Star Trek*-inspired works of fan fiction, which have been long tolerated and encouraged by Plaintiffs since the inception of the *Star Trek* franchise." Defendants fail to show how statements made by a director and director/producer many months *after* this lawsuit was filed will show Defendants' *past* belief that they were operating within a Star Trek tradition of fan films. Moreover, Defendants' subjective "belief" is irrelevant, as explained above.

Further, Defendants argue that the post-lawsuit statements of third parties

48

1   related to the Star Trek franchise are somehow relevant to the question of "damages."

2   Defendants, however, fail to cogently explain that position.  Defendants' unauthorized

3   derivative works either constitute copyright infringement, or they do not.    If

4   Defendants are held liable for copyright infringement, Plaintiffs may seek the profits

5   obtained by Defendants, Plaintiffs' damages, or statutory damages.  A third party's

6   statement about the merits of this lawsuit has absolutely no bearing on the amount of

7   money Defendants' obtained by their infringing conduct, nor does it bear on any other

8   aspect of damages.

9       Similarly, Subject Matter No. 28 seeks testimony relating to "all

10  communications between You and J.J. Abrams and/or Justin Lin regarding fan films,

11  this lawsuit, and/or Axanar."

12      CBS responded that it is not aware of any such communications.  With respect

13  to CBS, this Motion is moot.  CBS has already stated that it is not aware of any such

14  communications.  There is nothing to compel.

15      Paramount objected on the grounds that the Subject Matter is overly broad,

16  unduly burdensome, and seeks information that is not relevant to any party's claim or

17  defense, nor proportional to the needs of the case.

18      As with Defendants' document request, this category of testimony calls for

19  irrelevant testimony as it seeks to show that Defendants "reasonably believed"

20  (contrary to their own public statements) that they were not engaging in copyright

21  infringement.  First, statements made in May of 2016, six months after the filing of

22  this suit, could not possibly have any bearing on Defendants' 'state of mind' when

23  they created the infringing works.  Second, Defendants have provided no authority for

24  the proposition that their subjective "belief" has any bearing on whether or not they

25  committed copyright infringement, or on whether or not Plaintiffs' were damaged by

26  that infringing conduct.  Defendants were expressly aware that Paramount and CBS

27  own the Star Trek Copyrighted Works – and made clear admissions on that issue well

28  before this suit was filed.  There is also no dispute that Defendants proclaimed that

49

1   they were creating a professional "independent Star Trek film" and were intending to
2   create a film that was comparable in quality to Plaintiffs' works.   Post-lawsuit
3   discussions regarding this case have no bearing on any element of liability or damages
4   and Plaintiffs' motion should be denied.

5   **Subject Matter of Testimony No. 14**

6   Subject Matter No. 14 is addressed in Section II(c)(2).   Defendants have
7   included it in their Portion twice.

8   **Subject Matter of Testimony Nos. 19, 21 & 22**

9   Subject Matter No. 19 seeks testimony relating to Plaintiffs' "enforcement
10   history relating to their copyrighted works."

11   Subject Matter No. 21 seeks testimony regarding "Your policies, efforts,
12   procedures, and practices to protect and police Your allegedly infringed works from
13   copyright infringement."

14   Subject Matter No. 22 seeks testimony relating to "any policy, practice, or
15   procedure You have (or may have had in the past) that relates in any way to the
16   DMCA, including the submission of DMCA Notices, any "take down" policies, and
17   Your consideration of the fair use defense."

18   Plaintiffs objected to these Subject Matters on the grounds that they are overly
19   broad and unduly burdensome, and seek information that is not relevant to any party's
20   claim or defense, nor proportional to the needs of the case.

21   Plaintiffs' decision as to whether to pursue legal action against infringers of
22   their copyrights is irrelevant.   Numerous cases have ruled that such information
23   relating to "enforcement history" is irrelevant, and Defendants have not provided any
24   authority to support their improper request.   Further, "policies" that are in place to
25   "protect and police" Plaintiffs' works are similarly irrelevant to the question of
26   whether or not Defendants engaged in copyright infringement.   Again, Defendants
27   have not offered any authority to the contrary.

28   Finally, Defendants demand for all policies and procedures that "relates in any

50

way to the DMCA" is overbroad in the extreme.  Nothing in Defendants' motion even attempts to offer a justification for this overbroad demand, and there is none. Plaintiffs' decisions to sue other parties for infringement, or to police the internet to protect their works, is patently irrelevant to the question of whether or not Defendants' conduct constitutes copyright infringement.   Further, there is no support for Defendants' argument that Plaintiffs' policies or actions with regard to other works has any bearing on the amount of damages Defendants are liable for in this case. *See Paramount Pictures Corp.*, 11 F. Supp. 2d at 336 ("It is possible that Paramount believed that the other books did not infringe on the Star Trek Properties. It is also possible that Paramount simply has had a change in corporate policy, determining that the market is now ripe for this type of derivative product. Regardless, the lack of earlier litigation against other similar works is simply irrelevant.   A self-avowed substitute for other Paramount licensed products adversely impacts the market for derivative works.").

As with their other requests, Defendants have failed to establish how Plaintiffs' pursuit or lack of pursuit of legal action against other potentially infringing works is relevant, and have not provided any authority that supports their position.

**E.     Defendants' Issue 3 -  Documents And Communications Relating To Chain of Title Documents Directly Relevant To Defendants' Investigation Into Plaintiffs' Alleged Copyright Ownership**

**1.     The Requests**

**REQUEST NO. 6:**

All Documents that refer, relate to, or constitute Your ownership, rights, title, and/or interest in and to all of the Star Trek Copyrighted Works that You contend Defendants have infringed, including but not limited to all Documents that refer, relate to, or constitute the chain of title in such works, including but not limited to any transfers of title between or among Plaintiffs, Viacom, Inc., Desilu Productions, and Gene Roddenberry.

**RESPONSE TO REQUEST NO. 6:**

[Plaintiff] incorporates its General Response and Objections as set forth above. [Plaintiff] objects to this Request to the extent that it seeks documents that are not relevant to any party's claim or defense, nor proportional to the needs of the case. [Plaintiff] objects to this request on the ground that it is overbroad and unduly burdensome in calling for all documents that "refer, relate to, or constitute the chain of title" in dozens of copyrighted works.

Notwithstanding the foregoing objections, [Plaintiff] will produce all non-privileged, responsive documents that it is able to locate following a reasonable search.

**REQUEST NO. 7:**

All Documents that refer, relate to, or constitute any challenge made by any person or entity regarding Your ownership, rights, title, and/or interest in or to any of the Star Trek Copyrighted Works that You contend Defendants have infringed, including but not limited to any lawsuit filed or threatened, cease or desist letter received, or any other written or oral Communications related thereto.

**RESPONSE TO REQUEST NO. 7:**

[Plaintiff] incorporates its General Response and Objections as set forth above. [Plaintiff] objects to this request on the ground that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any party's claim or defense, nor proportional to the needs of the case.

### 2.     Defendants' Argument

To establish copyright infringement, a plaintiff must prove two elements:  1) ownership of a valid copyright, and 2) copying of constituent original elements of the work.  *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Twin Peaks Prods., Inc. v. Publ'ns. Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993).  Only an exclusive owner of a copyright may institute a copyright infringement lawsuit.  *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005).  While

the issuance of a certificate of registration before or within five years of a work's initial publication creates a rebuttable presumption that the recipient is the owner of a valid copyright, 17 U.S.C. § 410(c); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (presumption of ownership created by registration may be rebutted), the presumption is modest.  "The prima facie status accorded by section 410(c) is slight, since the Copyright Office is merely an office of record . . . . Of necessity, the Office's examination is limited." 5 Patry on Copyright § 17:109.   "[A] certificate of registration creates no irrebuttable presumption of copyright validity."   *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980).  And where there was a "material mistake" in the copyright's registration, "the presumption of validity is rebutted, if not voided altogether."   *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 985 (C.D. Cal. 2015) (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1163 (1st Cir. 1994) (". . . a material error in a copyright deposit, even if unintentional, may destroy the presumption of validity"); *see also Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990) (stating that if the registration contains "a material, but inadvertent omission," it may be the correct approach to "deprive the plaintiff of the benefits of [the presumption of validity] and to require him to establish the copyrightability of the articles he claims are being infringed"); *Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1251-52 (D. N.M. 2009) (following the approach suggested in *Masquerade* and *Data General* in denying a copyright claimant any presumption of validity as a result of errors in registration); *Rouse v. Walter & Assocs., L.L.C.*, 513 F. Supp. 2d 1041, 1065 (S.D. Iowa 2007) (declining to find that a certificate constituted "prima facie evidence of the validity of the copyright").

Indeed, in *In re Napster*, the court stated that "refusing to allow any discovery on the issue of ownership converts the presumption of ownership into an irrebuttable one."   *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002).  Although this Court need not look further than *Napster*, in case after case,

copyright ownership documents are regularly requested and produced.  *See, e.g.*, *Jim Marshall Photography, LLC v. John Varvatos of Cal.*, No. C-11-06702 DMR, 2013 WL 3339048, at *8-9 (N.D. Cal. June 28, 2013) (granting defendant's motion for summary judgment where plaintiff failed to satisfy its burden of producing sufficient evidence demonstrating its ownership of the copyrights at issue; citing cases supporting the proposition that a party who obtains copyright ownership through assignment by a third party has the burden of proving chain of title); *Mindlab Media, LLC v. LWRC Int'l, LLC*, No. CV 11-3405-CASFFMX, 2013 WL 1688309, at *2 (C.D. Cal. Apr. 15, 2013) (noting that plaintiff produced copyright ownership documents during discovery); *E.W. Sounds, Inc. v. Phoenix*, No. CV 12-6143 CASAJWX, 2012 WL 4003047, at *3 n.2 (C.D. Cal. Sept. 10, 2012) (noting that documents related to ownership would be produced and "[would] provide defendant information regarding the basis on which plaintiff claims ownership of copyrights"); *Righthaven LLC v. Pahrump Life*, No. 2:10-cv-1575 JCM PAL, 2011 WL 7402998, at *1 (D. Nev. Apr. 28, 2011) (issuing order to show cause why the case should not be dismissed for plaintiff's lack of beneficial ownership of the copyright where the plaintiff failed to produce sufficient documents demonstrating ownership); *McCormick v. Cohn*, No. cv 90-0323 H, 1992 WL 687291, at *12 (S.D. Cal. July 31, 1992), *aff'd*, 17 F.3d 395 (9th Cir. 1994) (finding that plaintiff's failure to produce non-privileged responsive documents relating to copyright ownership violated discovery order); *Trill Entm't, LLC v. B C D Music Grp., Inc.*, No. CIV.A.07-559-JJB-SCR, 2008 WL 2354424 (M.D. La. June 9, 2008) (granting defendant's motion for summary judgment where plaintiff failed to produce documents indicating copyright ownership during the discovery period, thus failed to demonstrate it satisfied the jurisdictional requirements necessary to bring an infringement action); *EdicionesQuiroga, S.L. v. Fall River Music, Inc.*, No. 93 CIV 3914 (RPP), 1996 WL 148363, at *4 (S.D.N.Y. Apr. 2, 1996) (granting defendant's motion to compel production of documents regarding plaintiff's copyright ownership); *Logic Leasing &*

54

1   *Fin. Co. v. Admin. Info. Mgmt. Grp., Inc.*, 979 F.2d 1535, at *4 (5th Cir. 1992)

2   (unpublished) (affirming dismissal of complaint and entry of default judgment as

3   sanction for discovery abuses where plaintiff failed to produce relevant documents,

4   including documents regarding ownership of the software copyrights).

5        Though Plaintiffs indicated they would produce documents relevant to their

6   individual ownership of the copyrights at issue, the chains of title in particular, upon

7   review of Plaintiffs' production, it appears as though they have produced only

8   copyright registrations, but have not produced anything relating to the copyrights'

9   chains of title.  Ranahan Decl. ¶ 19.  Though the produced registrations are necessary

10  to demonstrating ownership of the copyrights, they alone are not sufficient to proving

11  ownership.  5 Patry on Copyright § 17:109; *Durham Indus., Inc.*, 630 F.2d at 908.

12  Defendants must be provided the opportunity to fully investigate and rebut the

13  presumption of valid ownership in order to prevent the rebuttable presumption created

14  by the copyright registrations from becoming an irrebuttable presumption.  The

15  presumption created by the copyright registrations "is not an insurmountable one, and

16  merely shifts to the [challengers] the burden to prove the invalidity of the [ ]

17  copyrights." *Marya*, 131 F. Supp. 3d at 985 (citing *Masquerade*, 912, F.2d at 668).

18        Plaintiffs' production only of the copyright registrations is insufficient, and

19  their refusal to produce documents evidencing the chains of titles for the copyrights at

20  issue is improper.  Defendants are entitled to investigate the chain of title from the

21  time the rights to the *Star Trek* Copyrighted Works were transferred from their

22  creator, Gene Roddenberry, to Plaintiffs, to the present.  If Plaintiffs were, or are,

23  involved in disputes regarding ownership of the copyrights, Defendants have the right

24  to inspect and review any documents pertaining to those disputes, as they are directly

25  related to the potential allocation of damages, and the potential exposure created by

26  this case.  Plaintiffs' boilerplate objections to these RFPs, which seek highly relevant

27  documents that Defendants are entitled to, are unavailing.  Absent any compelling

28  reason to withhold non-privileged documents responsive to these requests, Plaintiffs

1  should be compelled to produce the requested documents.

2  **3.  Plaintiffs' Argument**

3  **Request No. 6.**

4  Request No. 6 seeks documents relating to Plaintiffs' ownership in the Star

5  Trek Copyrighted Works, including the chain of title documents in such works.  In

6  response to the Request, Plaintiffs agreed to produce all non-privileged responsive

7  documents.

8  Prior to serving its discovery motion, pursuant to Local Rule 37-1, Defendants

9  were required to "confer in a good faith effort to eliminate the necessity for hearing

10  the motion or to eliminate as many of the disputes as possible." L.R. 37-1.  And in its

11  contentions, Defendants were required to "state how it proposed to resolve [each]

12  issue at the conference of counsel." L.R.  37-2.1.  Defendants have utterly failed to

13  comply with their obligations.   Ms. Ranahan's and Ms. Hughes Leiden's declarations

14  and accompanying exhibits make no mention at all of meeting and conferring with

15  respect to Request No. 6, let alone of any substantive discussion of the issues.

16  Defendants' motion should be denied on these grounds alone.  *See So v. Land Base,*

17  *LLC*, No. CV 08-03336 DDP (AGRx), 2009 U.S. Dist. LEXIS 71507, at *8 (C.D. Cal.

18  Aug. 4, 2009)(denying discovery motion where there was "no indication in the papers

19  that Defendant ha[d] attempted to comply with [the meet and confer] requirement").

20  Moreover, Defendants' motion with respect to this Request is moot, because

21  Plaintiffs agreed to produce all non-privileged responsive documents, and they have

22  produced the copyright registrations as well as multiple agreements relating to the Star

23  Trek Copyrighted works.  Jason Decl., ¶ 3.  While Defendants claim in their motion

24  that Plaintiffs "have not produced anything relating to the copyrights' chains of title,"

25  relying on paragraph 19 of Ms. Ranahan's declaration, this is simply not accurate nor

26  is it supported by that declaration.

27  Indeed, Ms. Ranahan's declaration does not state that she has reviewed

28  Plaintiffs' production, nor does it state that any existing copyright assignment or

1   agreement was not produced.  Instead, Ms. Ranahan only asserts that she has not

2   reviewed any agreement transferring copyright from Gene Rodenberry to Plaintiffs'

3   predecessors.  *See* Ranahan Decl. ¶ 19.  However, Ms. Ranahan does not explain what

4   basis she has for assuming that Gene Rodenberry ever owned the rights to Star Trek.

5       Further, because Defendants failed to meet and confer about this issue, this is

6   the first time that Defendants have indicated that they were either concerned or

7   confused regarding the documents they have received.  If they would have met and

8   conferred, Plaintiffs could have addressed Defendants' questions, but the filing of a

9   motion is not the proper venue to meet and confer, and Defendants' motion must be

10  denied.

11      Finally, to the extent that Defendants claim that there are missing ownership

12  documents, Defendants need to be more specific as to which Star Trek works they are

13  questioning given that there are hundreds of works at issue.  As Defendants admit,

14  Plaintiffs have produced their copyright registrations for the works at issue.  The

15  copyright registrations provide a presumption of ownership of the Star Trek

16  Copyrighted Works.  If Defendants believe that Plaintiffs are not the owners of certain

17  works, they should identify which works (i.e., which movie, which television show)

18  are in dispute.

19      **<u>Request No. 7.</u>**

20      Request No. 7 seeks "documents that refer, relate to, or constitute any challenge

21  made by any person or entity regarding Your ownership, rights, title, and/or interest in

22  or to any of the Star Trek Copyrighted Works that You contend Defendants have

23  infringed, including but not limited to any lawsuit filed or threatened, cease or desist

24  letter received, or any other written or oral Communications related thereto."

25      This request, on its face, is overly broad and improper.  It seeks all documents

26  relating to "any challenge made by any person or entity" regarding any of the Star

27  Trek Copyrighted Works.

28      Plaintiffs have produced documents sufficient to show their ownership in the

Star Trek Copyrighted Works (Jason Decl., ¶ 3) and, in response, Defendants are blindly and vaguely questioning Plaintiffs' ownership in scores of films and television programs.  As Defendants admit, the copyright registrations establish the presumption that Plaintiffs are the owners of the Star Trek Copyrighted Works and, if Defendants believe that Plaintiffs are not the owners of certain works, they should identify which works (i.e., which movie, which television show) are in dispute.  Otherwise, the agreements and registrations produced should be deemed sufficient and the presumption remains with Plaintiffs that they are the owners of the Star Trek Copyrighted Works.

## III.   DEFENDANTS' FINAL STATEMENT AND SUMMARY OF THE RELIEF REQUESTED

For the foregoing reasons, Defendants respectfully request that the Court order Plaintiffs to (1) produce documents and information in response to Requests for Production 14, 23, 35, 36, 37, and Interrogatory Numbers 8, and 9, and witnesses to testify as to Deposition Testimony Subject Number 14, which are relevant to Defendants' fair use defense and Plaintiffs' claims for damages; (2) produce documents and information in response to Requests for Production 17, 18, 19, 20, 21, 24, 25, 29, and witnesses to testify as to Deposition Testimony Subject Numbers 14, 19, 21, 22, and 28, which are directly relevant to Plaintiffs' allegations of willful infringement; and (3) chain of Title Documents responsive to Requests for Production 6 and 7, which are relevant to Defendants' investigation into ownership.

## IV.   PLAINTIFFS' FINAL STATEMENT

For the reasons stated herein, Defendants have failed to provide good cause for any of the relief they are seeking, and their motion should be denied in its entirety.

**IT IS SO STIPULATED.**

1    Dated:  September 29, 2016          **WINSTON & STRAWN LLP**

2

3                                        By:  */s/ Erin R. Ranahan*

4                                             Erin R. Ranahan
                                              Diana Hughes Leiden
5                                             Kelly N. Oki
                                              Attorneys for Defendants,
6                                             AXANAR PRODUCTIONS, INC.
                                              and ALEC PETERS

7

8    Dated:  September 29, 2016          **LOEB & LOEB**

9

10                                       By:  */s/ Jennifer Jason*

11                                            Jonathan Zavin
                                              David Grossman
12                                            Jennifer Jason
                                              Attorneys for Plaintiffs,
13                                            PARAMOUNT PICTURES
                                              CORPORATION and CBS STUDIOS
14                                            INC.

15

16                          **FILER'S ATTESTATION**

17        Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Diana Hughes Leiden, hereby

18   attest that all other signatories listed, and on whose behalf the filing is submitted,

19   concur in this filing's contents and have authorized filing.

20                             */s/ Diana Hughes Leiden*
                               Diana Hughes Leiden

21

22

23

24

25

26

27

28