1   LOEB & LOEB LLP
    DAVID GROSSMAN (SBN 211326)
2   dgrossman@loeb.com
    JENNIFER JASON (SBN 274142)
3   jjason@loeb.com
    10100 Santa Monica Blvd., Suite 2200
4   Los Angeles, CA  90067
    Telephone: 310.282.2000
5   Facsimile: 310.282.2200

6   LOEB & LOEB LLP
    JONATHAN ZAVIN (admitted *pro hac vice*)
7   jzavin@loeb.com
    345 Park Avenue
8   New York, NY  10154
    Telephone: 212.407.4000
9   Facsimile: 212.407.4990

10  Attorneys for Plaintiffs
    PARAMOUNT PICTURES
11  CORPORATION and CBS STUDIOS
    INC.

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16  PARAMOUNT PICTURES                Case No.: 2:15-cv-09938-RGK-E
    CORPORATION, a Delaware
17  corporation; and CBS STUDIOS INC.,
    a Delaware corporation,            **PLAINTIFFS' NOTICE OF**
18                                     **MOTION AND MOTION FOR**
                   Plaintiffs,         **PARTIAL SUMMARY**
19                                     **JUDGMENT**
            v.
20                                     Date: December 19, 2016
    AXANAR PRODUCTIONS, INC., a        Time: 9:00 a.m.
21  California corporation; ALEC PETERS, Dept.:850
    an individual, and DOES 1-20,
22                                     
                   Defendants.         Discovery Cutoff:  November 2, 2016
23                                     Pre-Trial Conference: January 9, 2017
                                       Trial:  January 31, 2017
24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

MOTION FOR PARTIAL SUMMARY
JUDGMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2016, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 850 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, CA 90012, plaintiffs Paramount Pictures Corporation and CBS Studios Inc., through their attorneys of record, will and hereby do move (the "Motion") the Court for an Order granting partial summary judgment as to liability on the claims for copyright infringement (direct, contributory, and vicarious) against defendants Axanar Productions, Inc. and Alec Peters and for an injunction.

This Motion is made on the grounds that: (1) Plaintiffs own the copyrights in the Star Trek works at issue; and (2) Defendants infringed on the Star Trek works by creating works that are substantially similar and that copy protected elements of Plaintiffs' works, including specific characters, settings, themes, mood, tone, plots and dialogue. Defendants are also liable for contributory infringement, as Defendant Peters, in his personal capacity, and as sole shareholder of Axanar Productions, Inc.: (a) knew of the direct infringement of Plaintiffs' works and; (b) materially contributed to that infringement. Further, Mr. Peters both personally, and on behalf of Defendant Axanar Productions, is liable for vicarious infringement as he had the right and ability to supervise and control the infringing conduct, and he obtained a financial benefit from the infringing acts.

Plaintiffs request a declaration of infringement, and request that Defendants' conduct be enjoined, as the continued production and distribution of Defendants' infringing works will cause irreparable harm to Plaintiffs, for which monetary damages are inadequate. Further, the balance of hardships weighs heavily in favor of Plaintiffs, and there is no public interest in allowing the continued distribution of infringing derivative.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Statement of Uncontroverted Facts and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

1

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Conclusion of Law filed herewith, the Declarations of David Grossman and John Van Citters, the Notice of Lodging, Application to File Under Seal, Declaration of Jennifer Jason in Support of the Application to File Under Seal, the [Proposed] Judgment, the papers and records on file in this action, and any additional evidence, argument or other matters that the Court deems necessary or proper.

This Motion is made following the conferences of counsel pursuant to L.R. 7-3 which took place on November 2 and on November 7, 2016.

Dated:  November 16, 2016

LOEB & LOEB LLP
JONATHAN ZAVIN
DAVID GROSSMAN
JENNIFER JASON

By: */s/ David Grossman*
David Grossman
Attorneys for Plaintiffs
PARAMOUNT PICTURES
CORPORATION and CBS STUDIOS
INC.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

2

MOTION FOR PARTIAL SUMMARY
JUDGMENT

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

I.   INTRODUCTION ........................................................................ 1

II.   FACTS............................................................................................ 2

    A.   Star Trek. .......................................................................... 2

    B.   Defendants' Axanar Works. ............................................. 4

        1.   Star Trek: Prelude to Axanar. ................................. 4

        2.   Star Trek: Axanar. ................................................... 5

        3.   The Professional, Commercial Nature of The Axanar Works. ..................................................................... 6

III.   DISCUSSION ............................................................................... 7

    A.   Summary Judgment............................................................ 7

    B.   Copyright Infringement...................................................... 7

        1.   Plaintiffs Own The Star Trek Copyrighted Works. ................... 7

        2.   Defendants Copied Plaintiffs' Works. ..................... 9

    C.   Defendants' Fair Use Argument Fails. ............................. 11

        1.   The Purpose and Character of the Use...................... 12

        2.   The Nature of the Copyrighted Work. ..................... 13

        3.   The Amount and Substantiality of the Portion Used. .............. 14

        4.   The Effect of the Use Upon the Potential Market. ................. 15

    D.   Defendants' "Fan Fiction" Defense is Legally Irrelevant.................. 17

    E.   Declaratory Relief. ............................................................ 18

    F.   Injunctive Relief................................................................ 18

    G.   Peters is Liable for Direct, Contributory and Vicarious Infringement. ......................................................... 19

IV.   CONCLUSION............................................................................. 20

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

i

MOTION FOR PARTIAL SUMMARY
JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................. 11

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ............................................................. 16, 20

*Castle Rock Entertainment v. Carol Publishing Group*,
   150 F.3d 132 (2d Cir. 1998) ................................................ 11, 14

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ...................................................... 13

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) ............................................. 12, 13

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) .................................................................. 22

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................. 11, 13

*Harper & Row, Publrs. v. Nation Enters.*,
   471 U.S. 539 (1985) ............................................................. 19, 20

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ...................................................... 16

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ............................................... 16, 17

*MGM Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...................................... 23

*Munhwa Broad. Corp. v. Song*,
   No. CV 14-04213-RGK, 2015 U.S. Dist. LEXIS 77909
   (C.D. Cal. May 12, 2015) ........................................................... 11

*Paramount Pictures Corp. v. Carol Publishing Group.*,
   11 F. Supp.2d 329 (1998) ................................................. 19, 20, 21

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

ii

MOTION FOR PARTIAL SUMMARY
JUDGMENT

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Perfect 10 v. Google, Inc.*,
    416 F. Supp. 2d 828 (CD. Cal. 2006) ............................................................. 23

*Salinger v. Colting*,
    641 F. Supp.2d 250 (S.D.N.Y. 2009) .................................................. 16, 17, 19

*Sid & Marty Krofft TV Prods. v. McDonald's Corp.*,
    562 F.2d 1157 (9th Cir. 1977) ......................................................................... 13

*Toho Co., LTD v. Priority Records, LLC*,
    CV 01-04744-SVW, 2002 U.S. Dist. LEXIS 14093
    (C.D. Cal. Mar. 26, 2002) ............................................................................... 11

*UMG Recordings, Inc. v. Sinnott*,
    300 F. Supp. 2d 993 (E.D. Cal. 2004) ............................................................ 24

*Warner Bros. Entm't Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008) ...................................................... 22, 23

*ZZ Top v. Chrysler Corp.*,
    54 F. Supp. 2d 983 (W.D. Wash. 1999) .................................................... 11, 12

**Statutes**

28 U.S.C. § 2201 ..................................................................................................... 22

28 U.S.C. § 2202 ..................................................................................................... 22

Copyright Act §107 ................................................................................................. 15

Nimmer on Copyright, §13.05[A][2][a] .................................................................. 17

Nimmer on Copyright, §13.05[A][3] ....................................................................... 18

Plaintiffs and Defendants under the Copyright Act ................................................ 22

**Other Authorities**

Fed. R. Civ. P. 56(c) ............................................................................................... 11

Fed. R. Civ. P. 57 .................................................................................................... 22

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

MOTION FOR PARTIAL SUMMARY
JUDGMENT

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv. L.Rev. 1105
   (1990) ........................................................................................................ 17

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

MOTION FOR PARTIAL SUMMARY
JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Paramount Pictures Corporation ("Paramount") and CBS Studios Inc. ("CBS") (collectively, "Plaintiffs"), own the copyrights to the famous Star Trek films and television series.  Defendants Alec Peters and Axanar Productions (a for-profit company owned by Peters) illegally copied from these television programs and films to create a twenty-minute infringing featurette/film entitled "*Star Trek: Prelude to Axanar*" ("*Prelude*").  Defendants' *Prelude* film served as a pre-cursor to their proposed full-length feature film entitled "*Star Trek: Axanar*" ("*Axanar*").  Defendants wrote a complete script for Axanar ("the Axanar Script"), and partially completed that film, which Peters himself repeatedly called a "professional" "independent Star Trek" film.  Peters proclaimed that his film would be "the best" Star Trek film ever.  Defendants raised almost $1.5 million from Star Trek fans, much of which Peters used to pay ███████████████████████████████.  Peters also used those funds ████████████████████████████████████ ███████████████████████████.

Initially, Defendants raised money from Star Trek fans and created *Prelude*, which featured characters from pre-existing Star Trek works, and was built around a storyline that was intended to be a "prequel" to the original Star Trek television series.  Following the release of *Prelude*, Defendants raised even more money from Star Trek fans and began production on Axanar, their full-length "independent Star Trek film."  Defendants hired professional actors, a number of whom had previously starred in the Star Trek television series, Defendants paid professional screenwriters and crew members, they "locked" a script, built a set and shot multiple scenes.  Defendants announced they would begin final production of Axanar in early 2016.

*Prelude*, the Axanar Script, and Axanar (together, the "Axanar Works"), are set in the Star Trek universe, and feature, among many other copyrighted Star Trek elements, numerous specific Star Trek characters, along with Plaintiffs' fictional

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

1

MOTION FOR PARTIAL SUMMARY
JUDGMENT

races and organizations, such as Klingons, Vulcans, and the United Federation of Planets.  The Axanar Works copy from the plots, themes, settings, mood, dialogue, characters, and pace of the Star Trek works, as Defendants' avowed purpose was to make an authentic film that would "look and feel like a true Star Trek movie."

The Axanar Works are clearly substantially similar to and infringe the Star Trek works; and Defendants' after-the-fact assertions of non-infringement and "fair use" are specious.  Prior to the filing of this lawsuit, Defendants unequivocally declared that they were creating a "professional" Star Trek film, with a Star Trek storyline and Star Trek characters.  Although Defendants' counsel has repeatedly referred to the Axanar Works as "fan films," this is a legally irrelevant designation, as there is no special treatment afforded to fan films under the Copyright Act.  Moreover, the Axanar Works are not "fan films" (amateur works created by fans simply for the fun of it).  Rather, the Axanar Works are exactly what Defendants proclaimed them to be prior to this litigation – professional productions that are intended to be unlicensed "independent" Star Trek films for which Defendants received financial remuneration, and which were targeted at the same audience as Plaintiffs' Star Trek movies and television programs.  Defendants' Axanar Works fail completely under all four factors of the fair use test and there is no precedent for a finding of fair use under these circumstances.  As a matter of law, Defendants' Axanar Works are infringing unauthorized derivative works.

## II.    FACTS.

### A.    Star Trek.

Star Trek is one of the most successful entertainment franchises of all time.  The Star Trek franchise includes, among other works, six television series and thirteen motion pictures spanning nearly fifty years.  The original Star Trek television series ("*The Original Series*") debuted in 1966, and ran for three seasons, until 1969.  UMF 7.  The series chronicled the adventures of the U.S.S. Enterprise (one of the ships of "Starfleet") and its crew as they traveled through space during

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

2

MOTION FOR PARTIAL SUMMARY
JUDGMENT

the twenty-third century, and featured numerous original and copyrightable elements, including but not limited to elements such as the plots of the episodes, mood, dialogue, theme, characters, settings, as well as the Starship Enterprise (Starfleet registry number NCC-1701). UMF 9. These works also included original and fictitious races and species, including the Vulcan and Klingon races, the United Federation of Planets (the "Federation"), and fictional weapons and technology. UMF 9. *The Original Series* focused on the officers of the Federation and their adventures and battles.

In one of the episodes of *The Original Series*, James T. Kirk (played by the actor William Shatner), the Captain of the U.S.S. Enterprise, meets his hero, Garth of Izar, a former Starship captain. UMF 10. In that episode, Kirk and Garth discuss Garth's victory in the Battle of Axanar. UMF 11.

In addition to *The Original Series*, there have been five other Star Trek television series, together totaling more than 700 episodes (collectively with *The Original Series*, the "Star Trek Television Series").[1] UMF 8. Plaintiff CBS owns the rights to *The Original Series*, as well as to all of the subsequent Star Trek Television Series. UMF 2. The newest television series, *Star Trek: Discovery*, will premiere in 2017. UMF 12. *Star Trek: Discovery* takes place ten years before the events depicted in *The Original Series*, much like Defendants' infringing Axanar Works, which are set approximately twenty years prior to *The Original Series*. UMF 13, 71, 74, 75.

There have been thirteen Star Trek motion pictures (the "Star Trek Motion Pictures"). Paramount owns the copyrights in the Star Trek Motion Pictures. UMF 3.

---

[1] One of the characters featured in the infringing Axanar Works is Vulcan Ambassador Soval. Ambassador Soval was first seen in the *Star Trek: Enterprise* episode "Broken Bow" in 2001, and was featured many times throughout the *Enterprise* series, such as in the episode "The Expanse" from 2003. UMF 22.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

3

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Plaintiffs also own the copyrights in numerous other Star Trek works, including the novels entitled: *Garth of Izar*, *Strangers from the Sky*, and *Infinity's Prism* (collectively, the "Star Trek Books") (the "Star Trek Books," the "Star Trek Television Series" and the "Star Trek Motion Pictures," are referred to collectively as the "Star Trek Copyrighted Works").  UMF 4-6, 33.

Over the course of the last few decades, Plaintiffs have licensed numerous derivative works, including books, games, merchandise, dictionaries, encyclopedias and reference guides.  UMF 14.  One of these licensed works is *Star Trek: The Role Playing Game*.  UMF 29.  This game was licensed in the 1980s to a company called FASA Corporation ("FASA").  FASA created numerous mission guides or "supplements" that players of the role-playing game could use.  One of these supplements, called "*The Four Years War*," chronicled the military battles between the Klingon Empire and the Federation.  This work discussed the same subject matter as Defendants' Axanar Works – namely, the "arms race" between the Klingons and the Federation to create new and more capable starships.  *The Four Years War* supplement also describes the Battle of Axanar (a related mission guide for the role-playing game was called "*Return to Axanar*"), and the military campaigns of Federation Fleet Captain Garth of Izar.  UMF 30, 32.  The copyright in this work is owned by Paramount.  UMF 33. These works were also used as source material by Defendants in order to create their Axanar Works.  UMF 34, 35.

**B.     Defendants' Axanar Works.**

**1.     Star Trek: Prelude to Axanar.**

Defendants' infringing work*, Prelude*, is a twenty-minute film that was funded on Kickstarter, a crowdsourcing website where parties can raise money to fund their projects.  UMF 36-39.  *Prelude* was released on YouTube in August 2014.  UMF 40.  Defendant Peters wrote the *Prelude* screenplay.  UMF 41.  *Prelude* copies the look and feel of the Star Trek Copyrighted Works, and includes plot points, mood, dialogue, characters, settings, and themes taken from the Star Trek

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

4

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Copyrighted Works.  It features Plaintiffs' character, Garth of Izar, and describes and depicts his military exploits during the war between the Federation and the Klingon Empire.  UMF 24, 42, 47.  *Prelude* replicates the uniforms worn by Starfleet officers, by Klingon military personnel, and by Vulcan ambassadors.  UMF 42-49.  Peters testified that his intention in creating the Axanar Works ███████████ ██████████████████████████████████████████████████████████████████████████ ████████  UMF 55.  The director of *Prelude*, Christian Gossett, confirmed that Defendants' intention was to create an authentic Star Trek work.  In fact, Mr. Gossett, in response to a question from Defendants' counsel, testified that he believes *Prelude* is an infringing work.  UMF 56 (Q. **Do you think Prelude to Axanar is – infringes upon the Star Trek intellectual property**?  A. **Yes**.  Q. **And in what way**?  A. **In that it is an unlicensed filmed entertainment that uses countless elements of the Star Trek fictional world** without -- yeah, unlicensed.").

### 2.    Star Trek: Axanar.

This lawsuit was filed while Defendants were filming the full-length motion picture, *Axanar*.  Prior to the filing of this suit, Defendants had completed their shooting script, and Defendants had already released one scene from Axanar, which they call the "Vulcan Scene."  UMF 57-58, 64.  The Vulcan Scene copied numerous elements from Plaintiffs' works, including Vulcans, the character Soval, the planet Vulcan (by copying a screenshot from *Star Trek VI: The Undiscovered Country*), and Vulcan ships.  UMF 59-63.

The Axanar Script, which Peters testified ████████████████████████████ ████████████, shows that Defendants intended to create, and were in the process of creating, a Star Trek film, incorporating innumerable elements of the Start Trek universe.  The Axanar Script, like *Prelude*, incorporates Plaintiffs' copyrighted characters, ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████.  UMF 65-73.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

5

MOTION FOR PARTIAL SUMMARY
JUDGMENT

1   The Axanar Script begins twenty years before the events of *The Original Series*, ███

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████. UMF 74, 71.

5           **3.      The Professional, Commercial Nature of The Axanar Works.**

6           In raising money for the Axanar Works, Peters stated: "**Axanar** is the first

7   fully-professional, independent Star Trek film.  While some may call it a 'fan film'

8   as we are not licensed by CBS, Axanar has professionals working in front and

9   behind the camera, with a fully-professional crew--many of whom have worked on

10  Star Trek itself--who ensure Axanar will be the quality of Star Trek that all fans

11  want to see."  UMF 100.  Peters repeatedly referenced the Axanar Works as a

12  professional production, and also repeatedly protested that his production was ***not*** to

13  be called a "fan film."  UMF 102, 103.  Peters attempted to meet with Netflix to

14  become a producer of Star Trek productions, and even attempted to trademark (for

15  use in commerce) the word "Axanar."  UMF 104.

16          Peters used donor funds to ████████████████████████

17  ████████████████.  UMF 104, 109.  His collaborator, and the director of

18  Axanar, Rob Burnett, stated that he was creating Axanar in order to get more

19  directing work, and Peters told a number of people that ███████████████

20  █████████████████████.  UMF 105 -107.

21          Further, Peters paid himself ██████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████

27  ██████████████████████.  UMF 83-99.  Axanar was not an amateur fan

28  film, and Peters clearly profited from the infringing Axanar Works.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

6

MOTION FOR PARTIAL SUMMARY
JUDGMENT

## III.   DISCUSSION

### A.   Summary Judgment.

Summary judgment is proper where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence for a reasonable jury to find for the nonmoving party, and a fact is "material" when it may affect the outcome of the case under the substantive law that provides the claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986).

### B.   Copyright Infringement.

The Copyright Act grants copyright owners "a bundle of exclusive rights, including the rights to 'reproduce the copyrighted work in copies' and 'to prepare derivative works based upon the copyrighted work.'" *Castle Rock Entertainment v. Carol Publishing Group*, 150 F.3d 132, 137 (2d Cir. 1998), citing 17 U.S.C. §106. Copyright infringement is established when the owner of a valid copyright demonstrates ownership of the works at issue and unauthorized copying by the defendant. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

In copyright cases, summary judgment can be granted as to liability.[2]

### 1.   Plaintiffs Own The Star Trek Copyrighted Works.

There is no genuine dispute that Plaintiffs own the films, television series, and novels that comprise the Star Trek Copyrighted Works. UMF 1-6, 33. Plaintiffs also own the characters portrayed in the Star Trek Copyrighted Works, which

---

[2] *Munhwa Broad. Corp. v. Song*, No. CV 14-04213-RGK (RZx), 2015 U.S. Dist. LEXIS 77909, at *21 (C.D. Cal. May 12, 2015) (Klausner, J.); *Toho Co., LTD v. Priority Records, LLC*, CV 01-04744-SVW (RZx), 2002 U.S. Dist. LEXIS 14093, at *19 (C.D. Cal. Mar. 26, 2002)(granting plaintiffs' motion for partial summary judgment and finding defendants liable for copyright infringement); *ZZ Top v. Chrysler Corp.*, 54 F. Supp. 2d 983, 986 (W.D. Wash. 1999) (granting plaintiffs' motion for partial summary judgment and finding defendant liable for infringing plaintiff's copyright).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

7

MOTION FOR PARTIAL SUMMARY
JUDGMENT

include the Klingon and Vulcan races, Ambassador Soval, and Garth of Izar.  These characters have "physical as well as conceptual qualities" and are "sufficiently delineated" in Plaintiffs' works so as to merit copyright protection.  *See DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).  These characters are not "lightly sketched" literary elements, as some stock characters may be – instead, they have been depicted in audiovisual works, with consistent character traits, for many years.  All of these characters are widely identifiable by their distinctive characteristics.  *Id.* at 1019.[3]

The Axanar Works copy Plaintiffs' character, Garth of Izar.  Garth of Izar, like Captain Kirk, was a Starfleet Captain.  UMF 10, 25.  In *The Original Series*, Garth of Izar was introduced and portrayed as a former starship captain whose exploits were "required reading" at the Starfleet Academy due to his heroic conduct during the Battle of Axanar.  UMF 26, 27.  This character, and the Battle of Axanar, were further developed by Plaintiffs in the 2003 published novel entitled "Garth of

_____

[3] Specifically, Klingons are an alien race, from the planet Qo'noS, who are portrayed as a serious and war-like species.  UMF 15.  Klingons have distinctive visual elements including large, protruding foreheads covered by symmetrical bumps and ridges, dark hair and skin and facial hair and upward sloping eyebrows.  UMF 16.  The Klingons were long-time enemies of the Federation, and engaged in a number of military battles with Starfleet.  UMF 17.

Vulcans are similarly an iconic species, owned by Plaintiffs, and first appearing in the form of Mr. Spock in *The Original Series*.  UMF 18.  Vulcans are depicted with pointed ears and upswept eyebrows and are portrayed as stern, eschewing emotions for logic and reason.  UMF 19.  Vulcan men are usually depicted with straight, dark (or gray) hair cut in a "bowl" style.  UMF 20.  Vulcans are part of the Federation, and are portrayed as an advanced technological species.  UMF 21.

Ambassador Soval is a Vulcan diplomat who was first seen in the 2001 pilot episode of the television series *Enterprise* (entitled "Broken Bow").  UMF 22.  Thereafter, Ambassador Soval became a recurring character in the *Enterprise* series.  *Id.*  Soval is portrayed by actor Gary Graham, who reprised his role as Ambassador Soval in Defendants' infringing works, and even wore virtually identical makeup and costumes as he had in the *Enterprise* series, rendering the portrayal of that character all but identical to that seen in Plaintiffs' works.  UMF 23, 48, 60, 77.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

8

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Izar" (UMF 28), and in *The Four Years War* supplement to *Star Trek: The Role Playing Game*.  UMF 29-30.  Defendants used this work to create the Axanar Works.  UMF 34, 35.

The U.S.S. Enterprise, Vulcan ships and Klingon battlecruisers also constitute copyrighted characters that are owned by Plaintiffs.  The Ninth Circuit, in *DC Comics v. Towle*, recently affirmed the copyright protections afforded to iconic inanimate objects, such as the "Batmobile," and that decision applies with equal force to the Starship Enterprise, and to the Klingon battlecruisers portrayed in Plaintiffs' Star Trek Copyrighted Works and copied by Defendants.

## 2.    Defendants Copied Plaintiffs' Works.

In the usual copyright case, the plaintiff must prove that the defendant copied the plaintiff's work by showing access by the defendant to plaintiff's work, and substantial similarity between the works.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (citation omitted).  In this case, however, Defendants concede that they intentionally set out to, and in fact did, extensively copy Plaintiffs' Star Trek Copyrighted Works.  UMF 42-82.  Defendants' Axanar Works simply replicate Plaintiffs' plot points, copyrighted characters, including Garth of Izar, Ambassador Soval, Klingons, Vulcans, the Federation, the Starship Enterprise, Klingon battlecruisers and even specific settings such as the fictional planet Vulcan.

Where, as here, there is direct evidence of copying, the question is whether there is "substantial similarity as a matter of law," which involves an examination of whether Defendants copied "elements of the work that were original."  *Feist Publications, Inc. v. Rural Telephone Serv., Inc.*, 499 U.S. 340, 361 (1991).  There is no question that the Axanar Works are substantially similar to the Star Trek Copyrighted works.  The Axanar Works and the relevant Star Trek Copyrighted works are before the Court, and the Court may make its own comparison of these works.  *Sid & Marty Krofft TV Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)(substantial similarity can be determined as a matter of law).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

9

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Defendants have argued that protection cannot lie for individual elements such as "pointy ears" or "spaceships," but this argument is a disingenuous straw man. Plaintiffs do not seek protection for generic elements. While ideas are not protectable under copyright law, the *expression* of those ideas is protected. Defendants did not simply take the "idea" of pointy ears and use it in their works; they intentionally appropriated the entire Star Trek universe for the purpose of creating an authentic "professional" and "independent Star Trek film." Defendants' copying did not consist only of characters, costumes, and space ships. Rather, to create their "professional independent Star Trek film," Defendants took their plot about Garth of Izar and *The Four Years War* from the Star Trek Copyrighted Works and attempted to flesh out a Star Trek story about events that were discussed in *The Original Series*. Defendants also took characters, sequence, themes, mood, dialogue, and settings from the Star Trek Copyrighted Works. UMF 72, 81. Far from merely taking unprotectable "ideas," Defendants infringed specific, creative and original expression from Plaintiffs' copyrighted works.

Nor can Defendants take refuge in the argument that they took so many elements from so many Star Trek Copyrighted Works that they have not taken a sufficient number from any one Star Trek Copyrighted Work. In a case directly on point, an unauthorized party published the "Seinfeld Aptitude Test" (or "SAT"), which incorporated a range of questions derived from the episodes and characters portrayed on the long-running television series, *Seinfeld*. *Castle Rock*, 955 F. Supp. 260 at 266-267. Even though the defendants' infringing work took from hundreds of episodes of the series, without addressing each particular episode infringed, the district court (affirmed by the Second Circuit) found that defendants had created an unauthorized, derivative work. *Castle Rock* held that the SAT "draws upon 'essential' elements of *Seinfeld,* and it draws upon little else; and, most importantly, SAT occupies a market for derivatives which plaintiff whatever it decides must

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

MOTION FOR PARTIAL SUMMARY
JUDGMENT

properly be left to control." This is exactly what the Defendants did in this case, and to the same effect.

Plaintiffs are seeking judgment as to liability, and if summary judgment is granted, Plaintiffs will seek a determination regarding damages for Defendants' infringement.

### C.   Defendants' Fair Use Argument Fails.

Defendants have asserted that they are entitled to use the characters, settings, and plots from the Star Trek Copyrighted Works on the basis that their work constitutes "fair use." Fair use has absolutely no application to these facts and Defendants' arguments should be rejected.

As set forth in §107 of the Copyright Act:

> the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching ..., scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

> (2) the nature of the copyrighted work;

> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

> (4) the effect of the use upon the potential market for or value of the copyrighted work.

It is beyond dispute that Defendants' works were not created for purposes of criticism, comment, news reporting, or teaching. Similarly, the Axanar Works do not constitute either parody or satire, and (prior to this lawsuit) Defendants never claimed they were. Indeed, Defendants expressly set out to create an authentic and "independent Star Trek film" that stayed true to Star Trek canon down to excruciating details. UMF 54, 55, 73, 100-103. This is hardly a use contemplated by Section 107 of the Copyright Act.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

11

MOTION FOR PARTIAL SUMMARY
JUDGMENT

1    Fair use is a mixed question of law and fact, but "it is well established that a

2    court can resolve the issue of fair use on a motion for summary judgment when no

3    material facts are in dispute." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522,

4    530 (9th Cir. 2008).  The application of the fair use factors establishes, as a matter

5    of law, that this defense has no application to Defendants' unauthorized works.

6                    **1.      The Purpose and Character of the Use.**

7            The "central purpose" of this inquiry is to determine whether the infringing

8    works are "transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-

9    580 (1994).  The question of whether a work is "transformative" is often

10   determinative on the issue of fair use.  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818

11   (9th Cir. 2003) ("The more transformative the new work, the less important the

12   other factors, including commercialism, become.").

13           Here, there is virtually nothing that could even arguably be deemed to be

14   "transformative" about Defendants' work.  The Axanar Works meticulously

15   replicate the Star Trek Copyrighted Works.  Defendants copied exact characters

16   (some played by actors who had appeared in the Star Trek Copyrighted Works),

17   appropriated plots and elements from works owned by Plaintiffs and, by their own

18   admission, sought to create a motion picture "prequel" to *The Original Series* that

19   was meant to be the first "independent Star Trek film."  UMF 74, 75.

20           The creation of a derivative work that is set in a (slightly) different time than

21   the original does not constitute a "transformative use."  This exact issue was

22   addressed in *Salinger v. Colting*, 641 F. Supp.2d 250 (S.D.N.Y. 2009).  In that case,

23   the defendants' unauthorized derivative work was set sixty years after the events of

24   Salinger's original novel, but the district court (and the Second Circuit) ruled that

25   defendant's alterations in characterization and plot, combined with moving those

26   characters into a different time period, did not create a "transformative" use.  *Id.* at

27   261.

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

12

MOTION FOR PARTIAL SUMMARY
JUDGMENT

1      Although a finding of transformative use is not required to establish the fair

2  use defense, this factor has been described as "the soul of fair use" and unauthorized

3  derivative works that copy creative expression and attempt to free-ride on the

4  originality of others generally do not qualify for fair use. *Id.* at 256.[4]

5      In this case, Defendants have not furthered the goals of the Copyright Act,

6  and have not engaged in criticism, commentary or scholarship of any kind.  Further,

7  and perhaps most fundamentally, the Axanar Works are the very same products

8  (Star Trek films) that Plaintiffs own and produce.  Defendants' Axanar Works are

9  simply a continuation (and intentionally so) of the Star Trek universe and, as such,

10  the Axanar Works are true to Star Trek canon.  This is not a different type of work,

11  or a transformative use or work.  This factor weighs entirely in favor of Plaintiffs.[5]

12       **2.**     **The Nature of the Copyrighted Work.**

13      Under this factor "the more creative a work, the more protection it should be

14  accorded from copying…" Nimmer on Copyright, §13.05[A][2][a].  A work "of

15  creative expression, as opposed to an informational work, [] is precisely the sort of

16  expression that the copyright law aims to protect." *Leadsinger*, 512 F.3d at 531.

17

18      [4] *See* Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv. L.Rev. 1105,

19  1109 (1990) ("The first fair use factor calls for a careful evaluation whether the
particular quotation is of the transformative type that advances knowledge and the

20  progress of the arts or whether it merely repackages, free riding on another's
creations.").

21      [5] Additionally, this factor addresses whether the infringing work "is of a
commercial nature or is for nonprofit educational purposes."  Here, the Axanar

22  Works were not created for "nonprofit educational purposes."  While Defendants
assert that their works are not "commercial," the evidence demonstrates otherwise.

23  Defendants ███████████████████████████████████████████ UMF
83, 84.  Defendants used those funds ████████████████

24

25               . UMF 85-99.

26      Moreover, Peters owns Axanar Productions, which is the lease-holder on the
studio that he created using fans' donations for the Axanar Works.  Peters ████████

27

28             UMF 104, 108, 109.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

13

MOTION FOR PARTIAL SUMMARY
JUDGMENT

The Star Trek Copyrighted Works are extraordinarily creative, and involve the aggregation of hundreds, if not thousands, of individual creative contributions, over the course of the last fifty years. These highly creative works are entitled to the highest level of protection under this factor, and Defendants have appropriated all of these creative elements, for their own purposes, and without authorization. This factor weighs completely in Plaintiffs' favor.

### 3. The Amount and Substantiality of the Portion Used.

While the Star Trek universe is vast, and spans fifty years of creative works, the "proper analysis here includes a determination of not just quantitative, but also qualitative substantiality." Nimmer on Copyright, §13.05[A][3]. In this case, Defendants appropriated nearly every major element from the Star Trek Copyrighted Works. Indeed, they were required to do so in order to professionally produce an "independent Star Trek film."

Defendants' plot is taken directly from an episode of *The Original Series* that described the military exploits of Garth of Izar at the Battle of Axanar. The Axanar Works also take story elements from the copyrighted licensed *Star Trek: The Role Playing Game* supplement called "*The Four Years War*." UMF 29-35.

Similarly, the sequence of events of Defendants' works is taken from the Star Trek Copyrighted Works – the events depicted and discussed therein take place in and around the Battle of Axanar, as described both in *The Original Series* and in greater detail in *The Four Years War*. UMF 7-11, 29-35. Defendants have set the Axanar Works in 2241.03 to 2245.1, which is twenty-one years before *The Original Series* episode "Where No Man Has Gone Before." UMF 71, 74. The element of stardates, which Defendants also copied, was first used in this 1966 episode and was subsequently used in *The Next Generation*, *Deep Space Nine*, *Voyager*, and every Star Trek Motion Picture. UMF 76.

Defendants' works also take place in the same settings as the Star Trek Copyrighted Works, as they are set in alien star systems created by Plaintiffs, on

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

14

MOTION FOR PARTIAL SUMMARY
JUDGMENT

spaceships belonging to the United Federation of Planets, on Klingon battlecruisers fighting for the Klingon Empire, and on planets such as Qo'noS, Vulcan, and Axanar.  UMF 79.

Defendants' works also appropriate Plaintiffs' copyrighted characters, including Vulcans, Klingons, and even the specific characters of Garth of Izar and Ambassador Soval.  UMF 42-82.  Further, Defendants' works infringe the iconic, protected characters embodied by the U.S.S. Enterprise and Klingon starships, and numerous other elements, all of which Defendants admitted were copied from the Star Trek Copyrighted Works.  UMF 42-82.

Defendants also appropriated the mood and theme from the Star Trek Copyrighted Works, attempting to recreate the drama between the Federation and the Klingon Empire in a military space drama.  UMF 72, 81.  Taken as a whole, Defendants have taken, and reproduced, the "heart" of the Star Trek Copyrighted Works in recreating the entire Star Trek universe.[6]  This factor too favors Plaintiffs.

### 4.    The Effect of the Use Upon the Potential Market.

As the Supreme Court held in *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 568 (1985), the plaintiff can demonstrate the existence of harm to its potential market merely by showing "that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work…This inquiry must take account not only of harm to the original but also of harm to the market for derivative works." (internal citations omitted).  Moreover, "[i]f the defendant's work adversely affects the value of any of the rights in the

---

[6] As the Court in *Salinger* held, the creation of a sequel (or in this case, prequel) that utilizes the characters, style, tone, and mood of the original work weighs against a finding of fair use.  641 F.Supp.2d at 264 (holding that the defendant's work "depends upon similar and sometimes nearly identical supporting characters, settings, tone, and plot devices to create a narrative that largely mirrors that of *Catcher*."); *see also Paramount Pictures Corp. v. Carol Publishing Group.*, 11 F. Supp.2d 329, 333 (1998) ("A reasonable person would easily recognize these aspects of the book as having been appropriated from the copyrighted properties. By relating synopses of individual episodes and encapsulations of the various characters and alien species, the work copies 'the heart' of the Star Trek properties.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

15

MOTION FOR PARTIAL SUMMARY
JUDGMENT

copyrighted work (in this case the adaptation [and serialization] right) the use is not fair." *Id.* (citation omitted); *see also, Campbell,* 510 U.S. at 590. The fourth fair use factor requires courts "to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially adverse impact on the potential market for the original." (internal quotations omitted). The inquiry "must take account not only of harm to the original but also of harm to the market for derivative works." *Id.* Harm to the market weighs against a finding of fair use "because the licensing of derivatives is an important economic incentive to the creation of originals." *Id.* at 593.

Here, by creating a derivative work, set in the Star Trek universe, using Plaintiffs' copyrighted characters, settings, and plots, Defendants are, by definition, causing market harm to Plaintiffs by damaging Plaintiffs' potential market for derivative works. *See Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp.2d 329, 336 (S.D.N.Y. 1998) ("While the book cannot serve as a market substitute for the richly entertaining [Star Trek] television shows and movies, it can interfere with Paramount's market for derivative works.").

The market harm here is not theoretical, as Plaintiffs have continuously mined the intellectual property and characters from *The Original Series* to create new, authorized, derivative works, whether in the form of television series, feature films, encyclopedias, reference guides, or novels. Specifically, the second Star Trek motion picture, *The Wrath of Khan*, was a derivative work that expanded upon one of the episodes of *The Original Series*, which featured a megalomaniacal villain named Khan. UMF 82. Similarly, here, the character Garth of Izar was featured in an episode of *The Original Series*, and the history and exploits of that character during his battles with the Klingon Empire were explored in *The Four Years War* adventure guide. Further, in 2003, Plaintiff Paramount published an entire novel devoted solely to Garth of Izar. UMF 4. Thus, the creation of Defendants' Garth of

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

16

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Izar-themed works impacts an actual, not simply theoretical, market that Plaintiffs have repeatedly exploited.

Moreover, Defendants have admitted that they sought to create a Star Trek substitute, and have profited by creating such substitute.  On the Indiegogo fundraising page, Peters stated: "But Axanar is not just an independent Star Trek film; it is the beginning of a whole new way that fans can get the content they want, by funding it themselves.  Why dump hundreds or thousands of dollars a year on 400 cable channels, when what you really want is a few good sci-fi shows?"  UMF 110.  Defendants' proposal for fans to substitute Axanar in the place of paying for the cable channels that broadcast the Star Trek Copyrighted Works makes clear they are directly competing with the Star Trek Copyrighted Works.  Meanwhile, Defendants profited by ███████████████████████████████████████ ███████████████████.  If other producers were permitted to create their own "independent Star Trek films" with paid actors, directors and crew members, and incorporated copyrighted elements and characters into those films, as Defendants have done here, the damage to Plaintiffs' market would be manifest.

All of the fair use factors favor Plaintiffs, and Axanar is an infringing work.

### D.   Defendants' "Fan Fiction" Defense is Legally Irrelevant.

Defendants label the Axanar Works as "fan fiction," but no court has ever held that "fan fiction" (whether or not that label is accurate, which in this case it is not) has any impact on the copyright infringement analysis.  While Defendants have claimed that Plaintiffs have not sued other "fan film" creators, this too is legally irrelevant.  This precise issue, with respect to the Star Trek Copyrighted Works and Plaintiff Paramount, was directly addressed in an earlier copyright infringement lawsuit.  *See Paramount Pictures Corp. v Carol Publishing Group*, 11 F. Supp. 2d at 336 ("Defendants also argue that Plaintiff's lack of legal action against other allegedly infringing indicates that *The Joy of Trek* will not damage a potential market. This argument is without merit. It is possible that Paramount believed that

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

1 the other books did not infringe on the Star Trek Properties. It is also possible that

2 Paramount simply has had a change in corporate policy, determining that the market

3 is now ripe for this type of derivative product. Regardless, the lack of earlier

4 litigation against other similar works is simply irrelevant. A self-avowed substitute

5 for other Paramount licensed products adversely impacts the market for derivative

6 works."). Plaintiffs' decisions as to which infringing parties to sue has no bearing

7 on the fair use analysis and Defendants' arguments on that point should be rejected.

8      **E.**    **Declaratory Relief.**

9      Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and

10 Rule 57 of the Federal Rules of Civil Procedure, an actual controversy has arisen

11 and now exists relating to the rights and duties of Plaintiffs and Defendants under

12 the Copyright Act in that Plaintiffs contend that they are the owners of the Star Trek

13 Copyrighted Works and that the Axanar Works infringe Plaintiffs' rights in those

14 works. Accordingly, Plaintiffs request a judicial determination of their rights, and a

15 declaration that Defendants' production of the Axanar Works constitutes

16 infringement of the Star Trek Copyrighted Works.

17      **F.**    **Injunctive Relief.**

18      In determining whether to issue a permanent injunction in copyright infringe-

19 ment actions, courts evaluate four factors: (1) irreparable harm; (2) inadequacy of

20 monetary damages; (3) the balance of hardships; and (4) whether the public interest

21 would be served by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547

22 U.S. 388, 391 (2006).

23      The continued production and distribution of the Axanar Works would cause

24 irreparable harm to the market for the Star Trek Copyrighted Works because Star

25 Trek fans will view the Axanar Works (and donate for the production of future

26 works) instead of paying to view the Star Trek Copyrighted Works. UMF 111.

27 *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 552 (S.D.N.Y. 2008).

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

18

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Second, a legal remedy is inadequate if it would require "a multiplicity of suits." *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007) (internal citations and quotations omitted). Here, absent an injunction, Plaintiffs would only be entitled to statutory damages of the infringement already committed thus far by Defendants by virtue of their Axanar Works, but such an award would not compensate Plaintiffs for subsequent further distribution of the Axanar Works. *Id.* Failure to grant an injunction would be, in effect, a mandatory license, where Defendants (or anyone else) could simply create an "independent" Star Trek film, and Plaintiffs would lose all exclusivity over their copyrights.

Third, if an injunction is not granted, Plaintiffs will be harmed because Defendants will continue to create works that infringe Plaintiffs' copyrights in the Star Trek Copyrighted Works, but the only possible harm to Defendants of an injunction is the loss of the chance to distribute infringing works, and the law does not protect that type of hardship. *Warner Bros. Entm't Inc.*, 575 F. Supp. 2d at 553.

Fourth, the public interest would be served with a permanent injunction because it would protect Plaintiffs' copyrights in the Star Trek Copyrighted Works against increased infringement. *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007); *see Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 859 (CD. Cal. 2006)("[T]he public interest is also served when the rights of copyright holders are protected against acts likely constituting infringement.").

Accordingly, all factors weigh in favor of Plaintiffs and they are entitled to an injunction restraining Defendants from directly or indirectly continuing to distribute, market, advertise, promote, produce, or sell the Axanar Works.

### G.     Peters is Liable for Direct, Contributory and Vicarious Infringement.

In addition to his direct liability, Peters is personally liable as a contributory and vicarious infringer. To hold a party liable for contributory copyright infringement, Plaintiffs must show that the party: (1) knew or had reason to know of

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

19

MOTION FOR PARTIAL SUMMARY
JUDGMENT

direct infringement, and (2) materially contributed to the infringing conduct of another. *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 998-1001 (E.D. Cal. 2004). Peters is personally liable for contributory copyright infringement as the undisputed evidence shows that Peters knew of Axanar Productions' infringing conduct and, in fact, was responsible for that infringing conduct. UMF 112. He was the president of Axanar Productions and responsible for the creative decisions on the Axanar Works. UMF 113, 114.

To establish vicarious liability for copyright infringement, "Plaintiffs must establish that [a defendant] 1) had the right and ability to supervise or control the infringing [parties], and 2) obtained a financial benefit from the infringing [parties]." *Id. at* 1001. Peters is liable for vicarious copyright infringement because he supervised and controlled Axanar Productions, and ███████████████████ ████████████████████████. UMF 85, 115.

Peters' infringement was clearly willful as well, as he is a trained attorney, and had worked with CBS before. UMF 116. In fact, in the years prior to his creation of the Axanar Works, Peters continuously reached out to CBS to report other "infringers" that Peters believed were using Plaintiffs' intellectual property without authorization. UMF 117.

## IV.   CONCLUSION

Plaintiffs request that the Court enter judgment against Defendants on liability, and enjoin Defendants from further infringing Plaintiffs' works.


Dated:  November 16, 2016

LOEB & LOEB LLP
JONATHAN ZAVIN
DAVID GROSSMAN
JENNIFER JASON


By: */s/ David Grossman*
David Grossman
Attorneys for Plaintiffs

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10565205
202828-10048

20

MOTION FOR PARTIAL SUMMARY
JUDGMENT