LOEB & LOEB LLP
DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
JENNIFER JASON (SBN 274142)
jjason@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

LOEB & LOEB LLP
JONATHAN ZAVIN (admitted *pro hac vice*)
jzavin@loeb.com
345 Park Avenue
New York, NY  10154
Telephone: 212.407.4000
Facsimile: 212.407.4990

Attorneys for Plaintiffs
PARAMOUNT PICTURES
CORPORATION and CBS STUDIOS
INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual, and DOES 1-20, <br><br> Defendants. | Case No.: 2:15-cv-09938-RGK-E <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date: December 19, 2016 <br> Time: 9:00 a.m. <br> Dept.:850 <br><br> Discovery Cutoff:  November 2, 2016 <br> Pre-Trial Conference: January 9, 2017 <br> Trial:  January 31, 2017 |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................1

II.    FACTS ....................................................................................................4

    A.    The Axanar Works Are Not A "Fan Film." ........................................4

    B.    The Axanar Works Are Not "Social Commentary" or "Satire." ..........5

    C.    Defendants Profited From The Axanar Works, And Intended
        To Compete With Plaintiffs' Licensed Star Trek Copyrighted
        Works. ................................................................................................6

III.   ARGUMENT...........................................................................................7

    A.    None Of Plaintiffs' Claims Are Premature. ........................................7

    B.    The Axanar Works Are Substantially Similar To Plaintiffs'
        Works. ..............................................................................................10

    C.    Fair Use Has No Application To The Facts Of This Case. .................15

        1.    The Purpose and Character of the Use. ...................................15

        2.    The Nature of the Copyrighted Work......................................17

        3.    The Amount and Substantiality of the Portion Used...............18

        4.    The Effect of the Use upon the Potential Market....................18

IV.    CONCLUSION ......................................................................................20

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Stallone*,
    11 U.S.P.Q.2d 1161 (C.D. Cal. 1989) ...............................................................17

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)...............................................................................................15

*Castle Rock Entm't v. Carol Publ'g Grp.*,
    955 F.Supp. 260 (S.D.N.Y. 1997) ..............................................................17, 18

*Chase-Riboud v. Dreamworks Inc.*,
    987 F.Supp. 1222 (C.D. Cal. 1997) .....................................................................9

*Clinton v. Acequia, Inc.*,
    94 F.3d 568 (9th Cir. 1996) ..................................................................................9

*Danjaq, LLC v. Universal City Studios,*
    *LLC*, 2014 U.S. Dist. LEXIS 180264, Copy. L. Rep. (CCH) P30673
    (C.D. Cal. Oct. 2, 2014) .........................................................................................8

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015)............................................................................10

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ...........................................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ..............................................................................................15

*Gilbert v. New Line Prods.*,
    No. CV 09-02231 RGK, 2009 U.S. Dist. LEXIS 130675
    (C.D. Cal. 2009)......................................................................................................9

*Harper & Row, Publrs. v. Nation Enters.*,
    471 U.S. 539 (1985) ..............................................................................................18

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ..............................................................................15

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

ii

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Leadsinger Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008)..................................................................17

*Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*,
    57 F.Supp.3d 1203, 1208 (C.D. Cal. 2014) ..........................................19

*Paramount Pictures Corp. v. Carol Publ'g Grp.*,
    11 F.Supp.2d 329 (S.D.N.Y. 1998) ......................................................19

*Portland Police Assoc. v. Portland*,
    658 F.2d 1272 (9th Cir. 1981)..................................................................9

*Pye v. Mitchell*,
    574 F.2d 476 (9th Cir. 1978)..................................................................10

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)......................................................................16

*Salinger v. Colting*,
    641 F.Supp.2d 250 (2009)........................................................................17

*See v. Durang*,
    711 F.2d 141 (9th Cir. 1983)....................................................................9

*Sid & Marty Krofft TV Prods. v. McDonald's Corp.*,
    562 F.2d 1157 (9th Cir. 1977)................................................................15

*Smith v. City of Oakland*,
    2007 WL 2288328, at *4 (N.D. Cal. Aug. 9, 2007)..............................20

*State ex rel. State Water Resources Control Bd. v. FERC*,
    966 F.2d 1541 (9th Cir. 1992)..................................................................8

*Walker v. Time Life Films, Inc.*,
    615 F.Supp. 430 (S.D.N.Y. 1985) ............................................................9

*Walt Disney Prods. v. Filmation Assocs.*,
    628 F.Supp. 871 (C.D. Cal. 1986)............................................................8

*Warner Bros., Inc. v. Am. Broad. Cos.*,
    720 F.2d 231 (2d Cir. 1983)....................................................................10

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**Statutes**

17 U.S.C. § 101 ...................................................................................17

**Other Authorities**

Nimmer on Copyright, §13.05[A][3] ....................................................18

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Alec Peters and Axanar Productions do not dispute that they created unauthorized works, by copying Plaintiffs' Star Trek Copyrighted Works, all in aid of their quest to create an "independent Star Trek film."  Defendants have now filed a motion for summary judgment, which is based on arguments that are contradicted by the evidence, and by Defendants' own pre-lawsuit statements.

First, Defendants claim that Plaintiffs' copyright infringement claims are "premature" because, after the filing of this lawsuit, Defendants revised their feature film script (although Defendants do not explain what post-lawsuit revisions were made).  Plaintiffs' claims are not premature.  Plaintiffs have sued for copyright infringement based on all of the Axanar Works, which consist of the already completed and released *Star Trek: Prelude to Axanar* ("*Prelude*"), the completed and released "Vulcan Scene," and the Axanar Script, which was completed as part of the full-length *Star Trek: Axanar* film (together, "the Axanar Works").  All three of these works have been fixed in a tangible medium of expression, and all three are before the Court and may be compared to the Star Trek Copyrighted Works.

Second, Defendants argue that the Axanar Works are not "substantially similar" to the Star Trek Copyrighted Works.  Defendants claim that, while they have taken a number of copyrighted elements, including specific characters, costumes, weapons, races and ships from Plaintiffs, their works cannot be considered "derivative" of any particular film or television episode.  As the Court has already explained, Defendants need not take the entire plot from any particular episode or film in order to create an infringing, derivative work.  *See* Dkt. No. 43 at 6.  Nevertheless, Defendants have not merely taken a smattering of unprotectable elements and combined them.  Instead, Defendants have faithfully recreated every possible element of the Star Trek universe, down to excruciating details.  Further, while Defendants assert that they have included additional "original" characters in

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

the Axanar Works, these additional characters are by no means "original" – they are Klingons, Vulcans, and Federation officers, and are, therefore, not "original" to Defendants. Defendants' Axanar Works are substantially similar to the Star Trek Copyrighted Works precisely because Defendants intentionally and deliberately copied characters, settings, plot points, dialogue, themes, pace, mood, races, species, ships, and weapons from Plaintiffs' works in order to create an unlicensed, "independent Star Trek film."

Finally, Defendants argue that their works must be deemed to be "fair use." The primary question in any fair use analysis is whether a work is "transformative." The Axanar Works do not "transform" Plaintiffs' intellectual property into any new or different medium. Defendants intended to, and did, create audio visual Star Trek works. Defendants have expanded upon a Star Trek story, and they have set that story a few years before the timeline of the original Star Trek television series. Defendants have not cited a single case in the history of copyright jurisprudence that finds this kind of activity "transformative," or that would permit what Defendants are attempting to do here.

Defendants also argue that their work should be protected as a "criticism" or "commentary" on the "horrors of war." This argument is specious and the Axanar Works themselves demonstrate the falsity of Defendants' position. The Garth of Izar character that Defendants have taken from Plaintiffs' Star Trek Copyrighted Works is not described as having "PTSD" or suffering from any other malady. Indeed, he is portrayed as a near-infallible hero and military strategist, who helps lead the Federation in The Four Years War against the Klingon Empire. This character and plot are taken directly from Plaintiffs' works, and there is no commentary, satire, parody or criticism whatsoever in the Axanar Works. It is surprising that Defendants would even offer such an argument to the Court, as their pre-lawsuit statements and admissions unequivocally stated that no such purposes were intended: "This is the story of Garth and his crew during the Four Years War,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

2

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

the war with the Klingon Empire that almost tore the Federation apart…This is Star Trek."

The second and third factors of the fair use analysis, the nature of the work infringed, and the amount of that work appropriated by the infringer, both weigh heavily against Defendants, and they all but ignore these points. The Star Trek Copyrighted Works, by their nature, are fictional, highly creative works, and it is beyond dispute that this factor weighs in favor of Plaintiffs. Further, Defendants have taken vast amounts of material from the Star Trek Copyrighted Works, admittedly so in order to be true to "canon" and to create authentic Star Trek works. Defendants appropriated numerous specific Star Trek characters, along with fictional species, organizations, ships, costumes, makeup, dialogue and plots from the Star Trek Copyrighted Works. Defendants argue that they did not take a large amount of material from Plaintiffs because their works are not as lengthy as the "hundreds of hours of film encompassed by Plaintiffs' catalog," and because some of the elements in their works were not directly copied from Plaintiffs. This argument mischaracterizes the relevant analysis. The "substantiality" of the copying does not require a comparison of the overall length of the works at issue. Further, this factor addresses the elements that Defendants copied from the Star Trek Copyrighted Works, regardless of whether their infringing works include other elements.

Finally, Defendants argue that the fourth fair use factor – the effect upon the potential market – weighs in their favor because there is no specific evidence of financial harm stemming from the creation of the Axanar Works. Defendants' argument misstates the law. The Supreme Court has clearly held that a use is not rendered "fair" simply because a plaintiff cannot precisely quantify the damages resulting from the creation of unauthorized derivative works. Indeed, if that were the law, no owner of a successful copyrighted work could ever be expected to enforce its rights, as the precise damages from virtually any infringing use would be

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

exceedingly difficult to quantify if compared to the revenue generated by say, the Harry Potter franchise, the Star Wars franchise, or even a long running television series such as Seinfeld.  Instead, if the proliferation of the infringing use would harm the market for the licensing of derivative works, the Ninth Circuit and Supreme Court have held that the use "is not fair."  Here, if numerous producers were permitted to create "independent Star Trek film(s)" (so long as the main characters from Plaintiffs' works were not used), the adverse effect on the licensing of derivative works would be clear, and the economic harm to Plaintiffs would be self-evident.  More generally, if the standard enunciated by the Supreme Court and the Ninth Circuit were not the law, the protections afforded to content creators under the Copyright Act would be eviscerated.  In addition, Defendants not only profited from their infringing activities, but they also sought to create a business model that would compete with Plaintiffs, distributing high quality, professional "Star Trek" films so that consumers would no longer have to pay for Plaintiffs' licensed products.

This is not a close case of fair use.  Defendants created infringing works, using numerous copyrighted elements from the Star Trek Copyrighted Works, and did so for financial gain, all with the stated intention of creating a market substitute for Plaintiffs' products.

## II.    FACTS

### A.    The Axanar Works Are Not A "Fan Film."

Prior to the filing of this lawsuit, Peters was adamant that he was not interested in creating a "fan film" and distanced himself from that designation. Defendants' opening brief refers to Axanar as a "fan film" dozens of times.  These assertions are contradicted by virtually all of Peters' pre-lawsuit statements regarding the Axanar Works.  Peters announced, on multiple occasions, that he was not working on a "fan film."  SGI 151, 154-158 ("This is no fan film, this is a professional project, and something the Axanar Team knows how to do.") ("[*Prelude*] is not a fan film. They are going to see a fully professional production

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

4

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   that's going to change the way people view Star Trek.") ("these are positions you

2   find on professional productions. And we pride ourselves on being that, <u>and not</u>

3   <u>being a fan film</u>.").

**B.     The Axanar Works Are Not "Social Commentary" or "Satire."**

5          Peters was crystal clear regarding his intentions in creating the Axanar Works

6   – he set out to create a professional Star Trek movie, staying true to Star Trek canon

7   and depicting the Four Years War with the Klingon Empire that was described in the

8   Star Trek Copyrighted Works.  SGI 152:

> **Axanar** is the independent Star Trek film which proves that a feature-
> quality Star Trek film can be made on a small budget…**Axanar** takes
> place 21 years before the events of "Where no Man Has Gone Before".
> It tells the story of Garth of Izar, the legendary Starfleet captain who is
> Captain Kirk's hero and the role model for a generation of Starfleet
> officers. Garth charted more planets than any other Captain and was the
> hero of the Battle of Axanar.  His exploits are required reading at
> Starfleet Academy.
>
> This is the story of Garth and his crew during the Four Years War, the
> war with the Klingon Empire that almost tore the Federation apart…

15         In his motion for summary judgment, Peters now asserts, for the first time,

16  that "Defendants' Works are both social commentary and satire, in that they focus

17  on and intend to expose the true horrors and consequences of war in ways Plaintiffs'

18  Works did not."  Motion at 3.  Defendants, however, do not proffer a single piece of

19  evidence, other than Peters' own post-lawsuit self-serving testimony, to support that

20  statement.  Peters created dozens of podcasts, engaged in thousands of pages of

21  email exchanges, and posted voluminous descriptions, press kits and statements

22  online regarding the content of the Axanar Works, and yet not one pre-lawsuit piece

23  of evidence supports Defendants' current position.

24         More fundamentally, the works speak for themselves and there is no "social

25  commentary" or "satire" in any of the Axanar Works.  Like many of Plaintiffs' Star

26  Trek Copyrighted Works, Defendants' works simply describe and depict military

27  battles between the Federation and the Klingons.  SGI 80, 82, 92, 132 (*See Star*

28  *Trek: The Motion Picture*; *Star Trek:VI* at Dkt. 72-63, Exs. 11 and 16).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

5

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

C.    **Defendants Profited From The Axanar Works, And Intended To Compete With Plaintiffs' Licensed Star Trek Copyrighted Works.**

Defendants argue that their Axanar Works are "not intended to be commercialized" and claim they "have no ambitions of competing against Plaintiffs' works…" Motion at 5, SGI 30.  The only evidence to support this statement is, again, Peter's own post-lawsuit testimony.  However, prior to the filing of this lawsuit, Peters made clear that he, in fact, intended to supplant Plaintiffs' products by providing high-quality Star Trek films on a low budget:

> But **Axanar** is not just an independent Star Trek film; it is the beginning of a whole new way that fans can get the content they want, by funding it themselves.  Why dump hundreds or thousands of dollars a year on 400 cable channels, when what you really want is a few good sci-fi shows?  Hollywood is changing.  Netflix, Hulu, Amazon, and other providers are redefining content delivery, and **Axanar** Productions/Ares Studios hopes to be part of that movement.

SGI 167; *see also* SGI 169 ("Axanar is a ground-breaking independent film that proves the idea that a studio doesn't need millions of dollars to produce a sci-fi feature with big-budget production values.").  The cable channels that Peters was suggesting fans eschew in favor of his "content" is one of the very means by which the Star Trek Copyrighted Works are distributed.  SGI 168.

Peters also intended to use the production facility ████████████████ ████████████████████████████████████████████████████████.  ("The new home of Axanar Productions will be called Ares Studios….We intend to turn this warehouse and office space into a fully functional sound stage.  This will allow us to not only make 'Axanar' but other Star Trek projects after Axanar and other Sci-Fi projects.").  SGI 165.  The lease for the referenced studio is █████████ ████████████████████████████████████████.  SGI 139.[1]  The business plan for Ares Studios/Axanar Productions produced by Defendants states that ███ ████████████████████████████████████████████████████████

---

[1] Axanar Productions ████████████████████████████████████████████████████████.  SGI 159-166, 170-176.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

 SGI 160.

Peters' collaborators on the full-length Axanar film confirmed that they shared this understanding, and intended to use the Axanar project to ██████████████████ ████████████████████. SGI 163.  Peters also attempted to set up meetings with Netflix and Amazon as a producer of Star Trek content, and he told Christian Gossett, the director of *Prelude*, that he had, in fact, attended such meetings.  SGI 159.

Finally, Peters ███████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████████. SGI 134-150.  Further, Peters ████████████████████████████████████████████ ████████████████████████████████. SGI 139.

## III.   ARGUMENT

### A.   None Of Plaintiffs' Claims Are Premature.

Defendants argue that, while *Prelude to Axanar* and the Vulcan Scene have been completed and released, the Axanar Script should not be the subject of a finding of infringement because it would be "premature" to do so.  Motion at 8-10.  Defendants' argument is based on Peters' submission of a script from July 1, 2016, which he states was revised after the filing of this lawsuit.  Peters Decl., Ex. 3.  First, changes made to the script *after* Defendants were sued are irrelevant.  Second, Peters testified that ████████████████████████████████████ ██████████████████████████████████████████████.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

SGI 107.  Thus, the Axanar Script, as the Court has already noted, is fixed in a tangible medium of expression, and the Court is therefore able to compare the Axanar Script to Plaintiffs' Star Trek Copyrighted Works.  *See* Dkt. No. 43.

A review of the Axanar Script shows that it is simply a continuation and expansion of the story being told by Defendants in *Prelude* and the Vulcan Scene. In doing so, the Axanar Script incorporates ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████.  SGI 115-123. The Axanar Script also uses dialogue from Plaintiffs' works, including ███████ ████████████████████████.  SGI 123.  The plot of the Axanar Script, as with Defendants' other infringing works, is taken from *The Original Series* and *The Four Years War* supplement, and depicts Garth of Izar's military battles with the Klingon Empire during that period in the history of the Star Trek universe.  SGI 74-79, 84, 115-123, 129.

Defendants' claim that a review of the Axanar Script is "premature" is incorrect.  Ripeness prevents "theoretical" or "abstract" disputes.  *State ex rel. State Water Resources Control Bd. v. FERC*, 966 F.2d 1541, 1562 (9th Cir. 1992).  In a similar case in this Court, the defendants moved for summary judgment, arguing that the materials they created in the production of their film could not be the subject of a copyright claim because they were merely transitory steps *en route* to a fixed product.  *Walt Disney Prods. v. Filmation Assocs.*, 628 F.Supp. 871, 874, 876-77 (C.D. Cal. 1986).  The Court rejected this argument, finding that the elements created by defendants, including a script and promotional "trailer" satisfied the requirements of the Copyright Act of material cast in some tangible form.  *Id.* at 876; *see also Danjaq, LLC v. Universal City Studios, LLC*, 2014 U.S. Dist. LEXIS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

8

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

180264, Copy. L. Rep. (CCH) P30673 (C.D. Cal. Oct. 2, 2014)(rejecting motion to dismiss copyright claim relating to a script on the grounds of prematurity).[2]

The cases cited by Defendants to support their prematurity argument are inapplicable.  *See Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996) (breach of contract claim was not ripe because the defendant's performance of the contract was not yet due); *Portland Police Assoc. v. Portland*, 658 F.2d 1272 (9th Cir. 1981) (claim was not ripe when several contingencies needed to occur in order to violate the plaintiffs' rights).   Defendants also argue that courts have held that "intermediary" works are not relevant to the substantial similarity analysis.  However, these cases stand for the proposition that courts generally will not consider intermediary works as evidence that <u>a later version</u> of a work is infringing.  *See* Motion at 9, citing to *Walker v. Time Life Films, Inc.*, 615 F.Supp. 430 (S.D.N.Y. 1985); *See v. Durang*, 711 F.2d 141 (9th Cir. 1983); *Chase-Riboud v. Dreamworks Inc.*, 987 F.Supp. 1222 (C.D. Cal. 1997).  Those authorities have no application here, as the Axanar Script is complete and before the Court.  It is not premature to find that any film based on the Axanar Script, or a script substantially similar to the Axanar Script would infringe Plaintiffs' rights.  Likewise, as the Court held in its Order denying Defendants' Motion to Dismiss, *Gilbert v. New Line Prods.*, No. CV 09-02231 RGK (RZx), 2009 U.S. Dist. LEXIS 130675 (C.D. Cal. 2009) does not apply because it "does not stand for the proposition that a court is unable to analyze substantial similarity involving an unfinished film."  *See* Dkt. No. 43.  In their present motion, Defendants are attempting to obtain the Court's permission to make a full-length Star Trek film, so their assertion that this issue is somehow "premature" is baseless.

---

[2] Defendants advanced this same argument in their motion to dismiss, which was rejected by the Court.  *See* Dkt No. 43 ("…a work, including an infringing work, is fixed in a tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. . . .").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

9

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Finally, Defendants' statement that they do not intend to (further) infringe Plaintiffs' copyrights in the future is irrelevant, given that good faith is not an excuse to infringe a copyright. *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978). Nowhere in *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983), cited by Defendants, does the court find that a party is not liable for copyright infringement if it asserts that it does not intend to further infringe. Moreover, such statements are contrary to the evidence that Defendants have already engaged in numerous acts of infringement.

### B.   The Axanar Works Are Substantially Similar To Plaintiffs' Works.

Defendants' Motion argues that there is no substantial similarity between Plaintiffs' Star Trek Copyrighted Works and Defendants' Axanar Works, but Defendants do not address or analyze any of the elements that Peters copied from Plaintiffs' Star Trek Copyrighted Works. Defendants do not, and cannot, dispute that they "intentionally" replicated the Star Trek Copyrighted Works. Defendants copied Garth of Izar,[3] Soval the Vulcan Ambassador, Vulcans, Klingons, the U.S.S. Enterprise, and Klingon battle cruisers. All of these characters are protected by copyright law, as they all have "physical as well as conceptual qualities" and are "sufficiently delineated" in Plaintiffs' works so as to merit copyright protection. *See DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).

Defendants claim that their works are not "substantially similar" because, in addition to the characters, described above, that they copied from Star Trek, they created additional "original" characters. However, Defendants did not create "original" characters; they populated the Axanar Works with Klingons, Vulcans and

---

[3] Defendants argue that Garth of Izar is an "obscure" character, but they do so by disingenuously ignoring the fact that Plaintiffs published an entire Star Trek novel devoted to (and entitled) *Garth of Izar*. SGI 54. Further, the Motion does not address the undisputed fact that Defendants borrowed their plot and characters regarding Garth and the Four Years War from Plaintiffs' *Four Years War* publication. SGI 81-85. Moreover, even if Garth of Izar was featured in only one television episode, that would not render that character unprotectable, and Defendants have not cited to any law to support that assertion.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

10

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Federation officers.  SGI 92-133.  Klingons have distinctive visual elements including large, protruding foreheads covered by symmetrical bumps and ridges, dark hair and skin, facial hair, and upward sloping eyebrows.  SGI 66. Klingons were long-time enemies of the Federation, and engaged in a number of military battles with Starfleet.  SGI 67.  Below on the left is an image from *Prelude* of one of the supposedly "original" characters Defendants say they created.  This character is simply a Klingon, part of the fictional race created and owned by Plaintiffs.  Below, on the right, is an image of a Klingon from Plaintiffs' work *Star Trek: The Motion Picture*.  SGI 94.

 

Vulcans, first appearing in the form of Mr. Spock in *The Original Series*, are an iconic fictional species.  SGI 68.  Vulcans are serious and contemplative and Vulcan men are usually depicted with pointy ears, upswept eyebrows, and straight, dark (or gray) hair cut in a "bowl" style.  SGI 69-70.  Vulcans are part of the Federation, and are portrayed as an advanced technological species.  SGI 71.

Ambassador Soval is a Vulcan diplomat who was first seen in the 2001 pilot episode of the television series *Star Trek: Enterprise* (entitled "Broken Bow").  SGI 72.  Thereafter, Ambassador Soval became a recurring character in the *Enterprise* series.  Soval is portrayed by actor Gary Graham, who reprised his role as Ambassador Soval in Defendants' infringing works, and even wore virtually

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

11

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

identical makeup and costumes that he had in the *Enterprise* series.  SGI 73.  Below, on the left, are images of Vulcan ambassador Soval from the Axanar Works.  On the right are images of Soval from some of his appearances in the series *Star Trek: Enterprise*.  SGI 73.




To ensure their fidelity to "Star Trek canon," Defendants replicated innumerable details from the Star Trek universe, including the planet Vulcan, Vulcan ships, and Vulcan architecture.  Below is the image of the planet Vulcan, from Defendants' "Vulcan Scene" which was taken from the image on the right, a screenshot from *Star Trek: III*.  Defendants' Vulcan Scene also replicated Vulcan architecture, and Vulcan space ships.  SGI 108-113.






Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

12

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

The Vulcan architecture copied by Defendants on the left was taken from Plaintiffs' works, including the *Enterprise* episode "Kir'shara."  SGI 111.

Defendants also copied a number of Plaintiffs' famous starships, including the U.S.S. Enterprise, and Klingon battlecruisers.  Below, on the left, are Defendants' representations of Plaintiffs' copyrighted star ships in *Prelude to Axanar*, contrasted with images of those same ships from Plaintiffs' Star Trek Copyrighted Works.







---

4 The photo on the top right is of the U.S.S. Enterprise.  SGI 131.  The U.S.S. Enterprise was first seen in *The Original Series*, and was included in virtually every episode of that series, along with numerous Star Trek films.  SGI 131.  The images on the left from *Prelude* copy Plaintiffs' iconic Starship Enterprise.  Defendants' work (below left) depicts the Enterprise in a "spacedock," just as it was depicted (bottom right) in *Star Trek: The Motion Picture*.  SGI 131.  Defendants' copying was so detailed that their image on the left even includes a shuttle-type vessel from the Star Trek Copyrighted Works called a cargo management unit or "workbee." SGI 131.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

13

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    Defendants' Axanar Works include a number of Klingon characters, which

2    are substantially similar to Plaintiffs' Klingons.  Defendants testified that ███████

3    ████████████████████████████████████████████████████████

4    ██████.  SGI 102, 128.  Defendants' Axanar Script ████████████████

5    ████████████████.  SGI 117.  Chang was the Klingon villain depicted in *Star Trek*

6    *VI: The Undiscovered Country*.  SGI 118.  Further, Defendants intentionally copied

7    Plaintiffs' Klingon battlecruisers, and depicted those ships in *Prelude*.[5]  SGI 99,

8    131.

  

16    Defendants' Axanar Works, in order to stay true to Star Trek "canon" and to

17   have the "look and feel" of an independent Star Trek film, incorporated numerous

18   additional elements, including federation officers and their uniforms (███████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████), the logos of the Federation,

21   Vulcans, the Klingon Empire, the Federation Council, phasers, warp drive, dilithium

22   crystals, "stardates" and transporters.  SGI 92-133, 178.  The plot, tone, themes,

23   mood and dialogue of Defendants' works were also taken from the Star Trek

24   Copyrighted Works.  SGI 51-65, 122, 132.   Garth of Izar's military battles against

25   the Klingon Empire, including the Battle of Axanar, were discussed in *The Original*

---

[5] The Klingon battlecruiser first appeared in *The Original Series* episode
"Elaan of Troyius" in 1968 and was used as one of two recognizable Klingon ships
in all works thereafter.  SGI 99.  Klingon battlecruisers were also depicted in *Star
Trek–The Motion Picture* (right image).  SGI 99.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

14

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

*Series*, and were also described in *The Four Years War* supplement to *Star Trek: The Role Playing Game*.  In fact, Defendants admitted that ███████████ ████████████████████████.  SGI 85.  Further, to faithfully recreate Plaintiffs' characters, Defendants used "Make-up Effects Lab" and a professional named Kevin Haney, who worked for that company.  Mr. Haney and his company have worked on licensed Star Trek works.  SGI 153.

Defendants concede access to the Star Trek Copyrighted Works, leaving only the issue of substantial similarity for the Court.  "Substantial similarity is a matter of law," which involves an examination of whether Defendants copied "elements of the work that were original."  *Feist Publications, Inc. v. Rural Telephone Serv., Inc.*, 499 U.S. 340, 361 (1991).  The Axanar Works and the relevant Star Trek Copyrighted Works are before the Court, and the Court may make its own comparison of these works.  *Sid & Marty Krofft TV Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)(substantial similarity can be determined as a matter of law).  Defendants' assertion that the Axanar Works are not substantially similar to the Star Trek Copyrighted Works is entirely without merit.  There is no question that the Axanar Works copied directly (and extensively) from the Star Trek Copyrighted Works, and that they dutifully replicated numerous creative, fictional elements of Star Trek.  SGI 92-133.  Indeed, Peters stated that he attempted to be ██████████████████████████████████████████ and that he ████ ██████████████████████████████ SGI 105.

## C.    Fair Use Has No Application To The Facts Of This Case.

### 1.    The Purpose and Character of the Use.

The Supreme Court has held that the primary determining factor in analyzing the issue of fair use is whether or not the work at issue is "transformative."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-80 (1994).  The question of whether a work is "transformative" is often determinative on the issue of fair use.  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

There is nothing transformative about the Axanar Works, as they were admittedly created to function as another Star Trek work, with a slightly different plot (in the same way the each of the Plaintiffs' Star Trek Copyrighted Works have different plots). Defendants disingenuously assert that *Prelude* is a "commentary" on "the present-day military industrial complex" (Motion at 16), but that is absurd. *Prelude* speaks for itself—it contains absolutely no social commentary or criticism, and Defendants never previously asserted that the Axanar Works would contain any such message or comment. Defendants also argue that the Vulcan Scene is "transformative" because it is a "clear continuation of the critical analysis" and is an "original story." *Id.* Again, the Vulcan Scene itself does not support this new interpretation, nor did Defendants ever claim, prior to the filing of this lawsuit, that their works were anything other than a "professional independent Star Trek film." The Vulcan Scene contains no social or critical commentary and the Axanar Script (which contains the Vulcan Scene) provides context to that scene, and shows that the Vulcan Scene was simply a part of the overall story, taken from Plaintiffs, regarding the battles between the Klingons and Federation during the Four Years War. This tactic, of attempting to re-characterize the content of the infringing work, *after* a lawsuit has been filed, has been employed on numerous occasions by copyright defendants. Courts have repeatedly held that after-the-fact claims of criticism, commentary or parody are not to be given any weight, and have gone so far as to label such post hoc rationales as "shtick." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997) (rejecting defendants' arguments that their work was a parody as "pure shtick" and "completely unconvincing"); *Salinger v. Colting*, 607 F.3d 68, 73 (2d Cir. 2010) (finding defendants unlikely to prevail on fair use defense when their claim that their work had a critical purpose was contradicted by earlier public statements.).

Moreover, the mere fact that *Prelude* includes fictional "interviews" with Star Trek characters, in addition to scripted dialogue and action sequences, does not

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

16

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1  render that work "transformative."  Defendants ███████████████████████

2  ████████████ not to create a "transformative" work.  SGI 177.  It is beyond dispute

3  that the Axanar Works copied numerous Star Trek characters, appropriated plots

4  from *The Original Series* and *The Four Years War*, and, far from being "transforma-

5  tive," were meant to faithfully recreate the Star Trek universe.  Numerous cases

6  have also held that using copyrighted characters and elements, and placing those

7  elements into a new story or timeline, is *not* transformative, and simply constitutes

8  the unauthorized production of an infringing derivative work.[6]

9          This factor also addresses whether the infringing work "is of a commercial

10  nature or is for nonprofit educational purposes."  Peters unquestionably engaged in a

11  commercial endeavor, raising and spending almost a million and a half dollars

12  (much of it on his own personal expenses).  Peters also sought to produce Star Trek

13  content for Netflix, and ██████████████████████████████████████

14  ████████████████████████████████████████████████████.

15  SGI 159-167.

16          **2.     The Nature of the Copyrighted Work.**

17          A work "of creative expression, as opposed to an informational work, [] is

18  precisely the sort of expression that the copyright law aims to protect."  *Leadsinger*

19  *Inc. v. BMG Music Publ'g*, 512 F.3d 522, 531 (9th Cir. 2008).  Defendants have not

20  set forth any basis upon which to find that this factor weighs in their favor and,

21  therefore, this factor should be deemed to weigh against fair use.

22

23

24  ───────────────

25  [6] *See Salinger v. Colting*, 641 F.Supp.2d 250, 262 (2009) ("nor do the mere facts that Holden Caulfield's character is 60 years older, and the novel takes place in the present day make *60 Years* 'transformative.' As the Second Circuit clearly noted

26  in *Castle Rock,* just because a work 'recast[s], transform[s], or adapt[s] ... an original work into a new mode of presentation,' thus making it a 'derivative work'

27  under 17 U.S.C. § 101, does not make the work 'transformative'...."); *Anderson v. Stallone*, 11 U.S.P.Q.2d 1161 (C.D. Cal. 1989) (holding that a spec script "sequel"

28  to Rocky III constituted an infringing "unauthorized derivative work.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

17

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

### 3.    The Amount and Substantiality of the Portion Used.

The "proper analysis here includes a determination of not just quantitative, but also qualitative substantiality."  Nimmer on Copyright, §13.05[A][3]. Defendants argue that they have only taken "minimally" from Plaintiffs' works, but this argument is belied by the evidence obtained in discovery, as well as by the Axanar Works themselves.

As described above, and as clearly seen in the Axanar Works, Defendants have taken Klingons, Vulcans, Starfleet officers, the Federation, the U.S.S. Enterprise, Klingon, Vulcan and Federation starships, Klingon and Federation weaponry and technology, have depicted the conflict between these fictional races and have also duplicated the look and feel of the Star Trek Copyrighted Works, copying planets, uniforms, dialogue, insignias, logos and even hair and makeup. SGI 92-133.  Thus, Defendants' assertion that they have taken "minimally" from Plaintiffs is hollow.

Further, Defendants' argument that their use is "fair" because they have taken elements from various films and television series and aggregated them, is not supported by the law.  *See Castle Rock Entm't v. Carol Publ'g Grp.*, 955 F.Supp. 260, 266-67 (S.D.N.Y. 1997)(holding that, even though the defendant's work pulled elements from dozens of Seinfeld episodes, it "draws upon 'essential' elements of *Seinfeld,* and it draws upon little else; and, most importantly, [the defendant's work] occupies a market for derivatives which plaintiff whatever it decides must properly be left to control.").

### 4.    The Effect of the Use upon the Potential Market.

A plaintiff can demonstrate the existence of harm to its potential market merely by showing "that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work…This inquiry must take account not only of harm to the original but also of harm to the market for derivative works."  *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 568

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

18

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

(1985).  There is, perhaps, no better example of a "use" that would damage Plaintiffs than the creation and dissemination of unlicensed "independent Star Trek films."  Plaintiffs have been making Star Trek works for fifty years, and those works include television series, films, novels, reference guides, encyclopedias, and documentaries.  The heart of Plaintiffs' works, however, are their films and television shows.  Defendants' conduct, if left unchecked, would permit Defendants (and others) to infringe upon Plaintiffs' market, and to create entire films or television shows, based on and substantially similar to the Star Trek Copyrighted Works, that incorporate similar, or identical, characters, settings, themes, plots, and dialogue.  SGI 170.  Such infringing films or television shows, made with professional actors (and even actors from the authorized Star Trek works) would inevitably effect the market for Plaintiffs' Star Trek Copyrighted Works.[7]

Plaintiffs have released three different works featuring their character, Garth of Izar (the episode *Whom Gods Destroy*, *The Four Years War* publication, and the novel *Garth of Izar*) and Defendants have now sought to create an unlicensed fourth Garth of Izar work.  Defendants' conduct is not merely infringing upon a theoretical, untapped market for derivative works, but rather, it is competing in actual market that Plaintiffs have already exploited.  *See Paramount Pictures Corp. v. Carol Publ'g Grp.*, 11 F.Supp.2d 329, 336 (S.D.N.Y. 1998) ("While the book cannot serve as a market substitute for the richly entertaining [Star Trek] television shows and movies, it can interfere with Paramount's market for derivative works.").

Defendants argue, without any basis in evidence, that the Axanar Works "offer free promotional value to Plaintiffs."  Motion at 14.[8] Defendants also claim

---

[7] While Defendants claim that their budget is not comparable to an authorized Star Trek film (Motion at 6), it is comparable to the budget for a one hour Star Trek television episode.  SGI 179.  Defendants want to make Star Trek works that are of the same quality as Plaintiffs' works, distributed to the same audience, through some of the same means.  This is the definition of a competitive work.

[8] Defendants' "support" for this assertion is an "expert report" which is unsworn, and inadmissible.  *Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, 57 F.Supp.3d 1203, 1208 (C.D. Cal. 2014)("Courts in the Ninth Circuit 'have routinely

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

19

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    that "Defendants' Works do not diminish the novelty of Plaintiffs' Works" because

2    "they do not repeat or derive from" Plaintiffs' works. *Id.* Again, there is no support

3    for this statement. The Axanar Works are specifically and intentionally derived

4    from Plaintiffs' works, and Peters testified ███████████████████████████

5    ████████████████████████████████████████████████

6    █████████████████████████████████.[9] SGI 105.

7         Finally, Defendants claim that their works should not be deemed to act as a

8    market substitute (even though they advertised them as such) because the parties'

9    works serve "fundamentally different functions." *Id.* This, too, is inaccurate. The

10   Axanar Works were created to collectively constitute an "independent Star Trek

11   film." SGI 124, 151-152, 167. They were intended to serve the same function as

12   Plaintiffs' works, for the same market, by creating filmed entertainment regarding

13   the races and organizations that make up the Star Trek universe – hence Defendants'

14   promotion of their works by touting: "This is Star Trek." SGI 152.

## IV.    CONCLUSION

16         Plaintiffs request that the Court deny Defendants' motion.

17   Dated:  November 28, 2016        LOEB & LOEB LLP

19                             By: */s/ David Grossman*
                                   David Grossman
                                   Attorneys for Plaintiffs

---

held that unsworn expert reports are inadmissible.'"); *Smith v. City of Oakland*, 2007 WL 2288328, at *4 (N.D. Cal. Aug. 9, 2007)("the report should be stricken because it is hearsay. Although the report was signed by Mr. Clark and attached to a declaration…, the report was not sworn to by Mr. Clark."). Further this "expert" has no experience in marketing, promotion, or advertising, and his report cites no data to support his conclusions. Finally, he should be excluded as Defendants refused to let him be deposed prior to the date of this opposition.

      [9] Defendants have included public statements by J.J. Abrams and Justin Lin, *Star Trek Beyond* producer and director, respectively, suggesting that they support fan films. At the time of these statements ██████████████████████████. Further, Abrams ████████████████████████████████████████████████ ████████████████████████████████████████. SGI 180.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

100302458
202828-10048

20

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT