LOEB & LOEB LLP
DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
JENNIFER JASON (SBN 274142)
jjason@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

LOEB & LOEB LLP
JONATHAN ZAVIN (admitted *pro hac vice*)
jzavin@loeb.com
345 Park Avenue
New York, NY 10154
Telephone: 212.407.4000
Facsimile: 212.407.4990

Attorneys for Plaintiffs
PARAMOUNT PICTURES
CORPORATION and CBS STUDIOS
INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual, and DOES 1-20,<br><br>Defendants. | Case No.: 2:15-cv-09938-RGK-E<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

# TABLE OF CONTENTS

     **Page**

I. INTRODUCTION ...................................................................................1

II. DISCUSSION .........................................................................................2

    A. The Works Are Substantially Similar. ....................................................2

        1. Star Trek: Prelude To Axanar. ......................................................2

            a. Defendants Infringed Plaintiffs' Characters. ....................3

        2. The Vulcan Scene. ........................................................................6

        3. The Axanar Script. ........................................................................6

    B. Fair Use Does Not Apply To Defendants' Conduct. ............................7

        1. Purpose and Character of the Use. ...............................................7

        2. The Nature of the Work and Amount Used. ...............................9

        3. The Effect of the Use upon the Potential Market. ......................9

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

i

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ........................................................................................... 7

*Castle Rock Entm't v. Carol Publ'g Grp., Inc.*
    (affirmed by the Second Circuit) ....................................................................... 7

*D.C. Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ............................................................. 3, 4, 5, 6

*Friedman v. Guetta*,
    2011 U.S. Dist. Lexis 66532 (C.D. Cal. 2011) ................................................. 8

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
    547 F.3d 1213 (9th Cir. 2008) ........................................................................... 5

*Morris v. Guetta*,
    2013 WL 440127 (C.D. Cal Feb. 4, 2013) ....................................................... 7

*Paramount Pictures Corp. v. Carol Publ'g Grp.*,
    11 F.Supp.2d (S.D.N.Y. 1998) ...................................................................... 7, 8

*Worldwide Church of God v. Phil. Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) ........................................................................... 7

**Statutes**

17 U.S.C. §§101 et seq. ........................................................................................ 10

17 U.S.C. §106 .................................................................................................... 1, 8

17 U.S.C. §107(1) ......................................................................................... 1, 2, 8, 9

**Other Authorities**

F.R.C.P. Rule 26(a)(2)(C) ...................................................................................... 3

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

ii

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

Boiled down to its essence, Defendants' claim in this case is that they are entitled to create a full-length film featuring copyrighted characters such as Klingons, Vulcans, and Federation officers, along with Star Trek weapons, spaceships, settings, and dialogue – so long as they do not include Captain Kirk and Mr. Spock. This is not the law. Defendants' theory would permit others, including competing studios, to create "professional" "independent Star Trek films" and television shows, featuring all of these elements. The Copyright Act grants Plaintiffs the "exclusive" right to create derivative works and Defendants' interpretation of the Copyright Act would destroy the longstanding rights of content owners, allowing infringers like Peters to create sequels, prequels and spinoffs without paying any license fees to the creators of the underlying works. One simple example demonstrates why this cannot be the law: *Star Trek: The Next Generation*, the second Star Trek television series, takes place in a different time period from *The Original Series*, and includes different fictional characters. However, there is no question that this series was a derivative work, incorporating the very same elements copied by Defendants (Klingons, Vulcans, spaceships, weapons, language, etc.). Under Defendants' theory, *they* (or any other commercial television studio) could have produced that series, and there would be no substantial similarity, and thus no infringement. If this were the law, the exclusive right to create derivative works under Section 106 of the Copyright Act would no longer exist.[1]

Defendants argue that, if deemed to be substantially similar to Plaintiffs' works, the Axanar Works should be protected by "fair use." Defendants have not carried their burden of demonstrating the application of the fair use defense. The Axanar Works are not satire, commentary or parody and, by Defendants' own

---

[1] In an effort to create "disputed issues of fact" Defendants' Opposition brief raises a number of issues that are not relevant to Plaintiffs' motion such as whether Peters' conduct was willful. Opp. at 5-6. These issues, at best, relate to the amount of damages to be awarded after a ruling on liability.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

1

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

admission, were never meant to be anything other than a "professional" and "independent" Star Trek work.  Further, no case has ever held that the creation of a non-satirical sequel or prequel is "transformative" and there is no basis for doing so here.[2]  Defendants also claim that there is no specific evidence of monetary damage from the Axanar Works, but the Supreme Court has clearly held that the creation of unauthorized derivative works, as Defendants have done here, constitutes harm sufficient to preclude application of the fair use defense.

Defendants created unauthorized infringing works, the fair use defense does not apply to these facts, and Plaintiffs request that the Court find Defendants liable for copyright infringement.

## II. DISCUSSION

### A. The Works Are Substantially Similar.

Prior to the filing of this lawsuit, Peters acknowledged and, in fact, touted, that he was creating an authentic Star Trek work.  UMF 73.  It is undisputed that Peters' intent in creating the Axanar Works was to ▮▮▮▮▮▮ to Star Trek and to ▮▮▮▮▮▮ UMF 55, 73.

#### 1. *Star Trek: Prelude To Axanar*.

Defendants' work, *Prelude*, appropriates numerous characters, races, settings, costumes and other elements in order to faithfully recreate the Star Trek universe.  Peters admitted that *Prelude* includes ▮▮▮▮▮▮

---

[2] Defendants assert that the Axanar Works should be protected under the first factor of the fair use doctrine as a "non-commercial" endeavor.  However, this factor does not favor "non-commercial" endeavors and, instead, gives deference to "nonprofit educational" works.  17 U.S.C. §107(1).  Further, Peters' pre-lawsuit statements and conduct refute any such "non-commercial" characterization.  Peters ▮▮▮▮▮▮ UMF 108-111.  Peters' Axanar business was not a short-term, amateur production – it was, admittedly, a professional film, employing experienced Star Trek professionals both "in front and behind the camera."  UMF 100.

▮. UMF 52. Peters also admitted that he took numerous additional elements from Plaintiffs' work, including settings, planets, costumes, the Federation, stardates, logos, ribbons, Starfleet officers and commanders, and dialogue such as beaming up, transporters and warp drive. UMF 42-55.[3]

### a. Defendants Infringed Plaintiffs' Characters.

Defendants' works copy Garth of Izar, Soval the Vulcan Ambassador (played by the same actor that portrayed that character in the television series *Star Trek: Enterprise*), the U.S.S. Enterprise and Klingon battlecruisers. UMF 23-24, 42, 48, 49, 65, 69, 80. These characters are protected by copyright. *D.C. Comics v. Towle*, 802 F.3d 1012, 1019-20 (9th Cir. 2015) ("copyright protection extends not only to an original work as a whole, but also to 'sufficiently distinctive' elements, like comic book characters, contained within the work."). Characters depicted in audio-visual works are protected by copyright so long as they: (a) "have physical as well as conceptual qualities;" (b) are "sufficiently delineated" so as to be recognizable in different settings; and (c) are "especially distinctive" as containing "some unique elements of expression." *Id.* at 1021. All of the characters and races copied by Defendants are protectable. Defendants claim that they only copied "minor" Star Trek characters, but these characters are not "minor," they have physical and conceptual qualities, are sufficiently-delineated, and contain unique elements of expression. Further, Garth is only "minor" when compared to 700 audiovisual works. He is a central, fully-delineated character in a separately copyrighted

---

[3] Defendants argue that Mr. Van Citters' declaration should be disregarded on the basis that he was "instructed not to answer" questions about substantial similarity. This is false – and the testimony cited does not support Defendants' claim. Mr. Van Citters testified as a person most knowledgeable on numerous subjects, and the only instructions not to answer related to Mr. Van Citters' communications with counsel regarding the drafting of the Complaint – but he was explicitly permitted to address questions regarding elements taken from Plaintiffs' works. AMF Response 79 ("You're free to obviously ask him about the substance of the chart…"). Further, he was later designated as a non-retained expert, pursuant to Federal Rule 26(a)(2)(C), on the subject of the various elements taken from Plaintiffs' works, but Defendants declined to take his deposition on that subject.

television episode, and he is not required to appear in multiple episodes in order to be protected.

Garth of Izar was first depicted in the episode *Whom Gods Destroy*. In that episode, Captain Kirk explains that Garth was his hero, was the Federation's "greatest warrior," and that Garth's "victory at Axanar" was "required reading at the Starfleet Academy." UMF 10-11, 26. He is also described as having "charted more new worlds than any man in history." *Id.* Garth's exploits at the battle of Axanar were also discussed in *The Four Years War*[4] supplement and that character is the subject of an entire novel (*Garth of Izar*). UMF 4, 28, 32. Mr. Peters, who played Garth of Izar in *Prelude*, portrayed a slightly younger version of the same character that was depicted in *Whom God's Destroy*. UMF 42 ("█████████████████████████████████████████████████████"). Indeed, Peters described Garth as the <u>exact same character</u> depicted in *Whom God's Destroy*, explaining that his character is: "Captain Kirk's hero and the role model for a generation of Starfleet officers. Garth charted more planets than any other Captain and was the hero of the Battle of Axanar. His exploits are required reading at Starfleet Academy." UMF 25. There is no question that Defendants copied this character. Nor is it mere substantial similarity – Defendants use the *identical* character.

Soval is also a character, protected by copyright, that appeared in numerous episodes of the television series, *Star Trek: Enterprise*.[5] Soval is a Vulcan ambassador, from the planet Vulcan, and his depiction in the Axanar Works is

---

[4] Defendants falsely claim that *The Four Years War* was not "identified" in Plaintiffs' discovery responses, but the very discovery responses they cite to for that assertion list *The Four Years War* as an infringed work. AMF Response 56. Further, that work was clearly known to Defendants as *Prelude*'s director, Christian Gossett, produced an email exchange with Peters (that Peters withheld) in which *The Four Years War* was described as the "bible" for the Axanar Works. UMF 35.

[5] Soval appears in: "Broken Bow" (S1 E1); "Shadows of P'Jem" (S1 E15); "Shockwave, Part II" (S2 E1); "Cease Fire" (S2 E15); "The Expanse" (S2 E26); "Twilight" (S3 E8); "Home" (S4 E3); "The Forge" (S4 E7); "Awakening" (S4 E8); "Kir'Shara" (S4 E9); and "Terra Prime" (S4 E21). AMF Response 98.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

4

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

virtually indistinguishable from his appearance in Plaintiffs' works (he is even portrayed by the same actor). UMF 22-23, 48, 60. Vulcans, in general, are also protected characters. They are depicted in a consistent manner, as serious, lacking emotion, highly-advanced and logical beings. Vulcans are also consistently depicted with pointy ears and distinctive haircuts, and as part of the Federation. UMF 18-22. Thus, Vulcans, including Soval, are protectable characters.

Similarly, *Prelude* features a Klingon character that was admittedly patterned after Plaintiffs' Klingon characters, and bears a striking similarity to Klingons portrayed in other Star Trek works. In fact, Peters admitted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. UMF 50. Klingons, like Vulcans, are protectable characters as a matter of law. They are a fictional, war-like species, speaking Klingonese, hailing from the planet Qo'noS and are known for engaging in battles with the Federation. UMF 15-17. Thus, Klingons have both physical and conceptual qualities, they are sufficiently distinctive so as to be recognizable in different settings, and they are unique, fictional characters. Contrary to Defendants' argument, the mere fact that Klingons have been depicted with slightly different styles of makeup over the last fifty years does not impact their copyrightability. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1224 (9th Cir. 2008) (holding that the car "Eleanor" depicted in two films was eligible for copyright protection even though Eleanor was portrayed as different make and color cars in the two films).

The U.S.S. Enterprise and Klingon battlecruisers are also copyrighted characters. *Towle*, 802 F.3d at 1020. The Enterprise is a distinctive vessel used by officers of the Federation to seek out new worlds and to fight against hostile species. UMF 9, 80. Similarly, Klingon battlecruisers were copied by Defendants in *Prelude*, and are distinctive ships used by the Klingon Empire in their battles against the Federation. Peters admitted that he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. UMF 49, 52, 79.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

5

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

### 2. The Vulcan Scene.

Peters admitted that ████████████████████████████████████████
████████████████████████████████████████████████. UMF 77. The Vulcan Scene also includes Vulcan ships, copied from Plaintiffs' works and copies a screenshot of Mt. Seleya, a fictional sacred mountain, from *Star Trek III*. UMF 59-63. Peters admitted that ████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████. UMF 59-63.

### 3. The Axanar Script.

The Axanar Script expands upon the plot of the prior Axanar Works, and therefore contains ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████. UMF 65-72. The Axanar Script is also firmly, and deliberately, set in the Star Trek universe, employing the distinctive dialogue of Star Trek, such as ████████████████████████████████████████████████
████████████████████████████████████████████████ *Id.* (Grossman Decl., Ex. AA). The Axanar Script also contains the fictional species ████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████. *Id.*

Defendants argue that their conduct should not be deemed actionable, because they have copied so many disparate elements from so many different Star Trek Works that each of those elements should be ignored as unimportant or unprotectable. Opp. at 8-10. The Court previously rebuked this theory – as the Court noted in its ruling on the motion to dismiss, Plaintiffs' theory of infringement is not based solely on individual characters and elements, but also on the fact that "defendants copied each of these elements and combined them together in such a way that recreates the Star Trek world." Dkt. No. 43.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

6

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

Here, the evidence shows that Defendants copied ▬▬▬▬▬▬▬▬ of Plaintiffs' works. Defendants copied the characters (and character relationships), theme, mood, tone, settings, and dialogue of Star Trek. Defendants went so far as to copy the colors of uniforms, fictional weapons and ribbons and insignias on costumes.[6] Courts have previously held that taking elements from across a fictional universe constitutes copyright infringement, even when the defendant did not wholly appropriate any individual work. *Paramount Pictures Corp. v. Carol Publ'g Grp.*, 11 F.Supp.2d at 333-34 (S.D.N.Y. 1998)(a book containing brief synopses of major plot lines, histories of major characters, and descriptions of fictional alien species in Star Trek was substantially similar to the Star Trek series).

Striking similarity was Peters' stated goal in creating the Axanar Works, and Defendants' Axanar Works are certainly substantially similar to Plaintiffs' works.

### B. Fair Use Does Not Apply To Defendants' Conduct.

#### 1. Purpose and Character of the Use.

The primary factor in the fair use analysis is whether or not the work is "transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-80 (1994). Here, Defendants have simply copied from Star Trek television episodes and films in order to create another Star Trek film. "[W]here the 'use is for the same intrinsic purpose as [the copyright holder's] ... such use seriously weakens a claimed fair use.'" *Worldwide Church of God v. Phil. Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000); *see also Morris v. Guetta*, 2013 WL 440127 (C.D. Cal Feb. 4,

---

[6] Defendants argue that the "exact" number of infringements must be established for purposes of statutory damages, but there are no statutory damages sought by this Motion. Further, the district court in *Castle Rock Entm't v. Carol Publ'g Grp., Inc.* (affirmed by the Second Circuit) determined that the defendant had infringed the characters, dialogue and plots of the *Seinfeld* television series, but did not specify an "exact" number of infringements, and the parties thereafter stipulated to damages and attorneys' fees. *See Castle Rock*, 955 F.Supp. 260 (S.D.N.Y. 1997). Plaintiffs have identified by title and registration number the works infringed by Defendants' copying of Plaintiffs' characters and copyrighted elements. UMF 1-8, 33. Defendants have not disputed that those works contain the infringed elements and summary judgment may be entered on liability.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

7

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

2013) (granting plaintiff's motion for partial summary judgment and denying defendant's fair use motion after finding no transformative use).

What Defendants are attempting to do here, using Plaintiffs' intellectual property to create an unlicensed derivative work, has been repeatedly rejected. "To permit one artist the right to use without consequence the original creative and copyrighted work of another artist simply because that artist wished to create an alternate work would eviscerate any protection by the Copyright Act. Without such protection, artists would lack the ability to control the reproduction and public display of their work and, by extension, to justly benefit from their original creative work." *Friedman v. Guetta*, 2011 U.S. Dist. Lexis 66532, *19-20 (C.D. Cal. 2011).

Defendants appear to have abandoned their after-the-fact claim that the Axanar Works are "social commentary" – and they clearly are not. Nevertheless, Defendants claim that their works are "transformative" because they use Plaintiffs' copyrights to tell a "new" story. Opp. at 17-18. Defendants have not cited to any case that finds that merely recasting existing elements and characters into a new story is "transformative." There is no such precedent because, if there was, the exclusive right to create derivative works under Section 106 would be eviscerated. Defendants also argue that they believe their work is a "mockumentary" and cite to Wikipedia to somehow support their defense. Opp. at 17 ("a mockumentary has been defined on Wikipedia as a 'parody.'"). Wikipedia is not evidence, and the Axanar Works are not a parody. Response AMF 74. Merely interspersing "interviews" of Plaintiffs' copyrighted characters between dialogue and action sequences does not insulate Defendants from liability, and Defendants cite no authority to support their theory. Indeed, in a far more "transformative" example, the creation of fictional "reference" works based on another party's copyrighted characters was held to be infringing and non-transformative. *See Paramount Pictures*, 11 F.Supp.2d 329 (S.D.N.Y. 1998). Further, the only Axanar Work to use interspersed interviews is *Prelude* – the Vulcan Scene and the Axanar Script do not

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

8

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

use that technique, and Defendants do not argue that either of those two works are "transformative."

Defendants claim that the nature of the Axanar Works is "non-commercial" but the category given any deference for fair use by the first factor of Section 107 is "nonprofit educational purposes" which the Axanar Works are not. Further, Defendants ignore the undisputed evidence that Peters created a commercial business, forming Axanar Productions ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. UMF 84-99. Peters, after his first deposition, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

### 2. The Nature of the Work and Amount Used.

Defendants do not even address the second and third fair use factors, conceding that these factors weigh in Plaintiffs' favor.

### 3. The Effect of the Use upon the Potential Market.

This factor examines whether the plaintiff would be harmed if the use at issue were permitted to proliferate. Here, there is no question that Defendants' conduct – creating a professional "independent Star Trek film" – if permitted to continue – would cause great damage to Plaintiffs and the market for their works.[7]

---

[7] By Defendants' logic, they would be permitted to create a prequel to *Star Wars*, like *Rogue One*, so long as their "independent, professional film" did not feature Luke Skywalker and Han Solo.

Defendants argue, without any supporting evidence, that their infringing works "benefitted" Plaintiffs. Even if true – and it is not – this argument is irrelevant. Under the Copyright Act, Plaintiffs have the right to control the reproduction of their copyrighted characters and works, and also to control the market for derivative works. Defendants deny that the Axanar Works were a market "substitute" for Plaintiffs' works, but that argument defies logic. Defendants, by their own proclamations and admissions, created and seek to create authentic, professional Star Trek works. UMF 100-102. Further, Defendants expressly stated their intention to create a business model that would provide more "independent" Star Trek content to fans – so that fans no longer would be required to pay for licensed Star Trek content. UMF 110 ("**Axanar** is not just an independent Star Trek film; it is the beginning of a whole new way that fans can get the content they want, by funding it themselves. Why dump hundreds or thousands of dollars a year on 400 cable channels, when what you really want is a few good sci-fi shows? Hollywood is changing. Netflix, Hulu, Amazon, and other providers are redefining content delivery, and **Axanar** Productions/Ares Studios hopes to be part of that movement.").

Defendants object to the imposition of an injunction, but their objections are based on their claim that the Axanar Works are fair use – and they are not. Defendants also claim that an injunction would be improper because it would prevent Defendants from creating lawful parodies, but Plaintiffs do not seek to, and cannot, prohibit lawful conduct. The injunctive relief sought is only intended to preclude continuing infringement of Plaintiffs' works.

Finally, Peters is liable for vicarious and contributory infringement, as Defendants do not dispute that "Peters was in charge of Axanar Productions' conduct and was responsible for the infringing conduct of Axanar Productions." UMF 112.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

10

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | Dated: December 5, 2016 | LOEB & LOEB LLP |
| 2 | | |
| 3 | | By: */s/ David Grossman* |
| | | David Grossman |
| 4 | | Attorneys for Plaintiffs |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10969816
202828-10048

11

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT