Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Kelly N. Oki (SBN: 304053)
koki@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
AXANAR PRODUCTIONS, INC.,
and ALEC PETERS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and CBS STUDIOS INC., a Delaware corporation,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>AXANAR PRODUCTIONS, INC., a California corporation; ALEC PETERS, an individual; and DOES 1-20,<br><br>　　　　Defendants. | Case No. 2:15-cv-09938-RGK-E<br><br>*Assigned to:  Hon. R. Gary Klausner*<br><br>**DEFENDANTS AXANAR PRODUCTIONS, INC., AND ALEC PETERS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　12/19/16<br>Time:　　9:00 a.m.<br>Place:　　Courtroom 850, 8th Floor<br>　　　　　255 East Temple Street<br>　　　　　Los Angeles, CA 90012<br>Judge:　　Hon. R. Gary Klausner<br><br>Original Complaint Filed: 12/29/15<br>First Amended Complaint Filed: 3/11/16 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................... 1

II. PLAINTIFFS' CLAIMS ON THE FEATURE FILM ARE PREMATURE ............................................................................................... 1

III. THE UNDISPUTED EVIDENCE SHOWS THAT THE WORKS TAKEN AS A WHOLE ARE NOT SUBSTANTIALLY SIMILAR ................. 3

IV. DEFENDANTS' USE IS FAIR AS A MATTER OF LAW ............................... 6

V. CONCLUSION ....................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Althouse v. Warner Bros. Entm't*,
No. CV 13-00696-RGK SSX, 2014 WL 2986939 (C.D. Cal. Apr. 28, 2014) (Klausner, J.) .................................................................................................. 4

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016) ........................ 10

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006) .................................................................................... 7

*Bleistein v. Donaldson Lithographing Co.*,
188 U.S. 239 (1903) ................................................................................................ 3

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ................................................................................. 6, 7, 9, 10

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013) ................................................................................ 7, 8

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998) .................................................................................. 10

*Castle Rock Entm't v. Carol Publ'g Grp.*,
955 F. Supp. 260 (S.D.N.Y. 1997) ........................................................................ 10

*Cavalier v. Random House, Inc.*,
297 F.3d 815 (9th Cir. 2002) .................................................................................. 3

*Civility Experts Worldwide v. Molly Manners, LLC*,
167 F. Supp. 3d 1179 (D. Colo. 2016) .................................................................... 3

*Danjaq, LLC v. Universal City Studios, LLC*,
Case No. CV 14-02527 SJO EX, 2014 WL 7882071 (C.D. Cal. Oct. 2, 2014) ........................................................................................................................ 2

*Data E. USA, Inc. v. Epyx, Inc.*,
862 F.2d 204 (9th Cir. 1988) ............................................................................. 1, 3

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) ................................................................................................... 2

*Equals Three, LLC v. Jukin Media, Inc.*,
   139 F. Supp. 3d 1094 (C.D. Cal. 2015) ..................................................................... 9

*Fox News Network, LLC v. TVEyes, Inc.*,
   124 F. Supp. 3d 325 (S.D.N.Y. 2015) ....................................................................... 3

*Frybarger v. Int'l Bus. Machines Corp.*,
   812 F.2d 525 (9th Cir. 1987) ..................................................................................... 4

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) ................................................................................... 4

*Gilbert v. New Line Prods., Inc.*,
   No. CV 09-02231 RGK, 2010 WL 5790628 (C.D. Cal. Aug. 13, 2010)
   (Klausner, J.), *aff'd*, 490 F. App'x 34 (9th Cir. 2012) ............................................... 4

*Glass v. Sue*,
   No. CV 09-08570-RGK, 2010 WL 4274581 (C.D. Cal. Oct. 22, 2010)
   (Klausner, J.) ............................................................................................................. 4

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ................................................................................................ 10

*Hogan v. DC Comics*,
   48 F. Supp. 2d 298 (S.D.N.Y. 1999) .................................................................... 4, 5

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .................................................................................................. 1

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) ................................................................................... 9

*Northland Family Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
   868 F. Supp. 2d 962 (C.D. Cal. 2012) ...................................................................... 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ................................................................................... 9

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ................................................................................... 4

*Sheldon Abend Revocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010) ........................................................................... 4

*Shipman v. R.K.O. Radio Pictures*,
  20 F. Supp. 249 (S.D.N.Y. 1937) ................................................................................. 5

*Sofa Entm't, Inc. v. Dodger Prods., Inc.*,
  782 F. Supp. 2d 898 (C.D. Cal. 2010) ......................................................................... 6

*Suntrust Bank v. Houghton Mifflin Co.*,
  268 F.3d 1257 (11th Cir. 2001) ........................................................................... 2, 6, 7

*Team Angry Filmworks, Inc. v. Geer*,
  171 F. Supp. 3d 437 (W.D. Pa. 2016) .......................................................................... 1

*Walt Disney Prods. v. Filmation Assocs.*,
  628 F. Supp. 871 (C.D. Cal. 1986) ............................................................................... 2

**Statutes**

17 U.S.C. § 107 ................................................................................................................... 7

## I. INTRODUCTION

Plaintiffs fail to present any triable issues of fact to defeat Defendants' Motion. First, Plaintiffs cannot use their premature claim against the "full-length *Axanar* Film" to obtain an unnecessary advisory opinion on a now superseded script. Second, Plaintiffs fail to present evidence demonstrating that any of their works, when considered as a whole, are "substantially similar" to any of Defendants' works. Third, Plaintiffs have not presented evidence to overcome Defendants' showing that their works are protected as fair use. The Court should grant Defendants' Motion.

## II. PLAINTIFFS' CLAIMS ON THE FEATURE FILM ARE PREMATURE

Plaintiffs have placed just two of Defendants' works at issue: "*Prelude to Axanar*" and "[t]he *Axanar* Motion Picture." FAC ¶¶ 6, 7 (Dkt. 26). Because the undisputed facts show that the "*Axanar* Motion Picture" does not yet exist, Plaintiffs cannot "demonstrate that *the works* are substantially similar in both *ideas and expression.*" *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207 (9th Cir. 1988) (second emphasis in original). It is simply not possible to determine from a *superseded draft* script, which has already been substantially altered, (Reply to Plaintiffs' Statement of Genuine Issues ("RSGI") 107), whether a *future*, *potential* film will ultimately be found to infringe.[1] Plaintiffs nonetheless ask the Court to find that "any film based on…a script substantially similar to the Axanar Script would infringe." Opp. 9 (Dkt. 88). Any such ruling would amount to a mere advisory opinion about an irrelevant draft script. In a strikingly similar recent case, the court held that no justiciable controversy was presented even though a screenplay adaptation was "currently underway" for a film based on a pre-existing story about the well-known fictional character Buck Rogers. *Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 446 (W.D. Pa. 2016) ("this dispute lacks the requisite 'immediacy' and 'reality' to warrant the issuance of a declaratory judgment") (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

---

[1] Plaintiffs' claim that the Axanar script is "locked" is belied by the undisputed evidence. RSGI 25.

1

The cases Plaintiffs cite in opposition are readily distinguishable. Unlike here, the plaintiffs in both *Filmation* and *Danjaq* alleged that defendants had copied multiple, central, extremely well-defined, copyrighted characters that had appeared in coherent, well-integrated stories—respectively, Walt Disney's Pinocchio and James Bond.[2] In neither case was there evidence that the draft script at issue had been superseded and was no longer relevant, as discovery has shown here. RSGI 26. In *Filmation*, a case about illustrated cartoon characters, the court declined to grant judgment for defendants on this issue since they had "generated a substantial body of work preliminary to a 'finished film,'" including not only a script, but also a detailed story board, story reel, models, a promotional trailer, and designs "said to be tangible and permanent reproductions of characters and scenes." *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875, 878 n.5 (C.D. Cal. 1986).[3]

Critically, neither of Plaintiffs' cases considered fair use, which is front and center here. Defendants' fair use defense militates strongly against consideration of Plaintiffs' premature claim, for any infringement analysis that fails to consider fair use runs a grave risk of impinging upon the First Amendment. It is black letter law that fair use has a substantial role in preserving free speech values in light of copyright law's undeniable restrictions on speech rights. *See, e.g., Eldred v. Ashcroft*, 537 U.S. 186, 190 (2003) (recognizing fair use as a "built-in First Amendment accommodation[]" to copyright law); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1264 (11th Cir. 2001) ("[fair use] exceptions…are at the heart of fair use's protection of the First Amendment, as they allow later authors to use a previous

---

[2] These facts stand in stark contrast to Plaintiffs' scattershot allegations here, which rely on alleged borrowings of names, abstract ideas, and minor (and largely unprotectable) elements that Plaintiffs have plucked from a grab-bag of books, movies, role-playing games, and television shows.

[3] *Danjaq* was decided on a motion to dismiss, where the court was constrained to "accept[] the plaintiff's material allegations in the complaint as true…." *Danjaq, LLC v. Universal City Studios, LLC*, Case No. CV 14-02527 SJO EX, 2014 WL 7882071 at *2 (C.D. Cal. Oct. 2, 2014). While this Court found an allegedly "locked script" sufficient to proceed at the motion to dismiss stage, the undisputed evidence shows that Defendants do not intend to proceed on that script. RSGI 25. There have been several new scripts since then, and other considerations about the style Defendants intend to pursue. RSGI 28.

author's copyright to introduce new ideas or concepts to the public"). Among other things, "[f]air use requires a fact-intensive and context-specific evaluation" of the "purpose and character of the use… [in the] new work." *Fox News Network, LLC v. TVEyes, Inc.*, 124 F. Supp. 3d 325, 330 (S.D.N.Y. 2015). Defendants cannot prove their fair use defense based upon a non-created work. And such an analysis cannot be reasonably based on an intermediate, superseded draft of a script: indeed, as Plaintiffs concede, "courts generally will not consider intermediary works as evidence that <u>a later version</u> of a work is infringing." Opp. 9 (emphasis in original). In the symbol-rich, visual medium of film, it is impossible to judge what the finished work will become from perusing mere words on a page. As courts have long recognized, "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth" of works. *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903). The danger is incalculably greater when the work to be judged does not yet exist. The Court should enter judgment in favor of Defendants on Plaintiffs' claim as to the "full-length *Star Trek: Axanar* film."

## III. THE UNDISPUTED EVIDENCE SHOWS THAT THE WORKS TAKEN AS A WHOLE ARE NOT SUBSTANTIALLY SIMILAR

Only if works are substantially similar when "taken as a whole" can there be infringement. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 824 (9th Cir. 2002). Fragmented similarity is insufficient if it does not rise to the level of substantial similarity of the works taken as a whole: "[i]f no reasonable jury could find substantial similarity out of… fragmented similarity, summary judgment [for defendant] is proper." *Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1215 (D. Colo. 2016). "To show that two works are substantially similar, plaintiff must demonstrate that the works are substantially similar in both *ideas and expression*." *Data E. USA*, 862 F.2d at 207 (emphasis in original). "[S]ummary judgment for defendant is appropriate when plaintiff fails to make a sufficient showing" of substantial similarity "after defendant has properly identified in a motion

for summary judgment that plaintiff has failed to do so." *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 528 (9th Cir. 1987).[4]

Plaintiffs fail to provide sufficient evidence to show that the works at issue "taken as a whole" are substantially similar. Instead, Plaintiffs argue that Defendants copied disparate "elements" of their alleged works. Opp. 10-15. Not only is this insufficient as a matter of law to show infringement, but because the "elements" Plaintiffs point to are largely or entirely unprotectable, the Court must "filter out and disregard" them. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (citation omitted).

Plaintiffs fail to provide sufficient evidence for a reasonable finder of fact to hold that the disparate elements they allege—such as imaginary "species" and stock "characters"—are protectable. "The bar for substantial similarity in a character is set quite high." *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010). Thus, "[only] characters that are 'especially distinctive' or the 'story being told' receive protection apart from the copyrighted work." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003). For example, in *Hogan v. DC Comics*, the court found that two main characters were not substantially similar, even though both were half-human, half-vampires named Nicholas Gaunt; were young white males with pale skin, a medium build, dark, tired eyes, and dark, scraggly hair; sought to learn the truth about their origins, and did so through flashbacks; faced the choice of pursuing good or evil; were indoctrinated into the forces of evil by killing. 48 F. Supp. 2d 298, 310-11 (S.D.N.Y. 1999). These "unprotectible ideas and themes … [did] not represent

---

[4] This Court has repeatedly granted summary judgment in favor of the defendant where the plaintiff has not demonstrated substantial similarity. *Althouse v. Warner Bros. Entm't*, No. CV 13-00696-RGK SSX, 2014 WL 2986939, at *2–3 (C.D. Cal. Apr. 28, 2014) (Klausner, J.) (holding that all 118 examples set forth by the plaintiffs in the complaint were "either too general for copyright protection, are *scenes a faire*, or are commonly used, unoriginal ideas"); *Gilbert v. New Line Prods., Inc.*, No. CV 09-02231 RGK, 2010 WL 5790628, at *4 (C.D. Cal. Aug. 13, 2010) (Klausner, J.), *aff'd*, 490 F. App'x 34 (9th Cir. 2012) ("[a]ny similarities between the works are far outweighed by the significant differences in the plot, sequence of events, characters, mood, theme, settings, and dialogue."); *Glass v. Sue*, No. CV 09-08570-RGK, 2010 WL 4274581, at *4 (C.D. Cal. Oct. 22, 2010) (Klausner, J.) ("no reasonable juror could find substantial similarity between the two works.")

any original elements of plaintiffs' work." *Id.*

Plaintiffs' evidence falls far short of the evidence deemed insufficient in *Hogan*. It is simple common sense that no general group (such as "Vulcans," "Federation officers," or "Klingons") can possibly be a "character" in any meaningful sense of the word—or have the sort of 'especially distinctive' qualities required to be a *protectable* character under copyright law.[5] Plaintiffs' attempt to define the Vulcan "species" as a "character" is telling: "Vulcans are serious and contemplative and Vulcan men are usually depicted with pointy ears, upswept eyebrows, and straight, dark (or gray) hair cut in a 'bowl style.'" Opp. 11. None of these characteristics, either alone or in combination, is sufficiently particular to define a distinctive character.

Still less persuasive is Plaintiffs' argument that Defendants infringe the Vulcan "species" merely because the same actor who appeared in a handful of Plaintiffs' works also appears in Defendants' works. Of course, Plaintiffs have no rights to actor Gary Graham's identity or features. Once that patently unprotectable element is filtered out, all Plaintiffs are left with is an (unprotectable, unoriginal) bowl hairstyle, a pair of (unprotectable, unoriginal) pointed ears, the (ancient Roman) word "Vulcan," and the (Hindi) name "Soval." None of these elements, alone or in combination, make "Vulcans" protectable by copyright law.[6] Similarly, no reasonable finder of fact could find that stock "characters" like the "heroic" Garth of Izar[7] or the "Vulcan Ambassador" Soval[8] are "especially distinctive" or have "consistent, widely identifiable traits" warranting copyright protection. Plaintiffs' evidence shows merely that Garth is the "hero" of "Axanar," a battle that is named but never described. RSGI 9. Moreover, even if there were anything distinctive about this minor character, Plaintiffs have not provided facts to show that Defendants copied anything more

---

[5] Plaintiffs themselves argue that one of *Defendants'* original characters is not original, but "simply a Klingon." Opp. at 11.
[6] "If what the alleged infringer took was not copyrightable, the copyright owner may not complain, although his work may have been what directly inspired the work of the infringer." *Shipman v. R.K.O. Radio Pictures*, 20 F. Supp. 249, 250 (S.D.N.Y. 1937).
[7] *Garth* is a common Welsh name RSGF at 5; *Izar* is the name of a star in the constellation Boötes, the herdsman *Id.*
[8] *Soval* is a Hindi given name. *Id.*

5

"distinctive" about him than his name, home solar system, and captain's rank, none of which is protectable by copyright. Allegations that may be sufficient at the pleading stage, must be supported by evidence at summary judgment. Here, Plaintiffs have failed to provide evidence sufficient to support a finding of substantial similarity.

## IV. DEFENDANTS' USE IS FAIR AS A MATTER OF LAW

By definition, a work is "transformative" if it "alter[s] the first [work] with **new expression, meaning, or message.**" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (emphasis added). There can be no reasonable dispute that Defendants' *Axanar* works provide "new expression, meaning, or message" to the grab-bag of disparate and widely-separated elements that Plaintiffs allege as their "work" in this case. Plaintiffs' argument that there is "nothing transformative" about Defendants' works because they were "created to function as [] Star Trek work[s]" (Opp. 16) is simply wrong. From Virgil's *Aeneid* (based on a minor character from Homer's *Iliad*) to John Gardner's *Grendel* (retelling *Beowulf* from the monster's point of view), and from *Campbell v. Acuff-Rose* to *Suntrust Bank v. Houghton Mifflin Co.*, there is ample precedent for artistic works that "comment" on other artistic works. *See Campbell*, 510 U.S. 569, *passim* (finding fair use of song by a song)*; Suntrust Bank*, 268 F.3d 1257, *passim* (finding fair use of novel by a novel).

Contrary to Plaintiffs' sweeping contention that "not…a single case in the history of copyright jurisprudence…finds this kind of activity 'transformative'" (Opp. 2), numerous cases have found fair use as a matter of law, when the defendants used pre-existing elements to create new works of the same type as the plaintiffs' works.[9] For example, the defendant's novel in *Suntrust Bank* made fair use of plaintiff's well-known novel *Gone with the Wind*, when it allegedly "(1) explicitly refer[red] to

---

[9] Transformativeness has been decided in the defendant's favor on summary judgment even where exact clips of the plaintiffs' works have been used by the defendant (which is not the case here). *Sofa Entm't, Inc. v. Dodger Prods., Inc.*, 782 F. Supp. 2d 898, 905 (C.D. Cal. 2010) ("Defendant's use of the Clip… is transformative."); *Northland Family Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 978 (C.D. Cal. 2012) ("the juxtaposition of the new video clips with the original creates an entirely different impact on the viewer. Thus, the accused Videos are transformative.")

[plaintiff's novel] in its foreword; (2) copie[d] core characters, character traits, and relationships from [plaintiff's novel]; (3) copie[d] and summarize[d] famous scenes and other elements of the plot from [plaintiff's novel]; and (4) copie[d] verbatim dialogues and descriptions from [plaintiff's novel]." 268 F.3d at 1259.

Similarly, the court in *Blanch v. Koons* held that a visual artist made fair use of the plaintiff's photograph when he "culled images from advertisements…scanned them into a computer…digitally superimposed [them] against backgrounds of pastoral landscapes[, and] printed color images… for his assistants to use as templates for applying paint to…canvasses." 467 F.3d 244, 247 (2d Cir. 2006). And in *Campbell*, the Supreme Court held it was fair use when petitioners copied the "heart" of a creative work to create another creative work of the same kind. 510 U.S. at 589. Thus, contrary to Plaintiffs' apparent belief, fair use does not require explicit "social commentary" or "critical commentary." *See* Opp. 16.

Plaintiffs' crabbed interpretation of fair use lacks any basis in the Copyright Act or decisional law. Indeed, § 107 expressly states that copying for purposes of "comment" may be fair use, without any limitation as to the *type* of comment or the *target* of the comment. 17 U.S.C. § 107. "The law imposes no requirement that a work comment on the original or its author in order to be considered transformative, and a secondary work may constitute a fair use even if it serves some purpose other than those… identified in the preamble to the statute." *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013). As the Supreme Court has discussed, parody is but one form of fair use "comment or criticism." *Campbell*, 510 U.S. at 579 ("less ostensibly humorous forms of criticism [than parody] can provide social benefit, by shedding light on an earlier work, and, in the process, creating a new one.").

And in any event, *Prelude*'s transformativeness is readily apparent from the fact that it is a mockumentary, which is a form of parody that presents characters in a "fake" documentary, a way that Star Trek had never been portrayed in all its 50 years. RSGI 13. In *Prelude,* it is the characters themselves that provide commentary about

7

1  the battle of *Axanar,* a battle that has not been featured in any of the allegedly
2  infringing works in this action. RSGI 13. For example, in *Prelude to Axanar,* Captain
3  Sonya Alexander (an original character) serves as the comedic relief, presenting a
4  powerful character who provides her commentary about the battle, infused with salty
5  language rarely used by female characters. RSGI 18.  It is irrelevant that Defendants
6  may not have explicitly claimed fair use as "parody" or "satire" before Plaintiffs
7  brought suit. "What is critical [in assessing transformativeness] is how the work in
8  question appears to the reasonable observer, not simply what an artist might say about
9  a particular piece." *Cariou*, 714 F.3d at 707 ("[defendant's] testimony that he
10 '[doesn't] really have a message'" did not preclude a finding of fair use). And in any
11 event, here Defendants made clear in their promotional materials, crowdfunding
12 campaigns, and through the works themselves, that they were presenting Star Trek in
13 a manner that had never been seen before.  Dkt. 87-1 at 81, 152 (Defendants'
14 Response to Plaintiffs' Statements of Fact in Opposition to Plaintiffs').

15       For purposes of analyzing transformativeness, the relevant question is simply
16 this: did Defendants take the material allegedly copied—names Plaintiffs borrowed
17 from astronomy (*Izar*), Roman mythology (*Vulcan*), and Hindu culture (*Soval*); the
18 idea of a "contemplative" alien species whose males are "usually" depicted with
19 "pointed ears"; the merest sketch of a "hero" named Garth of Izar—and "transform" it
20 into something that was not inherent in that source material? And does the new work,
21 "at least in part, comment[] on [the prior] work[]?" Here, the answer to both questions
22 is clearly: Yes. Because Plaintiffs provide no evidence to the contrary,[10] the
23 transformativeness of Defendants' fair use should be deemed established.

24       Plaintiffs also ask the Court to hold that, as a matter of law, a transformative,
25 non-commercial fan work that adds richness and depth to Plaintiffs' fictional
26 "universe" will "inevitably" "effect" the market for their alleged works.[11]  This is pure

---

[10] Plaintiffs argue that Defendants "expanded upon" a Star Trek "story," but Plaintiffs have presented *no* facts to support the existence of this "story." RSGI 5.
[11] Plaintiffs have presented no evidence whatsoever beyond pure speculation that their market has been impacted.  RSGI 34.

8

speculation.[12] The Ninth Circuit requires far more to show market harm. For example, in *Perfect 10, Inc. v. Amazon.com, Inc.*, the Ninth Circuit disapproved the district court's "reason[ing]" that users who could download images "free of charge…are less likely to pay for a download, and [that] the availability of [such]… images would harm [plaintiff's] market" for licensing. 508 F.3d 1146, 1168 (9th Cir. 2007). This was insufficient: in the absence of a finding that users had actually downloaded such images for competing uses, "[t]his potential harm to [plaintiff's] market remain[ed] hypothetical." *Id.* Similarly here, "there is no actual evidence of any [cognizable market] harm," and "[t]hus, on this record…any market harm remains hypothetical." *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1108 (C.D. Cal. 2015). Nor do Plaintiffs provide any evidence that Defendants' non-commercial use "is competing in [an] actual market that Plaintiffs have already exploited." Opp. 19. Plaintiffs fail to show that there exists *any* "market" for non-commercial fan works like Defendants'; provide no evidence that such works have *ever* been a source of licensing revenue for Plaintiffs; and provide no evidence that such works have *ever* interfered with or negatively impacted their ability to license *commercial* derivative works. To the contrary, the undisputed evidence shows that Plaintiffs have reaped substantial benefits from precisely the type of fan-created non-commercial work that *Axanar* exemplifies. RSGI 36.[13]

Plaintiffs' conclusory statement that the second fair use factor—the "nature of the copyrighted work"—weighs "heavily" in favor of "fictional…creative works," is unsupported by authority and indeed nonsensical, as it would mean that this factor must also weigh "heavily" in favor of *Defendants'* fictional, creative works.[14]

---

[12] It is particularly unpersuasive in the context of a science fiction franchise with a long history of permitting and benefitting from such works—a franchise that, indeed, owes its 50-year existence to a deep, continuous engagement of its fans that is to a great extent enabled and maintained by fan works like those of Defendants. RSGI 36.
[13] Because "the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works… the more transformative the new work, the less will be the significance of other factors." *Campbell*, 510 U.S. at 579.
[14] And Plaintiffs do not dispute that their works were published long ago, and are thus not "unpublished," which presents another reason why this factor weighs in favor of Defendants. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012);

9

1  The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," favors Defendants, who have taken no more from the original than is required to create their own, highly transformative work. Plaintiffs' reliance on *Castle Rock Entm't v. Carol Publ'g Grp.*, 955 F. Supp. 260 (S.D.N.Y. 1997) is misplaced. In that case, the defendant publisher had created a for-profit trivia book by "draw[ing] upon little else" other than "essential' elements" of the plaintiff's original works to create a work that was only "minimally transformative." *Id.* at 272; *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 144 (2d Cir. 1998).[15] Here, by contrast, the *non*-essential elements of Plaintiffs' Works are used merely to provide a common frame of reference within which to tell an original, highly creative, *non-commercial* story that comments on Plaintiffs' works. Plaintiffs attempt to portray Defendants' concern for *accuracy*—a necessity where one work comments on another—as somehow implying Defendants' *culpability* and that Defendants' copying is *extensive*. This is cannot be the law: under Plaintiffs' reasoning, only a slipshod work, or one *lacking* any relationship to the original, could possibly be a fair use—but in such a case, fair use would not even be at issue. Plaintiffs' proposed test would preclude not only fan fiction, but parody and countless other protected forms of comment and criticism that "[further] the goal of copyright, to promote science and the arts." *Campbell*, 510 U.S. at 579.

## V. CONCLUSION

For any or all of these reasons, the Court should grant Defendants' Motion.

Dated: December 5, 2016          **WINSTON & STRAWN LLP**

By: */s/ Erin R. Ranahan*
Erin R. Ranahan
Attorneys for Defendants,
AXANAR PRODUCTIONS, INC.
and ALEC PETERS

---

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564 (1985). In any event, courts recognize that "[t]he second factor has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016).
[15] *See also,* Defendants' Opp. to Plaintiffs' Motion (Dkt. 87 at 16-17).