UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Charles A. Rojas | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiffs' Motion for Partial Summary Judgment (DE 72) and Defendants' Motion for Summary Judgment (DE 75)

## I. INTRODUCTION

On March 11, 2016, Paramount Pictures Corporation ("Paramount") and CBS Studios Inc. ("CBS," and, together with Paramount, "Plaintiffs") filed a First Amended Complaint ("FAC") against Axanar Productions, Inc. and Alec Peters ("Peters," and, together with Axanar Productions, "Defendants"). The FAC alleges copyright infringement, contributory copyright infringement, and vicarious copyright infringement.

Presently before the Court are Plaintiffs' Motion for Partial Summary Judgment as to liability and injunctive relief, and Defendants' Motion for Summary Judgment (collectively "Motions"). For the reasons stated below, the Court **DENIES** both Motions.

## II. FACTUAL BACKGROUND

The undisputed facts are as follows:

Plaintiffs Paramount and CBS own the copyrights to Star Trek motion pictures and television series, respectively. Star Trek is a popular science fiction franchise. Since debuting it on television in 1966, CBS has produced six Star Trek television series totaling more than 700 episodes. A seventh series is scheduled to premiere in 2017. Paramount has produced thirteen full-length Star Trek motion pictures since 1979; the most recent was released in 2016. In addition, Plaintiffs have licensed numerous Star Trek derivative works (together with the Star Trek television series and the Star Trek motion pictures, the "Star Trek Copyrighted Works"), including books, games, merchandise, and audio-visual works such as documentaries. These Star Trek Copyrighted Works have transported the hearts of a legion of fans to the Star Trek universe.

The original Star Trek television series ("*The Original Series*") chronicle the adventures of the spaceship U.S.S. Enterprise and its crew as they explore space, the final frontier in the twenty-third century. U.S.S. Enterprise is one spaceship in the Starfleet of United Federation of Planets (the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

"Federation"). *The Original Series* feature humans and fictitious species such as Vulcans and Klingons. A human character known as Garth of Izar ("Garth") appear in one episode. As depicted in *The Original Series*, Garth is a former starship captain and famous among Starfleet officers for his exploits in the Battle of Axanar. Planet Axanar seems to be the namesake of Defendant Axanar Productions.

Axanar Productions' president is Peters, a long-time Star Trek fan. Like many other Star Trek fans, Peters wants to make his own Star Trek production. However, going where no man has gone before in producing Star Trek fan films, Defendants sought to make "a professional production" "with a fully professional crew, many of whom have worked on Star Trek itself" and raised over a million dollars on crowdsourcing websites Kickstarter and Indiegogo to fund their projects. (Pls.' Statement Uncontroverted Facts "Pls.' SUF" ¶¶ 100, 102, ECF No. 72-1; Defs.' Resp. Pls.' SUF "Defs.' Resp." ¶ 83, ECF No. 87-1; Grossman Decl. Exs. CC, DD, ECF No. 72-32, 72-33.) Defendants first raised money and produced a twenty-one minute film *Star Trek: Prelude to Axanar* ("*Prelude*"). Defendants released *Prelude* on YouTube to promote and to raise funds for a full-length feature film (the "*Axanar* Motion Picture," and, collectively with *Prelude*, the "*Axanar* Works"). In addition to releasing *Prelude*, Defendants have completed a script of the *Axanar* Motion Picture and have filmed and released a scene (the "*Vulcan Scene*") therefrom. The *Axanar* Works are set in the Star Trek universe twenty-one years before *The Original Series* and depict the Battle of Axanar and the exploits of Garth.

### III. JUDICIAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such a showing, the court may grant summary judgment on all or part of the claim. *See id.* Facts are "material" only if dispute about them may affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact as to matters upon which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such showing "must establish beyond controversy every essential element of" the movant's claim or affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation and quotation marks omitted). On issues where the movant does not have the burden of proof at trial, the movant needs to show only that there is an absence of evidence to support the nonmovant's case. *See Celotex*, 477 U.S. at 325.

To defeat a summary judgment motion, the nonmovant may not merely rely on its pleadings or on conclusory statements. *Id.* at 324. Nor may the nonmovant merely attack or discredit the movant's evidence. *See Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The nonmovant must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

"[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson*, 477 U.S. at 255). The court may not determine credibility of witnesses or weigh the evidence. *Anderson*, 477 U.S. at 255. Nonmovant's "version of any disputed issue of fact . . . is presumed correct." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). To grant summary judgment, the court should find that evidence is "so one-sided that [the movant] must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

### IV. DISCUSSION

Both Motions raise two core issues – whether the *Axanar* Works are substantially similar to the Star Trek Copyrighted Works, and whether Defendants have a valid fair use defense under the Copyright Act. The Court will discuss the two core issues after first addressing the jurisdictional issue of ripeness, and will afterward discuss Plaintiffs' claims of Defendants' willful, contributory, and vicarious infringement, and Plaintiffs' request for declaratory and injunctive relief.

### A. The Action with Respect to the *Axanar* Motion Picture Is Not Premature

Defendants assert that Plaintiffs' claims with respect to the *Axanar* Motion Picture are premature because the motion picture is not completed. The Court disagrees.

Defendants' assertion invokes the judicial doctrine of ripeness. The doctrine is derived from constitutional limitations on judicial power. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). "The ripeness doctrine is . . . designed to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action. Through avoidance of premature adjudication, the ripeness doctrine prevents courts from becoming entangled in abstract disagreements." *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015).

Repeating the argument from their Motion to Dismiss, Defendants assert that without the completed *Axanar* Motion Picture, the Court cannot make the necessary comparisons to determine copyright infringement. The Court explained its rejection of this argument in the order denying Defendants' Motion to Dismiss. (Order Re: Defs.' Mot. Dismiss 6-7, ECF No. 43.) The Court will not repeat its rationale here, except to note that evidence of a final shooting script satisfies the judicial standard for summary judgment. (*See* Pls.' Reply Defs.' Resp. "Pls.' Reply" ¶ 57, ECF No. 102-1.) The final shooting script is factually distinguishable from the "screenplay adaptation . . . currently underway" in *Team Angry Filmworks, Inc. v. Geer* that Defendants cite to support their argument. 171 F. Supp. 3d 437, 446 (W.D. Pa. 2016) (internal quotation marks omitted). The claim against the *Axanar* Motion Picture is not based on "abstract disagreements" and is ripe for adjudication. *Ray Charles Found.*, 795 F.3d at 1117.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

### B.  The Determination of Subjective Substantial Similarity Should Be Left to the Jury

With respect to the first core issue, the Court finds that the *Axanar* Works have objective substantial similarity to the Star Trek Copyrighted Works. The Court leaves the question of subjective substantial similarity to the jury.

The goal of the Copyright Act is "[t]o promote the Progress of Science and useful Arts . . . ." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8). Under the Act, "the owner of copyright . . . has the exclusive rights . . . to prepare [and to authorize] derivative works based upon the copyrighted work." 17 U.S.C. § 106. To establish a copyright infringement claim, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). Where direct copying is not at issue, "proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." *Id.* (internal quotation marks omitted). "'Substantial similarity' is not an element of a [copyright infringement claim]. Rather, it is a doctrine that helps courts adjudicate whether 'copying of the constituent elements of the work that are original' actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto.*" *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012).

Here, there is no dispute that Plaintiffs have ownership of copyrights to the Star Trek Copyrighted Works, and that Defendants have access to these Works. Thus, the copyright infringement claim can live long and prosper if the *Axanar* Works are substantially similar to the Star Trek Copyrighted Works.

In the Ninth Circuit, the substantial similarity analysis involves an objective extrinsic test and a subjective intrinsic test. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997). The intrinsic test determines whether the "ordinary, reasonable person would find the total concept and feel of the [two works] to be substantially similar." *Swirsky v. Carey*, 376 F.3d 841, 847 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004). Sometimes a feeling is all we humans have to go on. But for substantial similarity, the law demands more. "The extrinsic test considers whether two works share a [substantial] similarity of ideas and expression as measured by external, objective criteria" – in a Vulcan-like manner. *Id.* at 845. For summary judgment, if the court concludes that the two works are substantially similar under the extrinsic test, the intrinsic test "must be left to the jury." *Id.* at 845; *accord Funky Films*, 462 F.3d at 1077. If the court does not find substantial similarity under the extrinsic test, summary judgment for the defendant is appropriate. *Swirsky*, 376 F.3d at 845. Thus, the Court will perform the extrinsic test, starting with an analysis of whether Defendants used copyright protected elements from the Star Trek Copyrighted Works.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

### 1. The *Axanar* Works Use Copyright-Protected Elements

To perform the extrinsic test, the court dissects the works down to their constituent elements, filters out and disregards unprotectable elements in the copyrighted work, and compares the protectable elements with their counterparts in the allegedly infringing work "for proof of copying as measured by substantial similarity." *Id.* (internal quotation marks omitted); *accord Funky Films*, 462 F.3d at 1077. The dissecting and filtering steps are necessary because not all expressions in a copyrighted work are protectable since copyright only protects "original works of authorship." 17 U.S.C. § 102. The two steps are used "to determine the scope of copyright protection before [the] works are considered as a whole" in the comparison step. *Dr. Seuss Enterprises*, 109 F.3d at 1398. Thus, the court should not overzealously disregard unprotectable elements and "blind [itself] to the expressiveness of their ensemble." *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 180 (1st Cir. 2013). Indeed, "a combination of unprotectable elements is eligible for copyright protection . . . if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). The extrinsic test examines "specific expressive elements[:]the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in [the] two works" to determine if "articulable similarities" exist. *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010).

Here, Defendants argue that characters and species used in the *Axanar* Works are not subject to copyright protection under Plaintiffs' copyrights. The Court concludes otherwise at least with respect to Garth of Izar.

The Ninth Circuit applies "a three-part test for determining whether a character in a . . . television program . . . is entitled to copyright protection." *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1390 (2016). "First, the character must generally have physical as well as conceptual qualities. Second, the character must be sufficiently delineated to be recognizable as the same character whenever it appears . . . Third, the character must be especially distinctive and contain some unique elements of expression." *Id.* (citation and internal quotation marks omitted). "[A] stock character such as a magician in standard magician garb" is not distinctive. *Id.*

Applying the three-part test to Garth of Izar leads to the conclusion that he is entitled to copyright protection. Garth first appeared in an episode in *The Original Series*. (Pls.' SUF ¶ 10.) Since Garth has appeared as a live character, he has physical as well as conceptual qualities. *See Towle*, 802 F.3d at 1021. As stated above, Garth was a former starship captain and was famous among Starfleet officers for his exploits in the Battle of Axanar. (Pls.' SUF ¶¶ 25-26.) In fact, his exploits were required reading at the Starfleet Academy. (*Id.* ¶ 26.) He charted more planets than any other Starfleet captain. (Pls.' Reply ¶ 25.) In the episode, Garth discussed his victory in the Battle of Axanar with Captain Kirk, the Captain of U.S.S. Enterprise. (Pls.' SUF ¶ 11.) In addition, a 2003 novel, titled *Garth of Izar* and copyrighted by Paramount, further developed the character. (*Id.* ¶¶ 4, 28.) Garth's identity as a Federation hero sufficiently delineates him and sets him apart from a stock spaceship officer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

    Also prominent in the *Axanar* Works are two fictional species from the Star Trek Copyrighted Works: Klingons and Vulcans. Klingons are a militaristic, alien species from the planet Qo'noS. (*Id.* ¶ 15.) They are long-time enemies of the Federation. (*Id.* ¶ 17.) Klingons have distinctive physical features including ridged foreheads, dark hair and skin, and upward sloping eyebrows. (*Id.* ¶ 16.) Klingon men have facial hair. (*Id.*) Vulcans are a part of the Federation, a species that suppresses emotions in favor of logic and reason. (*Id.* ¶¶ 19-21.) They are advanced technologically. (*Id.* ¶ 21.) Vulcans have pointed ears and upswept eyebrows. (*Id.* ¶ 19.) Vulcan men usually have a bowl-shaped haircut. (*Id.* ¶ 20.) Taken together, these characteristics of Klingons and Vulcans are not "elements of expression[s] that necessarily follow from the idea" behind the expressions (visual expressions, for example) and may be entitled to copyright protection. *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991).

    Additionally, Plaintiffs submit evidence showing several costumes from the Star Trek Copyrighted Works similar to those Defendants use in the *Axanar* Works, including a Klingon officer's uniform from the motion picture *Star Trek VI – The Undiscovered Country*. (Van Citters Decl. ¶ 26, ECF No. 88-70.) This uniform has a gray tunic with shoulder covers and a red neckpiece. Evidence also shows Vulcan Ambassador Soval's Asian-style long robe and a drape decorated with Vulcan writing. (*Id.* ¶¶ 23, 46.) The artistic aspects of these costumes that "can be identified separately from, and are capable of existing independently of, the utilitarian purpose of the costumes" may be copyright protectable. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1221 (9th Cir. 1997). "[A]rtistic work . . . receives broader protection because of endless variations of expression available to artist." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447 (9th Cir. 1994). The combination of artistic visual elements of these uniforms likely contains original expressions protectable under the Copyright Act.

    The evidence also includes settings from the Star Trek Copyrighted Works such as planets Axanar, Qo'noS, and Vulcan (including a shot of Vulcan from *Star Trek III: The Search for Spock*); military spaceships including Klingon battlecruisers, Vulcan ships with an engine ring, and Federation spaceships with their iconic saucer-shaped hull (e.g., the U.S.S. Enterprise), space travel elements such as spacedocks, and Vulcan buildings – cathedrals with sword-blade-shaped domes. (Van Citters Decl. ¶¶ 34, 36, 48-50, 62; Pls.' Statement Genuine Issues Opp'n Mot. Summ. J. "Pls.' SGI" ¶ 112, 129-30, ECF No. 88-69.) The evidence further describes plot points, sequence of events, and dialogs from the Star Trek Copyrighted Works such as the Federation, the Klingon Empire, and conflicts between the two in the Four Years War at the Battle of Axanar (which is also described in a Paramount-licensed game including a supplement titled *Four Years War*, (Pls.' SUF ¶¶ 30, 32)), the Vulcan council, the teachings of Vulcan philosopher Surak, the use of the Federation logo, stardate, transporters and warp drive, weapons such as phasers and photon torpedoes, and the Klingon language. (Van Citters Decl. ¶¶ 37-41, 52, 55, 58; Pls.' Reply ¶¶ 58-60, 126.) Finally, the evidence describes mood and theme of the Star Trek Copyrighted Works as science fiction action adventure, specifically a military space drama. (Van Citters Decl. ¶ 53; Pls.' Reply ¶ 81.) All these elements appear in the *Axanar* Works. Although each of these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

elements may not be individually original and copyright protectable,[1] they are "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship," especially when combined with the costumes and fictional characters and species, examples of which are described above. *Satava*, 323 F.3d at 811; *see Swirsky*, 376 F.3d at 849 (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir.2000)) (citing with approval a finding of substantial similarity based on the combination of five unprotectable elements).

Accordingly, the Court finds that Defendants use copyright-protected elements in the *Axanar* Works.

### 2. The Works Share Objective Substantial Similarity

Under the extrinsic test, the *Axanar* Works are substantially similar to the Star Trek Copyrighted Works. This conclusion finds strong support in Defendants' intent for the *Axanar* Works. "Defendants expressly set out to create an authentic and independent Star Trek film that [stayed] true to Star Trek canon down to excruciating details." (Pls.' Reply ¶ 152 (internal quotation marks omitted).) Indeed, Defendants set out to create a motion picture "prequel" to *The Original Series*. (Pls.' SUF ¶ 75.) To achieve this goal, Defendants set the *Axanar* story in the Star Trek universe. Defendants used the *Four Years War* supplement "as a bible" in developing the script of *Prelude*. (Grossman Decl. Ex. I, ECF No. 72-11.) Defendants intentionally use or reference many elements similar to those appeared in the Star Trek Copyrighted Works, some of which are discussed above in Part IV.B.1. (Pls.' Reply ¶ 51; Peters Dep. 46:19-55:6, 82:6-85:12, ECF No. 74-1.) Klingons in the *Axanar* Works use some of the same weapons as those in Plaintiffs' works. (Pls.' SUF ¶¶ 23, 50.) The physical appearances of Klingons and of Vulcans (including Ambassador Soval) resemble those in Plaintiffs' works. *Id.* In fact, the same actor who played Soval in the *Star Trek: Enterprise* series reprised his role in *Prelude*, a fact Defendants noted in its Kickstarter promotion.[2] (Pls.' SUF ¶ 23; Grossman Decl. Ex. HHH 4, ECF No. 88-63.) The U.S.S. Enterprise and Klingon D-7 Battlecruiser from *The Original Series* each make a short appearance in *Prelude*. (Peters Decl. ¶ 10, ECF No. 90-10.) Star Trek fans love Defendants' faithfulness to the Star Trek canon; Peters considers himself "the keeper of faith with fans." (Pls.' SUF ¶ 54.) The many excruciating details Defendants intentionally duplicate from the Star Trek Copyrighted Works surely contain some "specific details of [prior creators'] rendering of ideas" that are "protectable." *Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir.2002).

---

[1] Some elements such as U.S.S. Enterprise may be individually copyright protectable under the DC Comics three-part test. *See DC Comics*, 802 F.3d at 1024 (holding that the Batmobile is a copyright-protected character). However, because Plaintiffs' allegation is that Defendants infringe the Star Trek Copyrighted Works as a whole, the Court does not undertake an analysis beyond Garth for which evidence in unredacted records is relatively abundant.

[2] The Court notes this fact simply to emphasize the great length to which Defendants went to stay true to the Star Trek canon. The appearance of the actor is not original to Plaintiffs and is thus not copyright protectable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

Defendants argue that the works are not substantially similar because Defendants "create[d] their own story about the obscure character Garth of Izar and the general events surrounding him." (Defs.' Opp'n Pls.' Mot. Partial Summ. J. "Defs.' Opp'n" 9, ECF No. 87.) Defendants' argument fails for two reasons. First, the Court does not agree that Garth, being a featured character in one television episode, the title character of one novel, and having appeared in *Four Years War*, is obscure or lightly sketched. *Cf. Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452–53 (9th Cir. 1988) (calling characters lightly sketched who are "depicted only by three- or four-line summaries in [a] screenplay, plus whatever insight into their characters may be derived from their dialogue and action"). Second, Defendants use many elements from the Star Trek universe in their works, not just Garth of Izar and the general events surrounding him. *See id.* (even lightly sketched characters together with other extrinsic test elements may be enough for a finding of infringement). Indeed, Defendants use and reference so many distinctive and widely recognized elements from the Star Trek universe that the *Axanar* Works invoke Star Trek in the minds of viewers. Together these elements are "qualitatively important" enough for a finding of substantial similarity, even if they are "relatively small in proportion to the entire work" (which they arguably are not). *Swirsky*, 376 F.3d at 852. Defendants' extensive use of elements from the Star Trek Copyrighted Works to create a Star Trek prequel can constitute infringement in spite of Defendants' new story. *See TMTV, Corp. v. Mass Prods., Inc.*, 645 F.3d 464, 470–71 (1st Cir. 2011).

Defendants further argue that the *Axanar* Works are inspired by many sources. (Defs.' Opp'n 9.) Assuming that to be true as the Court must on a summary judgment against Defendants, the argument still fails. Defendants must obtain permission to use protectable expression from any and all preexisting sources to which their work bears substantial similarity. *Greene v. Ablon*, 794 F.3d 133, 158 (1st Cir. 2015).

Finally, Defendants cites *Hogan v. DC Comics* where the court found no substantial similarity even though the main character of the two works share many attributes:

> both were half-human, half-vampires named Nicholas Gaunt; were young white males with pale skin, a medium build, dark, tired eyes, and dark, scraggly hair; sought to learn the truth about their origins, and did so through flashbacks; faced the choice of pursuing good or evil; were indoctrinated into the forces of evil by killing.

(Defs.' Reply Supp. Mot. Summ. J. 4 (paraphrasing *Hogan*, 48 F. Supp. 2d 298, 310-11 (S.D.N.Y. 1999).) *Hogan* is factually distinguishable from this case, however. The *Hogan* court found pronounced differences in the "total look and feel [of the two works], the interactions of the characters and the plot." *Hogan*, 48 F. Supp. 2d at 311. The two main characters are drawn quite differently. *Id.* at 312. The defendant author independently created the idea of her work, before the plaintiff sent his work to defendant DC Comics. *Id.* at 314. For example, the defendant author offered detailed evidence explaining how and why she chose the name Nicholas Gaunt, supporting her assertion that the shared name was not a result of copying. *Id.* at 306-07. Here, Defendants intentionally use elements from the Star Trek Copyrighted Works to create works that stay true to Star Trek canon down to excruciating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

details. Defendants even touted that "*Axanar feels* like Star Trek." (Grossman Decl. Ex. CC, ECF No. 72-32 (emphasis original).) The *Hogan* finding is inappropriate here.

After reviewing evidence before the Court, including the *Axanar* Works, the Court is satisfied that Defendants have achieved their goal of creating authentic Star Trek films and script. The *Axanar* Works are substantially similar to the Star Trek Copyrighted Works, at least under the extrinsic test.[3]

### 3. The Jury Will Decide Subjective Substantial Similarity

"The intrinsic test is subjective and asks whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Three Boys Music Corp.*, 212 F.3d at 485. The jury, not the court, is ordinarily the reasonable person. There is, however, some uncertainty for cases involving nonliterary works whether intrinsic test must be left to the jury when the court finds substantial similarity under the extrinsic test. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002). But Plaintiffs do not cite to, and the Court cannot find, any case law in the Ninth Circuit where the court finds summary judgment for the plaintiff after applying the intrinsic test.[4] Thus, the intrinsic test appears to be "exclusively the province of the jury" in the Ninth Circuit. *Funky Films, Inc.*, 462 F.3d at 1077. The Court will leave this test to the jury.

### C. Defendants Are Not Entitled to a Fair Use Defense

In the event that the jury finds substantial similarity under the intrinsic test and hence copyright infringement, Defendants nonetheless may be free from liability if they can establish that their copying falls within fair use. "[F]air use of copyrighted materials [is] necessary to fulfill copyright's very purpose, '[t]o promote the Progress of Science and useful Arts . . . .'" *Campbell*, 510 U.S. at 575 (quoting U.S. Const., Art. I, § 8, cl. 8). The Copyright Act provides four factors for the determination of fair use. 17 U.S.C. § 107. "All [four factors must] be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. The Court analyzes each factor in turn.

### 1. Purpose and Character of the Infringing Use

The first factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). This factor asks "whether and to what extent the new work is transformative," in other words, whether the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message," or merely "supplant[s] the original." *Campbell*, 510 U.S. at 579 (internal quotation marks omitted).

---

[3] The Court reaches this conclusion without resorting to "a lower standard of proof" permissible "[w]here a high degree of access is shown." *Swirsky*, 376 F.3d at 844.

[4] The only such case the Court found is from the First Circuit. *See TMTV, Corp. v. Mass Prods., Inc.*, 345 F. Supp. 2d 196, 213 (D.P.R. 2004), *aff'd*, 645 F.3d 464 (1st Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | ***Paramount Pictures Corp. v. Axanar Productions, Inc.*** | | |

Here, Defendants set out to create a motion picture "prequel" to *The Original Series*. (Pls.' SUF ¶ 75.) Although Defendants wrote their own scripts for the *Axanar* Works, they used the *Four Years War* supplement "as a bible" in developing the script of *Prelude*. (Grossman Decl. Ex. I.) The final shooting script of the *Axanar* Motion Picture fleshes out the narrative in *Prelude* and has the same purpose and character. (*See* Defs.' Mot. 4, ECF No. 77-1 ("the *Vulcan Scene* and the Potential Fan Film are both intended to build off of the *Prelude* storyline.").) Defendants intentionally use or reference many elements similar to those in the Star Trek Copyrighted Works to stay true to Star Trek canon down to excruciating details. (Pls.' Reply ¶¶ 51, 152; Peters Dep. 46:19-55:6, 82:6-85:12.) Viewed as a whole, the *Axanar* Works do not have "a further purpose or different character, altering the [Star Trek Copyrighted Works] with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. On the other hand, Defendants want the *Axanar* Works to supplant the Star Trek Copyrighted Works. Peters "was interested in creating alternative ways for fans to view Star Trek." (Pls.' Reply ¶ 108.) He wanted to create "a whole new way that fans can get the content they want, by funding it themselves." (Pls.' SUF ¶ 110.) He used "a fully-professional crew – many of whom have worked on Star Trek itself – [to] ensure *Axanar* will be the quality of Star Trek that all fans want to see." (*Id.* ¶ 100.) The *Axanar* Works are not transformative.

But the inquiry does not end here. An integral part of the first factor is determining "whether [the infringing] use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1)." "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). The customary price can include licensing fees; *id.* at 542, *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 627 F. Supp. 2d 123, 130 (S.D.N.Y. 2008); and "non-monetary calculable benefits or advantages." *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 61 (1st Cir. 2012).

Here, it is undisputed that the Defendants did not pay Plaintiffs for a license. (Pls.' SUF ¶ 100.) It is undisputed that Peters hoped to derive non-monetary benefits, for example, other job opportunities, from the *Axanar* Works. (Pls.' SUF ¶¶ 105-06, ECF No. 103-8; Defs.' Resp. ¶ 106.) Defendants "profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562. The *Axanar* Works are commercial.

Defendants argue that the *Axanar* Works are not commercial because they are, and will be, distributed for free. (Defs.' Add'l Material Facts ("Defs.' AMF") ¶¶ 75-76, 107, ECF No. 87-1.) This argument is unpersuasive because, even though Defendants do not profit directly from distributing the works, "common experience suggests that [Defendants] stood to gain at least indirect commercial benefit from the [viewership] boost which [they] had reason to hope would (and in fact did) result from the" *Axanar* Works. *Roy Exp. Co. Establishment of Vaduz, Liechtenstein, Black Inc., A. G. v. Columbia Broad. Sys., Inc.*, 503 F. Supp. 1137, 1144 (S.D.N.Y. 1980), aff'd sub nom. *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095 (2d Cir. 1982) (cited approvingly by *Harper & Row*, 471 U.S. at 562). The successful fundraising campaign leveraging the popularity of *Prelude* is an example of such indirect benefit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

Defendants also argue that the *Axanar* Works are transformative because they are mockumentaries[5] – fictions presented in a documentary form – a form of parody according to Wikipedia. (Defs.' AMF ¶ 74.) For the purposes of copyright law, however, parody must use some elements of a prior work to create a new work that criticizes the substance or style of the prior work. *Campbell*, 510 U.S. at 580. "The parody must target the original, and not just its general style, the genre of art to which it belongs, or society as a whole." *Id.* at 597 (Kennedy, J., concurring). "The threshold question when fair use is raised in defense of parody is whether a parodic character may reasonably be perceived." *Id.* at 582.

Here, the Court has difficulty discerning from the *Axanar* Works any criticism of the Star Trek Copyrighted Works. This is not surprising since Defendants set out to create films that stay faithful to the Star Trek canon and appeal to Star Trek fans. (Pls.' SUF ¶¶ 54, 100.)

Thus, the Court finds that the first factor weighs in favor of Plaintiffs.

### 2. Nature of Copyrighted Work

The second factor, "the nature of the copyrighted work," also weighs in favor of Plaintiffs. 17 U.S.C. § 107(2). This factor includes two aspects: "the extent to which [the copyrighted work] is creative and whether it is unpublished." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) (citing *Harper & Row*, 471 U.S. at 563-64). Fictional stories and motion pictures tend to be creative works with original elements. *See Campbell*, 510 U.S. at 586.

Here, the Star Trek Copyrighted Works include thirteen motion pictures and six television series set in a fictional universe. These works have transported the hearts of a legion of fans to the Star Trek universe. The creativity in these Works and their status as published works are not disputed. They are the type of works that are given broad copyright protections.

### 3. Amount and Substantiality of the Portion Used

The third factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor considers the quantity, quality, and importance of the materials used. *Campbell*, 510 U.S. at 587. "As the statutory language indicates, [copying is not] excused merely because it is insubstantial with respect to the *infringing* work. As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" *Harper & Row*, 471 U.S. at 565 (emphasis original).

Here, Defendants intentionally use elements from the Star Trek Copyrighted Works to create works that stay true to Star Trek canon down to excruciating details. These elements in Star Trek canon are important to Star Trek fans and hence to the success of any Star Trek work. (Pls.' SUF ¶ 54.) They

---

[5] The *Axanar* script is not in a mockumentary form. (*See* Grossman Decl. Ex. AA, ECF No. 74-9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

are an indispensable part of what makes Star Trek "Star Trek." While it is difficult to quantify the amount of the portion used in relation to the Star Trek Copyrighted Works as a whole since "the portion" involves many recurring elements in the Star Trek universe and the Star Trek Copyrighted Works are numerous, it is fair to say that elements of the Star Trek Copyrighted Works pervade the *Axanar* Works. For example, every scene involving a Klingon or a Vulcan can conjure up Star Trek in the minds of fans. The same is true of Federation spaceships, Klingon battlecruisers, transporters, phasers, and so on. The elements from the Star Trek Copyrighted Works that Defendants use are qualitatively important because they give the *Axanar* Works the Star Trek feel and enable Defendants to stay true to the Star Trek canon. Thus, the third factor weighs in favor of Plaintiffs as well.

### 4. Effect of the Use upon the Potential Market

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact [of market substitution] for the original" and for derivative works. *Campbell*, 510 U.S. at 587, 590 (internal quotation marks and alteration omitted). "The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop." *Id.* at 592.

Here, the prequel depicted in the *Axanar* Works is the kind of potential derivatives Plaintiffs "would in general develop or license others to develop." *Id.* Plaintiffs have already developed a 2003 novel and licensed a role-playing game based at least in part on Garth of Izar and the Battle of Axanar from one episode of *The Original Series*. (Pls.' SUF ¶¶ 4, 10, 11, 25-32.) The second Star Trek motion picture was a derivative work that expanded on another episode of *The Original Series*. (Pls.' SUF ¶ 82.) Although the *Axanar* Works are set twenty-one years before *The Original Series*, it is not outside the timeframe for Plaintiffs' potential derivative work. (*Id.* ¶ 74.) Indeed, the Star Trek television series to premiere in 2017 goes back in time and takes place ten years before *The Original Series*. (*Id.* ¶¶ 12-13.) Judging by the success of Defendants' fundraisers, the *Axanar* Works are the type of work "for which there [is] a separate demand that [Plaintiffs] may one day seek to exploit." *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 519 (7th Cir. 2002). Defendants' attempt to treat the Battle of Axanar as a private little war is unpersuasive.

Defendants further argue that there is no evidence that the *Axanar* Works have acted as market substitutes to the Star Trek Copyrighted Works. (Defs.' AMF ¶¶ 102-04.) However, this lack of evidence is understandable given the nature of the existing *Axanar* Works. *Prelude* is intended as a promotional piece to the feature-length *Axanar* Motion Picture. *Prelude* in that sense cannot be a market substitute of Star Trek television series or motion pictures, just as a trailer does not substitute for a feature-length film. The *Axanar* Motion Picture has not yet been made or released and its script is not yet released. Hence it cannot have any market impact. On the other hand, Defendants have successfully raised over a million dollars from Star Trek fans at Defendants' prompting of funding the *Axanar*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

projects instead of "dumping hundreds or thousands of dollars a year on . . . cable channels" on which the Star Trek Copyrighted Works are shown. (*Id.* ¶¶ 83, 110; Pls.' Reply ¶ 102.) Peters "was interested in creating alternative ways for fans to view Star Trek" – the way to Eden perhaps. (Pls.' Reply ¶ 108.) He wanted to create "a whole new way that fans can get the content they want, by funding it themselves." (Pls.' SUF ¶ 110.) Defendants used "a fully-professional crew – many of whom have worked on Star Trek itself – [to] ensure *Axanar* will be the quality of Star Trek that all fans want to see." (*Id.* ¶ 100.) Peters also sought to distribute the *Axanar* Works on Netflix. (Pls.' Reply ¶ 104.) Defendants promoted an August 2015 draft of the script "the best *Star Trek movie script* ever!" on their Facebook page. (Grossman Decl. Ex. Z, ECF No. 72-29 (emphasis added).) Under these facts, Defendants evidently intend for their work to effectively function as a market substitution to the Star Trek Copyrighted Works. There is little doubt that "unrestricted and widespread conduct of the sort engaged in by [Defendants] would result in a substantially adverse impact [of market substitution] for the [Star Trek Copyrighted Works]." *Campbell*, 510 U.S. at 587. The fact that Defendants distributed *Prelude* and the *Vulcan Scene* for free online and intend to likewise distribute their future works may likely increase the risk of market substitution as fans choose free content over paid features. (Defs.' AMF ¶¶ 75-76, 107.)

Defendants further argue that the *Axanar* Works, through their promotional value, actually increase the sale and visibility of the Star Trek Copyrighted Works. (Defs.' AMF ¶¶ 114-15.) But "the boon to the [latter] does not make [Defendants'] copying fair." *Campbell*, 510 U.S. at 591 n.21.

Thus, the Court finds that the fourth factor also weighs in favor of Plaintiffs.

### 5. Weighing the Four Factors

The Court thus finds that all four fair use factors weigh in favor of Plaintiffs. If the jury does not find subjective substantial similarity, Defendants did not infringe and fair use defense is moot. If the jury finds subjective substantial similarity, the *Axanar* Works are rightfully considered derivative works of the Star Trek Copyrighted Works. Rejection of Defendants' fair use defense is consistent with copyright's very purpose because derivatives are "an important economic incentive to the creation of originals." *Id.* at 593.

### D. The Determination of Willfulness Must Be Left to the Jury

"To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016). One "who reasonably and in good faith believes [his conduct does not constitute copyright infringement], is not 'willful'. . . ." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 (Matthew Bender rev. ed. 2012)). "A determination of willfulness requires an assessment of a defendant's state of mind. Questions involving a person's state of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

mind are generally factual issues inappropriate for resolution by summary judgment." *Friedman*, 833 F.3d at 1186 (internal quotation marks and alteration omitted).

Here, Star Trek has a long history of fan films that stayed free from copyright disputes. (Lane Decl. Ex. 1, ECF No. 75-26.) Although Peters repeatedly stated that the *Axanar* Works were not to be called fan films, Defendants assert that this statement was made only to distinguish the quality of the *Axanar* Works (Pls.' SUF ¶ 103; Defs.' Resp. ¶ 103.) Thus, Peters' belief that the *Axanar* Works were noncommercial fan films in light of his understanding from CBS that it would tolerate such films creates an issue of his state of mind that must be adjudicated by the jury. (*See* Defs.' AMF ¶¶ 113, 118.) Furthermore, before creating the Axanar Works, Peters sent several emails to CBS to report third parties whom he believed were using Star Trek intellectual property without authorization. (Pls.' SUF ¶ 117.) Viewed in the light most favorable to the nonmovant Defendants, Peters' actions demonstrate a respect for Plaintiffs' intellectual property that makes a finding of willfulness on summary judgement inappropriate.

### E.  Evidence Supports Peters' Contributory and Vicarious Infringement

"[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007). One who "profits directly from the infringement and has a right and ability to supervise the direct infringer" is liable for vicarious infringement. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1032–33 (9th Cir. 2013).

Although the FAC alleges contributory and vicarious infringement against both Defendants, Plaintiffs' Motion only asserts these allegations against Peters. (*Compare* FAC ¶ 56-63 *with* Pls.' Mot. 1, 19-20.) Thus, the Court will analyze these claims only with respect to Peters.

As to contributory infringement, Peters' substantial involvement in, such as writing script for, the *Axanar* Works materially contributes to the infringing conduct of Axanar Productions. (*See, e.g.*, Pls.' SUF ¶¶ 41, 112-14.)

As to vicarious infringement, Peters, as the president of Axanar Productions, was in charge of and was responsible for its conducts. (Pls.' SUF ¶ 112-113.) He was responsible for many of the artistic decisions. (*Id.* 114.) He supervised and controlled Axanar Productions. (*Id.* ¶ 115.) Peters also profited directly from the *Axanar* Works. (*See, e.g.*, Grossman Decl. Ex. A 189:2-23, ECF No. 74-1.)

Accordingly, the Court finds contributory and vicarious infringement contingent upon the jury's finding of subjective substantial similarity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-CV-09938-RGK-E | Date | January 3, 2017 |
|---|---|---|---|
| Title | *Paramount Pictures Corp. v. Axanar Productions, Inc.* | | |

### F. Grant of Declaratory and Injunctive Relief Is Premature

Because the jury must determine issue of subjective substantial similarity for a finding of copyright infringement, the Court cannot rule on Plaintiffs' request for declaratory and injunctive relief at this time. Plaintiffs must motion the Court for such relief if the jury finds subjective substantial similarity.

### IV. CONCLUSION

Based on the discussion above, the Court **DENIES** both Motions. The Court finds in favor of Plaintiffs objective substantial similarity, invalid fair use defense, and Peters' contributory and vicarious infringement contingent on jury's finding. The Court leaves subjective substantial similarity and willfulness for the jury to determine. Findings of direct, contributory, and vicarious copyright infringement are contingent upon the jury's finding of subjective substantial similarity.

To the extent the parties object to any evidence relied on by the Court in this Order, those objections are overruled.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | | CR |